UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

IN RE BANK OF AMERICA HOME          )
AFFORDABLE MODIFICATION             )
PROGRAM (HAMP) CONTRACT             )     Civil Action
LITIGATION,                         )     No. 10-md-2193-RWZ
                                    )
                                    )

**SCHEDULING CONFERENCE**

BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
December 1, 2010
3:05 p.m.

\*   \*   \*   \*

CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(617) 261-0555

```
1    APPEARANCES:

2

3      For the Plaintiffs:

4
       RODDY KLEIN & RYAN
5      By:  Shennan Alexandra Kavanagh, Esq.
            and Gary E. Klein, Esq.
6           727 Atlantic Avenue
            Second Floor
7           Boston, MA 02111

8      -and-

9      HAGENS BERMAN SOBOL SHAPIRO LLP
       By:  Ari Y. Brown, Esq.
10          1918 Eighth Avenue
            Suite 3300
11          Seattle, WA 98101

12     -and-

13     HAGENS BERMAN SOBOL SHAPIRO LLP
       By:  Thomas M. Sobol, Esq.
14          55 Cambridge Parkway
            Suite 301
15          Cambridge, MA 02142

16     -and-

17     NATIONAL CONSUMER LAW CENTER
       By:  Charles M. Delbaum, Esq.
18          7 Winthrop Square
            4th Floor
19          Boston, MA 02110

20     -and-

21     THE TERRELL LAW GROUP
       By:  Reginald Von Terrell, Esq.
22          223 25th Street
            Richmond, CA 94804
23


24
       (Appearances continued on next page.)
25
```

```
1     APPEARANCES:   (Cont'd)

2


3     For the Defendant:

4
      GOODWIN PROCTER LLP
5     By:   James W. McGarry, Esq.,
            and Mark Tyler Knights, Esq.
6           53 State Street
            Exchange Place
7           Boston, MA 02109

8


9


10


11
      ALSO PRESENT:
12

13    STERN SHAPIRO WEISSBERG & GARIN LLP
      By:   Jonathan Shapiro, Esq.
14          90 Canal Street
            Suite 500
15          Boston, MA 02114-2022

16


17
      BERGER & MONTAGUE, P.C.
18    By:   Eric Lechtzin, Esq.
            1622 Locust Street
19          Philadelphia, PA 19103-6305

20

21

22

23

24

25
```

```
1                        P R O C E E D I N G S
2              (The following proceedings were held in open court
3    before the Honorable Rya W. Zobel, United States District Judge,
4    United States District Court, District of Massachusetts, at the
5    John J. Moakley United States Courthouse, 1 Courthouse Way,
6    Boston, Massachusetts, on December 1, 2010.)
7              COURTROOM DEPUTY CLERK URSO:  This is In Re:  Bank of
8    America Home Affordable Modification Program, 10-md-2193.  If
9    counsel could please identify themselves for the record.
10             THE COURT:  Let me start with plaintiffs.
11             MS. KAVANAGH:  Good afternoon, your Honor.  Shennan
12   Kavanagh on behalf of the plaintiffs.  With me is Ari Brown --
13             THE COURT:  Wait a minute.  From which case do you
14   emanate?
15             MS. KAVANAGH:  The Johnson matter in the District of
16   Massachusetts.
17             THE COURT:  I got you.  Shennan Kavanagh?
18             MS. KAVANAGH:  Correct.
19             THE COURT:  Okay.
20             MR. BROWN:  Good afternoon.  Ari Brown from Hagens
21   Berman.  With me is Tom Sobol from -- our managing partner.
22             THE COURT:  Wait one second.  I have pages and pages
23   of lawyer listings.
24             MR. BROWN:  I'm sorry, your Honor.
25             THE COURT:  It is an issue, by the way, that will
```

1    ultimately go to your proposed order.  I talked with the Clerk

2    about it and she points out that if we do what you want us to

3    do, every time an order of any kind is entered or a filing of

4    any kind is made, the computer will spit out 75 pages, as it

5    has in another case, of just lawyers.  So, we're going to

6    avoid that, but let me just find you.

7              Okay.  Mr. Brown?

8              MR. BROWN:  Yes.

9              THE COURT:  Okay, got you.

10             Who else is here for the plaintiff?  Mr. Klein?

11             MR. KLEIN:  Gary Klein, your Honor, Roddy Klein &

12   Ryan.

13             THE COURT:  Okay.

14             MR. SOBOL:  Good afternoon, your Honor.  Thomas Sobol

15   with Hagens Berman Sobol Shapiro.  I filed an appearance

16   earlier today on the ECF.  So, you won't find it, I don't

17   think, in front of you.  With Mr. Brown of my firm.

18             THE COURT:  Anybody else?

19             MR. DELBAUM:  Your Honor, Charles Delbaum with the

20   National Consumer Law Center, co-counsel with Roddy Klein Ryan

21   on the Johnson case.

22             THE COURT:  You're Mr. Rossman?

23             MR. DELBAUM:  I'm Mr. Delbaum, underneath Mr.

24   Rossman's name, most likely.

25             THE COURT:  Oh, yes, that's right.  Anybody else?

1          MR. TERRELL:  Richard Terrell.  The Wilkerson matter.

2    I'm here for the plaintiff.

3          THE COURT:  I'm sorry, your last name again?

4          MR. TERRELL:  Terrell, T-e-r-r-e-l-l.

5          THE COURT:  Oh, yes.

6          You say Wilkerson?

7          MR. TERRELL:  Correct.

8          THE COURT:  Oh, here you are.  Okay.

9          MR. SHAPIRO:  Good afternoon, your Honor.  Jonathan

10   Shapiro.  I'm here on the Darren Kunsky related case.

11         THE COURT:  Well, you're welcome to observe, but at

12   the moment you're not in this, right?

13         MR. SHAPIRO:  Well, we did file a motion in the

14   Kunsky case.  I'm here with Eric Lechtzin from the firm of --

15         THE COURT:  But the case isn't here yet.  It is not

16   part of this proceeding yet.

17         MR. SHAPIRO:  It is not formally part of the MDL.

18         THE COURT:  Right.  So, I think you're welcome to

19   observe, but you're not welcome to participate because you're

20   not part of this proceeding as yet.

21         MR. SHAPIRO:  Although, the motion does address an

22   issue which I think is important to address --

23         THE COURT:  Well, you want me to appoint you in some

24   way, but until you're here, I don't think I want to do that,

25   okay?  I'm sure it will happen.  I just got notice a few

1  minutes ago that multi-district has sent two more cases, which

2  haven't yet arrived.  So, in due course, yours will come, too.

3          Who else for the plaintiff, on the plaintiffs' side?

4          (No response).

5          THE COURT:  Okay.  Now, let me find the defendants.

6          Okay.  For the defendants?

7          MR. McGARRY:  Good afternoon, your Honor.  Jim

8  McGarry, on behalf of all of the Bank of America entities in

9  all of the cases.

10         MR. KNIGHTS:  Mark Knights, your Honor.  I'm here

11 with Mr. McGarry, representing the defendants.

12         THE COURT:  Okay.  That's it.

13         Who is here with Mr. Shapiro?

14         MR. LECHTZIN:  Eric Lechtzin from Berger & Montague,

15 also --

16         THE COURT:  How do you spell your last name?

17         MR. LECHTZIN:  L-e-c-h-t-z-i-n.

18         THE COURT:  Okay.

19         I want to thank those of you who are officially in

20 the case for your very good and helpful joint statement, and

21 let me just see where we are on that.

22         I think it is appropriate to suspend all deadlines

23 that have been previously imposed elsewhere, as you have both

24 requested.

25         Why will it take until sort of the end of January to

1    file a consolidated amended complaint?

2          MR. BROWN:  Mostly because the number of cases that

3    are coming in.  We would like some time to get a better handle

4    on how many cases are coming in, get as many of them

5    consolidated into this consolidated complaint.

6          THE COURT:  Once they arrive, they're in.

7          MR. BROWN:  Once they arrive --

8          THE COURT:  Once they come from multi-district,

9    they're in.  They're part of this proceeding.

10          MR. BROWN:  Right, but there are multiple states

11    coming in.  We want to get a better handle on which states we

12    have in this case, which states we don't, and we are working

13    -- we're working to decide as to which claims are going to be

14    brought on behalf of the nationwide class, if any, and which

15    will be state by state.  So, we just want some time to get the

16    states together and get them in.  We think we can get them in

17    very shortly.  We also didn't want to fall up against the

18    holidays.  That's why we want the additional time.

19          THE COURT:  Does anybody know how many more cases

20    there are that are likely to come here and the time frame for

21    that to happen?

22          MR. BROWN:  The majority of the claims will come in

23    by mid January, in time to file a consolidated amended

24    complaint.  We will get at least the representation from the

25    majority of the states that will be ultimately brought in.

1    I'm sure there will be additional cases filed by others, but I

2    think by that point we will have a significant corpus.

3          THE COURT:  And I gather the defendants really don't

4    object to that?

5          MR. McGARRY:  To the timing of the consolidated

6    amended complaint, we don't, your Honor.

7          THE COURT:  And until that is done, the pending

8    motions to dismiss just simply have to wait, right?  I mean,

9    they're sort of -- there's no sense in dismissing the

10   complaint that's going to go away, anyhow.

11         MR. McGARRY:  I think that's probably logical, your

12   Honor.

13         THE COURT:  So, if the deadline for filing the

14   consolidated complaint is January 21st, presumably the primary

15   basis for the motion to dismiss will be substantially the same

16   as it is in the now-pending cases, right?

17         MR. McGARRY:  As I said to plaintiffs' counsel the

18   other day, unless you come up with some other theory, that's

19   probably right.  The one caveat would be, you know, each case

20   in each state has a separate claim under its consumer

21   protection law and they do vary.  93A has --

22         THE COURT:  Yes, they do.  I think there's only one

23   that doesn't so far.

24         MR. McGARRY:  Yes.  And so, the -- I think in terms

25   of the -- there are only three or four states in which a

1   motion to dismiss was filed.  The *Johnson* case before you, the

2   *Kahlo* case in the Western District of Washington, and there

3   were two other cases, one in the District of Arizona and one

4   in the Northern District of California, if I'm not mistaken,

5   in which motions were filed, but no responses were made, as

6   the parties agreed to hold off all that pending the resolution

7   of the consolidated proceedings.

8         So, there are two, maybe three, motions where the

9   Consumer Protection Act claims have been dealt with, but with,

10  you know, half a dozen or ten more states, I think that adds a

11  layer of complexity, but the basic arguments I think is

12  probably right, unless the plaintiffs come up with additional

13  claims or additional theories.  I think that makes sense --

14        THE COURT:  Would it make sense to agree that the

15  motion to dismiss will include only the breach of contract

16  claims and what goes with them, at least to begin with?

17        MR. McGARRY:  I think it would be -- I think it would

18  be premature to make that representation at this time because

19  there are going to be some cases where -- in certain states

20  where the Consumer Protection Act claim is going to be barred

21  if the underlying claim is barred.  There are going to be

22  other states where the Consumer Protection Act claim has its

23  own separate elements and maybe they need to be addressed in a

24  slightly different way.  So, I'm concerned that making the

25  representation across the board that, you know, we put all the

1  state Consumer Protection Act law claims aside will not give

2  us the opportunity to, perhaps, get rid of, you know, one --

3  or attempt to get rid of one or more of the Consumer

4  Protection Act claims, where I think we can do it on the

5  pleadings.

6  THE COURT:  Well, if they go away separately from the

7  breach of contract claims, you're right.  If not, then we

8  could -- while I normally dislike serial dispositive motions,

9  it makes a certain amount of sense.  I mean, if, for example,

10  the motion to dismiss is successful on the breach of contract

11  claims and the appendages thereto, breach of good faith and

12  the -- some of these have third-party beneficiary claims --

13  then it may very well be that the plaintiffs would want to

14  appeal that and not go to -- not even worry about the state

15  claims at the moment.  I don't know.  I don't know.

16  Obviously, if they're not successful, then you would want to

17  go back and do the state claims to the extent that you can.

18  MR. McGARRY:  Yes.  And it may be, your Honor, that

19  once we actually see the consolidated amended complaint and

20  see the causes of action advanced, that we may ask you, with

21  your permission, to address only, say, the breach of contract

22  claims and the breach of contract-like claims and hold the

23  others off, but without actually seeing what the plaintiffs

24  propose to file, I think it's hard to make that decision in a

25  vacuum.

```
 1              THE COURT:  So, how much time do you need to file
 2      this motion after January 21st?
 3              MR. McGARRY:  I think in our proposed schedule, we
 4      ask for six weeks.  I'd be happy to do it in 30 days, your
 5      Honor.
 6              THE COURT:  Well, let me digress for a moment.
 7              What I'm concerned about is that there's also pending
 8      a motion for preliminary injunction against foreclosures.  Is
 9      there any possibility that we can agree to maintain the status
10      quo until the motion to dismiss is decided?
11              MR. McGARRY:  I can't make that representation here
12      today.  We certainly --
13              THE COURT:  Can you inquire and let us know?
14              MR. McGARRY:  I'm sorry?
15              THE COURT:  Can you inquire and let us know?
16              MR. McGARRY:  We can.  And we certainly have done it
17      with respect to individual plaintiffs, your Honor.  I mean,
18      part of the problem we have is that in addition to a motion
19      for preliminary injunction, there's this attendant motion for
20      preliminary class certification, which we don't think is
21      proper at all.
22              THE COURT:  Well, the class certification I think we
23      will need to postpone until we've dealt with the motion to
24      dismiss and maybe a motion for an injunction.
25              MR. McGARRY:  I guess, just to respond to that -- I
```

1    mean -- I think if the answer is can we -- and I can't make

2    the representation today, but I think I could comfortably say

3    I can probably get back to the Court and achieve this.

4            If the goal is to hold off on any foreclosure for any

5    of the named plaintiffs in the cases that have been filed, I

6    think we're already doing that informally and I might be able

7    to do that formally.  If we're talking about holding off on

8    all foreclosures for anyone who fits within the plaintiffs'

9    purported class definition, that I don't think I can do.

10           THE COURT:  No.  I agree.  I didn't really ask it

11   very specifically.

12           Ms. Kavanagh?

13           MS. KAVANAGH:  The plaintiffs do intend, your Honor,

14   to file a motion for preliminary injunctive relief that

15   would --

16           THE COURT:  You already -- I think it's already on

17   file.

18           MS. KAVANAGH:  Right.  We filed a motion to hold that

19   in abeyance because of the coordination that we have to do

20   with all of the cases coming in the MDL proceeding.  That

21   motion for preliminary injunctive relief related only to the

22   Massachusetts borrowers.

23           THE COURT:  I assume, Ms. Kavanagh, you don't object

24   to the forthcoming agreement to not foreclose on any of the

25   named plaintiffs.

1           MS. KAVANAGH:  I don't object to that, your Honor,

2    but it's just insufficient for the purposes of this case.

3    What we would like --

4           THE COURT:  You're not going to get even a motion

5    until you have the consolidated complaint, right?

6           MS. KAVANAGH:  We intend to file a motion for

7    preliminary injunctive relief before the filing of a

8    consolidated amended complaint because there is an urgency

9    here with people losing homes to foreclosure that we don't

10   know because we don't have them identified.

11          THE COURT:  Who would it address?  We don't even have

12   a class yet.  As to who would you file that motion?

13          MS. KAVANAGH:  We would file them on behalf of

14   borrowers who otherwise would be getting permanent loan

15   modifications.

16          THE COURT:  Named borrowers?

17          MS. KAVANAGH:  It's borrowers who -- named borrowers

18   in addition to borrowers that we do not know of yet who are in

19   the same -- similarly situated to the named plaintiffs.

20          THE COURT:  Well, you can file it, but I must say

21   that just hearing you talk now, I'm not inclined to enter an

22   injunction with respect to people who are not named in the

23   lawsuit as yet where nobody knows who they are.

24          Why don't we leave it until you know --

25          MS. KAVANAGH:  When we file a motion, then we can

1  decide it then, your Honor.

2        THE COURT:  Right.

3        MS. KAVANAGH:  But the point being is that with

4  regard to defendant's representations about the named

5  plaintiffs, it's our position that simply saying that they

6  won't foreclose on the named plaintiffs doesn't solve the

7  overall problem right now of people losing their homes.

8        THE COURT:  It may not, but we may not be able to do

9  that until we get a little bit more substance in the case,

10  until we get -- the facts become a little clearer than they

11  are now, primarily about who is involved in this.

12        So, I think that Mr. McGarry is going to try to see

13  what he can do with respect to the named plaintiffs in all of

14  the actions, and you will, in due course, file your motion for

15  preliminary injunction and we'll deal with it, but think about

16  that, because I -- it's hard for me to see how I can enjoin

17  them from foreclosing some unnamed plaintiff when we don't

18  even know who the plaintiff is, but, you know, whatever you

19  fashion in the way of a motion, I'll obviously look at, I will

20  hear you, and I will decide it.

21        But for the moment, what we're doing is seeking some

22  kind of -- or I am seeking some kind of assurance with respect

23  to the named plaintiffs only because they are the named

24  plaintiffs right now and we know who they are, and it may not

25  come even as to them.

1          MR. BROWN:  If I may, your Honor.  One thing we have

2     been wrestling with -- and we had asked -- we had discussed

3     maybe a short moratorium on the foreclosures until we can at

4     least get the consolidated amended complaint filed.  I know

5     the Bank of America has an informal policy where not much

6     happens --

7          THE COURT:  Talk to them.

8          MR. BROWN:  -- during Christmas.

9          THE COURT:  I'm not going to make an order because

10    it's not before me.  I was simply inquiring whether it is

11    possible to agree to certain limitations on foreclosures at

12    the moment, and that's what Mr. McGarry is going to try to do,

13    and you will then decide how you're going to proceed from

14    there, but we know now that the likelihood is that not much is

15    going to happen until you file your amended complaint, your

16    consolidated complaint.  So, it seems to me -- but, you know,

17    if you file it, as I say, I will look at it and I will decide

18    it.

19          So, the motion to dismiss will be filed by

20    January 21st; is that what you said?

21          MS. KAVANAGH:  At the latest, your Honor.

22          THE COURT:  Okay.

23          MR. McGARRY:  Excuse me, your Honor.  You said, "the

24    motion to dismiss."  I think you meant "the consolidated

25    amended complaint."

```
1              THE COURT:  The consolidated amended complaint by
2    January 21st.  The motion to dismiss -- I'm sorry.  That was
3    your motion.  And you wanted 60 days?
4              MR. McGARRY:  I had asked for six weeks until
5    March 4th, but we'll try to do it in 30 days.
6              THE COURT:  Okay.  So, that would be February 20th,
7    or thereabouts.
8              COURTROOM DEPUTY CLERK URSO:  21.
9              THE COURT:  February 21st.
10             COURTROOM DEPUTY CLERK URSO:  Yes.
11             THE COURT:  How much time for opposition?
12             MS. KAVANAGH:  Your Honor, the plaintiffs propose
13   March 30th to respond to the motion to dismiss.
14             THE COURT:  I don't think you need more time than
15   they need to prepare the motion.  So, give me a closer date.
16             MS. KAVANAGH:  March 21st.
17             THE COURT:  March 21st.
18             COURTROOM DEPUTY CLERK URSO:  Yes.
19             THE COURT:  Mr. McGarry, any reply?
20             MR. McGARRY:  Two weeks, your Honor.
21             THE COURT:  It's only going to be five pages.
22             MR. McGARRY:  Ten days.
23             THE COURT:  March 31st.  Is that a holiday?
24             COURTROOM DEPUTY CLERK URSO:  March -- let me see.
25   No.
```

```
1              THE COURT:  So, March --

2              COURTROOM DEPUTY CLERK URSO:  March 31st for five-

3    page reply.

4              THE COURT:  And I would prefer not to have you ask

5    for more pages on the main briefs either.

6              I assume you want to have a hearing on it?

7              MR. McGARRY:  I would assume we do, your Honor.

8              COURTROOM DEPUTY CLERK URSO:  We can do March 7th, at

9    2:00.

10             THE COURT:  I'm sorry?

11             COURTROOM DEPUTY CLERK URSO:  March 7th -- I mean

12   April 7th, I'm sorry.  April 7th, at 2:00.

13             THE COURT:  Will that work for you?

14             MS. KAVANAGH:  That's fine.  Is that more than

15   two weeks out from the March 21st deadline?

16             THE COURT:  It's about two weeks.

17             MS. KAVANAGH:  For oral arguments.  And you've had --

18   he's had time to do --

19             THE COURT:  It's a week after they file their five-

20   page reply.

21             MR. McGARRY:  The date works for the defendants, your

22   Honor.

23             THE COURT:  And this is at 2:00.

24             COURTROOM DEPUTY CLERK URSO:  Yes.

25             THE COURT:  So that takes care of the motion to
```

1    dismiss for the time being.

2            Then you raise some other issues, such as the -- let

3    me pass the management order at the moment -- procedures for

4    further amendments to the complaint as more cases are

5    transferred.  Hopefully, after January 21st, we won't have to

6    worry too much about that, but whatever you suggest is likely

7    to be fine with me.

8            MS. KAVANAGH:  Your Honor, to the extent that there's

9    later-filed cases, then we would have to amend the complaint

10   to consider those and we would just follow the Rule 15 rule to

11   seek leave, if necessary, if the defendants don't agree.

12           THE COURT:  That seems reasonable.

13           MR. McGARRY:  I think that's fine, your Honor.  The

14   only concern that I have that I've expressed to various other

15   plaintiffs' counsel before is to the extent there are cases

16   trickling in after the consolidated amended complaint is

17   filed, I think it would be sent -- and we've talked about the

18   idea conceptually, but I don't know if we've come up with a

19   solution.  I think it would make sense to come up with some

20   way to deal with responsive deadlines, dispositive motions

21   deadlines, some sort of thing.  So, if a complaint comes in

22   while the motion to dismiss is being briefed, for instance,

23   we're not going back and having to file another series of

24   motions before you, your Honor.

25           So, I'm not sure that it's something that we -- and

1    maybe it will take care of itself once the motion to dismiss

2    is resolved one way or another, but I'm -- I just don't want

3    to have to be filing, you know, serial answers if there's a

4    whole bunch of different cases coming.  I know Mr. Brown seems

5    to think it will all be in by mid January.

6         THE COURT:  Well, the motion to dismiss initially

7    will address the new consolidated complaint of however many

8    plaintiffs -- cases are here now.  Anybody who comes in after

9    that will be subject to the same complaint changed only to

10   include them, but, in substance, the same.

11        Counsel -- there will be interim lead counsel

12   appointed today, as they requested, and they will also be the

13   interim lead counsel, unless they're made permanent lead

14   counsel, with respect to anybody who comes in after that.  So,

15   it seems to me that the people who come later are kind of

16   bound by what's going on as a practical matter, aren't they?

17        MS. KAVANAGH:  That is true, your Honor.  There could

18   be a circumstance where somebody files a complaint that raises

19   a different legal theory, but, presumably, that wouldn't get

20   transferred.  We have to just wait and see.

21        THE COURT:  Yes.  I think it's not a serious issue at

22   the moment.  If it becomes one, obviously, you'll bring it to

23   my attention and we'll see what we can work out.

24        MR. McGARRY:  Thank you.

25        THE COURT:  Okay.  So, the protocol for E discovery,

1    I expect you to come up with that and adhere to it, and I hope

2    I never have to see any of it.

3           I must tell you, I have gone to a program run by the

4    Federal Judicial Center on E discovery.  I spent two days

5    learning about E discovery and I truly don't know a whole lot

6    more now than I did before I started.  So, I'm not a very good

7    person to rule on anything in that regard.  I'll have to send

8    it to a magistrate, who were the people who were teaching the

9    course.

10          I don't think we need to deal with class

11   certification merits and damages today.  I presume that at the

12   moment, you will be busy briefing the motion to dismiss and

13   then you will begin discovery, starting with the automatic

14   discovery, right?  And then at some point after the motion to

15   dismiss is decided, which I want very much to do as quickly as

16   I can, then I think we need to address class certification,

17   which will go -- whatever discovery you need on that should

18   certainly begin even before the motion is decided, probably,

19   and then after that we'll decide about merits and damages.

20          I don't have strong feelings either way on that and

21   I'm happy to hear you, but I don't think I need to decide it

22   today.

23          MS. KAVANAGH:  If I could just have a word, your

24   Honor.

25          The merits and class certification discovery in this

1   case are completely intertwined and because, also, plaintiffs

2   are going to be moving for preliminary injunctive relief

3   immediately, there's discovery necessary to that that goes

4   straight to the merits of the case.

5   　　　　　THE COURT:  Go ahead.

6   　　　　　MS. KAVANAGH:  And the types of discovery we would be

7   seeking that are relevant to class certification are also

8   completely relevant to the merits.  So, while we want to start

9   discovery as soon as possible and, certainly, you know, even

10   before the motion to dismiss is decided, if so permitted, the

11   discovery should go forward as all of the discovery at once

12   because it will take so much more time to go through the

13   disputes that are inevitably going to arise about what is

14   class certification --

15   　　　　　THE COURT:  All of which you will work out.

16   　　　　　MS. KAVANAGH:  -- discovery and merits discovery.

17   What?

18   　　　　　THE COURT:  All of which you will work out.

19   　　　　　MS. KAVANAGH:  Well, the problem is -- and we will

20   work out -- we have a good relationship with Mr. McGarry, your

21   Honor, but the problem is this case is a special case because

22   of the urgency of the foreclosure issues and plaintiffs

23   anticipate -- and want to move this case as quickly as

24   possible so that people will be able to act on their rights

25   before unnecessarily losing their homes to foreclosure, and

1    the discovery in this case is going to be hugely important for

2    making sure this doesn't happen.

3           So, in this case, in particular, the claims at issue

4    and the facts at issue and the urgency of the situation that

5    these homeowners are in really warrants having discovery move

6    quickly and to move together.

7           THE COURT:  I hadn't intended to have argument on the

8    issue today.

9           MS. KAVANAGH:  Just a few words.

10          THE COURT:  Okay.  I hear you.  I have heard you.

11          MS. KAVANAGH:  Okay.

12          THE COURT:  Did you want to add anything?

13          MR. McGARRY:  I guess just that there's inevitably

14   this fight about whether there should be merits and class

15   discovery and among this group here, I think we've done enough

16   class action work together that, invariably, we can work out

17   those disputes -- the vast majority of the disputes without

18   involving the Court.  To the extent --

19          THE COURT:  I look forward to that.

20          MR. McGARRY:  We try very hard, your Honor, and I

21   think we're successful most of the time.

22          THE COURT:  I know.

23          MR. McGARRY:  To the extent we're talking about, you

24   know, immediately beginning discovery of individual potential

25   class members that are not named plaintiffs, then, perhaps, we

1  do need to talk about that today because that's -- that's the

2  real issue.  The damages and all the individual circumstances

3  of potential class members, that's really where the substance

4  of the divide comes, from the defendant's perspective.

5  There's not -- you know, the merits discovery into what my

6  client's policies and procedures and practices are, of course,

7  that's relevant to class certification and, of course, they're

8  entitled to that, but if we start getting down the road of

9  getting into discovery about individual class members at this

10  stage potentially nationwide will bog us down incredibly and

11  that's the primary concern we have.

12       THE COURT:  How do you anticipate that to come up?

13  By the plaintiffs asking for the names of all people who have

14  applied under this program?

15       MR. McGARRY:  I don't know because I haven't seen

16  their discovery requests, but Ms. Kavanagh got up and talked

17  about how these things are critically important, but she

18  didn't actually tell you one thing she specifically needed.

19  So, I just wanted to make sure that I was on the record

20  talking about what our concerns are about getting into, you

21  know, all of the individual records of every conceivable

22  person who was in the HAMP program at any point in time.

23       THE COURT:  Well, why don't we agree that the

24  automatic discovery shall take place as you had said it would

25  and then to the extent that Ms. Kavanagh wants to do

1    additional discovery that you find objectionable or too broad

2    at this stage, whatever you can't resolve by talking to each

3    other, let us know and we'll have another meeting and see what

4    we can hash out.

5            MR. McGARRY:  Thank you, your Honor.

6            THE COURT:  Ms. Urso is always available.

7            So, we also defer any question of the number --

8    limits on the number of depositions and interrogatories, and

9    all that.  Protective orders, I'll sign whatever you give me.

10   And I think that takes care of the discovery issues that you

11   had posited in your joint statement.

12           MR. McGARRY:  There was one issue, your Honor, which

13   is the -- in the *Kahlo* case, which was the case in the Western

14   District of Washington where discovery -- some discovery did

15   commence.  We have responded to the discovery as it relates to

16   the individual *Kahlo* plaintiffs, given the plaintiffs' own

17   documents and the records that relate to the Kahlos, but have

18   asked that we do this discovery in a -- that relates to the

19   broader issue of my client's policies and practices and

20   procedures, and the like, in a consolidated proceeding.

21           The whole purpose of having these proceedings

22   consolidated is to make the discovery consistent and

23   consolidated, and there's been some resistance that -- from

24   the plaintiffs' side that we may get involved in a motion to

25   compel broader discovery in that particular case, and our

1    position, as we articulate in our papers, is just that we

2    should have discovery starting in these consolidated

3    proceedings in a consolidated matter.

4         MS. KAVANAGH:  The *Kahlo* discovery was served and

5    it's well overdue now, your Honor, and a number of those

6    requests might be on the individual plaintiffs' requests and

7    we would not duplicate those requests in the MDL proceeding,

8    and a lot of that information we would actually use in

9    addition to the MDL proceeding, and that's not waiving our

10   rights to seek additional information, but it's a timing issue

11   because that discovery has been pending now for a couple of

12   months and it's due --

13        THE COURT:  I thought we agreed at the very beginning

14   to suspend all existing deadlines.

15        MS. KAVANAGH:  Well, that -- actually, that was a

16   question I was going to ask you, if you were including that

17   discovery in the --

18        THE COURT:  I'm including that in the suspension.

19        MS. KAVANAGH:  Okay.

20        THE COURT:  Now, I think that's all on the joint

21   statement.

22        With respect to your proposed order number one, I

23   have no problem with appointing as interim lead counsel the

24   four lawyers that you had suggested, Mr. Klein, Mr. -- whoever

25   they were.

1          MS. KAVANAGH:  It's the two law firms, your Honor,

2     the Roddy Klein --

3          THE COURT:  It was specifically four lawyers, was it

4     not, not just the law firms?

5          MS. KAVANAGH:  I don't believe it was --

6          THE COURT:  Mr. Klein, Ms. Kavanagh, Mr. Costello,

7     Mr. Berman, I think.

8          MR. BROWN:  And Mr. Brown.  That would be me.

9          THE COURT:  You're on the proposal here.  The firm of

10    Hagens Berman Sobol and Shapiro.

11         MR. BROWN:  Right.

12         THE COURT:  No "and."

13         Mr. Berman.  Mr. Brown, Roddy Klein & Ryan, Mr. Klein

14    and Ms. Kavanagh.  Oh, and Mr. Costello.  So, five.  Okay?

15    So, you are interim lead counsel, and we'll go with that.

16         Now, there is -- you also want to have an executive

17    committee and, as best as I can tell, the only purpose of the

18    executive committee is to have those lawyers also get enhanced

19    fees.  Is there anything else to that?

20         MR. BROWN:  As poignant as that observation may be,

21    there are some powers of the executive committee.  These are

22    the group that we can recognize and help manage this case and

23    look to them for their expertise and help.  This is a group

24    that's been very active to consolidate --

25         THE COURT:  Why can't you do that without their being

1  members of an executive committee?

2          MR. BROWN:  We probably can.

3          THE COURT:  Why don't we do it that way.  We have

4  such a huge structure and I don't really want to be in charge

5  of appointing a structure for plaintiffs' counsel.  I would

6  like you to work that out.  So, if you want to deal with them

7  in some way, that's fine.

8          MR. BROWN:  Our hope is that this is the last time

9  you'll have to deal with it.  That's our hope, and I think it

10  would actually speed things along for everybody if we had an

11  order from the Court, which may be revisited, if necessary --

12  we don't anticipate that -- that we can get an order

13  recognizing who the executive committee is made up of.

14          THE COURT:  I think I would prefer to start with five

15  interim lead counsel, which seems a fairly high number, and if

16  a problem arises later on and that you need more recognition

17  of who the people are with whom you wish to consult, come

18  back.

19          MR. BROWN:  Okay.

20          THE COURT:  The portions of the -- oh, there is one

21  other part of the proposed order that has me making all kinds

22  of orders about the internal workings of the plaintiffs'

23  counsel's group, all of them, keeping track of records and how

24  they are to be dealt with, and all of that.  I feel

25  uncomfortable getting into that, frankly.  It's not clear to

1   me why the Court needs to do that.

2           MR. BROWN:  Which -- are there particular provisions?

3           THE COURT:  Let me see if I can find them.

4           (Pause.)

5           THE COURT:  I don't know where it was, but there was

6   a provision some -- maybe it was in the order itself.

7           MR. McGARRY:  Your Honor, if I could help you, the

8   paragraphs that talked about counsel keeping records of their

9   time was Paragraphs 19 and 20.

10          THE COURT:  Of the order?

11          MR. McGARRY:  Of the proposed order, yes.

12          (Pause.)

13          THE COURT:  I don't know why I can't find it.

14          MR. BROWN:  Your Honor, these were -- Paragraphs 19

15  and 20 are just --

16          THE COURT:  Yes, that's it.

17          MR. BROWN:  These are things we can deal with amongst

18  ourselves.

19          THE COURT:  I think so.

20          MR. BROWN:  The only purpose is to -- if we had the

21  imprimatur of the Court, it makes things easier going forward.

22          THE COURT:  If you have a problem down the line, let

23  me know, but I really would prefer that you work that out.  It

24  doesn't seem seemingly for me to tell the lawyers how to work

25  with each other with respect to their billing, and such.

1          MR. BROWN:  Very good.

2          THE COURT:  Of course, that doesn't mean I won't

3    criticize it later on, which is what you're trying to avoid,

4    but I'll be gentle.

5          MR. BROWN:  Thank you.

6          THE COURT:  Now, the other piece of this has to do

7    with what the Clerk's Office has to do and, as I said before,

8    the Clerk has some objections to some of the provisions in

9    here.

10         MS. KAVANAGH:  Are we looking at Paragraphs 8 and 9,

11   your Honor?

12         THE COURT:  Let me just find it.

13         Well, already starting out with coordination of

14   related counsel.  The Clerk had some problem with how to deal

15   with new cases as they come in.  Clearly, we would have a

16   provision that I think you also have in here that they do not

17   have to again enter an appearance, that counsel in the cases

18   don't have to enter an appearance here.  We will not notify

19   them of anything.  We will notify lead counsel only and lead

20   counsel then have to notify them of anything that happens, for

21   the reason I mentioned earlier, that we end up with these

22   humongous service lists that overshadow everything in the

23   docket.

24         What I propose to do is to fiddle with this and come

25   up with a draft that our Clerk finds acceptable, taking as

1    much of what you have here, and not entering it until you have

2    seen it.  You know, I'll send you what I propose to enter and

3    you can tell me wherein it doesn't work from your perspective.

4    This is less of a problem for you, obviously.  So, that was

5    the only other thing.  Mr. Klein.

6         MR. KLEIN:  Your Honor, just having had some

7    experience with big MDL cases and bigger than this, the one

8    thing that would be very, very helpful to us if we still had

9    the ability to use the ECF system and the services associated

10   with the electronic ECF system so that the notice goes out

11   through the court system so that we don't have glitches and

12   problems with people claiming they didn't get notice through

13   co-lead counsel.

14        So, I would ask that, perhaps, we could inquire of

15   the Clerk's Office whether there's a way, even without the

16   long service list, to make sure that service is made through

17   the ECF system rather than some other way.

18        THE COURT:  I think that's exactly what she objects

19   to, but I'll talk to her about it.

20        Paragraph No. 5 of the proposed order talks about the

21   Clerk mailing a copy of the order to all counsel, "Clerk shall

22   mail."  I don't think we mail anything anymore.  So, we'll

23   need to fix that and make sure that it is all electronic.

24        And with respect to the caption, we should probably

25   indicate in the caption -- have some provision indicating when

1    a pleading is filed on behalf of a case only and not on behalf

2    of the consolidated, but, as I say, I want to review this and

3    want to come up with an edited version, which I will submit to

4    you, all of you, so that you can see whether it works or not

5    and if it doesn't, obviously, then we'll have to reconsider.

6              MR. KLEIN:  Just a couple of things, your Honor.

7              First, it would be very helpful to us if you included

8    the Paragraph 16 that's incorporated in our proposed order,

9    which lays out the duties of interim co-lead counsel.  What

10   that does, it gives the defendant comfort, for example, that

11   we have authority to speak for the group, among other things.

12             THE COURT:  Probably makes sense.  Are there things

13   in here that you object to?

14             MR. McGARRY:  No, there aren't at all, your Honor.

15   We would actually -- and Mr. Klein and I talked about this

16   briefly before we started today.  We'd actually like to add a

17   sentence that says to the effect of defendants can rely on the

18   representations of co-lead counsel.  We want to be in a

19   position where, like the Court only wants to serve co-lead

20   counsel, we would only like to have to serve co-lead counsel.

21   I'd like to make sure that it's explicit that we strike

22   agreements with co-lead counsel and they're binding on the

23   entire group, but we have no problem with what already exists

24   in Paragraph 16.

25             THE COURT:  Well, let me suggest then that I play

1    with that part of the order that deals with the Clerk's

2    Office.  I will submit it to you.  You can either -- you can

3    both edit that and add anything else or subtract anything else

4    that doesn't work for you and get it back to me and then we

5    can enter it.

6            MR. BROWN:  By when would you like that?

7            THE COURT:  Well, you won't be able to do it until

8    you get mine.  So, I'll try and get it to you next week.

9            MS. KAVANAGH:  We'll get it back to you immediately,

10   your Honor.

11           THE COURT:  And then you can get it back to me when

12   you get it back from me, but I think we all need to work with

13   some dispatch.

14           What else, Mr. Klein, Ms. Kavanagh or Mr. Brown?

15           MR. KLEIN:  Your Honor, with respect to the case

16   management issues and your position on the executive

17   committee, which we understand, I think there's a possibility

18   that we may come back to you with a proposed order and second

19   case management order down the road as we see how the case

20   goes and I want to reserve the right to ask you again about an

21   executive committee down the road.

22           THE COURT:  You have it.  I told you that.

23           MR. KLEIN:  One of the issues is that the committee

24   -- there are a lot of lawyers in this case and it may be very,

25   very helpful to us as lead counsel to have an executive

1    committee, particularly in a case like this where there are

2    state law claims and some lawyers may know issues -- know

3    about issues that come up in other states, and that kind of

4    thing.  So, I hope that you would retain an open mind about

5    the possibility that we might want --

6            THE COURT:  I already told you that.

7            MR. KLEIN:  Thank you, your Honor.  Thank you.

8            THE COURT:  Ms. Kavanagh, anything else?

9            MS. KAVANAGH:  No, your Honor.

10           THE COURT:  Anything else, Mr. Brown?

11           MR. BROWN:  No, your Honor.  Thank you.

12           THE COURT:  Mr. McGarry?

13           MR. McGARRY:  No, your Honor.

14           THE COURT:  Well, good luck to us all, and thank you

15    very much, and we'll keep going and communicating with each

16    other.

17           MR. McGARRY:  Thank you, your Honor.

18           THE COURT:  Thank you very much.

19           MS. KAVANAGH:  Thank you.

20           MR. BROWN:  Thank you.

21           THE COURT:  Court is in recess.

22           (Adjourned, 3:48 p.m.)

23

24

25

1                    C E R T I F I C A T E

2          I, Catherine A. Handel, Official Court Reporter of the

3    United States District Court, do hereby certify that the

4    foregoing transcript, from Page 1 to Page 34, constitutes to the

5    best of my skill and ability a true and accurate transcription of

6    my stenotype notes taken in the matter of Civil Action No.

7    10-md-2193-RWZ, In Re: Bank of America Home Affordable

8    Modification Program (HAMP) Contract litigation.

9

10     February 10, 2010      /s/ Catherine A. Handel
       Date                   Catherine A. Handel, RPR-CM, CRR

11