# TAB 21

HONORABLE RYA W. ZOBEL

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

8
9 IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
10 (HAMP) CONTRACT LITIGATION              No. 1:10-md-2193 RWZ
11
12
13

## DECLARATION OF CHARLOTTE JAMES

14
15 I, Charlotte James, declare as follows:

16 1.      I have been the owner of a home located at 118 Enola Drive, Shelby, North Carolina
28150 since February, 2004.
17
18 2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

19 3.      Starting in December, 2009, I began to experience financial hardship and became
worried that I would fall behind on my mortgage payments.

20 4.      In December, 2009, I applied for a HAMP loan modification and provided documents
to BAC Home Loans Servicing, LP verifying my financial circumstances.
21
22 5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial
Period Plan (TPP) Agreement.  The TPP Agreement contemplated a three month trial period
23 beginning on March 1, 2010 and ending on May 1, 2010.

24 6.      I accepted BAC Home Loans Servicing, LP's offer on February 2, 2010.  I did this by
returning the signed TPP Agreement to BAC Home Loans Servicing, LP.  A true and correct
25 copy of the TPP that I sent is attached as Exhibit A.

26 7.      I made each of the payments called for in the TPP Agreement in full and on time.  BAC
Home Loans Servicing, LP accepted each of my payments.

DECLARATION OF CHARLOTTE JAMES – 1

8.      My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.      I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.     It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.     I made nine additional payments beyond the end of the trial period because I continued to believe that I should be given a permanent HAMP modification.

13.     On February 16, 2011, I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification.   The notice came in the form of a Notice of Intent to Accelerate.

14.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home

15.     I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised.  I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

16.     I am currently facing the prospect of losing my home and seeking to rent a place to live. I understand that finding a rental will be more difficult and more expensive with damaged credit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March _16_, 2011.

Charlotte James
Charlotte James

DECLARATION OF CHARLOTTE JAMES – 2

# EXHIBIT A

**Section 2c: Home Affordable Modification Trial Period Plan Customer Copy**

**Bank of America** 🏦 Home Loans

Investor Loan # 8351

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Customer Copy)

Trial Period Plan Effective Date: March 1, 2010
Borrower ("I")[1]: CHARLOTTE E JAMES
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): April 27, 2005
Loan Number: 3285
Property Address ("Property"): 118 ENOLA DRIVE, SHELBY, NC 28150

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer and agree:

    A   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B   I live in the Property as my principal residence, and the Property has not been condemned;

    C   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D   I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

**Section 2c: Home Affordable Modification Trial Period Plan**
**Customer Copy**

Bank of America  Home Loans

   E  Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F  If Servicer requires me to obtain credit counseling, I will do so.

2.  **The Trial Period Plan.**  On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $968.75.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $968.75 | March 01, 2010 |
| 2 | $968.75 | April 01, 2010 |
| 3 | $968.75 | May 01, 2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

   A  TIME IS OF THE ESSENCE under this Plan;

   B  Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

   C  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

   D  The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

   E  When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/C9

**Section 2c: Home Affordable Modification Trial Period Plan Customer Copy**

Bank of America 🏠 Home Loans

F   If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G   I understand the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3. **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

   A   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

   B   To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

   C   That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

   D   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.



8245 10/09

# TAB 22

1  HONORABLE RYA W. ZOBEL

2

3

4

5

6

7  UNITED STATES DISTRICT COURT,
   DISTRICT OF MASSACHUSETTS
8

9  IN RE BANK OF AMERICA HOME
   AFFORDABLE MODIFICATION PROGRAM
10 (HAMP) CONTRACT LITIGATION          No. 1:10-md-2193 RWZ

11

12

13

14          DECLARATION OF MICHAEL B. KELLY

15 I, Michael B. Kelly, declare as follows:

16 1.      I have been the owner of a home located at 229 N. Route 59, Barrington, IL  60010
   since 2002.
17

18 2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

19 3.      Starting in 2009, I began to experience financial hardship and became worried that I
   would fall behind on my mortgage payments.

20 4.      In April, 2010, I applied for a HAMP loan modification and provided documents to
   BAC Home Loans Servicing, LP verifying my financial circumstances.
21

22 5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial
   Period Plan (TPP) Agreement. The TPP Agreement contemplated a [three or four] month trial
   period beginning on May 1, 2010 and ending on July 1, 2010.
23

24 6.      I accepted BAC Home Loans Servicing, LP's offer on May 1, 2010. I did this by
   returning the signed TPP Agreement to BAC Home Loans Servicing, LP. A true and correct
   copy of the TPP that I sent is attached as Exhibit A.
25

26 7.      I made each of the payments called for in the TPP Agreement in full and on time. BAC
   Home Loans Servicing, LP accepted each of my payments.


DECLARATION OF MICHAEL B. KELY – 1

010176-16 427064 V1

8.      My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.      I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.      It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.      Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.      I made three additional payments beyond the end of the trial period because I continued to believe that I should be given a permanent HAMP modification.

13.      On December 31, 2010, I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification. The notification was in the form of a Notice of Intent to Accelerate.

14.      Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home.

15.      I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised.  I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

16.      I am currently facing the prospect of losing my home and seeking to rent a place for my family to live.  I understand that finding a rental will be more difficult and more expensive with damaged credit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February _25_, 2011.

Michael B. Kelly

DECLARATION OF MICHAEL B. KELY – 2

# EXHIBIT A

**Bank of America** 🡒 Home Loans

# Home Affordable Modification Trial Period Package
## For Bank of America and Countrywide Originated Home Loans

**Thank you for your interest in the Home Affordable Modification Program.** In order for us to continue evaluating your request to participate in the initial three-month trial period, please complete the forms in this packet and mail them back to us with the required documentation in the enclosed envelope. In addition, we strongly recommend making a copy of all materials you include in your return package for your personal files.

**Section 1**   **Checklist of Documents to Send to Us**

**Section 2**   **Home Affordable Modification Trial Period Plan**

    a) Mortgage Servicer Copy 1

    b) Mortgage Servicer Copy 2

    c) Customer Copy

**Section 3**   **Request for Modification and Affidavit (RMA)**

**Section 4**   **Tax Information Form — IRS Form 4506-T**

**Section 5**   **Other information:**

    a) Important Program Information

    b) Frequently Asked Questions

RETURN DOCUMENTS BY 05/01/2010 TO:

BAC HOME LOANS SERVICING, LP
390 INTERLOCKEN CRESCENT, SUITE 310
BROOMFIELD, CO 80021
1.877.767.0669

**Section 2c: Home Affordable Modification Trial Period Plan Customer Copy**

Bank of America 🖅 Home Loans

   E   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F   If Servicer requires me to obtain credit counseling, I will do so.

2.  **The Trial Period Plan.**  On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,674.30.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,674.30 | May 01, 2010 |
| 2 | $1,674.30 | June 01, 2010 |
| 3 | $1,674.30 | July 01, 2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

   A   TIME IS OF THE ESSENCE under this Plan;

   B   Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

   C   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

   D   The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

   E   When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

**Section 2e: Home Affordable Modification Trial Period Plan Customer Copy**

Bank of America ≫ Home Loans

F   If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G   I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.   **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.   **Additional Agreements.** I agree to the following:

A   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B   To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C   That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.



8245 10/09

**Section 2c: Home Affordable Modification Trial Period Plan Customer Copy**

Bank of America 🌿 Home Loans

In Witness Whereof, the Servicer and I have executed this Plan.

Dated: 4-/2r/10

Michael B Kelly

Dated: 4/21/10

Jill H Kelly

BAC Home Loans Servicing, LP

By: _____

_____
Date

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

# TAB 23

1

HONORABLE RYA W. ZOBEL

2

3

4

5

6

7

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

8

9 | IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
10 | (HAMP) CONTRACT LITIGATION

No.  1:10-md-2193 RWZ

11

12

13

DECLARATION OF RENATE KLINE

14

15 | I, Renate Kline, declare as follows:

16 | 1.      I have been the owner of a home located at 250 Shortleaf Lane, Harvest, AL  35749
since June 23, 2006.

17

2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

18

3.      Starting in May, 2009, I began to experience financial hardship and became worried
19 | that I would fall behind on my mortgage payments.

20 | 4.      In May, 2009, I applied for a HAMP loan modification and provided documents to
BAC Home Loans Servicing, LP verifying my financial circumstances.

21

5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial
22 | Period Plan (TPP) Agreement.  The TPP Agreement contemplated a three month trial period
beginning on December 1, 2009 and ending on February 1, 2010.

23

6.      I accepted BAC Home Loans Servicing, LP's offer on November 19, 2009.  I did this
24 | by returning the signed TPP Agreement to BAC Home Loans Servicing, LP.  A true and correct
copy of the TPP that I sent is attached as Exhibit A.

25

7.      I made each of the payments called for in the TPP Agreement in full and on time.  BAC
26 | Home Loans Servicing, LP accepted each of my payments.

DECLARATION OF RENATE KLINE – 1

010176-16  429647 V1

8.      My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.      I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.     It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.     I made four additional payments beyond the end of the trial period because I continued to believe that I should be given a permanent HAMP modification.

13.     On November 5, 2010, I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification. They gave me notice by sending me a Notice of Intent to Accelerate.

14.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home. The sale date is set for May 4, 2011.

15.     I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised. I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

16.     I am currently facing the prospect of losing my home and seeking to rent a place for my family to live. I understand that finding a rental will be more difficult and more expensive with damaged credit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3 ~ 12, 2011.

*Renate Kline*
Renate Kline

# EXHIBIT A

 Section 2c Home Affordable Modification Trial Period Plan
Step 2 - Customer Copy

Bank of America ⟫ Home Loans

Investor Loan # ████9966

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN Part 1
## (Customer Copy)

Trial Period Plan Effective Date: 12/1/2009
Borrower ("I")': RENATE KLINE
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/23/2006
Loan Number: ████3640
Property Address ("Property"): 250 Shortleaf Ln, Harvest, AL  35749

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to
be true in all material respects, then the Servicer will provide me with a Home Affordable Modification
Agreement ("Modification Agreement"); as set forth in Section 3, that would amend and supplement (1) the
Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as
they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in
this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment
and documents to permit verification of all of my income (except that I understand that I am not required to
disclose any child support or alimony unless I wish to have such income considered) to determine whether I
qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of
this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will
send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I
and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1.     My Representations.  I certify, represent to Servicer and agree:
       A.     I am unable to afford my mortgage payments for the reasons indicated in my Hardship
              Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan
              Documents in the near future, and (ii) I do not have sufficient income or access to sufficient
              liquid assets to make the monthly mortgage payments now or in the near future;
       B.     I live in the Property as my principal residence, and the Property has not been condemned;
       C.     There has been no change in the ownership of the Property since I signed the Loan
              Documents;
       D.     I am providing or already have provided documentation for all income that I receive (and I
              understand that I am not required to disclose any child support or alimony that I receive,
              unless I wish to have such income considered to qualify for the Offer);



¹ If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this
document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
            Form 3156   3/09 (rev. 8/09) (page 1 of 3 pages)

 WRK-DC-001

**Section 2: Home Affordable Modification Trial Period Plan**
**Step 1—Customer Copy**

Bank of America  Home Loans

E.   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.   If Servicer requires me to obtain credit counseling, I will do so.

2.   **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $558.78.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $558.78 | 12/1/2009 |
| 2 | $558.78 | 1/1/2010 |
| 3 | $558.78 | 2/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Plan;

B.   Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.   The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.   When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.   If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 2 of 3 pages)

Section 2c: Home Affordable Modification Trial Period Plan
Step 1—Customer Copy

Bank of America ⟩⟩⟩ Home Loans

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.  **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.  That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"), I agree to abide by all terms and provisions of this Trial Period Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $558.78 (the same amount of the other Trial Period Payments) no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.

_____          _Renate Kline_____
BAC Home Loans Servicing, LP                       RENATE KLINE
                                                   ___11-19-09_____
                                                   Date

By: _____

_____
Date

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                        Form 3156   3/09 (rev. 8/09) (page 3 of 3 pages)

# TAB 24

HONORABLE RYA W. ZOBEL

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
(HAMP) CONTRACT LITIGATION

No. 1:10-md-2193 RWZ

## DECLARATION OF CHERYL MARTIN

I, Cheryl Martin, declare as follows:

1.     I have been the owner of a home located at 303 Birch Street, Brookings, OR  97415 since 2007.

2.     My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

3.     Starting in February, 2009, I began to experience financial hardship and became worried that I would fall behind on my mortgage payments.

4.     In August, 2009, I applied for a HAMP loan modification and provided documents to BAC Home Loans Servicing, LP verifying my financial circumstances.

5.     In response to this application, BAC Home Loans Servicing, LP offered me a Trial Period Plan (TPP) Agreement. The TPP Agreement contemplated a three month trial period beginning on September 1, 2009 and ending on November 1, 2009.

6.     I accepted BAC Home Loans Servicing, LP's offer on August 18, 2009.  I did this by returning the signed TPP Agreement to BAC Home Loans Servicing, LP.  A true and correct copy of the TPP that I sent is attached as Exhibit A.

7.     I made each of the payments called for in the TPP Agreement in full and on time.  BAC Home Loans Servicing, LP accepted each of my payments.

DECLARATION OF  CHERYL MARTIN– 1

010176-16 427410 V1

8.      My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.      I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.     It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.     I made three additional payments beyond the end of the trial period because I continued to believe that I should be given a permanent HAMP modification.

13.     On May 10, 2010, I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification. The notification was in the form of a Notice of Intent to Accelerate.

14.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home. On July 27, 2010 I received a Trustee's Notice of Sale.

15.     I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised. I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

16.     I am currently facing the prospect of losing my home and seeking to rent a place to live. I understand that finding a rental will be more difficult and more expensive with damaged credit.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February _26_, 2011.

_Cheryl Martin_
Cheryl Martin

DECLARATION OF CHERYL MARTIN- 2

010176-16 427410 V1

# EXHIBIT A

Investor Loan # ▉▉▉ 2236

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: September 1, 2009
Borrower ("I")[1]: CHERYL  MARTIN
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): July 16, 2007
Loan Number: ▉▉▉ 3631
Property Address ("Property"): 303 BIRCH STREET , BROOKINGS, OR 97415

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer and agree:

    A   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B   I live in the Property as my principal residence, and the Property has not been  condemned;

    C   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D   I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

    E   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    F   If Servicer requires me to obtain credit counseling, I will do so.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09
Page 1 of 3



2.     **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,533.26.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1533.26 | September 01, 2009 |
| 2 | $1533.26 | October 01, 2009 |
| 3 | $1533.26 | November 01, 2009 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A    TIME IS OF THE ESSENCE under this Plan;

B    Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C    If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale.  If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D    The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full.  If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E    When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F    If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G    I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.     **The Modification.**  I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09
Page 2 of 3



Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.   **Additional Agreements.**  I agree to the following:

A    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B    To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C    That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D    That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E    Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the 'Additional Trial Period'). I agree to abide by all terms and provisions of this Loan Workout Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $1,533.26 no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.



BAC Home Loans Servicing, LP                         CHERYL MARTIN
                                                     8-18-2009
                                                     Date

By: _____

_____                         _____
Date                                                 Date

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09
Page 3 of 3

# TAB 25

HONORABLE RYA W. ZOBEL

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
(HAMP) CONTRACT LITIGATION

No. 1:10-md-2193 RWZ

## DECLARATION OF ANDREA MARTINEZ

I, Andrea Martinez, declare as follows:

1.  My husband, Angel Martinez and I have owned a home located at 621 West 8th Street, Holtville, CA, since 1995. It has been our primary residence since then.

2.  My mortgage loan is currently being serviced by Bank of America Home Loans Servicing, LP.

3.  In 2008, we fell behind on our mortgage payments. In late 2007, our son Nathaniel was diagnosed with brain cancer. He died in early 2008. My husband was out of work from October 2007 to April 2008. My husband had to take another leave of absence in January 2009 because my son Angel was diagnosed with Hodgkin's disease. He died as well. I recently found out that I have leukemia.

4.  In March, 2010 my husband and I applied for a HAMP loan modification, providing documents to Bank of America Home Loans Servicing, LP verifying our financial circumstances.

5.  In response to this application, Bank of America Home Loans Servicing, LP. offered us a Trial Period Plan (TPP) Agreement. The TPP Agreement contemplated a three month trial period beginning on May 1, 2010 and ending on June 1, 2010.

6.  We accepted Bank of America's offer on by returning the signed TPP Agreement before the due date of May 1, 2010. A true and correct copy of a letter instructing me to make the trial period payments is attached as Exhibit A.

DECLARATION OF ANDREA MARTINEZ– 1

010176-16 436920 V1

1015 EIGHTH AVENUE, SUITE 3300 · SEATTLE, WA 98101
(206) 623-7292 · FAX (206) 623-0594

7.   We made each of the payments called for in the TPP Agreement.

8.   The certifications contained in the TPP Agreement were and continue to be accurate, including our certification that we have provided truthful and accurate information to Bank of America throughout this entire process.

9.   We have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.   It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by Bank of America at the end of the trial period.

11.   Despite our fully complying with the terms of the TPP Agreement, Bank of America did not offer us a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.   On October 22, 2010, Bank of America notified us that we were not going to receive a permanent loan modification. Subsequently, Bank of America started foreclosure proceedings against our home. We've received notices of default and notice of intent to sell our home.

13.   We receive repeated and harassing telephone calls from Bank of America representatives demanding repayment of the mortgage. I have repeatedly informed them that we were in a HAMP trial plan and that we have been waiting for a permanent loan modification. I have also informed them of the details behind our financial difficulties. Bank of America has just kept calling.

14.   I have been informed that our account has been assessed fees and charges that are more than we would have been charged if we had been given a permanent modification complying with HAMP rules as promised.

15.   My husband and I are currently facing the prospect of losing our home and seeking to rent a place to live while I seek medical care.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2011.

Andrea Martinez

DECLARATION OF ANDREA MARTINEZ– 2

010176-16 436920 V1

# EXHIBIT A



**Your Loan Modification Trial Period Plan Is Here! Return the Enclosed Package by 05/01/2010.**

ANGEL MARTINEZ
621 WEST 8TH STREET
HOLTVILLE, CA 92250

Bank of America  Home Loans

Loan Number: ████4027                                                April 13, 2010

Dear ANGEL MARTINEZ:

We recently sent you a letter with instructions on how to start making your new trial period mortgage payment of $930.00 as part of the three-month trial period under the federal government's Home Affordable Modification Program. If you haven't already done so, it is important that you take the first step by making your first month's trial period mortgage payment as soon as possible. **Making this payment allows you to begin the trial period while you gather the requested documentation.**

**Remember, there are no fees associated with this program.** If for some reason you are not eligible for the Home Affordable Modification Program once you've started the trial period, we will contact you and review other options. **Once you've made your first trial period mortgage payment, the next step is for you to return the requested documents and enclosed forms** in order to finalize the three-month trial modification period and qualify for the permanent modification of your loan.

For your convenience, a detailed **Return Package Checklist** is enclosed. We have also enclosed an envelope to assist you in returning the requested documents by 05/01/2010. Call us today at 1.877.767.0669 if you have questions about this package. If you would like to make your first month's trial period mortgage payment call 1.800.669.6650.

Sincerely,

Loan Modification Team
Bank of America Home Loans Servicing, LP

*P.S. Please complete the enclosed documents and return them with the required financial information by 05/01/2010. Again, if you have not made your first payment, please call 1.800.669.6650.*



**HELPING YOU STAY IN YOUR HOME.**



MAKING
HOME
AFFORDABLE

Mortgages funded and administered by an ☖ Equal Housing Lender.
♻ Protect your personal information before recycling this document.

**TAB 26**

HONORABLE RYA W. ZOBEL

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

8

9 IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
10 (HAMP) CONTRACT LITIGATION          No. 1:10-md-2193 RWZ

11

12

13                         DECLARATION OF TERRY MASON

14 I, Terry Mason, declare as follows:

15 1.        I have been the owner of a home located at 2024 Bedford Street, Santa Rosa, CA
   95404, since 1995.
16

17 2.        My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

18 3.        Starting in [date], I began to experience financial hardship and ultimately fell behind on
   my mortgage payments.

19 4.        On December 14, 2009, I applied for a HAMP loan modification and provided
   documents to BAC Home Loans Servicing, LP verifying my financial circumstances.
20

21 5.        In response to this application, BAC Home Loans Servicing, LP offered me a Trial
   Period Plan (TPP) Agreement.  The TPP Agreement contemplated a [three or four] month trial
22 period beginning on March 1, 2010 and ending on May 1, 2010.

23 6.        I accepted BAC Home Loans Servicing, LP's offer by returning the signed TPP
   Agreement to BAC Home Loans Servicing, LP before the due date of March 1, 2010. A true and
24 correct copy of the TPP that I sent is attached as Exhibit A.

25 7.        I made each of the payments called for in the TPP Agreement in full and on time.  BAC
   Home Loans Servicing, LP accepted each of my payments.

26 8.        My certifications contained in the TPP Agreement were, and continue to be, true and

DECLARATION OF TERRY MASON – 1

010176-16 426955 V1

1   accurate, including my certification that I have provided truthful and accurate information to
    BAC Home Loans Servicing, LP throughout this entire process.

2   9.      I have provided BAC Home Loans Servicing, LP with all of the documents and
    information it requested and have, in fact, sent the same documents on multiple occasions in
3   response to demands from BAC.

4   10.     It was my understanding that if I complied with the TPP Agreement, I would be
    offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the
5   trial period.

6   11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans
    Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period,
7   nor did they give me any answer within this time frame.

8   12.     I made two additional payments beyond the end of the trial period because I continued
    to believe that I should be given a permanent HAMP modification.
9
10  13.     On September 15, 2010 I was notified by BAC Home Loans Servicing, LP that I was
    not going to receive a HAMP permanent modification. The notice I received was in the form of a
11  Notice of Intent to Accelerate.

12  14.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized
    foreclosure proceedings to begin against my home.

13  15.     I have been informed that my account has been assessed fees and charges that are more
    than I would have been charged if I had been given a permanent modification complying with
14  HAMP rules as promised. I also believe that my credit score has been adversely affected
    because of negative reporting BAC Home Loans Servicing, LP's has made.
15
16  16.     I am currently facing the prospect of losing my home and seeking to rent a place [for my
    family] to live. I understand that finding a rental will be more difficult and more expensive with
17  damaged credit.

18      I declare under penalty of perjury that the foregoing is true and correct.

19  Executed on February 23ᵗʰ, 2011.

20

21                                          Terry A. Mason

22

23

24

25

26

DECLARATION OF TERRY MASON – 2

010176-16 426955 V1

# EXHIBIT A

**Section 2b: Home Affordable Modification Trial Period Plan Mortgage Servicer Copy 2**

**Bank of America** 🏠 Home Loans

Investor Loan # 0092

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Mortgage Servicer Copy 2)

Trial Period Plan Effective Date: March 1, 2010
Borrower ("I")[1]: TERRY A MASON
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): July 13, 2007
Loan Number: 8588
Property Address ("Property"): 2024 Bedford St, Santa Rosa, CA 95404

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1.  **My Representations**. I certify, represent to Servicer and agree:

    A   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B   I live in the Property as my principal residence, and the Property has not been condemned;

    C   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D   I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



3244 10/09

**Section 2b: Home Affordable Modification Trial Period Plan Mortgage Servicer Copy 2**

Bank of America 🏠 Home Loans

   E   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F   If Servicer requires me to obtain credit counseling, I will do so.

2.  **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,798.00.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,798.00 | March 01, 2010 |
| 2 | $1,798.00 | April 01, 2010 |
| 3 | $1,798.00 | May 01, 2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

   A   TIME IS OF THE ESSENCE under this Plan;

   B   Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

   C   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

   D   The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

   E   When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



**Section 2b: Home Affordable Modification Trial Period Plan
Mortgage Servicer Copy 2**                                    Bank of America 🦅 Home Loans

    F    If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

    G    I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.    **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.    **Additional Agreements.** I agree to the following:

    A    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

    B    To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

    C    That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

    D    That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



**Section 2c: Home Affordable Modification Trial Period Plan Customer Copy**

Bank of America 〰 Home Loans

In Witness Whereof, the Servicer and I have executed this Plan.

_____   Dated:_____

Terry A Mason

_____

BAC Home Loans Servicing, LP

By: _____

_____

Date

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

**TAB 27**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | **MDL NO. 2193** <br><br> **Centralized before the Honorable Rya W. Zobel** |
| **This Document Relates To:** <br><br> **Fraser v. Bank of America, NA, et al.** <br> **Case No. 11-10169** | |

I, Lalainya Peeples, declare as follows:

1.      I have been the owner of a home located at 6203 Arthur Avenue, Saint Louis, Missouri 63139, since 1998.

2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

3.      Starting in 2006, I began to experience financial hardship and I ultimately fell behind on my mortgage payments.

4.      In May, 2009, I applied for a HAMP loan modification, providing documents to BAC Home Loans Servicing, LP verifying my financial circumstances.

5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial Period Plan (TPP) Agreement. The TPP Agreement contemplated a three month trial period beginning on February 1, 2010 and ending on April 1, 2010.

6.      I accepted BAC Home Loans Servicing, LP's offer of a Trial Period Plan Agreement on January 6th, 2010. I did this by returning the signed TPP Agreement to BAC Home Loans Servicing, LP.

7. I made each of the payments called for in the TPP Agreement.

8. My certifications contained to BAC were and continue to be accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9. On each and every occasion where BAC Home Loans Servicing, LP has notified me of the need to submit additional documentation, I have done so.

10. After my trial period ended, BAC Home Loans Servicing, LP did offer me a HAMP permanent modification on April 16, 2010. A true and correct copy of the HAMP permanent modification is attached as Exhibit A.

11. I accepted the permanent HAMP modification offer and made my modified monthly mortgage payments of $668.29 in May, June, July and August of 2010 under the permanent modification schedule.

12. Nevertheless, on August 31, 2010, BAC Home Loans Servicing, LP sent a Notice of Intent to Accelerate saying that my loan is in serious default because the required payments have not been made.

14. In contradiction with the terms of my permanent HAMP modification, the Notice of Intent lists the monthly charges for July 2010 as $1,517.54 and late charges of $55.28, less a partial payment of $478.41, with a total amount due of $1,094.41. Since this time I have received additional notices of intent to accelerate my loan.

15. I am currently living in a state of stressful anxiety, not knowing if and when I will lose my home.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 7, 2011.

Lalainya L. Peeples

2

# EXHIBIT A

BAC Home Loans Servicing, LP
Attn: Home Retention Division
4500 Amon Carter Blvd
Fort Worth, TX 76155

**Bank of America** • Home Loans

Property Address:
LALAINYA L PEEPLES
6203 ARTHUR AVE
SAINT LOUIS, MO 63139

Notice Date: 4/16/2010
Loan No.: ____0727
Please Return the Enclosed Documents By: 4/26/2010

**Loan Modification**
**CLARITY COMMITMENT ™**

Thank you for working with BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., on your current mortgage needs and for making your trial period mortgage payments. This summary is intended to be a clear and simple description of the final loan modification that we are pleased to offer you. Once you sign and return the enclosed Home Affordable Modification Agreement, you will have agreed to the new permanent loan modification. Please thoroughly review all the materials in the enclosed package to ensure you understand the details of this new agreement.

---

**Summary of Your Modified Loan**

Your new loan balance is $133,957.86. Past due interest, servicing expenses paid to third parties and escrow advances of $11,769.27 have been added to your principal balance to calculate this new loan balance. Unpaid late fees are not included in this amount and will be waived when your loan modification is finalized.

Your new interest rate that will be in effect for the first 5 years of your modified loan is 2.000%. This rate will annually increase by one percent a year thereafter until it reaches 5.000%. To further lower your monthly payment, we have extended the length of your loan to 33 years. Your new final payment date and your new maturity date is 4/01/2043.

Each month you make on-time payments, you may be eligible for incentive payments under the Home Affordable Modification Program to be applied to your principal balance on the 1st-5th anniversaries of the Trial Period Plan Effective Date, provided your loan does not become 90 days delinquent at any time.

---

**Your New Mortgage Payments**

Your new total modified monthly mortgage payments of $668.29 are made up of principal and interest of $462.37, and an initial escrow amount of $205.92. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify you of any adjustments to the total monthly payment. Your total monthly payments will be due on the 1st of the month starting May 1, 2010.

Your interest rate will adjust to slowly bring your rate to 5% and your total monthly payments to $857.76, as shown in the schedule below. The amount of these payments will change if your escrow payment amount changes.

- Years 1-5, beginning 5/01/2010 the interest rate will be 2.000% with a total monthly payment of $668.29
- Years 6, beginning 5/01/2015, the interest rate will be 3.000% with a total monthly payment of $729.32
- Years 7, beginning 5/01/2016, the interest rate will be 4.000% with a total monthly payment of $792.62
- Years 8-33, beginning 5/01/2017, the interest rate will be 5.000% with a total monthly payment of $857.76

If you have questions regarding the Modification Agreement or the steps you must take to complete this process, please contact us at 1.877.422.1701 to speak with one of our home retention associates.

CMO 273

Section 2 - Home Affordable Modification Agreement (Customer Copy)

Bank of America Home Loans

Investor Loan # [redacted]0477

**After Recording Return To:**
Home Retention Group
9700 Bissonnet Street
Suite 1500
Houston, TX 77036

This document was prepared by Home Retention Services

**[Space Above This Line For Recording Data]**

## HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")[1]: LALAINYA L PEEPLES
Lender or Servicer ("Lender"): BAC Home Loans Servicing, LP
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): October 4, 2005
Loan Number: [redacted]0727
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 6203 ARTHUR AVE
SAINT LOUIS, MO 63139

MERS: [redacted]69003
*"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:
   - A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   - B. I live in the Property as my principal residence, and the Property has not been condemned;
   - C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   - D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Home Affordable Modification program ("Program"));

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on May 1, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on May 1, 2010.

A.   The new Maturity Date will be: April 1, 2043.

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $133,957.86 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of April 1, 2010 and the first new monthly payment on the New Principal Balance will be due on May 1, 2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | April 1, 2010 | $492.37 | $205.92, may adjust periodically | $668.29, may adjust periodically | May 1, 2010 | 60 |
| 6 | 3.000% | April 1, 2015 | $523.40 | May adjust periodically | May adjust periodically | May 1, 2015 | 12 |
| 7 | 4.000% | April 1, 2016 | $586.70 | May adjust periodically | May adjust periodically | May 1, 2016 | 12 |
| 8-33 | 5.000% | April 1, 2017 | $651.84 | May adjust periodically | May adjust periodically | May 1, 2017 | 312 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3157  3/09 (page 4 of 6 pages)

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 -2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3157   3/09 (rev. 5/09) (page 6 of 8 pages)

The Lender and I have executed this Agreement.

Mortgage Electronic Registration Systems, Inc. -
Nominee for BAC Home Loans Servicing, LP

LALAINYA L PEEPLES

_____
Date

By: _____

_____
Date

..............[Space Below This Line For Acknowledgement]..............

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3157  3/09  (rev. 5 of 8 pages)



**Bank of America** Home Loans

Section 2: Home Affordable Modification Trial Period Plan
Step 1 – Customer Copy

Investor Loan # ████477

## HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN Part 1
### (Customer Copy)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I"): LALAINYA PEEPLES
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 10/04/2005
Loan Number: ████0727
Property Address ("Property"): 6203 ARTHUR AVE, SAINT LOUIS, MO 63139

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1.   My Representations.  I certify, represent to Servicer and agree:

     A.   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

     B.   I live in the Property as my principal residence, and the Property has not been condemned;

     C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

     D.   I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 3/09) (page 1 of 3 pages)

▉█▉ ▉▉▉ ▉▉▉ ▉▉▉ ▉▉▉▉▉ ▉▉▉▉▉▉▉▉       ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



E.  Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.  If Servicer requires me to obtain credit counseling, I will do so.

2.  **The Trial Period Plan**. On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $717.34.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $717.34 | 2/1/2010 |
| 2 | $717.34 | 3/1/2010 |
| 3 | $717.34 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Plan;

B.  Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.  The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.  When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.  If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 6/09) (page 2 of 3 pages)



G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3. **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C. That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Trial Period Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $717.34 (the same amount of the other Trial Period Payments) no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.

| | |
|---|---|
| BAC Home Loans Servicing, LP | LALAINYA PEEPLES |
| | _____ |
| | Date |
| By: _____ | |
| | |
| Date _____ | |

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
form 3156   3/09 (rev. 3/09) (page 3 of 3 pages)

**TAB 28**

1

HONORABLE RYA W. ZOBEL

2

3

4

5

6

7       UNITED STATES DISTRICT COURT,
        DISTRICT OF MASSACHUSETTS

8

9    IN RE BANK OF AMERICA HOME
     AFFORDABLE MODIFICATION PROGRAM
10   (HAMP) CONTRACT LITIGATION              No. 1:10-md-2193 RWZ

11

12

13                DECLARATION OF ANGELA PIOLI

14

15   I, Angela Pioli, declare as follows:

16   1.      I have been the owner of a home located at 9502 4th Ave. W., #3, Everett, Washington
     since 2004.

17

18   2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

19   3.      Starting in May, 2009, I began to experience financial hardship and became worried
     that I would fall behind on my mortgage payments.

20   4.      In June 2009, I applied for a HAMP loan modification and provided documents to BAC
     Home Loans Servicing, LP verifying my financial circumstances.

21

22   5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial
     Period Plan (TPP) Agreement. The TPP Agreement contemplated a three month trial period
     beginning on August 2, 2009 and ending on October 1, 2009.

23

24   6.      I accepted BAC Home Loans Servicing, LP's offer on by returning the signed TPP
     Agreement to BAC Home Loans Servicing, LP before the due date of August 2, 2009. A true
     and correct copy of the letter telling how to make the TPP payments is attached as Exhibit A.

25

26   7.      I made each of the payments called for in the TPP Agreement in full and on time. BAC
     Home Loans Servicing, LP accepted each of my payments.

DECLARATION OF ANGELA PIOLI-- 1

010176-16 436824 V1

8.     My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.     I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.     It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.     I made nine additional payments beyond the end of the trial period because I continued to believe that I should be given a permanent HAMP modification.

13.     In July, 2010 I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification.

14.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home.

15.     I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised. I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

16.     I am currently facing the prospect of losing my home and seeking to rent a place for my family to live. I understand that finding a rental will be more difficult and more expensive with damaged credit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March _3/5t_, 2011.

_____
Angela Pioli

DECLARATION OF ANGELA PIOLI– 2

010176-16 436824 V1

# EXHIBIT A

 

**Home Loans**

The monthly trial period payments are based on the income information that you previously provided to us. Based on that information, we determined the estimate of what your new mortgage payment will be if we are able to modify your loan under the terms of the program. If your income documentation does not support the income amount that you previously provided in our discussions, two scenarios can occur:

1) Your monthly payment under the Trial Period Plan may change
2) You may not qualify for this loan modification program

If you do not qualify for a loan modification, we will work with you to explore other options available to try to help you keep your home.

 **MAIL IN YOUR NEW AFFORDABLE PAYMENT**

Mail in your new affordable mortgage payment by August 2, 2009.

Your new monthly trial period payment can be found on your Trial Period Plan. Please pay using your regular payment method. If you send your payment by mail, it must be mailed separately from the other documents to the following address:

> Payment Processing
> PO Box 650070
> Dallas, TX 75265

We want to help you by modifying your mortgage payment; however, you must take the first step by completing the enclosed documents and returning them by August 2, 2009. **Please call 1.877.221.0825** if you have any questions about the program. Remember, there are no fees for this program.

You may receive a phone call from one of our representatives to discuss this offer and answer your questions. However, there is no need to wait for our call. Please call us now or send back the completed documents.

Sincerely,

Jill Balentine
Senior Vice President
Home Retention Division
BAC Home Loans Servicing, LP

*Attachments: Important Notice, Complete Your Checklist, Important Program Info, Frequently Asked Questions, Two copies of the Trial Period Plan, Hardship Affidavit, IRS Form 4506-T*

**HELPING YOU STAY IN YOUR HOME.**



BAC Home Loans Servicing., LP is a subsidiary of Bank of America, N.A.

# TAB 29

HONORABLE RYA W. ZOBEL

UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

IN RE BANK OF AMERICA HOME
AFFORDABLE MODIFICATION PROGRAM
(HAMP) CONTRACT LITIGATION

No.  1:10-md-2193 RWZ

DECLARATION OF NAOMI RHODA

I, Naomi Rhoda, declare as follows:

1.      I have been the owner of a home located at 11509 34th St. N.E., Lake Stevens, WA 98258 since December, 2006.

2.      My mortgage loan is currently being serviced by BAC Home Loans Servicing, LP.

3.      Starting in July 2009, I began to experience financial hardship and became worried that I would fall behind on my mortgage payments.

4.      In July, 2009, I applied for a HAMP loan modification and provided documents to BAC Home Loans Servicing, LP verifying my financial circumstances.

5.      In response to this application, BAC Home Loans Servicing, LP offered me a Trial Period Plan (TPP) Agreement.  The TPP Agreement contemplated a three month trial period beginning on March 1, 2010 and ending on May 1, 2010.

6.      I accepted BAC Home Loans Servicing, LP's offer on February 16, 2010.  I did this by returning the signed TPP Agreement to BAC Home Loans Servicing, LP.  A true and correct copy of the TPP that I sent is attached as Exhibit A.

7.      I made each of the payments called for in the TPP Agreement in full and on time.  BAC Home Loans Servicing, LP accepted each of my payments.

DECLARATION OF NAOMI RHODA – 1

8.      My certifications contained in the TPP Agreement were, and continue to be, true and accurate, including my certification that I have provided truthful and accurate information to BAC Home Loans Servicing, LP throughout this entire process.

9.      I have provided BAC Home Loans Servicing, LP with all of the documents and information it requested and have, in fact, sent the same documents on multiple occasions in response to demands from BAC.

10.     It was my understanding that if I complied with the TPP Agreement, I would be offered a HAMP permanent modification by BAC Home Loans Servicing, LP at the end of the trial period.

11.     Despite my fully complying with the terms of the TPP Agreement, BAC Home Loans Servicing, LP did not offer me a HAMP permanent modification at the close of the trial period, nor did they give me any answer within this time frame.

12.     On July 20, 2010, I was notified by BAC Home Loans Servicing, LP that I was not going to receive a HAMP permanent modification.

13.     Subsequently, BAC Home Loans Servicing, LP accelerated my note and authorized foreclosure proceedings to begin against my home.

14.     I have been informed that my account has been assessed fees and charges that are more than I would have been charged if I had been given a permanent modification complying with HAMP rules as promised. I also believe that my credit score has been adversely affected because of negative reporting BAC Home Loans Servicing, LP's has made.

15.     I am currently facing the prospect of losing my home and seeking to rent a place for my family to live. I understand that finding a rental will be more difficult and more expensive with damaged credit.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on March _17_, 2011.


_Naomi Rhoda_
Naomi Rhoda


DECLARATION OF – 2

010176-16 431327 V1

# EXHIBIT A

**Section 2c:** Home Affordable Modification Trial Period Plan
Customer Copy

**Bank of America** 🇺🇸 Home Loans

Investor Loan # ████0663

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Customer Copy)

Trial Period Plan Effective Date: March 1, 2010
Borrower ("I")[1]: NAOMI D RHODA
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): December 14, 2006
Loan Number: ████4375
Property Address ("Property"): 11509 34TH ST NE, LAKE STEVENS, WA 98258

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer and agree:

    A   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B   I live in the Property as my principal residence, and the Property has not been condemned;

    C   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D   I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

**Section 2c:** Home Affordable Modification Trial Period Plan
Customer Copy

**Bank of America** 🇺🇸 Home Loans

    E   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    F   If Servicer requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,541.96.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,541.96 | March 01, 2010 |
| 2 | $1,541.96 | April 01, 2010 |
| 3 | $1,541.96 | May 01, 2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

    A   TIME IS OF THE ESSENCE under this Plan;

    B   Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

    C   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

    D   The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

    E   When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09

**Section 2c:** Home Affordable Modification Trial Period Plan
Customer Copy

**Bank of America** 🏃 Home Loans

F    If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G    I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.   **The Modification**. I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.   **Additional Agreements**. I agree to the following:

A    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B    To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C    That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D    That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.



**Section 2c**: Home Affordable Modification Trial Period Plan
Customer Copy

**Bank of America** ⟨logo⟩ Home Loans

In Witness Whereof, the Servicer and I have executed this Plan.

_Naomi D Rhoda_ Dated: 2/16/10
NAOMI D RHODA

_____
**BAC Home Loans Servicing, LP**

By: _____

_____
Date

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.
HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3156 3/09



8245 10/09