UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation | No. 1:10-md-02193 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>**

After nearly 14 months of litigation, Plaintiffs filed a Motion for Preliminary Injunction two days before the Court's hearing on Defendants' Motion to Dismiss, in a rather transparent attempt to influence the Court's decision on that Motion.  Apparently choosing this tactical strategy over any attempt to comply with the law, Plaintiffs ask the Court to grant an injunction preventing Defendants Bank of America, N.A. ("BANA") and BAC Home Loans Servicing LP (collectively "BAC") from foreclosing on the defaulted mortgage loans of named Plaintiffs Antoun and Sabah Moussa and Kimberley George, as well as 36 individuals, none of whom are parties to this consolidated action ("Non-Party Borrowers").  Of course, the Moussas and George are already the beneficiaries of a voluntary foreclosure hold provided to all named Plaintiffs, and it is unclear what additional relief they seek on their own behalf.  As to the Non-Party Borrowers, Plaintiffs lack standing to seek relief on their behalf, and none of them are in any imminent danger of foreclosure in any event.  The Motion should be denied.

Preliminarily, none of the 36 Non-Party Borrowers are parties to this action.  No class has been certified.  No class certification motion is even pending.  As such, the named Plaintiffs have no standing to seek relief on behalf of the Non-Party Borrowers.  The Court's inquiry can and should end there.  *Eulitt v. Maine Department of Education*, 386 F.3d 344, 351-52 (1st Cir. 2004); *Brown v. Trustees of Boston University*, 891 F.2d 337, 361 (1st Cir. 1989).

But even if the Court were to engage in the traditional preliminary injunction analysis, Plaintiffs have not met their burden of making a clear showing of their entitlement to the extraordinary equitable remedy they seek.  First, Plaintiffs fail to demonstrate an immediate threat of harm.  As Plaintiffs admit, BAC has voluntarily provided foreclosure stays to all of the named Plaintiffs, meaning no named Plaintiff faces any threat of immediate, irreparable harm.  Nor do any of the 36 Non-Party Borrowers face an immediate threat of harm.  Plaintiffs allege

that each Non-Party Borrower is a putative class member of their proposed TPP Classes in the

Consolidated Class Action Complaint ("CAC"), and that each is "in imminent danger of losing

their homes."  Mem. (Doc. No. 34) at 1.  Had Plaintiffs bothered to actually investigate the facts

before filing their Motion, they would have learned that none of the Non-Party Borrowers are in

any such danger.  Some have entered permanent modifications, others have outstanding offers

for permanent modifications, and still others have obtained voluntary foreclosure stays from

BAC or are in bankruptcy proceedings (which prevents BAC from initiating a foreclosure sale).

Half of the Non-Party Borrowers have not even been referred to foreclosure internally at BAC,

let alone have foreclosure proceedings begun against them.  Indeed, 32 of the 36 Non-Party

Borrowers did not even have a foreclosure sale scheduled, and all four scheduled sales have been

postponed.

Second, Plaintiffs have failed to prove a likelihood that they will succeed on the merits of

their claim.  Plaintiffs primarily argue that they are likely to succeed on their contract claim

because three courts have denied motions to dismiss raising arguments related to the

enforceability of HAMP Trial Period Plans ("TPPs").[1]  Of course, surviving a motion to dismiss

and proving a likelihood of success on the merits are two vastly different things.

Indeed, the position Plaintiffs advance evidences the fallacy of their argument rather than

evidencing a likelihood of success.  Plaintiffs' case centers on their claim that they *must be*

offered permanent loan modifications within three months of the TPP application if they made

three trial payments and provided certain documents, regardless of whether they actually

qualified for permanent loan modifications.  In other words, it is Plaintiffs' position that if they

were provided a TPP based on *unverified* income (as was the case with virtually all of the Non-

---

[1] The CAC also includes claims under the Servicer Participation Agreement ("SPA"), various state consumer protection acts, and the Equal Credit Opportunity Act ("ECOA"), but Plaintiffs do not base their Motion on those counts of the CAC.  Mem. at 7-8 n.6.

Party Borrowers) that proved to be inaccurate when verified (as was the case with *numerous* Non-Party Borrowers), BAC must nevertheless give each a permanent modification if it failed to approve or deny the application by the end of the three month TPP period. Mem. at 4 (BAC promises "to provide a permanent HAMP modification or a denial by the close of the Trial Period"). This alleged "promise" is found nowhere in the TPP itself, and bears no relation to the requirements of HAMP, or even the aspirational goals of HAMP. No borrower can receive a permanent HAMP modification unless they qualify for one, and most of the Non-Party Borrowers have been declined *because they did not qualify*. Plaintiffs have not demonstrated any likelihood of success on the merits, much less a substantial likelihood.

The remainder of the preliminary injunction factors do not support an injunction. Plaintiffs' unsupported arguments as to the balance of the equities and the public interest ignore that the injunction is drawn so broadly as to preclude foreclosures on borrowers who have simply stopped paying on their loans, who are not eligible for HAMP, who have not fulfilled obligations under their TPPs, or who do not face foreclosure at all. Equity cannot support such an injunction. The Court should deny the Motion in its entirety.

## **BACKGROUND**

Because HAMP's background has been explained in detail in BAC's Motion to Dismiss, BAC does not repeat that background here and incorporates the Memorandum in support of Defendants' Motion to Dismiss by reference. *See* Doc. No. 22. BAC does note, however, the following HAMP-related facts critical to understanding the claims and relief Plaintiffs seek:

- HAMP was designed to reduce defaulting borrowers' monthly mortgage payments to no more than 31% of monthly gross income. Borrowers whose ratio is already equal to or below 31% are not qualified. Proposed Modifications that do not pass the Net Present Value ("NPV") test (meaning losses from modifications are greater than those from foreclosure), or that require excessive forbearance are similarly not qualified. CAC, Ex. 2 (HAMP Supp. Dir. 09-01) at

3

2, 4-6; MHA Handbook v. 3.0 at 41, 71, 73, *at* https://www.hmpadmin.com/
portal/programs/docs/hamp_servicer/mhahandbook_30.pdf (last visited April 29,
2011).

- Prior to June 2010, HAMP allowed servicers to provide TPPs to borrowers based *only* on their representations of income *without* verification. Supp. Dr. 09-01 at 5 (CAC, Ex. 2). The idea was to get immediate relief to borrowers who appeared eligible, and then later determine whether the borrower qualified for a permanent modification when their income representations could be tested using verifiable data. *Id.* at 6. This HAMP guidance was changed effective June 1, 2010 because the lack of verified income at the start unsurprisingly resulted in a substantial numbers of borrowers being unqualified for HAMP once their income was verified. HAMP Supp. Directive 10-01 at 1-3, 4, *at* https://www.hmpadmin.com/portal/docs/hamp_ servicer/sd1001.pdf (last visited April 29, 2011). Almost every Non-Party Borrower entered an original TPP prior to the June 1 change. Costello Decl. Ex. 2; Declaration of Tawnya Schoolitz ("Schoolitz Decl.") ¶ 6.

The facts surrounding the Non-Party Borrowers are discussed in the accompanying Schoolitz Declaration and in the Argument section below where relevant. It is important to note, however, that BAC gives borrowers *multiple* opportunities to submit their HAMP-required documents and *multiple* opportunities to appeal HAMP denials and to be considered for alternative modifications. *See*, *e.g.*, Schoolitz Decl. ¶¶ 14, 16 – 25. The number of opportunities for loan modification provided to just the Non-Party Borrowers described in the Schoolitz Declaration makes this clear, and contradicts the picture Plaintiffs attempt to paint in their Motion papers of BAC as a callous servicer rushing borrowers into foreclosure. To be sure, BAC has not processed many HAMP applications as quickly as it would like, and it continues to work to improve that process. But the Treasury Department itself reports that the *primary* reason for unsuccessful HAMP conversions is that *borrowers do not provide all the necessary documents*. Declaration of James McGarry ("McGarry Decl."), Ex. A. Indeed, the delays in HAMP processing are in large measure a function of the program, rather than a failure of BAC, as evidenced by the fact that Plaintiffs' counsel has sued every major servicer in the country

making the same claims as here.  What the Schoolitz Declaration establishes is that BAC has spent months, and often years, with different borrowers trying to find affordable modifications for them.  The unfortunate reality is that some people just do not qualify.

## STANDARD

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong¸* 520 U.S. 968, 972 (1997).  It is a remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc*., 129 S.Ct. 365, 376 (2008).  A preliminary injunction should not be granted if any doubt exists or is created in the record regarding the merits of a plaintiff's claim. *Comfort ex rel. Neumyer v. Lynn School Comm.,* 100 F. Supp. 2d 57, 60 (D. Mass. 2000). "The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised." *Mass. Coalition of Citizens with Disabilities v. Civ. Def. Agency & Office of Emergency Preparedness,* 649 F.2d 71, 76 n. 7 (1st Cir. 1981); *Winter,* 129 S.Ct. at 381.

The party seeking a preliminary injunction has the burden to prove *each* of the factors required for injunctive relief:  (1) without the preliminary relief, the plaintiff is likely to suffer imminent and irreparable harm; (2) the plaintiff is likely to succeed on the merits of his or her claim; (3) the balance of equities tips in the plaintiff's favor, and (4) issuance of the requested injunction is in the public interest.  *Winter,* 129 S. Ct. at 374; *Air Line Pilots Ass'n, Intern. v. Guilford Transp. Industries, Inc.,* 399 F.3d 89, 95 (1st Cir. 2005).

Plaintiffs fail to meet their burden as to any one of the factors, let alone all of them.

## ARGUMENT

### I.    NO INJUNCTION MAY ISSUE TO THE 36 NON-PARTY BORROWERS.

Without any acknowledgement of the remarkable request they make, Plaintiffs blithely request that this Court issue an injunction on behalf of thirty-six individuals who are not parties to any of the consolidated cases.  There is no ground to do so.

Plaintiffs lack standing to seek relief on behalf of the Non-Party Borrowers.  A plaintiff seeking to assert a claim on behalf of a third party must demonstrate that the plaintiff "personally has suffered injury in fact that gives rise to a sufficiently concrete interest in the adjudication of the third party's rights; that the litigant has a close relationship to the third party; and that some hindrance exists that prevents the third party from protecting its own interests."  *Eulitt*, 386 F.3d 344 at 351.  Plaintiffs fail to meet any of these prudential limitations on standing.  Plaintiffs will suffer no injury if the Non-Party Borrowers face foreclosure,[2] Plaintiffs have no "close relationship" to the Non-Party Borrowers, and the Non-Party Borrowers can easily assert their own rights.  Indeed, Non-Party Borrower Michael B. Kelly has already done so, having filed a complaint against BAC in Lake County Illinois last month, addressing the identical issues presented here.  McGarry Decl., Ex. B.  As such, Plaintiffs lack standing to pursue this Motion. *Eulitt*, 386 F.3d at 351; *cf. Council of Insurance Agents & Brokers v. Juarbe-Jimenez*, 443, F.3d 103, 108 (1st Cir. 2006).

Of course, class representatives in a class action may seek certain relief on behalf of a *certified* class, and Plaintiffs allege that the Non-Party Borrowers are "class members."  But absent a certified class, the law is clear that injunctive relief must be limited to named plaintiffs. *Brown*, 891 F.2d at 361 (1st Cir. 1989).  In *Brown*, a gender discrimination case related to denial

---

[2] As Plaintiffs acknowledge in their brief, staying a foreclosure for one borrower does not affect any other borrower. Mem. at 6 (stay of foreclosure proceedings for named plaintiffs is of "no benefit to the other members of the putative class").

of tenure, the First Circuit vacated an injunction that ran to the benefit of faculty members other than the named plaintiff, reasoning that the broader relief sought was not appropriate without a certified class.  *Id.* at 340.  The Ninth Circuit ruled similarly in *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1985), in a case seeking injunctive relief for the plaintiffs and others impacted by an INS policy, because a federal court "*may not attempt to determine the rights of persons not before the court.*"  *Id.* (emphasis added).  The court held that in the absence of a properly certified class, no relief could be granted beyond that provided to the named plaintiffs.  *Id.* at 728 & n.1.[3]

The *Brown* and *Zepeda* reasoning is entirely consistent with both principles of the prudential limitations on standing, and the very nature of class actions:  "[O]ur legal system does not automatically grant individual plaintiffs standing to act on behalf of all citizens similarly situated.  A person who desires to be a self-chosen representative and volunteer champion, must qualify under rule 23."  *Zepeda*, 753 F.2d. at 729 n.1.  Here, the Moussas allege that their situation is "typical" of that of the Non-Party Borrowers, Mem. at 2, but the Moussas' bare statement does not render them representatives of the Non-Party Borrowers without satisfying the requirements of Rule 23.  *See Brissette v. Franklin County Sheriff's Office*, 235 F. Supp. 2d 63, 94 (D. Mass. 2003) (denying injunctive relief where no class certified because "injunctive relief running to the benefit of third parties (as plaintiffs have requested) would not be appropriate"); *Everhart v. Bowen*, 853 F.2d 1532, 1539 (10th Cir. 1988) (absent class certification, court "should have tailored its injunction to affect only those persons over [whom]

---

[3]  In addition, at least ten of the individuals are not members of any of the proposed classes.  Plaintiffs claim that the Non-Party Borrowers "are members of their respective putative statewide TPP classes."  Mem. at 1.  This is not true. Ten of the thirty-six Non-Party Borrowers reside in states that are not part of the proposed TPP classes.  *See* Costello Decl. Ex. 2 (listing addresses of Anders (KY), Cipowski (IL), Davis (MN), Dugree (MI), Gaffey (AK), James (NC), Kelly (IL), Peeples (MO), Sylman (OH), and Torrico (CO)).  The Motion should be denied as to these individuals on this basis alone.

it has power") (overruled on other grounds sub nom); *Baxter v. Palmigiano*, 425 U.S. 308, 312

n.1 (1976) (refusing to extend injunctive relief beyond named parties without class certification).

Plaintiffs' legal support for the extraordinary proposition that they can obtain relief on

behalf of others is limited to their citation in a footnote to *Coleman v. Block*, 562 F. Supp. 1353,

1356-63 (D.N.D. 1983).  But the *Coleman* court only ordered injunctive relief *after* certifying a

class pursuant to Rule 23, and only after a fully briefed and fully argued Rule 23 analysis.

Plaintiffs here cannot circumvent both their lack of standing and the strict mandates of Rule 23.

Indeed, Plaintiffs are very much aware that they need a class certified to obtain  an

injunction for the benefit of class members.  In the first filed of these consolidated cases,

*Johnson, et al. v. BAC Home Loans Servicing, L.P.*, No. 10-cv-10316-RWZ, Plaintiffs sought

similar injunctive relief on behalf of non-parties.  There, however, Plaintiffs coupled it with a

request for "provisional" class certification.  Although that request for provisional class

certification did not meet Rule 23's requirements, it serves as an acknowledgement by Plaintiffs

that they cannot request relief on behalf of individuals who are not before the Court.

Until such time as Plaintiffs file a motion under Rule 23 and satisfy the Rule's rigorous

standards, no injunctive relief may run to the Non-Party Borrowers, or any other putative class

member.  The Motion can and should be denied on this ground alone.

## II.   PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROVING THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

### A.   Plaintiffs Have Failed to Prove a Threat of Immediate, Irreparable Harm.

Plaintiffs may not obtain the injunction sought because they have failed to prove any

threat of immediate, irreparable harm, and anything less will not support a preliminary

injunction.  *See Matos v. Clinton Sch. Dist.,* 367 F.3d 68, 74 (1st Cir. 2004); *Rubacky v. Morgan

Stanley Dean Witter Credit Corp.,* No. 04-1173, 2004 WL 1636911, *1 (1st Cir. July 23, 2004).

As the Supreme Court recently admonished, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 129 S. Ct. at 375-76.  Here, none of the individuals on whose behalf an injunction is sought have shown a threat of immediate harm.

       **1.**      **Plaintiffs Concede that Named Plaintiffs, the Moussas and Kimberley George, Face No Threat of Imminent Foreclosure.**

Plaintiffs' Motion mentions only one set of named Plaintiffs, Antoun and Sabah Moussa. Although Plaintiffs claim that the Moussas are "typical" of the thirty-six Non-Party Borrowers, Mem. at 2, they concede that the Moussas are not in danger of immediate foreclosure because BAC has agreed to stay foreclosure proceedings for the named Plaintiffs.  Mem. at 4.  A second named Plaintiff, Kimberley George, is mentioned nowhere in the Motion, though she submitted a Declaration in support of Plaintiffs' motion and Plaintiffs characterize her as one of the 37 non-party "Movants."  Because Ms. George is a named Plaintiff, she is a beneficiary of the same foreclosure hold as the Moussas.  As such, neither the Moussas nor Ms. George face any imminent threat of foreclosure, and any requested injunction as to them must be denied.  *Sierra Club v. Larson,* 769 F. Supp. 420, 422 (D. Mass. 1991) (denying injunction; "[t]o establish irreparable harm there must be an actual, viable, presently existing threat of serious harm").

       **2.**      **The Thirty-Six Non-Party Borrowers Face No Imminent, Irreparable Injury.**

Plaintiffs also fail to demonstrate that the 36 Non-Party Borrowers face an immediate threat of harm.[4]  Several named Plaintiffs and at least one Non-Party Borrower, Ms. Dahlmer,

---

[4] Tellingly, Plaintiffs' counsel *refused* to identify any of the Non-Party Borrowers to BAC before filing their Motion, when defense counsel asked who they were in order to investigate the alleged imminent danger of foreclosure.  McGarry Decl. ¶ 2.  One would expect counsel to be interested in providing information to assist borrowers "in imminent danger of losing their homes" if such were actually the case.

have accepted permanent modifications and thus no longer face even the remote possibility of a foreclosure.  *See* Schoolitz Decl. ¶ 13.  Moreover, BAC voluntarily stays foreclosures for borrowers under review for various modification programs or other foreclosure alternatives.  Currently, six Non-Party Borrowers are under such stays.  Declaration of Lourdes Duarte ("Duarte Decl.") ¶ 8 (borrowers Anders, Coulter, Culliton, Kline, Pioli, and Rhoda).  Indeed, half of the Non-Party Borrowers have not even been referred to foreclosure internally at BAC.  Duarte Decl. ¶ 7.[5]

Indeed, only *four* of the 36 Non-Party Borrowers even had foreclosure sale dates scheduled when Plaintiffs filed their Motion, and BAC has voluntarily stayed those.  Duarte Decl. ¶¶ 9, 10 (Brown, Kline, Martin, and Stanley).  The absence of a scheduled foreclosure sale is fatal to a claim of imminent, irreparable injury, as courts routinely decline injunctions seeking to stay foreclosures that are not imminent.  *Rubacky,* 2004 WL 1636911 at *1 ("Although plaintiff's motion . . . sought to enjoin any future foreclosure sale, there is no evidence that any future sale has been or will be scheduled before the trial."); *see also Turner v. Lerner, Sampson & Rothfuss,* No. 1:11-cv-00056, 2011 WL 1357451, *4 (N.D. Ohio April 11, 2011) (threat of future foreclosure insufficient to show imminent or irreparable harm); *Bray v. Bank of America,* No. 1:09-cv-075, 2010 WL 749789, *1-2 (D.N.D. Mar. 2, 2010) (finding that threat of any irreparable harm was "slight" where attorney for defendants assured plaintiff that no immediate steps would be taken to dispossess him from his residence); *Peters v. Bank of America,* No. 10-cv-01382-MSK, 2010 WL 2682129, *2 (D. Colo. July 2, 2010) ("Without a showing that foreclosure proceedings have been commenced and that a foreclosure sale has been scheduled,

---

[5] At least two Non-Party Borrowers (Comia and Mason) have filed for bankruptcy, meaning both that any automatic stay precludes BAC from pursuing foreclosure, and that another federal judge is already exercising jurisdiction over the property at issue.  *See*, *In re Comia*, 2:10-bk63564-BB (Bankr. C.D. Cal.); *In re Mason*, 11-11269 (Bankr. N.D. Cal.).

the Plaintiff has not, and cannot show, an imminent injury sufficient to support preliminary injunctive relief."); *Cervantes v. Countrywide Home Loans, Inc*., No. CV 09-517PHX-JAT, 2009 WL 1636169, *2 (D. Ariz. June 10, 2009) ("The mere *future* threat of foreclosure and eviction . . . fails to satisfy [the plaintiff]'s burden that he will suffer irreparable harm if the Court fails to grant . . . the preliminary injunction he seeks.").

Accordingly, none of the 36 Non-Party Borrowers faces harm that is either imminent or irreparable,[6] and Plaintiffs have failed in their burden to establish otherwise.[7]  No injunction should issue. *Rubacky*, 2004 WL 1636911, at *1 (lack of evidence that future sale was scheduled before trial precluded issuance of preliminary injunction against foreclosure).

---

[6] Foreclosures do not automatically cause irreparable harm, in any event, as Plaintiffs suggest.  Although Plaintiffs argue that their properties are "unique," Mem. at 17, this fact alone does not justify injunctive relief, or else every defaulting borrower would qualify for a preliminary injunction.  In *Vazquez v. Bank of America Home Loans*, No. 2:10-CV-00116-PMP-RJJ, 2010 WL 3385347 (D. Nev. Aug. 23, 2010), the Court examined a similar request for an order enjoining a foreclosure on the plaintiffs' property in a suit alleging violations of HAMP.  The Court denied the request for preliminary injunction, holding that "Plaintiffs have failed to show a danger of imminent irreparable harm or harm which could not be remedied by monetary damages.  By comparison, the harm to Defendants if the injunctive relief . . . were granted would require Defendants to forestall foreclosure where Plaintiffs have failed to pay their current mortgage obligations, thereby enabling them to continue to enjoy the use of the property at the expense of Defendants." *Id.* at *2.  Courts frequently decline to find irreparable injury in cases involving residential real property, holding that monetary damages are a sufficient remedy.  *See, e.g., Holweg v. Accredited Home Lenders, Inc.*, No. 2:09-CV-1 TS, 2009 WL 29703, *1 (D. Utah Jan. 5, 2009) (denying preliminary injunction because "[w]hile the sale of [Plaintiffs'] residence would clearly be disruptive to Plaintiffs' lives, such a disruption and any accompanying injuries are not irreparable, in that they could be quantified with relative ease, and an effective monetary remedy granted"); *Barrett v. Popular, Inc.*, No. C-07-0637-RSL, 2007 WL 1753539, *1 (W.D. Wash. June 18, 2007) (because plaintiff could halt foreclosure by paying the amount owed, foreclosure would result in solely economic injury and not irreparable harm).

[7] What perhaps has confused Plaintiffs and their counsel into thinking foreclosures were proceeding when they were not is that the Non-Party Borrower declarations, such as they are, suggest that some Non-Party Borrowers have received notices of intent to accelerate (*see, e.g.,* Costello Decl., Ex. 2, Tab 12 ¶ 14, Tab 19 ¶ 14, Tab 26 ¶ 14).  While a proper notice of the intent to accelerate "is a condition precedent to an action for foreclosure," *North Water LLC v. North Water Street Tarragon LLC*, No. FSTCV075004758S, 2009 WL 3740632, *4 (Conn. Super. Oct. 13, 2009), the mere fact that a notice of intent to accelerate is sent does not mean that foreclosure proceedings have begun or that the lender even intends to institute foreclosure proceedings.  Rather, as the Fifth Circuit has explained, "[n]otice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default" before additional action is taken.  *FDIC v. Massingill*, 24 F.3d 768, 775 (5th Cir. 1994).

**B.      Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits.**

Plaintiffs have also failed in their burden to prove that they have a substantial likelihood of success on the merits.  Plaintiffs' principal argument that they are likely to succeed is that three judges denied defendants' motions to dismiss in similar cases.  As Defendants explained in their Motion to Dismiss and accompanying Memorandum, Plaintiffs' claims fail as a matter of law because (1) the TPPs are parts of applications for loan modifications, not offers to enter contracts, (2) the TPPs are unsupported by consideration, and (3) Plaintiffs have not satisfied conditions precedent.  *See* Memorandum in Support of Defendants' Motion to Dismiss at 7-13. But the Court need not decide the issues presented in Defendants' Motion to Dismiss in order to deny Plaintiffs' Preliminary Injunction Motion.  It is Plaintiffs' burden to demonstrate that they are *significantly* likely to succeed on the merits.  Surviving a motion to dismiss is hardly indicative of Plaintiffs' ability to prove likelihood of success on the merits.  *See, e.g., Broadwell v. San Juan*, 312 F. Supp. 2d 132, 137 (D.P.R. 2004).

**1.      Plaintiffs Have Failed to Prove a Substantial Likelihood of Success on Their Breach of Contract Claims.**

**a.      Neither the TPPs nor HAMP Requires a Final Decision Within Three Months.**

Regardless of whether Plaintiffs have pled a breach of contract claim sufficient to survive a motion to dismiss, they have not met their burden to establish a likelihood of success on the merits of any such claim.  Plaintiffs' TPP case is built on the theory that once a borrower submitted a TPP, BAC was required to either grant a permanent modification or deny the request within three to four months of the borrower's signature on the TPP.  Mem. at 3 ("Under the express terms of the TPP agreement, BOA was obligated to tender [Plaintiffs] a permanent HAMP modification by the close of the trial period or notify them that they were not eligible."); CAC ¶ 122 ("In order to perform under the terms of the TPP Agreement, BOA *must tender a*

permanent modification that complies with HAMP rules and Program Documentation *by the end of the trial period*.") (emphasis added).

The "end of trial period" deadline that is the centerpiece of Plaintiffs' breach of contract theory does not exist in the TPP itself, i.e., the alleged contract. Indeed, it would be impossible to "tender" a permanent modification "by the end of the trial period," as Plaintiffs propose, because borrowers can submit payments up to the last day of the trial plan, and often submit documents after the last day. Given that those documents are used to verify eligibility and calculate the final modification payments, it is difficult to see how any servicer "must tender" a permanent modification before it even has the materials to make the necessary calculations on one. *See* CAC, Ex. 2 (HAMP Supp. Dir. 09-01) at 7-8.

Plaintiffs' legal theory also makes no sense in the context of HAMP itself. Plaintiffs claim that if they make all their TPP payments and submit documents, they *must* be given a permanent modification or a denial by the end of the 90-day trial period. Beyond that this identical theory has been rejected by multiple federal courts, *see* Memo. in Supp. of Mot. to Dismiss (Doc. No. 22) at 8-13, the entire argument ignores both the structure of HAMP at the time virtually every Non-Party Borrower entered a TPP and express guidance from the Treasury Department. Under the HAMP guidance in effect when virtually every Non-Party Borrower first received a TPP, servicers were *encouraged* to put borrowers into TPPs based on *unverified* income. CAC, Exh. 2 at 5. As such, once the TPP was received, the servicer then used the verified information later provided by the borrower to determine *whether* the borrower qualified and, if so, the proper amount of the permanent modification. *Id.* at 5-6; 8-10. The TPPs themselves state that BAC would first need to "determine whether [the borrower] qualif[ies] for the offer" described, and that the borrower must provide documents "to permit verification of my

13

income" and "meet all of the conditions required for modification" under HAMP.  CAC, Exh. 7

at 1, 4.  These provisions make clear that before any offer for a permanent modification would be

forthcoming, the borrowers would need to *qualify* for a HAMP modification.  *See* CAC, Exh. 2

at 15.  If the documents submitted evidence that the borrower does not meet the HAMP

eligibility requirements, or if the borrower fails to make scheduled payments under the Trial

Period Plan, the servicer must deny a permanent HAMP modification.  CAC, Exh. 2 at 5, 15.

The process of determining whether a borrower has qualified for a permanent

modification is largely contingent on actions of the borrower, including providing documents

sufficient to allow BAC to verify the borrower's income under HAMP eligibility requirements.

For Plaintiffs to suggest that this process must be completed within 90 days of the execution of

the TPP or BAC is forced to award a permanent modification makes no sense.  If that were the

case, then BAC would have had no choice but to deny many of the named Plaintiffs and Non-

Party Borrowers for HAMP modifications because they had not provided the necessary

documents to verify their income by the conclusion of 90 days.  Instead of doing so, BAC

permitted borrowers additional time to submit those documents.  Schoolitz Decl. ¶¶ 7, 16-25.

Indeed, the Treasury itself issued directives on at least three occasions, which expressly extended

the time-period for TPPs, in recognition of the fact that borrowers were not returning documents,

and, as such, final modification evaluations and processing was taking well beyond 90 days.  *See*

https://www.hmpadmin.com/portal/news/2009announcements.jsp (announcements dated

8/26/09, 9/29/09, and 10/8/09) (last visited April 29, 2011).

> **b.    The Plaintiffs Have Failed to Demonstrate that the Moussas, Kimberley George, or Any of the 36 Non-Party Borrowers Are Likely to Have Qualified for a Permanent HAMP modification.**

Plaintiffs allege that they and the 36 Non-Party Borrowers submitted the required

documents and made the TPP payments on time.  This is untrue as to many borrowers, but

beyond that, Plaintiffs submit no *evidence* that *any* Non-Party Borrower actually qualified for a permanent modification.  In most cases, the Non-Party Borrowers simply did not qualify for HAMP once their incomes were verified.  For example:

- Elizabeth Anders, Cheryl Martin and David Stanley did not even meet one of the most basic eligibility requirements for a HAMP modification, as their monthly payments were already less than 31% of their gross monthly income.  Schoolitz Decl. ¶ 14(d).

- At least nine of the Non-Party Borrowers were denied a permanent HAMP modification because to reduce their payments to 31% of their gross monthly incomes would require BAC to forbear an excessive amount of principal.  Schoolitz Decl. ¶ 14(c) (Cipowski, English, Gaffey, Greer, Hamilton, Helberg, Martinez, Rivas, Tarin).  For example, in order for borrowers Kelli and Holli Cipowski to receive a modification that reduces their payments to 31% of their gross monthly income, BAC would need to forbear the entire amount of their unpaid loan balance—more than $300,000.00—a result not required under HAMP.  Schoolitz Decl. ¶ 17.

- At least ten of the Non-Party Borrowers were denied a permanent HAMP modification because they failed the NPV Test.  Schoolitz Decl. ¶ 14(b) (Comia, Culliton, Davis, Delira, Dugree, Kline, Pioli, Serano, Slyman and Smith).

- Many Non-Party Borrowers were declined because they failed to make the necessary payments or provide the requested documents.  Schoolitz Decl. ¶¶ 14(a) (Bereholm, Brown, Conroy, Coulter, Denzer, R. George, Kelly, Mason, Rhoda, Rocca and Torrico were ineligible for failing to provide the required documents); 14(e) (Denzer, Mason and Stanley were ineligible for failing to make the necessary payments).  Indeed, BAC gave these borrowers multiple opportunities to send the correct documents, but the borrowers continuously sent either the wrong documents, unsigned documents, or no documents at all.  *See, e.g.*, Schoolitz Decl. ¶ 25.

The Non-Party Borrowers' declarations making general allegations to the contrary create – *at most* – a disputed issue of fact, rather than a substantial likelihood of success on the merits. Indeed, this exercise illustrates the concern raised by the Court at the conclusion of the Motion to Dismiss hearing, namely that Plaintiffs' counsel are in essence asking this Court to re-visit BAC's judgment on each individual borrower and to effectively usurp Freddie Mac's role as HAMP's compliance monitor.

### 2. Plaintiffs are Unlikely to Succeed on Their Claim for Breach of the Covenant of Good Faith and Fair Dealing.

For all the same reasons that Plaintiffs have failed in their burden to demonstrate a likelihood of success on their contract claim, they have also failed in their burden on their claim for breach of the implied covenant of good faith and fair dealing.

Beyond that there is no contract at issue even giving rise to the alleged duty, Plaintiffs have not met their burden to establish any conduct by BAC that would entitle them to recover even if a duty existed. Plaintiffs conclusorily state that BAC has breached the implied covenant because it has "made it impossible for the [36 Non-Party Borrowers] to secure the benefits of their TPP Agreements." Mem. at 16. Yet this assertion is belied by the fact that several of the Non-Party Borrowers have been offered permanent modifications. Indeed, Debra Dahlmer was offered a permanent HAMP modification within three months of returning her signed TPP. Schoolitz Decl. ¶ 13. Charlotte James was offered a permanent HAMP modification in late 2010, but *turned it down*. *Id.* And in those instances when the named Plaintiffs and the Non-Party Borrowers were denied permanent HAMP modifications, BAC made numerous and repeated attempts to qualify them for non-HAMP modifications. *See, e.g.*, Schoolitz Decl. ¶¶ 14, 16 – 25. These are not the actions of a servicer exercising bad faith to deny borrowers modifications. Plaintiffs have failed to prove a likelihood of success on this claim.

### 3. Plaintiffs Have Failed to Prove a Substantial Likelihood of Success on Their Promissory Estoppel Claim.

Plaintiffs' confidence that the 36 Non-Party Borrowers are "virtually certain" to prevail on their promissory estoppel theory is misplaced. Plaintiffs assert that absent "enforcement of BAC's promises, [the Non-Party Borrowers] will have spent time, money and resources under TPP Agreements in vain." Mem. at 15. This assertion fails, as Plaintiffs have failed to establish that the borrowers have suffered damages in reliance on Defendants' "promise." *Veranda Beach*

*Club Ltd. Partnership v. Western Surety Co.,* 936 F.2d 1364, 1381 n. 10 (1st Cir. 1991).

The individuals who have actually obtained or been offered permanent modifications, such as Kimberley George, Gregory and Kaleigh Hamilton, Charlotte James, Cheryl Martin, Lalainya Peeples, and Debra Dahlmer, have no claim for promissory estoppel. *Id.* Moreover, the sole harm alleged is that the individuals spent money by making mortgage payments – money they assert they could have reserved "for other uses, such as the payment to a bankruptcy attorney to avoid foreclosure or a down payment on a rental unit." *See* Mem. at 15. But they ignore the fact that they were *already obligated* to pay substantially more than they did under their TPPs. As a result of their reduced monthly payments, these individuals were able to free up hundreds of dollars per month for those "other uses." Because Plaintiffs have failed to identify a cognizable detrimental change in the position of these individuals as a result of any allegedly broken promise, they have failed to satisfy their burden to prove they are likely to prevail on the promissory estoppel claim.

**C.      The Equities Do Not Support an Injunction.**

The equitable balance of harms and public interest factors do not favor an injunction. Because there is no pending foreclosure sale for any of the named Plaintiffs or the Non-Party Borrowers, the hardship to them is minimal or nonexistent. Plaintiffs also ignore that their proposed injunction includes borrowers who did not comply with their TPP obligations or have otherwise stopped paying on their loans. Based on their own declarations, at least 20 Non-Party Borrowers have not kept up with even reduced payments. *See* Costello Decl. Ex. 2 (Bereholm, Brown, Cipowski, Conroy, Culliton, Delira, Dugree, English, Greer, Hamilton, James, Kelly, Kline, Martin, Mason, Pioli, Rivas, Serrano, Smith, and Torrico). If granted, the injunction Plaintiffs seek would give other borrowers little incentive to make their payments. *See Vazquez v. Bank of America Home Loans,* No. 2:10-CV-00116-PMP-RJJ, 2010 WL 3385347, *2 (D. Nev.

Aug. 23, 2010).

Nor does the public interest favor an injunction.  As explained above, the relief sought includes in its scope an injunction in favor of borrowers who do not qualify for a permanent HAMP modification.  As such, the requested injunction would discourage mortgage servicers' voluntary participation in HAMP.  This is against the public interest, which strongly *encourages* voluntary participation in HAMP.  *See* Mem. at 18-20 (referring to the "public purposes" embodied in the Obama Administration's HAMP initiatives).  Notably, the quotes that Plaintiffs include in support of their public purpose argument all center on the *Treasury Department's* focus on converting trial modifications to permanent ones; in effect, Plaintiffs' own sources support Defendants' arguments in their Motion to Dismiss that it is the Treasury Department that is charged with enforcing the HAMP program, not the plaintiffs here.

### III.  IF THE INJUNCTION IS GRANTED, ALL BORROWERS WHO WANT ACCESS TO THE RELIEF SHOULD BE REQUIRED TO KEEP THEIR LOAN CURRENT, AND PLAINTIFFS MUST POST A SUBSTANTIAL BOND.

If the requested injunction is granted, the Court should provide it only on two conditions – the borrowers should be directed to keep their loans current, and they should post a bond.

#### A.    The Loans Should be Paid Currently.

All borrowers who seek to stop foreclosures on their properties should be required to keep their loans up to date and pay taxes and insurance due.  This condition is particularly important with respect to taxes and insurance and loan interest, which in most instances are due to be paid over by BAC to a third party taxing authority, insurance provider, or loan investor. There is no reason in equity why Defendants should be required to shoulder those expenses.

#### B.    A Substantial Bond is Required.

The Court also should order Plaintiffs and their counsel to post a bond.  Fed. R. Civ. P. 65(c); *Global Naps, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 23 (1st Cir. 2007).  Rule

65(c) states that "[t]he court may issue a preliminary injunction . . . order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").  Indeed, should a wrongful injunction enter, the only protection BAC may have is the execution of an injunction bond.  *Global Naps, Inc.,* 489 F.3d at 23.

Except in rare circumstances not presented here, posting of a bond is a mandatory requirement for every injunction issued under Rule 65.  *Id.*  ("[A] district court must have a good reason to depart from the preference for recovery of security granted under Rule 65(c).").  Alternatively, the Court should deny the Motion if Plaintiffs are unwilling to protect BAC against the damages it will incur if an injunction is improvidently granted.  *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 379 (5th Cir. 2008) (where plaintiffs stated they were unable to post bond, district court properly denied motion for preliminary injunction).  Plaintiffs' only acknowledgment of this requirement is a single statement in which they claim that a bond is unnecessary because the "Class Members Facing Foreclosure are able and willing to continue making payments to BOA."  Mem. at 18.  Notably, this statement is unsupported by *any* cite to the record and is belied by the fact that many of the Non-Party Borrowers have stopped making payments.  *See* Costello Ex. 2.  The only case Plaintiffs cite for their contention that a bond is not required is *Aoude v. Mobil Oil Corp.*, 862 F. 2d 890, 895-96 (1st Cir. 1988), in which the Court held that it was permissible for the District Court not to require a bond because the defendant did not request one.  Here, Defendants request one.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court DENY Plaintiffs' Motion for Preliminary Injunctive Relief.

Dated: April 29, 2011

Respectfully submitted,

Bank of America, N.A., and BAC Home Loans
Servicing, L.P.,

By their attorneys,

/s/ James W. McGarry
James W. McGarry (BBO No. 633726)
jmcgarry@goodwinprocter.com
Dahlia S. Fetouh (BBO No. 651196)
dfetouh@goodwinprocter.com
Mark Tyler Knights (BBO No. 670991)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

## <u>CERTIFICATE OF SERVICE</u>

     I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 29, 2011.

                /s/ James W. McGarry

LIBA/2167696.12