# EXHIBIT 1

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Herminia MORALES, et al., Plaintiffs,
v.
CHASE HOME FINANCE LLC, et al., Defendants.

No. C 10–02068 JSW.
April 11, 2011.

Whitney Huston, James C. Sturdevant, The Sturdevant Law Firm, San Francisco, CA, Cynthia Lynn Singerman, Elizabeth Scott Letcher, Maeve Elise Brown, Noah Zinner, Housing and Economic Rights Advocates, Oakland, CA, for Plaintiffs.

Wendy M. Garbers, Michael John Agoglia, Rita Lin, Morrison & Foerster LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING MOTION TO DISMISS**
JEFFREY S. WHITE, District Judge.

**\*1** Now before the Court is the motion filed by Defendants Chase Home Finance LLC and JPMorgan Chase Bank, N.A. (collectively, "Chase") to dismiss the complaint filed by Plaintiffs Herminia Morales and Michelle Suranofsky ("Plaintiffs"). The Court grants the pending motions for leave to file notice of supplemental authority. (Doc nos. 49, 63, 64, 65, 66, 67, 71, 74, 75.) Having reviewed the pleadings and papers submitted on the motion and having considered the relevant legal authority and arguments of counsel, the Court hereby GRANTS Chase's motion to dismiss.

**BACKGROUND**
Plaintiffs filed this putative class action on May 14, 2010, on behalf of all California homeowners whose loans have been serviced by Defendants and who have complied with their obligations under a written Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP") Contract, but who have not received a permanent HAMP modification. (Compl.¶ 94.)

**A. The Home Affordable Modification Program**

Pursuant to the Emergency Economic Stabilization Act of 2008, the United States Department of Treasury implemented HAMP as a program designed to provide affordable mortgage loan modifications and other alternatives to foreclosure for eligible borrowers. (Compl.¶ 3.) Chase began processing loans under HAMP on April 6, 2009, and on July 31, 2009, entered into a Servicer Participation Agreement ("SPA") with the federal government. (Compl.¶ 32.) Chase entered into an Amended and Restated SPA on March 24, 2010. (*Id.* ¶ 32 and Ex. 1.) The SPA requires incorporates supplemental documentation and guidelines issued by the Department of Treasury, Fannie Mae or Freddie Mac, collectively known as the "Program Guidelines." (*Id.* ¶ 33 and Ex. 1, § 1.B.)

Fannie Mae issued the first Supplemental Directive ("SD 09–01") in April 2009 which set forth HAMP eligibility guidelines. (*Id.* ¶ 33 and n. 10.) *See* SD 09–01, available at www.hmpadmin.com. The guidelines set forth basic eligibility criteria and requires the servicer to perform a net present value ("NPV") analysis, comparing the NPV of a modified loan to the NPV of an unmodified loan. (Compl. ¶ 35; SD 09–01 at 4–5.) The servicer is required to apply a sequence of steps, the "Standard Modification Waterfall," to evaluate a hypothetical loan modification that would lower the borrower's payment to no greater than 31 % of the borrower's gross monthly income. (Compl. ¶ 35; SD 09–01 at 8–10.) The Standard Modification Waterfall includes the steps of reducing the interest rate in increments of .125% down to the floor interest rate of 2%, extending the term of the loan, and forgiving principal. (SD 09–01 at 9–10.) "If the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed 'positive' and the servicer MUST offer the modification." (SD 09–01 at 4; Compl. ¶ 36.) "If the NPV result for no modification is greater than NPV result for the modification scenario, the modification result is deemed 'negative' and the servicer has the option of performing the modification in its discretion." (SD 09–01 at 4.)

**\*2** Under HAMP, "[s]ervicers must use a two-step process for HAMP modifications. Step one involves providing a Trial Period Plan outlining the terms of the trial period, and step two involves pro-

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

viding the borrower with an Agreement that outlines the terms of the final modification." (SD 09–01 at 14.) Under the TPP the homeowner makes mortgage payments based on adjusted loan terms during a three-month trial period. (Compl. ¶ 37; SD 09–01 at 17–18.) Plaintiffs allege that Chase offers TPPs to eligible homeowners through a TPP Contract which promises a permanent HAMP modification for those homeowners who make the required payments under the plan and fulfill the documentation requirements. (Compl.¶ 38.)

**B. Plaintiff Morales**

Plaintiff Morales refinanced her home in February 2007 for a $607,750 mortgage from Washington Mutual, now Chase. (Compl. ¶ 49 .) Morales first applied to Chase for a loan modification in March 2009 and was denied in May 2009 for missing documentation. (*Id.* ¶ 51.) On June 16, 2009, Morales again applied for a loan modification and was denied because her expenses were too high. (*Id.* ¶ 52.) Morales submitted an updated form with updated income documentation and was approved by Chase for a trial modification under HAMP on July 24, 2009. (*Id.* ¶¶ 53–54.) Chase sent and Morales executed a standard form contract entitled "Home Affordable Modification Trial Period Plan (Step One of Two–Step Documentation Process)" (the "TPP Contract"), which states in part:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Compl. ¶ 55 and Ex. 2.) The TPP Contract provided that Morales make three trial period payments of $1,960.44. (*Id.* ¶ 57.) Morales timely executed the TPP contract and made payments for August 1, September 1 and October 1, 2009. (*Id.* ¶¶ 58–59.)

From October 3, 2009, Chase sent Morales about ten letters requesting documentation to evaluate her modification request and stating that her modification was "at risk" and asking Morales to continue making trial period payments. (*Id.* ¶¶ 60–66.) Morales made payments in November 2009, December 2009, January 2010, February 2010, March 2010 and April 2010, which Chase accepted. (*Id.* ¶ 67.)

Chase never offered Morales a HAMP final modification, nor did Chase send her a written denial. (*Id.* ¶ 68.) By letter dated March 11, 2010, Chase offered Morales a non-HAMP modification for an interest-only loan for ten years, with principal and interest payments amortized over a term longer than the life of the loan and a balloon payment of $399,766.63 at the end of the loan term. (*Id .* ¶ 69.) Morales alleges that she could not afford the initial payment under the proposed modification. (*Id.* ¶ 70.) She further alleges that Chase reported to credit reporting agencies that her mortgage payments from July 2009 to January 2010 were "180 days past due" without reporting that she was paying under a modified payment plan. (*Id.* ¶ 72.)

**C. Plaintiff Suranofsky**

*3 Plaintiff Suranofsky refinanced her mortgage loan in 2006 for a $190,000 loan at 8.25% interest. (*Id.* ¶ 74.) She applied for a HAMP modification in July 2009, and Chase offered her a Trial Period Plan under HAMP to begin August 1, 2009. (*Id.* ¶¶ 76–77.) Suranofsky received the standard TPP Contract from Chase entitled "Home Affordable Modification Trial Period Plan (Step One of Two–Step Documentation Process)" which states in part:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Compl. ¶ 79 and Ex. 3 ¶ 1.) The TPP Contract further provides, "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement." (*Id .* Ex. 3 ¶ 3.)

The TPP Contract provided for three trial period payments of $613 .00 due on August 1, September 1, and October 1, 2009. (*Id.* ¶ 80.) Suranofsky returned the executed TPP Contract with requested documentation and payment for $613.00 on August 15, 2009.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

(*Id.* ¶ 81.) She timely made her payments for September and October 2009. (*Id.* ¶ 82.) In October 2009, Chase sent Suranofsky letters requesting additional documentation to evaluate her modification request. (*Id.* ¶ 83.) Suranofsky sent the requested documentation. (*Id.* ¶ 84.) On October 20, 2009, a Chase representative called her to inform that she had been approved for final modification and that her packet would be sent within 30–60 days. (*Id.* ¶ 85.) The Chase representative told her that she should continue making payments under her Trial Period Plan and sent her additional TPP coupons for November 2009, December 2009 and January 2010. (*Id.*) After being erroneously informed that her house had been subject to a foreclosure sale, Suranofsky sought assistance from Project Sentinel, who contacted Chase in January 2010. (*Id.* ¶ 86.) Chase informed Suranofsky's representative that she had been denied a permanent modification in November 2009 for insufficient income. (*Id.* ¶¶ 86–87.)

Suranofsky reapplied for loan modification and was instructed to continue making TPP payments. (*Id.* ¶¶ 88–89.) Chase accepted her payments for November 2009, December 2009, and January through March 2010. (*Id.* ¶ 88.) On March 13, 2010, Chase informed Suranofsky's representative that she was being denied a permanent modification due to insufficient income. (*Id.* ¶ 90.) Suranofsky has not received a written denial from Chase. (*Id.*) Chase has reported to credit reporting agencies that Suranofsky is making mortgage payments under a modified plan, but that her payments are 180 days past due for November 2009 through at least February 2010. (*Id.* ¶ 93.)

**D. Claims for Relief**

*4 Plaintiffs allege the following claims for relief: (1) breach of the Trial Period Plan Contract; (2) breach of covenant of good faith and fair dealing; (3) breach of the Servicer Participation Agreement contract; (4) promissory estoppel; (5) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ.Code § 1788 *et seq.;* (6) and violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.*

Chase filed the instant motion to dismiss the complaint on July 23, 2010. The Court held a hearing on the motion to dismiss on September 17, 2010, and the matter was submitted.

**LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir.1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Pursuant to *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir.1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. ., Inc.,* 911 F.2d 242, 246–47 (9th Cir.1990).

**ANALYSIS**
**A. Contract Claims Under the TPP Contract**

**1. Breach of Contract Claim**

In order to state a claim for breach of contract, Plaintiffs must allege "the existence of the contract,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Commercial Mortg. Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001).

**\*5** Chase contends that this claim must be dismissed because Plaintiffs have not alleged a cognizable form of consideration to support the existence of a valid contract. Plaintiffs concede that they had a pre-existing duty to make mortgage payments, but argues that the TPP payments are sufficient consideration because the performance due under the TPP Contract " 'differs in any way' from the pre-existing legal duty." (Pls' Opposition to Defs' Mot. to Dismiss ("Opp.") at 7 (quoting *House v. Lala,* 214 Cal.App.2d 238, 243, 29 Cal.Rptr. 450 (1963).) Plaintiffs further contend that they offered other kinds of consideration in addition to the mortgage payments already due: (1) the TPP Contracts require Plaintiffs to make escrow payments to Chase for property taxes and insurance as a condition of eligibility for modification; (2) borrowers suffer derogatory credit reporting during the Trial Period; and (3) Plaintiffs must complete burdensome documentation requirements. (Opp. at 7.) Plaintiffs' allegations, accepted as true, support the existence of the contract to participate in the TPP for the three month trial period, but not a contract for permanent modification after the trial period expires.

Under California law, the intention of the parties as expressed in the contract is the source of contractual rights and duties. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage,* 69 Cal.2d 33, 38, 69 Cal.Rptr. 561, 442 P.2d 641 (1968) ("*PG & E*"). In *Grill v. BAC Home Loans Servicing LP,* 2011 WL 127891 \*4 (E.D.Cal. Jan.14, 2011), the Court reviewed the language of the TPP Contract similar to the ones at issue here and determined that TPP Contract contradicted the plaintiff's claim that a binding contract for loan modification existed. The TPP Contracts here contain the same language that the *Grill* court found insufficient to support a contract for permanent loan modification:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(Compl. Ex. C ¶ 2G.) The *Grill* court determined that this contractual language "makes clear that providing the requested documents was simply a part of the application process, which plaintiff was willing to complete in the hope that BAC would modify his loan. Under the language of [the TPP Contract], a binding modification would not result unless and until BAC determined that plaintiff complied with the requirements. If BAC so determined, then it would send plaintiff a modification agreement, including a new monthly payment amount, which both plaintiff and defendant would execute." 2011 WL 127891 \*4. Because Grill had failed to allege either that the lender determined that he had met the requirements or that the lender sent Grill a loan modification that was executed, the court dismissed the breach of contract claim with leave to amend. *Id. See Vida v. OneWest Bank, F.S.B.,* 2010 WL 5148473 \*6 (D.Or. Dec.13, 2010) ("The Trial Period Plan is explicitly not an enforceable offer for loan modification."). *See also Lonberg v. Freddie Mac,* 2011 WL 838943 (D.Or. March 4, 2011); *Wigod v. Wells Fargo Bank, N.A.,* 2011 WL 250501 (N.D.Ill. Jan.25, 2011).

**\*6** The Court has reviewed the decisions of other district courts that have held that the TPP Contract supports a breach of contract claim by borrowers who entered the TPP Contract. Those decisions do not discuss the specific contract provision considered here and in *Grill*. *See Durmic v. J.P. Morgan Chase Bank, N.A.,* 2010 WL 4825632 (D.Mass. Nov.24, 2010); *Jackson v. Ocwen,* 2011 WL 587587 (E.D.Cal. Feb.9, 2011). In *Bosque v. Wells Fargo Bank, N .A.,* ——F.Supp.2d ——, 2011 WL 304725 (D.Mass. Jan.26, 2011), the court reviewed other specific provisions of the TPP Contract but did not hold that terms of the TPP Contract created a contract for permanent modification. There, the court denied the lender's motion to dismiss the plaintiffs' breach of contract claim and noted that the plaintiffs did not argue "that the TPP is a contract for a permanent loan modification." *Id.* at \*6. The court determined that although the plaintiffs had previously argued that they were entitled to a permanent modification as long as they complied with their obligations under the TPP, the plaintiffs more recently relied on another contract theory that "they are merely entitled to a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

decision by Wells Fargo as to whether they will receive a permanent modification by the modification effective date specified in section 2 of the TPP." *Id.* at *4. The *Bosque* plaintiffs alleged that Wells Fargo "failed to notify plaintiffs of *any* decision with regard to their loan modification status." *Id.* at *3. The *Bosque* court denied the motion to dismiss the contract claim on the ground that "the TPP contains all essential and material terms necessary to govern the trial period repayments and the parties' related obligations," including "a decision on whether plaintiffs are entitled to the permanent modification." *Id.* at *6–7.

Although Chase did not provide a written denial letter, Plaintiffs do not allege that Chase breached the contract by failing to notify them of any decision regarding modification, distinguishing them from the *Bosque* plaintiffs. (*See* Compl. ¶¶ 68–69, 87.) Rather, Plaintiffs specifically allege that "[t]he TPP Contract promises a permanent HAMP modification for those homeowners who make the required payments under the plan and fulfill the documentation requirements" and that "Chase breached the TPP Contract ... by failing to offer Plaintiffs and members of the Plaintiff Class permanent HAMP modifications at the close of their Trial Periods." (Compl. ¶¶ 38, 106.) Plaintiffs fail to allege, however, that they have met all the conditions set forth in the TPP Contract for loan modification, including receipt of a "fully executed copy of a Modification Agreement," and therefore fail to allege the existence of a binding contract regarding a permanent loan modification. The breach of contract claim is therefore DISMISSED.

Plaintiffs seek leave to amend the complaint to allege that Plaintiffs meet the initial eligibility requirements for HAMP and are informed and believe that they qualify for permanent HAMP modification. (Opp. at 5.) The legal question whether Plaintiffs had a contract for permanent modification does not turn on whether or not Plaintiffs actually qualify for permanent HAMP modification. As the court determined in *Williams v. Geithner,* 2009 WL 3757380 *6 (D.Minn. Nov.9, 2009), Congress did not intend for HAMP to mandate loan modifications. The *Williams* court determined that the "regulations promulgated by Treasury for administering the HAMP clearly demonstrate that the Secretary allowed the exercise of some discretion, including calculation of the NPV, to the servicers." *Id.* HAMP only requires participating servicers to consider eligible loans for modification, but does not require servicers to modify eligible loans. *See Hofman v. Bank of America, N.A.,* 2010 WL 2635773 *4 (N.D.Cal. June 30, 2010); *Marks v. Bank of America,* 2010 WL 2572988 *3 (D.Ariz. June 22, 2010).

**\*7** The complaint alleges that Chase did not offer or denied Plaintiffs a HAMP loan modification and that Chase has not provided a written denial. (Compl.¶¶ 68–69, 87.) Plaintiff Suranofsky has alleged that a Chase representative informed her that she had been approved for final modification, but was subsequently denied a permanent modification. (*Id.* ¶¶ 85, 87.) Even if she or Plaintiff Morales were able to allege that Chase determined that they qualified for modification under the Net Present Value analysis, neither will be able to allege that she received a fully executed copy of a Modification Agreement. Thus, amendment of the breach of contract claim would be futile and no leave to amend will be granted.

**2. Breach of the Covenant of Good Faith and Fair Dealing**
Plaintiffs allege that Chase violates the covenant of good faith and fair dealing in its TPP contracts by "[f]ailing to permanently modify loans and/or provide alternatives to foreclosure and using unfair means to keep Plaintiffs and the Plaintiff Class in temporary modification contracts." (Compl.¶ 113c.)

"Every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Fortaleza v. PNC Financial Services Group, Inc.,* 642 F.Supp.2d 1012, 1021 (N.D.Cal.2009) (quoting *McClain v. Octagon Plaza, LLC,* 159 Cal.App.4th 784, 798, 71 Cal.Rptr.3d 885 (2008)). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Id.* at 1021–22 (citations omitted).

Because Plaintiffs have not sufficiently alleged the existence of a contract for permanent loan modification, Chase's motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing is GRANTED.

**3. Promissory Estoppel**
Plaintiffs contend that they detrimentally relied

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

upon Chase's promise of a permanent modification if they completed three months of trial period payments and completed documentation requirements. (Compl.¶¶ 34–38, 71, 92, 129–30.) Promissory estoppel will bind a promisor " 'when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.' " *Mehta v. Wells Fargo Bank, N.A.,* 737 F.Supp.2d 1185, 1198 (S.D.Cal.2010) (quoting *Raedeke v. Gibraltar Sav. & Loan Ass'n,* 10 Cal.3d 665, 672 n. 1, 111 Cal.Rptr. 693, 517 P.2d 1157 (1974)). The elements of a promissory estoppel claim are "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance." *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc. .,* 688 F.Supp.2d 940, 953 (N.D.Cal.2010) (citation omitted). "The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances." *Id.*

**\*8** As discussed above, the TPP Contract does not require Chase to modify an applicant's loan. Plaintiffs argue that they entered into the TPP in reliance on the promise of permanent modification, "reasonably believing they had been pre-screened and were eligible." (Opp. at 12.) HAMP did not, however, require that servicers verify eligibility prior to accepting borrowers into the TPP until the program was amended by directive in January 2010: "A significant program change is a requirement for full verification of borrower eligibility prior to offering a trial period plan." Supplemental Directive SD 10–01 at 1, available at www.hmpadmin.com. SD 10–01 clarified that under the prior Supplemental Directive 09–01, HAMP "gave servicers the option of placing a borrower into a trial period plan based on verbal financial information obtained from the borrower, subject to later verification during the trial period." *Id.* See SD 09–01 at 17 ("Servicers are not required to verify financial information prior to the effective date of the trial period.") The SD 10–01 directive amended HAMP such that "[e]ffective for all HAMP trial period plans with effective dates on or after June 1, 2010, a servicer may only offer a borrower a trial period plan based on verified income documentation in accordance with this Supplemental Directive." *Id.* The TPP Contract also provides that the borrowers will provide documents to permit verification of income. (Compl. Ex. 2 at 1.) Thus, at the time Plaintiffs were offered Trial Period modifications in August 2009, there was no promise that Plaintiffs would be found eligible for permanent loan modification on which Plaintiffs could reasonably rely.

Plaintiffs further argue that "HAMP rules set out a specific and detailed method for determining the terms of a Home Affordable Modification Agreement" and that the TPP promises "to give a loan modification determined by a formula well known by both parties." (Opp. at 8, 10.) However, courts have determined that lenders are not required under HAMP to modify eligible loans. *See Marks,* 2010 WL 2572988 at \*3. "Even Fannie Mae, which has rights under the [Servicer Participation] Agreement, cannot force a participating servicer to make a particular loan modification." *Id.* "A qualified borrower would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him or her because the Agreement does not require that [the participating servicer] modify eligible loans." *Escobedo v. Countrywide Home Loans, Inc.,* 2009 WL 4981618 \*3 (S.D.Cal. Dec.15, 2009).

In *Escobedo,* the court determined that the SPA set forth Home Affordable Modification Program Guidelines which provided that "[p]articipating servicers are required to *consider* all eligible loans under the program guidelines unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements." *Id.* (emphasis added in original). The *Escobedo* court determined that the SPA Agreement under HAMP "does not state that [the servicer] must modify all mortgages that meet the eligibility requirements." *Id. See also Hoffman,* 2010 WL 2635773 at \*4 (citing *Escobedo); Benito v. Indymac Mortgage Serv.,* 2010 WL 2130648 \*7 (D.Nev. May 21, 2010) (determining that HAMP does not confer on borrowers the right to enforce the HAMP contract and that "even Fannie Mae, which has rights under the contract, cannot force [the servicer] to make any particular loan modification").

**\*9** Having determined that Chase did not make promises about permanent loan modification, the Court concludes that Plaintiffs fail to allege a claim for promissory estoppel. *See Grill,* 2011 WL 127891 \*8. Chase's motion to dismiss the fourth claim for relief in the complaint is therefore GRANTED.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

**B. Breach of Contract Claim Under the SPA**

Plaintiffs assert a breach of contract claim under the Servicer Participation Agreement ("SPA") between Chase and Fannie Mae. (Compl.¶¶ 118–127.) As many district courts in the Ninth Circuit have determined, individual borrowers do not have standing to sue under the SPA because they are not intended third party beneficiaries of the SPA. In *Hofman,* the court determined that borrower was "an incidental and not an intended beneficiary to the HAMP servicer's agreement." 2010 WL 2635773 *4 (N.D.Cal. June 30, 2010) (citing *Klamath v. Patterson,* 204 F.3d 1206 (9th Cir.1999) and distinguishing *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237 (9th Cir.2009)). *Hoffman* recognized the weight of authority concluding that a borrower does not have enforceable rights under the HAMP Servicer Participation Agreement, and the Court adopts the *Hoffman* court's reasoning to determine that Plaintiffs do not have standing to sue under the SPA. *Id.* at *3–4. *See also Orcilla v. Bank of America, N.A.,* 2010 WL 5211507 (N.D.Cal. Dec.16, 2010) (disagreeing with *Marques v. Wells Fargo Home Mortg.,* 2010 WL 3212131 (S.D.Cal. Aug.12, 2010)). Chase's motion to dismiss the third claim for relief of the complaint for breach of the SPA contract is therefore GRANTED.

**C. State Law Claims**

**1. Rosenthal Act**

Plaintiffs allege that Chase has violated the Rosenthal Act by falsely promising that borrowers who complete their Trial Period modifications will get permanent modifications in order to collect mortgage debt and servicing fees. (Opp. at 19; Compl. ¶ 137.) Plaintiffs contend that Chase has made misrepresentations "in connection with the collection of any debt," or using "unfair or unconscionable means to collect or attempt to collect any debt" pursuant to Section 1788.17 of the California Civil Code, which incorporates by reference certain provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692(e) and (f). (Opp. at 19.)

Chase does not dispute Plaintiffs' allegation that Chase is a debt collector within the meaning of the Rosenthal Act, but contends that Plaintiffs fail to allege a "demand" for payment of delinquent debt. (Reply at 19–20 (citing *Walcker v. SN Commercial, LLC,* 286 Fed. Appx 455, 457 (9th Cir.2008).) In *Walcker,* the Ninth Circuit determined that the loan servicer's letters to plaintiffs were informational and not "demands for payment" in violation of the requirements for communications "in the collection of a claim" under Washington state law. 286 Fed. Appx. at 457 (citing *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 388–89 (7th Cir.1998)). Unlike the informational letters in *Walcker,* Plaintiffs allege that the communications from Chase demanded three Trial Period payments and indicate that the borrower is required to pay the debt. These allegations are sufficient to demonstrate a demand for payment in support of a Rosenthal Act claim.

**\*10** To evaluate claims under the Rosenthal Act, the Court must consider whether the alleged communications from the debt collector would likely mislead the "least sophisticated debtor." *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir.2007) (citing *Swanson v. S. Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1229 (9th Cir.1989).) Plaintiffs contend that Chase misled borrowers into believing that Chase screens borrowers for eligibility and determines that borrowers qualify for HAMP before placing them into Trial Periods so that they would be entitled to permanent modification if they successfully complete the Trial Period. (Opp. at 20; Compl. ¶¶ 32–43, 53–55, 75–79.)

The "least sophisticated debtor" standard is an objective one. *Swanson,* 869 F.2d at 1227. Under that standard, the Court determines that the alleged communications do not make false, deceptive or misleading statements that Chase promised a permanent loan modification if the borrower successfully makes three Trial Period payments. The TPP Contract itself states that the TPP "is not a modification of the Loan Documents" and that "the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan." (Compl. Ex. 2 ¶ 2.G.) The title of the TPP Contract itself indicates that the TPP is the first step of a "Two–Step Documentation Process." (Compl.Ex. 2.) Plaintiffs have not demonstrated that the TPP Contract or other modification-related communications were false, deceptive or misleading. *See Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996) (collection agency did not violate Section 1692e where notice correctly told plaintiff that she had an unpaid debt, and properly in-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1670045 (N.D.Cal.)
**(Cite as: 2011 WL 1670045 (N.D.Cal.))**

formed her that failure to pay might adversely affect her credit reputation). Nor do Plaintiffs' allegations demonstrate that Chase's documents or communications were unfair or unconscionable. *Id.* (out-of-state collection agency's unlicensed collection activity did not violate Section 1692f).

Therefore, Chase's motion to dismiss the fifth claim for relief for violation of the Rosenthal Act is GRANTED.

**2. UCL Claim**

Plaintiffs allege that Chase used unfair, deceptive and unlawful means to induce Plaintiffs to enter Trial Period modifications, to prolong the trial period payments and deny Plaintiffs permanent modification in violation of the UCL. (Compl.¶¶ 142–44.) Under Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof.Code § 17200.

The complaint alleges that Chase's unfair business practices include "[f]ailing to perform loan servicing functions consistent with its responsibilities to Plaintiffs and the Plaintiff Class and its responsibilities under HAMP." (Compl.¶ 143a.) Plaintiffs do not dispute that HAMP does not create a private right of action. *See Marks,* 2010 WL 2572988 at *5–6. Plaintiffs therefore may not assert a UCL claim based on alleged violations of HAMP because the UCL cannot create a private right of action where none exists under the federal statute. *Aleem v. Bank of America,* 2010 WL 532330 (C.D.Cal. Feb.9, 2010) (citing *Summit Tech., Inc. v. High–Line Med. Instruments Co., Inc.,* 922 F.Supp. 299, 316 (C.D.Cal.1996)).

*11 The complaint also alleges that Chase engages in unlawful business practices by violating state laws prohibiting breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Rosenthal Act. (Compl.¶ 142.) The complaint further alleges that Chase engages in fraudulent conduct by making misrespresentations and omissions of fact about permanent loan modifications which induced Plaintiffs to enter TPP Contracts. (Compl.¶ 144.) Because the Court determines that the TPP Contract makes no promise of permanent modification and dismisses those claims on which the UCL claim is predicated, the Court GRANTS Chase's motion to dismiss the sixth claim for relief for violation of Section 17200.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Chase's motion to dismiss the complaint without leave to amend. The clerk shall close the file.

**IT IS SO ORDERED.**

N.D.Cal.,2011.
Morales v. Chase Home Finance LLC
Slip Copy, 2011 WL 1670045 (N.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.