*EXHIBIT 3*



6 of 9 DOCUMENTS

**In re: CESAR M. DOBLE, Debtor, CESAR M. DOBLE, Plaintiff, v. DEUTSCHE BANK NATL TRUST COMPANY, AS TRUSTEE OF THE HARBORVIEW MORTGAGE LOAN TRUST 2005-5, MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2005-5 AND ONEWEST BANK, F.S.B., Defendants**

**BANKRUPTCY NO: 10-11296-MM13, CHAPTER: 13, AP: 10-90308-MM**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2011 Bankr. LEXIS 1449*

**April 14, 2011, Decided
April 14, 2011, Filed, Entered**

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] For Cesar M. Doble, Plaintiffs: David A St John, LEAD ATTORNEY, Oxnard, CA; David A. St. John, Oxnard, CA.

For Deutsche Bank Nat'l Trust Company, as Trustee of the HarborView Mortgage Loan Trust 2005-5, Mortgage Loan Pass-Through Certificates, Series 2005-5, under pooling and servicing agmt dated June 01, OneWest Bank, FSB, Defendants: William G. Malcolm, Malcolm, Cisneros, Irvine, CA.

**JUDGES:** MARGARET M. MANN, JUDGE.

**OPINION BY:** MARGARET M. MANN

**OPINION**

MEMORANDUM DECISION RE MOTION TO VACATE CLERK'S ENTRY OF DEFAULT AND MOTION TO DISMISS COMPLAINT; ORDER TO SHOW CAUSE FOR CONTEMPT OF COURT

Defendants One West Bank, F.S.B. ("One West") and Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee of the HarborView Mortgage Loan Trust 2005-5, Mortgage Loan Pass-Through Certificates, Series 2005-5 Under the Pooling and Servicing Agreement Dated June 1, 2005, were defaulted by debtor Cesar Doble ("Doble") when they failed to timely respond to the complaint ii this action ("Complaint"). The Complaint challenges Defendants' right to assert claims based upon a loan secured by Doble's residence, and seeks damages for Defendants' refusal to modify the loan. After the default, Defendants brought a Motion to Vacate [*2] Clerk's Entry of Default and a Motion to Dismiss Plaintiffs Complaint. The Court held several continued hearings on both motions, at which additional evidence and argument were presented.

Due to Defendants' misconduct in this case and others that threatens the integrity of the judicit process the Court declines to set aside the default. The Court also issues an order to show cause why Defendants should not be held in contempt and ordered to pay Doble's attorneys fees. Despite this ruling, the Court will not allow Doble relief he is not entitled to receive. The Court also grants much of the Defendants' Motion to Dismiss. Further proceedings will be scheduled to determine the judgment to be entered in this case.

**I. FACTUAL BACKGROUND**

### A. The Loan

Doble and his wife Martha Doble own a residence located at 1466 Heatherwood Avenue in Chula Vista, California ("Property"). The Property is encumbered by a deed of trust ("DOT") securing a promissory note ("Note") payable on its face to Plaza Home Mortgage, Inc. ("Plaza"), executed in connection with a $650,000 loan ("Loan") made by Plaza. The DOT identifies Plaza as "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. [*3] The DOT grants Lender the right to repayment of the Loan and performance of Borrower's covenants, explicitly stating that MERS "holds only legal title to the interests granted by Borrower" and MERS may exercise "any or all... interests, including ... the right to foreclose and sell the Property" only "if necessary to comply with law or custom." [1]

> 1 *See infra* Part II.BA.a.

The Dobles defaulted on the Loan a few years later and sought to take advantage of the federal Home Affordable Mortgage Program ("HAMP") by modifying the Loan so they could afford the payments. After a trial loan modification was granted, the Dobles made two payments in the modified amount. Despite the last payment under the modified Loan being in default, the Dobles were offered a permanent modification to the Loan, which they attempted to accept. Thereafter, the Dobles made no more payments under the Loan.

### B. The Bankruptcies

Martha Doble filed a chapter 13 bankruptcy case in 2009 (Case No. 09-16970-LA13, Bankr. S.D. Cal.), which was dismissed. Doble filed this Chapter 13 bankruptcy case on June 28, 2010. The Complaint filed by Doble the day after he filed bankruptcy seeks damages and equitable relief, alleging that [*4] Defendants have no secured or unsecured claims in this case, that they violated the automatic stay by seeking to foreclose on the DOT without owning the Loan, and that they failed to discharge their responsibilities regarding modifying the Loan. Based upon a slew of contradictory documents purporting to transfer interests in the Note and DOT among the Defendants, Plaza and MERS, One West and Deutsche Bank have each represented to the Court to be the owner of the Loan in both cases. One West has separately asserted it is the servicer of the Loan.

### C. Defendants' Failure to Respond to the Complaint

The summons to the Complaint established a response date of July 29, 2010. Together with the Complaint, the summons was promptly served and received by Defendants. Pursuant to their servicing agreement, Deutsche Bank forwarded the Complaint to One West's legal headquarters in Pasadena on July 2. Deutsche Bank then apparently did nothing further to respond to the Complaint, and One West misplaced the Complaint, failed to calendar a response, and did not otherwise follow-up on the matter.

The Complaint resurfaced after a response was due. When it was found on August 4, One West compounded the error. [*5] It did not follow internal protocol, which would have required the Complaint be sent to its litigation office in Austin, Texas, for referral to outside counsel. Instead, One West forwarded the Complaint to an outside vendor, Lender Processing Services ("LPS"), which is retained by One West to handle routine legal matters, but not litigation. LPS then exacerbated the problem by assigning an incorrect response date and sending the Complaint to the wrong outside counsel. In a final mishap, outside counsel neglected to look at the response date on the summons, and then waited another week until August 11 to request an extension. By this point, the default had already been entered.

Defendants filed their Motion to Vacate the Default and their Motion to Dismiss the Complaint on August 31, 2010. Defendants initially offered a declaration of outside counsel to explain their failure to timely respond to the Complaint. Counsel averred that he received the assignment of the Complaint on August 4, with a referral form showing a due date of August 20, although Defendants' Motion to Vacate contrarily states Defendants mistakenly believed the due date was August 11. Counsel apparently relied upon [*6] the incorrect due date on the referral form calculated by the outside vendor, and did nothing to confirm the correct response date, which was apparent from the face of the summons. Not until August 11 did counsel contact Doble to request an extension. Defendants were already in default by this time, and the extension was denied. [2]

> 2 Doble's reason for not agreeing to set aside the default was his frustration with the "false documents" submitted regarding ownership of the Loan.

Because the Defendants initially provided no reason for their failure to respond to the Complaint until after the response was overdue, the Court asked a series of questions regarding the improper calendaring. In response to the Court's questions, Defendants submitted the declaration of One West employee, Charles Boyle, who was resident in the Austin, Texas office. This employee averred that, after receipt of the Complaint in Pasadena, the Complaint was inadvertently logged into an automated referral system by a non-legal staff employee who has since resigned. Boyle averred this error was discovered the first week of August by a supervisor who re-referred the Complaint to local counsel.

Since Defendants had still [*7] not answered many of the Court's questions, the Court again requested more information. Specifically, the Court requested Defendants provide more information regarding: 1) Boyle's personal knowledge of the events in Pasadena given his residence in Texas; 2) what happened to the Complaint during the first month after it was served, and 3) why outside counsel waited seven days to contact Doble after receiving the Complaint on August 4. Finally, at the hearing on December 16, 2010, in response to questions asked from the bench, counsel for Defendants provided a more complete story: the Complaint had been lost, there were multiple departures from protocol, and several attorneys had received the Complaint and not bothered to review it. After a final attempt to clarify some of the facts pertaining to ownership of the Loan and why Defendants failed to timely respond to the Complaint, the Court took the matter under submission on February 3, 2011.

## II. ANALYSIS

### A. Defendants have not Demonstrated Good Cause to Vacate the Clerk's Default

Rule 55(c) permits the Court to set aside an entry of default only "for good cause." Defaulting parties have the burden of proving good cause. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) [*8] (quoting *TCI Group Life Ins. Plan, Life Ins. Co. of N. Am. v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)).

To determine whether good cause exists, courts consider (1) whether the default is the result of the defaulting party's "culpable conduct"; (2) whether the defaulting party has a "meritorious defense"; or (3) whether reopening the default would "prejudice" [3] the innocent party. *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). [4] The test for good cause is disjunctive, and the defaulting party must prove all three factors favor setting the default aside. *Franchise Holding, 375 F.3d at 926*; *Mesle, 615 F.3d at 1091*. If any one factor favors upholding the default, the Court need not set it aside. *Id*. However, all doubt should be resolved in favor of a trial on the merits. *Id*. While there was no prejudice to Doble for the delayed response, the Court is without doubt that Defendants' pervasive misconduct alone precludes a finding of good cause to set aside the default.

---

3 To be prejudicial, reopening the default must result in greater harm than a mere delay in relief. *Mesle, 615 F.3d at 1095*; *see also Franchise Holding II, 375 F.3d at 926* (plaintiff was prejudiced where there [*9] was a possibility that a delay in judgment would allow defendant an opportunity to hide assets). Here, Defendants have asserted that Doble is not prejudiced by their delay and there is no evidence before the Court to the contrary. Ultimately, however, since *Rule 55(c)*'s good cause factors are disjunctive, and Defendants' conduct is culpable, a prejudice analysis is unnecessary.

4 The *Rule 55(c)* good cause factors are identical to those used to consider whether relief should be granted from a default judgment under *Rule 60(b)*. *See Mesle, 615 F.3d at 1091*; *TCI, 244 F.3d at 696*. However, while the factors are the same, the standards for evaluating the factors are distinct. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1401 (7th Cir. 1993). *Rule 55(c)*'s relief from default standard is less rigorous than the relief from judgment standard of *Rule 60(b)*. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("The different treatment of default entry and judgment by *Rule 55(c)* frees a court considering a motion to set aside a default entry from the restraint of *Rule 60(b)* and entrusts determination to the discretion of the court."); *accord Tessill v. Emergency Physician Assocs.*, 230 F.R.D. 287, 289 (W.D.N.Y. 2005).

---

To [*10] determine whether Defendants have a meritorious defense, the Court has evaluated Defendants' Motion to Dismiss, including admitting evidence and taking judicial notice as requested of the documents of

public record in the case. *See Fed. R. Evid. 201*; *Fed. R. Civ. P. 55(b)(2)*; *Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)*. The Court agrees that Doble cannot state a claim for relief on his third, fourth, and part of his first and second causes of action, and dismisses these claims with prejudice. Upon a proper motion to enter a default judgment under *Rule 55(b)(2)*, the Court will exercise its discretion to permit the submission of evidence from all parties on whether Doble can prove his prima facie case on the other claims. However, Defendants will be prohibited from presenting a case in defense of Doble's claims because the default will be upheld.

**1. Defendants Are Culpable**

A defendant's conduct is culpable if it is consistent with a "devious, deliberate, willful, or bad faith failure to respond." *Mesle, 615 F.3d at 1092*. Where a defendant's actions are negligent, and not intentional, the defendant is not culpable. *Id; TCI, 244 F.3d at 698-99*. For "legally sophisticated" [*11] defendants, however, intentionality is assumed because legally sophisticated parties are held to understand the consequences of their actions. *Mesle, 615 F.3d at 1093*. As large financial institutions, One West and Deutsche Bank are sophisticated parties.

Where sophisticated defendants are aware of the pendency of a suit, but are indifferent to the consequences of not responding, culpability may be found even when bad faith is absent. *Franchise Holding II, 375 F.3d at 926* (defendant was culpable for failing to respond despite plaintiffs warning it would seek a default after side-agreement negotiations broke down); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 690 (9th Cir. 1988)* (defendant was culpable in not responding due to a mistaken belief service was improper); *Orach USA, Inc. v. Qtrax, Inc., No. C09-3334 SBA, 2010 U.S. Dist. LEXIS 97630, at \*12-\*13 (N.D. Cal. Sept. 3, 2010)* (defendant's conduct was culpable when defendant did not respond to accommodate the convenience of the CEO, cost considerations, and its hope for a settlement); *Markel Ins. Co. v. Dahn Yoga & Health Ctrs., Inc., No. C09-1221RSM, 2010 U.S. Dist. LEXIS 58763, at \*11-\*15 (W.D. Wash. May 17, 2010)* [*12] (defendants were culpable where one failed to keep registered service agent updated on its address and another failed to inform itself that the client had waived a service problem).

Defendants' conduct can only be described as an intentional disregard for their obligations to comply with Court procedures and provide candid answers to the Court's questions. As in *Franchise II, Oracle, Direct Mail*, and *Markel*, Defendants were aware of the suit and the consequences of the default, but repeatedly failed to follow their own protocols. Defendants have never explained why none of Defendants' three attorneys [5] properly calendared the response date. Whether due to apathy or profit maximizing considerations, Defendants relied exclusively upon a non-attorney outside vendor, contrary to protocol, and failed to properly implement litigation procedures. *See Franchise II, 375 F.3d at 926*; *Oracle, 2010 U.S. Dist. LEXIS 97630, at \* 10-12* (defendants failed to appropriately allocate corporate resources to respond to the litigation). This misplaced reliance on a non-attorney to calculate a response time is similar to the conduct of the defendants in *Direct Mail* and *Markel*, who erred in their analysis [*13] that service was improper. *See Direct Mail, 840 F.2d at 690*; *Markel, 2010 U.S. Dist. LEXIS 58763, at \*16* ("[Defendant] will not be heard to object that service was improper, nor blame its failure to respond ... on poor document management policies."). Defendants' multiple errors are also thus distinguishable from *Park v. U.S. Bank Nat'l Ass'n, No. 10cvl546-WQH-WMc, 2010 U.S. Dist. LEXIS 123119, at \*8-\*10 (S.D. Cal. Nov. 19, 2010)*, where the defendants' failure to answer was the result of an unintentional administrative error rather than culpable misconduct. While the Court appreciates that mistakes happen and isolated negligence can be excusable neglect, *see Pioneer, 507 U.S. at 407-08*, [6] what happened here was not mere negligence.

> 5   These three attorneys are the Deutsche Bank counsel who forwarded the Complaint to One West, the One West Corporate Legal Department who received both the One West Complaint it received on its own behalf and the Complaint sent by Deutsche Bank, and Burnett & Matthews, the first outside counsel who received the Complaint.
>
> 6   This reading of culpability is consistent with the Supreme Court's interpretation of the analogous "excusable neglect" standard of *Rule 60(b)(1)*. [*14] *Pioneer Inv. Serv.Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 393, 395-97, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)* (a party's failure to respond is excusable if inadvertent or negligent); *Mesle, 615 F.3d at 1092*; *Franchise Holding II, 375 F.3d at 927*.

Compounding their culpability problems, the Court finds that Defendants' initial explanation of the default was neither candid nor credible. A "devious" failure to respond is culpable. *Mesle, 615 F.3d at 1092*. The full story belies their initial characterization that their errors in handling the Complaint were minor and isolated. No less than six mistakes or breaches of protocol occurred in how the Complaint was handled: (1) both copies of the Complaint were not sent immediately to Boyle in Austin, Texas, where litigation was to be handled; (2) the Complaint was lost for a month; (3) when the Complaint was found on August 4, 2010, it was not sent to Austin as protocol demanded, but mistakenly logged into the non-attorney LPS system; (4) LPS miscalculated the response date for the Complaint; (5) LPS incorrectly assigned the response to a law firm who was not the appropriate counsel to handle litigation for One West; and (6) Outside counsel failed to check the correct response [*15] date and relied upon the LPS miscalculation. The Court cannot accept Boyle's claim that new intake protocols have solved One West's systemic problems. Defendants themselves could not fully explain what went wrong in their efforts to respond to the Complaint. Even after three tries, Defendants have left questions unanswered.

Defendants' disregard for their obligations of candor to the Court and compliance with Court procedures, not only in connection with the entry of default, but also in the presentation of numerous other documents to the Court on the merits, is culpable. The default will not be set aside.

**2. Defendants Acted in Bad Faith**

Defendants' conduct in presenting evidence on the merits of this case and others demonstrates a callousness towards their legal obligations that amounts to bad faith; an additional reason not to set aside the default. Defendants filed numerous pleadings in this case and in the Martha Doble case seeking the Court's assistance in enforcing the Loan. [7] This Court was forced to repeatedly request additional evidence from Defendants to evaluate their own motions. [8] Defendants' pleadings and transactional documents [9] tell a convoluted tale as to who owns the [*16] Loan and is thus entitled to enforce it.

  7   In the Martha Doble case, in a Declaration filed May 4, 2010, Deutsche Bank, through its purported power of attorney, One West, claimed to be the owner of the Loan based upon a chain of assignments. Deutsche Bank claimed the same in its proof of claim. However, in this case, One West filed the proof of claim for the Loan identifying itself as the creditor. In this adversary case, Defendants averred MERS assigned all beneficial interest under the DOT to One West on October 22, 2009 and One West assigned all beneficial interest to Deutsche Bank in an unrecorded assignment dated May 19, 2010. This assignment to Deutsche Bank on May 19, 2010, however, is dated after Deutsche Bank averred to this Court on May 4, 2010 that it was the owner of the Loan. Separately, Deutsche Bank has also claimed it owned the Loan as of 2008 without evidentiary support.

  8   The Court on October 5, 2010 issued a tentative ruling continuing the hearing on the Motions and seeking additional evidence regarding who had the right to foreclose the Loan, and whether the Loan Modification Agreement, which Doble alleges he executed on June 3, 2010, was also executed by Defendants. [*17] The Court issued another tentative ruling on December 15, 2010 seeking an "explanation from Defendants regarding the contradictory statements submitted by Defendants under penalty of perjury in both Debtor's and Martha Doble's bankruptcy cases regarding the identity of the owner of the Note," the role of One West, and the circumstances of the endorsement of the Note. The Court inquired twice more regarding the circumstances of the alleged loan modification and the Defendants' default.

  9   Defendants provided the Court with an "Assignment of Deed of Trust" executed on June 26, 2009 through which MERS, as the original beneficiary, purports to assign to One West all beneficial interest under the DOT, "together with the Note" ("Assignment 1"). However, One West did not record its interest until after its foreclosure proceedings were started. On July 14, 2009, a Notice of Default on the loan was recorded by One West, even though One West lacked any recorded interest in the Loan at the time. Only when One West recorded a Notice of Sale on the Loan on October 22, 2009, did it finally record Assignment 1.

  On November 24, 2009, One West executed, but did not record, an Assignment of Deed of

Trust [*18] to Deutsche Bank "together with the Note" ("Assignment 2"). Then on May 19, 2010, One West executed but did not record another Assignment of Deed of Trust "together with the Note" ("Assignment 3") to Deutsche Bank. Deutsche Bank curiously produced a copy of a power of attorney it granted to One West regarding ownership of the Loan. Whatever significance this power of attorney has, it does not support the assignment from One West to Deutsche Bank because Deutsche Bank had no apparent rights to the Loan before it received them from OneWest.

The most disconcerting misrepresentation to the Court was Defendants' submission of multiple "true and correct" copies of the Note under penalty of perjury without any endorsement from Plaza. Whether the Note was endorsed is central to the merits of this case. When Defendants finally submitted an endorsed copy of the Note on November 8, 2010, they attempted to pass off the first three unendorsed copies of the Note as "illegible." The first three copies of the Note were fully readable, so the phantom endorsement page was not a problem with legibility. The timing of this tardily produced endorsement, produced after several requests, suggests it was added [*19] only in response to the litigation. To add to the Court's incredulity, Defendants have never answered the Court's specific questions as to when and under what circumstances this newly proffered endorsement was executed. For the purpose of its analysis on the merits, the Court finds that the endorsement was not made until it was presented to the Court on November 8, 2010. [10]

> 10  This sanction is similar to the entry of a default judgment against Defendants for their bad faith failure to comply with the orders of this Court. *See, e.g., Carter v. Brooms (In re Brooms)*, No. NC-10-1117-KiSah, 2011 Bankr. LEXIS 648, at *21 (B.A.P. 9th Cir. Jan. 18, 2011) (upholding the court's default judgment pursuant to *7016(d)* for a party's failure to comply with a pre-trial order).

This lack of candor in the presentation of evidence on the merits supports a finding of bad faith in regard to the default. The court system can only function if parties take their representations and responsibilities seriously. *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*; *see also In re Snyder, 472 U.S. 634, 641, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985)*. Courts have held that a lender's actions amount to bad faith where the lender is shown to have routinely [*20] misrepresented its role in bankruptcy cases, caused unnecessary litigation, or prejudiced another party. *See Ameriquest Mortg. Co. v. Nosek (In re Nosek), 609 F.3d 6, 9 (1st Cir. 2010)*. In two previous cases before this Court, Defendant One West has been ordered to show cause for failing to comply with its obligations as a party before the Court. *See In re Carter*, Ch. 13 Case No. 10-10257-MM13 (Bankr. S.D. Cal.); *In re Telebrico*, Ch. 13 Case No. 10-07643-LA13 (Bankr. S.D. Cal.). Not only in this action, but in others as well, One West has demonstrated a "confusion and lack of knowledge, or perhaps sloppiness, as to their roles." *Ameriquest, 609 F.3d at 9.* [11]

> 11  Specifically, an inability to coherently prove ownership is both endemic to the industry, and a common problem. *Ameriquest, 609 F.3d at 9*; *see also, e.g., U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 941 N.E.2d 40 (2011)* (holding US Bank did not sufficiently demonstrate it held title to a mortgage under Massachusetts law prior to foreclosure where US Bank alleged it received title pursuant to a trust agreement and did not provide the trust agreement but, instead, provided an unsigned offer of mortgage-backed securities to potential investors [*21] that did not specifically identify the mortgage in question).

The Court's finding here is consistent with the findings of the academics and reporters who note this pattern of behavior is common in the mortgage industry. Studies have shown that mortgage holders and servicers routinely file inaccurate claims, some of which may not be lawful. *See* Katherine Porter, *Misbehavior and Mistake in Bankruptcy Mortgage Claims*, 87 Tex. L. Rev. 121, 123-24 (2008); Andrew J. Kazakes, *Developments in the Law: the Home Mortgage Crisis*, 43 Loy. L.A. L. Rev. 1383, 1430 (2010) (citing David Streitfeld, *Bank of America to Freeze Foreclosure Cases*, N.Y. Times, Oct. 2, 2010, at B1) (reporting that after revelation of Porter's study several Banks froze foreclosures); Eric Dash, *A Paperwork Fiasco*, N.Y. Times, Oct. 24, 2010, at WK5 (reporting the repeal of the initial freeze and the problems banks faced in

clearing up foreclosure paperwork). The Inspector General overseeing the recent financial crisis has studied this issue and concluded:

> Anecdotal evidence of [loan servicers'] failures [have] been well chronicled. From the repeated loss of borrower paperwork, to blatant failure to follow program standards, [*22] to unnecessary delays that severely harm borrowers while benefiting servicers themselves, stories of servicer negligence and misconduct are legion, and . . . they too often have financial interests that don't align with those of either borrowers or investors.

Office of the Special Inspector General for the Troubled Asset Relief Program, Quarterly Report to Congress 12 (Jan. 26, 2011), *available at* http://www.sigtarp.gov/ (follow link for "Quarterly Report to Congress").

Because Defendants' conduct in not responding to the Complaint was intentional and in bad faith, the Court will not set aside the default.

**B. Resolution of the Merits of the Case**

To uphold the default entered against Defendants, the Court must consider both the merits of Defendants' defense and the merits of Plaintiff's case, as challenged in Defendants' Motion to Dismiss. *Mesle, 615 F.3d at 1094* (defaulting party must present a valid defense before court can set aside a default); *Fed.R. Civ. P. 55(b)*; *Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986)*; *Cashco Fin. Servs. v. McGee (In re McGee), 359 B.R. 764, 771 (B.A.P. 9th Cir. 2006)* (default judgment requires assessment of the merits of plaintiff's claims). [12] This [*23] task is made more difficult since neither Doble's Complaint, nor Defendants' Motion to Dismiss, is a model of clarity. Five causes of action are alleged in the Complaint, but more than five are presented.

---

[12] After entry of a default, a court may exercise its discretion to enter a default judgment on the merits of the case. *Fed. R. Civ. P. 55(b)*; *Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)*. The Ninth Circuit in *Eitel* identified the following factors for a court to consider in exercising that discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel, 782 F.2d at 1471-72*.

Defendants' Motion to Dismiss complicates the analysis further since it questions a few, but not all, of Doble's claims. Defendants claim MERS had authority to transfer the Loan as a matter of law, but not that the assignment was properly executed or acknowledged. [*24] Defendants dispute Doble's attempt to employ *11 U.S.C. §544(a)* to set aside the MERS' assignment to One West. They also argue HAMP does not provide a private cause of action. Defendants do not, however, address the state law claims contained in the fifth cause of action.

Sorting the parties' claims and defenses, the Court concludes some of Doble's claims lack merit, and others require further evaluation. Even though the Court will uphold the default entry resulting from Defendants' culpable conduct, it will nevertheless dismiss with prejudice Doble's third and fourth causes of action, and part of Doble's first and second causes of action relating to New York Trust law and *11 U.S.C. § 544(a)*. See *Moore v. United Kingdom, 384 F.3d 1079, 1090 (9th Cir. 2004)* (invalid causes of action may be dismissed despite default). The Court will hold further proceedings on the remaining claims to respect the due process rights of Defendants. *Danning v. Lavine, 572 F.2d 1386, 1388-89 (9th Cir. 1978)* (default judgment proceedings should be consistent with due process).

**1. Defendants' Secured and Unsecured Claims (1st and 2nd Causes of Action)**

The first two causes of action seek damages and disallowance [*25] of Defendants' secured and

unsecured claims for lack of standing on four separate grounds: (a) MERS' assignment of the DOT to One West and, in turn, One West's assignment to Deutsche Bank, were invalid; (b) Defendants have no interest in the Note nor any right to enforce it under California law; (c) the assignment of the DOT to Deutsche Bank was not of public record; and (d) Defendants violated New York Trust law so that Deutsche Bank cannot be the owner of the Loan as a matter of law. Where a secured creditor cannot establish a right to enforce a loan, it has no standing to file or defend a claim, or to seek relief from stay. *In re Gavin, 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004)*; *In re Hayes, 393 B.R. 259, 269-70 (Bankr. D. Mass. 2008)*.

Although the Court rejects Doble's New York Trust claims and his avoiding power claim, the record here supports Doble's first three standing claims. MERS had no authority to assign the DOT, under its terms and as a matter of law, without the authority to assign the Note. The Note was not assigned until it was endorsed by Plaza. Until that endorsement, the MERS' assignments were a nullity. Deutsche Bank currently lacks authority to enforce the Loan as [*26] the assignee of Plaza, and will continue to lack authority until it records its assignment.

### a. MERS Cannot Transfer DOT Enforcement Rights to Defendants

Defendants' Motion to Dismiss relies upon MERS' status as nominal beneficiary of the DOT [13] to establish their standing to enforce the Loan. They cite several cases which have so held. *Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092, 1099 (E. D. Cal. 2010)*; *Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009)*; *Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009)*; see also *Perry v. Nat'l Default Servicing Corp, No. 10-CV-03167-LHK, 2010 U.S. Dist. LEXIS 92907, at *11 (N.D. Cal. Aug. 20, 2010)*. [14] The Court does not disagree with these cases to the extent they hold MERS need not have physical possession of the note to commence a foreclosure, and securitization of a mortgage note need not impact the enforceability of the mortgage itself. The key issue before the Court is different: whether MERS had statutory authority to assign the DOT under its terms, particularly when MERS held no rights under the Note. To decide this issue, the Court rejects Defendants' invitation [*27] to overlook the statutory foreclosure mandates of California law, and rely upon MERS as an extra-judicial commercial alternative. [15]

> 13  The DOT states "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." DOT at p. 1.
>
> 14  Under Ninth Circuit law this Court may decline to follow these decisions because it is not bound. *State Compensation Ins. Fund v. Zamora (In re Silverman), 616 F.3d 1001, 1005 (9th Cir. 2010)*. While the Ninth Circuit reserved the issue of whether bankruptcy courts are bound by district court decisions within the district where the bankruptcy court sits, it recognized that such a requirement "could create the same problem of subjecting bankruptcy courts to a non-uniform body of law." *Id.*
>
> 15  The Court notes that circumventing the public recordation system is, in fact, the purpose for which the MERS system was created. *Merscorp, Inc. v. Romaine, 8 N.Y.3d 90, 861 N.E.2d 81, 828 N.Y.S.2d 26, 2006 NY Slip Op. 9500, slip op. 6 (Ct. of Appeals 2006)*. Creation of a private system, however, is not enforceable to the extent that it departs from California law as explained in this Memorandum Decision.

The [*28] DOT is a four party instrument among the Dobles as Borrowers, Plaza as Lender, First American Title as trustee, and MERS as beneficiary. The Lender's rights regarding the Loan are pervasive. The Lender (Plaza) is entitled to receive all payments under the Note, to control enforcement of the DOT under its terms, and only the Lender is entitled to conduct a nonjudicial foreclosure. [16]

> 16  Under the DOT, the Lender is secured the right to: "(i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note." In addition, under the covenants executed between the Lender and Doble, the Lender is granted exclusive authority to accelerate repayment, "give notice to Borrower prior to acceleration," "invoke the power of sale" through written notice to the Trustee in the event of default, and appoint successor trustees. DOT at pp. 2, 11, 12.

MERS has none of these rights under the DOT and is not even mentioned in the Note. MERS is not given any independent authority to enforce the DOT under its terms, and its status as beneficiary under the DOT is only "nominal." While [*29] the Borrowers acknowledge in the DOT that MERS can exercise the Lender's rights as "necessary to comply with law or custom," [17] this acknowledgement is not accompanied by any actual allocation of authority to nonjudicially foreclose on the Property, nor is such authority allocated in any other document in the record. *See also, e.g., LaSalle BankNat'l Ass'n v. Lamy, No. 030049/2005, 12 Misc. 3d 1191A, 824 N.Y.S.2d 769, 2006 NY Slip Op 51534U, slip op. 2 (N.Y. Sup. Ct. 2006); MERS v. Saunders, 2010 ME 79, 2 A.3d 289, 295 (Me. 2010)* ("MERS' only right is to record the mortgage. Its designation as the 'mortgagee of record' in the document does not change or expand that right...."). Defendants' authority to foreclose cannot, therefore, be derived from MERS because MERS never held such authority. [18] *Shannon v. General Petroleum Corp., 47 Cal. App. 2d 651, 661, 118 P.2d 881 (1941)* (assignment can only carry rights owned by the assignor.)

> 17   The DOT provides, "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, *if necessary to comply with law or custom*, MERS (as nominee of Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, [*30] including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument." DOT at p. 3 (emphasis added).
>
> 18   Since the briefing on this matter was completed, *Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1151-58 (4th Dist. 2011)* was decided. *Gomes* held that there is no cause of action under *Civil Code section 2924(a)(1)* that would permit a borrower to test MERS' authority to initiate a nonjudicial foreclosure without a specific factual basis for the challenge. Neither *Gomes* nor *Civil Code section 2924(a)(1)* however, address *Civil Code section 2932.5*, applicable when an assignee forecloses. *Id. at 1155*. Instead, *Gomes* relied upon the borrower's acknowledgement of MERS' authority in the DOT to allow MERS to foreclose as nominal beneficiary. *Gomes, 192 Cal. App. 4th at 1157-58*. MERS, here, had no such authority under the DOT. The Lender, not MERS, has the right to "invoke the power of sale" under the DOT.

Even though MERS' status as the nominal beneficiary of the DOT may have allowed it to assign that limited status, this authority does not convey [*31] a right to enforce the Loan. An assignment of a mortgage without assignment of the corresponding debt is a nullity under controlling law. *Carpenter v. Longan, 83 U.S. 271, 275, 21 L. Ed. 313 (1872); Kelley v. Upshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); Johnson v. Razy, 181 Cal. 342, 344, 184 P. 657 (1919)* ("A mortgage is mere security for the debt, and it cannot pass without transfer of the debt."); *Polhemus v. Trainer, 30 Cal. 685, 30 Cal. 686, 688 (1866)* (interest in the collateral subject to the mortgage does not pass "unless the debt itself [is] assigned."). Within California's comprehensive statutory nonjudicial foreclosure scheme found at *Civil Code sections 2920-2955*, four separate statutes corroborate that the secured debt must be assigned with the deed of trust. [19]

> 19   These statutes are: *Civil Code sections 2932.5* (assignee of secured debt cannot nonjudicially foreclose without right to payment and a recorded assignment), *2935* (notice of an assignment of a mortgage does not change the borrowers' obligation to make payments to the holder of the note), *2936* (transfer of a note carries with it an assignment of the debt, not vice versa), and *2937* (borrowers must be notified of transfers of servicing rights).

Since MERS could [*32] not assign any enforcement rights under the Note or DOT because it held none, Defendants could not rely on the invalid MERS assignment to enforce the DOT. *Polhemus, 30 Cal. at 688; see also U.S. BankNat'l Ass'n v. Ibanez, 458 Mass. 637, 651, 941 N.E.2d 40 (2011)*. They had to receive an assignment from Plaza as the payee of the Note before the MERS assignment of its nominal interest in the DOT could have any enforceable impact.

**b. Defendants' Right to Enforce the Note**

A negotiable promissory note such as the Note can only be enforced in accordance with Article 3 of the Commercial Code ("CCC"), *Cal. Com. Code §§ 1101-16104* (Deering 2011). The CCC permits

enforcement of a note by a party who: (1) holds a directly endorsed note (*section 1201(b)(21)*);(2) previously had the ability to enforce the note, but it was lost, destroyed, or stolen (*section 3309*);(3) has possession of an endorsed-in-blank instrument (*section 1201(b)(21)*); or (4) can prove both possession of the enforcement rights received from its transferor (*section 3301*). *Id; In re McMullen Oil Co., 251 B.R. 558, 568 (Bankr.C.D. Cal. 2000); In Re Carlyle, 242 B.R. 881, 887 (Bankr. E.D. Va. 1999)*. These requirements apply to every link in the chain of [*33] transfer of the note. Where a note has been assigned several times, each assignment in the chain must be valid or the party claiming the note cannot enforce it. *In re Gavin, 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004); In re Wells, 407 B.R. 873 (Bankr. N.D. Ohio 2009)*. Even if a party is the owner of a promissory note, it is not entitled to enforce the note unless it meets the statutory criteria for enforcement. *Cal.Com. Code §3203(b)* cmt. 2.

Enforcement option 1 is not applicable. The Note is not payable to Defendants, but to Plaza. Neither Defendant can enforce the Note as a direct payee or endorsee. *In re Wilhelm, 407 B.R. 392, 402 (Bankr. D. Idaho 2009); Chicago Title Ins. Co. v. Allfirst Bank, 394 Md. 270, 905 A.2d 366, 374 (Md. 2006)*. No claim was made that the Note was lost or stolen, which eliminates option 2.

As to option 3, not until November 8, 2010 did Defendants produce the Note endorsed in blank by Plaza. An endorsement is not effective until it is signed. *Com.Code §3203(c); Security Pacific Nat. Bank v. Chess, 58 Cal. App. 3d 555, 564, 129 Cal. Rptr. 852 (1976)*. Until the note is properly endorsed, assignments of the deed of trust do not serve to transfer enforcement rights. *Id*. The endorsement must be on [*34] the note or attached. *Lopez v. Puzina, 239 Cal. App. 2d 708, 714, 49 Cal. Rptr. 122 (1st Dist. 1966)*.

Defendants did not attempt to demonstrate the requirements of option 4; that they had possession of the Note and that Plaza had transferred to them the right to enforce it even without an endorsement. Instead, they erroneously relied upon the MERS assignment. *Com.Code § 3203 (a), (b)* n.17; *In re McMullen Oil Co., 251 B.R. 558, 567 (Bankr. CD. Cal. 2000); In re Agard, No. 10-77338-reg, 2011 Bankr. LEXIS 488, at *58 (Bankr. E.D.N.Y. Feb.10, 2011)* ("[E]ven if MERS had assigned the Mortgage acting on behalf of the entity which held the Note at the time of the assignment, this Court finds that MERS did not have authority, as "nominee" or agent to assign the Mortgage absent a showing that it was given specific written directions by its principal."). Under the circumstances of this case, the Court declines to give the Defendants another chance to "prove the transaction." Instead, the Court finds that Defendants did not have any right to enforce the Note before November 8, 2010, when they produced an endorsement of the Note from Plaza.

**c. Deutsche Bank's Assignment of the DOT Must Still be Recorded**

Although Deutsche [*35] Bank met the first of the foreclosure prerequisites to enforce the power of sale in the DOT under *Civil Code section 2932.5* [20] when it became the holder of the Note on November 8, 2010, it still failed to meet the second. *Civil Code section 2932.5* requires that the assignee of the secured debt record its interest before it can exercise the power of sale under the DOT and nonjudicially foreclose. Deutsche Bank admits it has recorded neither of the two assignments from One West to Deutsche Bank. Deutsche Bank, therefore, still lacks authority to enforce the DOT, and any enforcement actions taken thus far are void. *Ibanez, 458 Mass. at 651; Polhemus, 30 Cal. at 688*.

20   *Civil Code section 2932.5* provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. *The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded*.

*Civ. Code § 2932.5* (Deering 2011) (emphasis added). While the exact language of *Civil Code section 2932.5* [*36] mentions mortgages and not deeds of trust, the distinction between the two instruments is obsolete. *N Brand Partners v. Colony GFP Partners, L.P. (In re 240 N Brand*

*Partners), 200 B.R. 653, 658 (B.A.P. 9th Cir. 1996)* ("The terminology creates a difference without distinction."); *Yulaeva v. Greenpoint Mortg. Funding, Inc., No. S-09-1504, 2009 U.S. Dist. LEXIS 79094, at *4 (E.D. Cal. Sept. 3, 2009)* (citing 4 B.E. Witkin, *Summary of California Law*, ch. VIII, § 5 (10th ed. 2005)); *Bank of Italy Nat. Trust & Sav. Assn. v. Bentley, 217 Cal. 644, 656, 20 P.2d 940 (1933)* (legal title under a deed of trust, though held by the trustee to the extent necessary for execution of the trust, does not carry any "incidents of ownership of the property"); *see also* 1 Roger Bernhardt, *California Mortgages, Deeds of Trust, and Foreclosure Litigation*, § 1.35 (4th ed. 2009); *Bank of Italy Nat. Trust & Sav. Assn. v. Bentley, 217 Cal. 644, 656, 20 P.2d 940 (1933)* (legal title under a deed of trust, though held by the trustee to the extent necessary for execution of the trust, does not carry any "incidents of ownership of the property"); 4 Harry D. Miller & Marvin B. Starr, *Miller & Starr California Real Estate*, § 10:1 n. 9 (3d 2010) [*37] (citing *Domarad v. Fisher & Burke, Inc., 270 Cal. App. 2d 543, 553, 76 Cal. Rptr. 529 (1st Dist. 1969))* (mortgages and deeds of trust have the same effect and economic function and are "subject to the same procedures and limitations on judicial and nonjudicial foreclosure").

**d. New York Trust Law**

As part of the first and second causes of action, Doble alleges that Deutsche Bank cannot own the Loan because the Loan was not properly transferred to it in accordance with New York Trust law and the trust documents. Under the terms of the Purchase and Servicing Agreement ("PSA"), Doble alleges all assets to be part of the trust had to be conveyed before June 1, 2005. Since none of the assignments of the Loan met that deadline, Doble claims Deutsche Bank has no interest in the Loan. Defendants, in turn, claim Doble has no standing to challenge the trust, citing *Rogan v. Bank One, N.A. (In re Cook), 457 F.3d 561, 567 (6th Cir. 2006)*. While the Court agrees that Doble has no standing to interfere with trust administration, he does have standing to challenge Defendants' assertion they had standing to file a claim and to seek to foreclose the Loan. *Wilhelm, 407 B.R. at 400*.

The Court nevertheless finds the allegations [*38] of this claim to be too flawed to remain a part of this suit. *See Eitel, 782 F.2d at 1471*. Based on the allegations of the Complaint, the Court cannot determine whether the Loan was validly conveyed to the trust, whether the trust is invalid, or what effect such an invalidation would have on Defendants' claim. [21] Doble has provided no legal support for his claims. His citation to *New York Estate Powers and Trusts Law section 7-2.4* (Consol. 2010), to support that any "sale, conveyance, or other act" in "contravention" of the trust is void, is incorrect. [22]

21 Specifically, the Court is unclear as to (1) whether the PSA intended to transfer the Loan to the trust (Was Doble's Loan listed on the mortgage schedule?); (2) whether, if the PSA did intend to transfer the Loan to the trust, whether it made the transfer and documentation of the transfer was lost or whether the Loan was never transferred at all (Was the mortgage file conveyed to the trustee? Did the trustee certify the receipt of the mortgage file? Did the trustee attempt to exercise the Repurchase Provisions of the trust?); (3) whether, if the PSA intended to transfer the Loan, the parties failed to properly transfer it or whether [*39] the Loan was properly transferred but subsequent documentation was lost; and (4) whether, if the PSA did not intend to transfer the Loan to the trust, a subsequent transfer to the trust is valid under the terms of the PSA (Did the trustee receive an REMIC opinion? Did the trustee make other arrangements prior to the subsequent transfer to protect the trust's REMIC status? Does a violation of the trust's REMIC status negate the transfer or simply leave the trust vulnerable to an REMIC adverse event for purposes of the Tax Code?)

22 New York Estate Powers and Trusts Law is not relevant here. Under *section 11-1.1(a), New York Estate Powers and Trusts Law* explicitly excludes business trusts. The Trust here is registered with the SEC, and the PSA provides for the issuance of certificates and the election of REMIC status with the IRS. Trusts whose shares are traded on the American Stock Exchange and that qualify as "real estate investment trusts" under the Internal Revenue Code are considered business trusts. *Prudent Real Estate Trust v. Johncamp Realty, Inc., 599 F.2d 1140, 1141 (C.A.N.Y. 1979)*. As a business trust, New York's

Estate Powers and Trusts Law does not govern Deutsche Bank's ownership [*40] of the Loan. Rather, the ownership issue is governed by law applicable to trusts generally. *See, e.g., Fogelin v. Nordblom, 402 Mass. 218, 521 N.E.2d 1007, 1012 (Mass 1988)*; *In re Great Northern Iron Ore Props., 263 N.W.2d 610 (Minn. 1978)*.

Doble's New York trust claim within the first and second causes of action therefore will be dismissed with prejudice.

## 2. The Assignments May Not be Avoided (2nd Cause of Action)

The Court agrees that Doble has no viable avoiding power claim to assert as a result of Defendants' recordation of assignments after the Martha Doble bankruptcy case was filed. Doble was provided constructive notice of Defendants' lien from the recordation of the DOT, regardless of whether interests in the Loan were later transferred. *In re Cook, 457 F.3d at 568*; *Kapila v. Atl. Mortg. & Inv. Corp. (In re Halabi), 184 F.3d 1335, 1338 (11th Cir. 1999)*; *see also In re Probasco, 839 F.2d 1352,1354 (9th Cir. 1988)* (applying California law, a bona fide purchaser who records prevails over a prior transferee who failed to record). The Court also notes these claims are property of the Martha Doble bankruptcy estate, not this case. Doble thus lacks standing to assert this claim. *See Estate of Spirtos v. One San Bernardino County, 443 F.3d 1172, 1176 (9th Cir. 2006)* [*41] (husband does not have authority to assert claims on the part of wife without substantial proof of standing). This part of the second cause of action is also dismissed with prejudice.

## 3. Violation of Stay (3rd Cause of Action)

Doble's third cause of action alleges [23] that Assignments 2 and 3 from One West to Deutsche Bank were executed post-petition in Martha Doble's case, and are void and in violation of his co-debtor stay under *11 U.S.C. §1301*. In response, Defendants assert that the stay is not violated by assignments of their mortgage interests post-petition, because those interests do not belong to Martha Doble's bankruptcy estate.

> 23   While Doble does not limit the cause of action to just this allegation, and instead states "the actions of [Defendants] as set forth hereinabove" constitute violations of the stay,

these allegations are too diffuse to address without more specificity.

The Court agrees that this is not a valid cause of action. Because the automatic stay only applies to transfers of a debtor's property interests under *11 U.S.C. § 362(a)(3)*, Defendants' transfers of their interests in the Loan do not violate the automatic stay. *Halabi, 184 F.3d at 1337*; *Cook, 457 F.3d at 568*. [*42] This cause of action will be dismissed with prejudice.

## 4. Violation of Bankruptcy Code (4th Cause of Action)

Doble specifically seeks damages and sanctions relating to Defendants' proof of claim and false declaration filed in the relief from stay motion in Martha Doble's case. Defendants' only response to this is to reiterate that the unrecorded assignment is not avoidable under *§ 544(a)*. Defendants fail to address any other allegations in this cause of action.

Despite Defendants' failure to cogently respond to this cause of action, the Court finds Doble has no standing to assert damages in his wife's bankruptcy case. Doble was not a joint debtor in that case, and Martha Doble is not a party in this case. *See In re Scott, 431 B.R. 376, 379-80 (B.A.P. 9th Cir. 2010)*. This cause of action is not viable to the extent it seeks damages for Doble in his wife's case, and it will be dismissed with prejudice.

## 5. Loan Modification Claims (5th Cause of Action)

In the fifth cause of action, Doble alleges an array of theories complaining of Defendants' conduct in the loan modification process, including that they engaged in unlawful business practices, violated California's Consumer Legal Remedies Act, [*43] *California Civil Code Section §§ 1750-1759*, and breached the covenant of good faith and fair dealing. In response, Defendants only challenge whether HAMP establishes a private cause of action, based on Doble's allegation he is an intended third party beneficiary under the HAMP contract.

The facts alleged in the Complaint, as well as the additional evidence proffered by the parties in response to the Court's inquiries, reflect ongoing efforts by Doble to modify the Loan over a period of eighteen months. Doble claims the efforts were successful, and Defendants should be bound by the permanent loan modification they offered him in May 2010. Defendants claim the Loan

modification effort failed because Doble failed to make all of the payments due during the trial period. To resolve this basic controversy requires further evidentiary proceedings, since the communications by Defendants were confusing and contradictory, but Doble did fail to make all of the required payments even if there was a binding loan modification with Defendants. To facilitate the evidentiary hearing, the Court will preliminarily address Doble's theories of recovery.

Courts have differed on whether HAMP permits a private [*44] right of action. *Compare Compare Benito v. Indymac Mortg. Servs., No. 2:09-CV-001218-PMP-PAL, 2010 U.S. Dist. LEXIS 51259, at *20-*21 (D. Nev. May 21, 2010)* (holding a borrower is not a third party beneficiary), *and Escobedo v. Countrywide Home Loans, Inc., No. 09-cv-1557 BTM (BLM), 2009 U.S. Dist. LEXIS 117017, at *4-*7 (S.D. Cal. Dec. 15, 2009)* (same), *with Marques v. Wells Fargo Home Mortgage Inc., No. 09-cv-1985-L (RBB), 2010 U.S. Dist. LEXIS 81879, at *19-*20(S.D. Cal. Aug. 12, 2010)* (finding a borrower is a third party beneficiary with regard to certain contract terms that are not discretionary, and HAMP otherwise has no enforcement remedies). In determining whether a party is an intended beneficiary of a government contract, a court must examine "the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." *County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1244 (9th Cir. 2009), cert, granted sub. nom, Astra USA, Inc. v. Santa Clara County, 131 S.Ct. 61, 177 L. Ed. 2d 1151 (2010)* (failure to include express language identifying parties as intended beneficiaries is not dispositive). To the extent Doble can prove a specific provision of [*45] HAMP was violated, and compliance with the provision was mandatory for Defendants, he may be able to prove a valid cause of action as a third party beneficiary of HAMP.

Doble's other claims are not invalid as a matter of law even if he cannot establish a direct cause of action under HAMP. Failure to establish a HAMP third party beneficiary contract cause of action does not preclude state law claims relating to the Lender's alleged misconduct. *Escobedo, 2009 U.S. Dist. LEXIS 117017, at * 10* (allowing claims for violation of unfair business practices under *Cal. Bus. & Prof. Code § 17200*); *Villa v. Wells Fargo Bank, TO., No. 10CV81 DMS (WVG), 2010 U.S. Dist. LEXIS 23741, at *9 (S.D. Ca. 2010)* (allowing an amendment to allege misrepresentation claims); *Aceves v. US. Bank, N.A., 192 Cal. App. 4th 218, 233, 120 Cal. Rptr. 3d 507 (2d Dist. 2011)* (allowing promissory estoppel and fraud claims). Doble's claims under the California Legal Remedies Act, *Cal. Civ. Code §§ 1750-1759*, and his claims for breach of the covenant of good faith and fair dealing, therefore, cannot be dismissed as a matter of law at this time.

**C. Order To Show Cause**

Based on the facts and circumstances described in this Memorandum Decision, the Court [*46] orders that Defendants appear and show cause why they should not pay Doble's attorney's fees for their conduct in this action. This order to show cause is issued pursuant to this Court's authority under *28 U.S.C. § 157, 11 U.S. C. § 105, Bankruptcy Rule 9011(c)(1)(B)* and the Court's inherent power to monitor the proceedings before it for the benefit of the Court, the profession and the public. *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*; *In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305 (11th Cir. 2006)* ("it is within a court's discretion to assess attorney's fees on a party ... for actions taken in bad faith").

**III. CONCLUSION**

The Court denies Defendants' request to set aside the clerk's entry of a default, but grants their Motion to Dismiss the portions of the first and second causes of action relating to Doble's New York Trust claims and avoiding power claims. Defendants' Motion to Dismiss Doble's third and fourth causes of action is also granted. As to the remainder of the first and second causes of action, the Court finds MERS' limited role as beneficiary of the DOT did not provide talismanic protection against the myriad foreclosure deficiencies committed by Defendants [*47] regarding this Loan. MERS' role did not provide Defendants the authority to enforce the DOT, the ability to assign the Note without an endorsement from Plaza, or an exception to their obligation to record the assignment to Deutsche Bank. The Court will allow Doble to produce additional evidence in support of his claims, but not his wife's claims. The Court will disallow Defendants' secured and unsecured claims without prejudice. Defendants may file an amended proof of claim in this case if they fully address the defects identified in this Memorandum Decision.

The Court orders Defendants to appear and show cause why they should not pay Doble's attorneys fees for

their conduct in this action, and schedules a status conference for April 28, 2011 at 3:00 in Department 1 of this Court.

Dated: April 14, 2011

/s/ Margaret M. Mann

MARGARET M. MANN, JUDGE

MEMORANDUM DECISION RE MOTION TO VACATE CLERK'S ENTRY OF DEFAULT AND MOTION TO DISMISS COMPLAINT; ORDER TO SHOW CAUSE FOR CONTEMPT OF COURT

was enclosed in a sealed envelope bearing the lawful frank of the Bankruptcy Judges and mailed to each of the parties at their respective address listed below:

Cesar M. Doble
1466 Heatherwood Avenue
Chula Vista, [*48] CA 91913-2974

David L. Skelton
525 B St., Suite 1430
San Diego, CA 92101-4507

Ronaldo Reyes
Vice President
Deutsche Bank Nat'l Trust Company, as Trustee of the HarborView Mortgage Loan Trust 2005-5, Mortgage Loan

Pass-Through
Certificates, Series 2005-5, under pooling and servicing agmt dated June 01

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

William G. Malcolm

Malcolm, Cisneros

2112 Business Center Dr, 2nd Floor

Irvine, CA 92612

David A. St. John 309

South A Street

Oxnard, CA 93030-5038

Joseph Otting

President and CEO

OneWest Bank, FSB

Corporate Headquarters

888 East Walnut Street

Pasadena, CA 91101

Said envelope(s) containing such document were deposited by me in a regular United States mail box in the City of San Diego, in said district on April 14, 2011.

/s/ Michele McConnell

Michele McConnell, Judicial Assistant