UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 10-md-02193-RWZ



IN RE BANK OF AMERICA
HOME AFFORDABLE MODIFICATION PROGRAM (HAMP)
CONTRACT LITIGATION

MULTIDISTRICT LITIGATION


MEMORANDUM OF DECISION

July 6, 2011

**ZOBEL, D.J.**

        Several individual mortgagors bring these putative class actions against

defendant Bank of America Bank, N.A. ("BANA") and its subsidiary, BAC Home Loans

Servicing, LP ("BAC") (collectively referred to as "BOA," "Bank of America," or

"defendants") for breach of contract, common law torts, violations of several state

consumer protection statutes and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691

et seq. ("ECOA").  All allege that defendants improperly administered the federal Home

Affordable Loan Modification Program ("HAMP").  Twenty-six cases originating in 19

states have been consolidated and transferred to this court by the Judicial Panel on

Multidistrict Litigation.

        Defendants move to dismiss the Consolidated Class Action Complaint ("CAC")

pursuant to Fed. R. Civ. P. 12(b)(6) (Docket # 21), and plaintiffs seek a preliminary

injunction to prevent defendants from foreclosing on their own mortgages and those of

mortgagors similarly situated (Docket # 33).

## I.      Factual Background

Plaintiffs are 46 homeowners who obtained home mortgage loans from BAC.  All attempted to participate in HAMP to modify their home mortgage loans to avoid foreclosure.

### A.      HAMP Program

In October 2008, Bank of America accepted $15 billion from the United States Government as part of the Troubled Asset Relief Program ("TARP").  In January 2009, it accepted an additional $10 billion in TARP funds in connection with its acquisition of Merrill Lynch & Co., Inc., and a partial guarantee against losses on $118 billion in mortgage-related assets.  In April 2009, it signed a contract with the U.S. Department of the Treasury ("U.S. Treasury") agreeing to participate in HAMP, which provided BAC, as the servicing arm of Bank of America, incentive payments for granting to eligible borrowers affordable mortgage loan modifications and other alternatives to foreclosure.

As part of the program, BAC entered into a standard agreement with each plaintiff for a temporary trial modification of that plaintiff's existing note and mortgage. Each temporary Trial Period Plan ("TPP") promised that if the borrower complied with the terms of the agreement and the borrower's representations on which the offer of a modification was based remained unchanged in all material respects, then the borrower would receive a permanent modification on the same terms.  BAC entered into TPP agreements with several borrowers in Massachusetts.

Under the TPP, the borrower made reduced mortgage payments based on the

financial documentation submitted during the eligibility phase.  The homeowner could also be required to open an escrow account and submit additional financial documents and to undergo credit counseling.  The trial period lasted three months.  As long as the borrower complied with the terms of the TPP and the income representations were verified, the servicer was directed under the terms of the TPP to offer the borrower a permanent modification at the end of the three-month period.

The named plaintiffs are homeowners who signed TPPs and purport to represent a class of homeowner borrowers who likewise signed TPPs with BANA.  They contend that the TPP was a binding contract between the parties, under which BAC was obligated to offer permanent loan modifications if plaintiffs complied with the TPP's terms and conditions over a three-month trial period.  Although they did fully comply and were eligible, defendants either failed to grant permanent modification or failed to give a written response to their respective applications.

## B.    The Proposed Classes

Plaintiffs propose two classes.  First, a class of homeowners whose mortgage loans have been serviced by one or both defendants, but who were never admitted into the TPP (the "SPA Class").  While not parties to any contract, they reason that they are among the intended beneficiaries of a Servicer Participation Agreement ("SPA") between BANA and the U.S. Treasury.

Second, they propose 15 statewide classes of homeowners who entered into the TPP but were not given a permanent HAMP modification or a written notice that their

request for permanent modification had been denied (the "TPP Class").[1]

## C.    The Causes of Action and Pending Motions

The SPA plaintiffs claim breach of contract, breach of the duty of good faith and fair dealing (Counts I and III), and, in the alternative, promissory estoppel (Count V).

The TPP plaintiffs claim breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Counts II and VII), promissory estoppel (Count IV), violations of the state consumer protection laws (Count VI), and violation of the ECOA (Count VIII).

Defendants' motion to dismiss the CAC is premised on the following grounds:

(1)    the SPA plaintiffs are not intended third-party beneficiaries of the SPA between BANA and the U.S. Treasury;

(2)    all common law claims for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel fail because:

(a) the TPPs are not contracts or offers for contracts;

---

[1]The class definitions are as follows.  First, the proposed SPA Class consists of "all homeowners whose mortgage loans have been serviced by one or both defendants and who, since April 13, 2009, have requested and been eligible to be considered for a loan modification under HAMP and whose loans were not modified in accordance with HAMP because they have not been offered a HAMP-compliant TPP (CAC ¶ 410) (the "intended beneficiaries").  Plaintiffs have also proposed a subclass of "individuals who received a temporary loan modification agreement from BOA that was not compliant with HAMP guidelines because such agreement was not a TPP."  (CAC ¶ 411.)

Second, the proposed TPP Classes consist of "fifteen statewide classes of individuals whose home mortgage loans have been serviced by BOA and who, since April 13, 2009, have entered into a TPP Agreement with BOA and made all payments required by their TPP Agreement, other than borrowers to whom BOA timely tendered either: (a) a HAMP Agreement that complied with HAMP rules; or (b) a written denial of eligibility."  (CAC ¶ 420.)

(b) the TPPs are not supported by consideration; and

(c) the conditions precedent were not met;

(3)    the consumer protection claims fail because:

   (a)    they are an impermissible end-run around HAMP's lack of a private right of action;

   (b)    they are not pled with the requisite particularity under Fed. R. Civ. P. 9(b);

   (c)    some do not cover the alleged conduct; and

   (d)    as to one, plaintiffs failed to issue a demand letter as required by statute; and

(4)    the ECOA claims fail because plaintiffs do not allege that BAC took any "adverse action" on their applications.

## II.    Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). It does not need "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."

Ashcroft v. Iqbal, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Defendants' Motion to Dismiss the Consolidated Class Action Complaint (Docket # 21)

### A. SPA Plaintiffs (Counts I, III, and V)

First, the SPA plaintiffs allege that defendants breached the SPA between BANA and the U.S. Treasury. Although not parties to the contract, plaintiffs assert that they are among the intended beneficiaries of the HAMP agreement.[2] That claim fails as a matter of law. "[P]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." Speleos v. BAC Home Loans Servicing, L.P., No. 10-cv-11503-NMG, 2010 WL 5174510 (D. Mass. Dec. 14, 2010). As the Supreme Court recently stated in Astra USA, Inc. v. Santa Clara County, — U.S. —, 131 S.Ct. 1342 (Mar. 29, 2011), in determining whether a plaintiff is a third-party beneficiary to a government contract, courts must first determine whether the contract intended to provide the plaintiff with a

---

[2]Plaintiffs may not bring suit against defendants for violation of the TARP regulations, as both parties agree there is no private right of action under the Housing and Economic Recovery Act (HERA). See Hart v. Countrywide Homes Loans, Inc., Civ. No. 09-12088, 2010 WL 3272623, *5 (E.D. Mich. 2010); accord Aleem v. Bank of Am., Civ. No. 09-01812-VAP, 2010 WL 532330, at *4 (C.D. Cal. Feb. 9, 2010) (no express or implied right to sue fund recipients under TARP or under guidelines developed by Secretary for HAMP). Defendants' position is that because there is no private right of action under HAMP, plaintiffs' common law causes of action are foreclosed. As the SPA plaintiffs' fail to state a claim, I do not reach this argument. See infra, n. 4.

legal cause of action, not merely whether the plaintiff is within the class the contract
was intended to benefit.  Id. at 1347-1348.

Section 11E of the SPA states that the SPA "shall inure to the benefit of and be
binding upon the parties to the Agreement and their permitted successors-in-interest."
(CAC, Exhibit 1 at 10 (emphasis added)).  Nothing in the statute suggests any intent,
let alone a "clear intent," to benefit these plaintiffs; its terms compel the opposite
conclusion.  Thus, the SPA plaintiffs lack standing to bring both their breach of contract
and promissory estoppel claims.

Plaintiffs' claims for breach of the duty of good faith and fair dealing fail because
they have not stated a claim for breach of contract.  "The covenant of good faith and
fair dealing is implied in every contract."  UNO Rests., Inc. v. Boston Kenmore Realty
Corp., 441 Mass. 376, 805 N.E.2d 957, 964 (2004).  It "governs conduct of parties after
they have entered into a contract; without a contract, there is no covenant to be
breached."  Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412
F.3d 215, 230 (1st Cir. 2005).

**B.  TPP Plaintiffs (Counts II, IV, VI, VII and VIII)**

1.      **Breach of Contract (Count II)**[3]

To state a claim for breach of contract, a plaintiff must allege that (1) there was a

valid contract; (2) the defendant breached its duties under that agreement; and (3) the

breach caused the plaintiff damage.  Guckenberger v. Boston Univ., 957 F. Supp. 306,

316 (D. Mass. 1997) (citations omitted).  A valid contract requires an offer, acceptance,

and consideration.  See Vadnais v. NSK Steering Sys. Am., Inc., 675 F. Supp.2d 205,

207 (D. Mass. 2009).

Here, plaintiffs assert that the TPP is itself an enforceable contract, which was

breached by defendants' failure to grant qualified applicants a permanent modification

under the program, or even to render a timely decision on their applications.

Defendants respond that the TPP is not a valid contract because (1) it lacks any legally

cognizable form of consideration; and (2) plaintiffs did not meet certain conditions

precedent.[4]

---

[3]Proposed class plaintiffs bring breach of contract claims under the laws of several states.  For purposes of this motion, defendants do not assert that there are material differences in state contract law.  Therefore, the court relies on Massachusetts state contract law.  Should variations in state contract law become an issue as the case proceeds, the court will address such issues as they arise.  See, e.g., In re Nigeria Charter Flights Contract Litigation, 233 F.R.D. 297, 305 (E.D.N.Y. 2006) (discussing the effect of variations in state contract law on the question of predominance as it relates to class certification).

[4]Defendants again contend that because there is no private right of action under HAMP, plaintiffs' common law causes of action are foreclosed.  Several courts have rejected this reasoning.  See Bosque v. Wells Fargo Bank, N.A., No. 10-cv-10311-FDS, 2011 WL 304725, *5 (D. Mass. 2011) and Durmic v. J.P. Morgan Chase Bank, N.A., No. 10-cv-10380-RGS, 2010 WL 4825632, *2 n. 9 (D. Mass. Nov. 24, 2010).  Nor is the Supreme Court's recent decision in Astra USA, Inc. v. Santa Clara County, — U.S. —, 131 S.Ct. 1342, 1347-1348 (Mar. 29, 2011), to the contrary.  In that case, the court held

### a. Consideration

Consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee.  See Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 310 N.E.2d 915, 919 (Mass. 1974); accord Restatement (2d) of Contracts § 79.  "It is a sufficient legal detriment to the promisee if it promises or performs any act, regardless of how slight or inconvenient, which it is not obligated to promise or perform so long as it does so at the request of the promisor and in exchange for the promise."  S. Williston, A Treatise on the Law of Contracts § 7:4 (4th ed. 2008).  It is enough that the "debtor does something more or different in character from that which it is legally bound to do."  Williston § 7:27.

Initially, defendants argue that plaintiffs are barred from using their payments under the TPP as consideration because "performance of a pre-existing legal duty that is neither doubtful nor subject to honest and reasonable dispute is not valid consideration."  In re Lloyd, Carr & Co., 617 F.2d 882, 890 (1st Cir. 1980).  Here, however, plaintiffs did more than merely pay a discounted amount in satisfaction of a pre-existing debt.  They gave consideration in the form of legal representations about the material truth of information provided, promises to undergo credit counseling (if

---

that plaintiffs could not bring a breach of contract claim where the contracts at issue were created pursuant to a statutorily-created federal program.  The court's reasoning in Astra turned on the fact that the contracts incorporated the statutory language. Here, however, no such incorporation occurred, as the HAMP statute contained no direction as to how the program was to be implemented.  The TPPs, not the statute, supplied the contractual provision allegedly breached, namely the borrower would be admitted into the HAMP if he or she complied with the TPP and his or her representations remained accurate.

asked), opening new escrow accounts, and provision of financial information and trial payments.  See TPP ¶ 1; CAC ¶¶ 96, 454.  The requirements of the TPP all constitute new legal detriments.  See Durmic v. J.P. Morgan Chase Bank, N.A., No. 10-cv-10380-RGS, 2010 WL 4825632, *12 (D. Mass. Nov. 24, 2010) (holding that requirements of TPP constitute valid consideration), and Bosque v. Wells Fargo Bank, N.A., No. 10-cv-10311-FDS, 2011 WL 304725, *20-21 (D. Mass. 2011) (same).  The TPP established these conditions, which plaintiffs had no preexisting legal obligation to meet.  The complaint adequately alleges valid consideration.

### b.  Condition Precedent

As a condition of modification of their mortgage, the TPP requires borrowers to comply with certain mandates pertaining to payments and to warrant the truthfulness of their representations when made and throughout the trial period.[5]  Defendants assert plaintiffs' lack of full compliance and consequent inability to enforce the contract. Plaintiffs dispute defendants' assertions, but more important for purposes of the motion to dismiss, the complaint meticulously details each plaintiff's initial and ongoing

---

[5]The first sentence of the TPP provides, in pertinent part:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Docket # 14-7).  Four sentences later, the TPP states, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of the Plan if I qualify for the Offer or will send me written notice that I do not qualify for the offer." ( Id.)

compliance with all conditions.  That is sufficient to defeat the motion on this ground.

### 2.      Promissory Estoppel (Count IV)

Promissory estoppel is typically asserted as an alternative theory of recovery for

a contract that is not supported by consideration.  Defendants move to dismiss this

claim on the ground that no plaintiff could reasonably have relied on a promise in the

TPP to modify his or her loan because the TPP contained numerous conditions

precedent which plaintiffs failed to fulfill.  As I noted above, this argument fails because

plaintiffs allege that they have complied with conditions precedent.  The motion to

dismiss the promissory estoppel claim is therefore denied.

### 3.      Breach of the Implied Covenant of Good Faith and Fair Dealing (Counts II and VII)

"Every contract implies good faith and fair dealing between the parties []."  T.W.

Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569–70, 924 N.E.2d 696 (2010)

(quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471, 583 N.E.2d

806 (1991)).  Such a covenant requires that "neither party shall do anything that will

have the effect of destroying or injuring the right of the other party to its fruits of the

contract."  Id.  Lack of good faith "carries an implication of a dishonest purpose,

conscious doing of wrong, or breach of a duty through motive of self-interest or ill will."

Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct.

998, 999, 418 N.E.2d 645 (1981).

Defendants argue that plaintiffs have not adequately pled that BOA acted with

any intent of causing them injury, much less with the "dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing." <u>Schultz v. R.I. Hosp. Trust Nat'l Bank, NA</u>, 94 F.3d 721, 730 (1st Cir.1996) (applying Massachusetts law). However, the complaint states that BOA willfully failed to modify qualifying loans, declined to properly train and supervise its agents, encouraged and/or allowed employees to make inaccurate representations, all "in bad faith and for its own economic benefit." <u>See</u> CAC ¶¶ 464-465; 523-524.  These allegations are sufficient to state a claim.

### 4.    Violations of Several State Consumer Protection Acts (Count VI)

Count VI of the consolidated complaint asserts claims by fourteen statewide classes for unfair and deceptive acts under various state consumer protection acts which defendants seek to dismiss on various grounds.  First, defendants assert that such claims are an "impermissible end-run" around HAMP's lack of a private right of action.  However, claims under state consumer protection statutes may proceed even in the absence of a private means of recovery if the alleged violation is unfair or deceptive.  It is a principle expressly adopted by the Massachusetts courts and not disavowed in any of the state statutes here invoked.  Absent any direct guidance by the legislature or courts of the other states, I shall assume concordance by them with the interpretation by Massachusetts courts.  The allegations of this complaint are sufficient to withstand the motion to dismiss on this ground.  <u>See</u> <u>Bosque v. Wells Fargo Bank, N.A.</u>, 10-cv-10311-FDS, 2011 WL 304725, *8 (D. Mass. Jan. 26, 2011).  Plaintiffs

charge defendants with making deceptive, false or misleading representations regarding their eligibility for a permanent loan modification under HAMP.  (See CAC ¶¶ 489-521.)  In particular, they state that they were led to believe that they would be entitled to a permanent loan modification or a denial of eligibility so long as they complied with the obligations set forth by the TPP.

Next, defendants object that the consumer protection claims brought under Arizona, California, Illinois, Maryland, New Jersey, Pennsylvania and Wisconsin law should be dismissed because plaintiffs' allegations fail to comport with the particularity requirement of Fed. R. Civ. P. 9(b).  It is true that a plaintiff must plead the "time, place and content of an alleged false representation."  Plaintiffs in this case allege that they entered into the TPP after being given the misleading impression that they would be admitted into the HAMP if they met the requirements of the program.  Each recites dates, particular submissions and defendants' responses (or lack thereof).  See CAC ¶¶ 80-125; 126-419.  They have adequately pled fraud.

Some statutes elicit unique arguments for dismissal of claims based thereon. Defendants assert that the claims under Mass Gen. Laws ch. 93A fail for lack of a demand letter; plaintiffs disagree and point out that they pled compliance.  This dispute as to the underlying facts forecloses dismissal at this stage.

As to the Oregon state statute, defendants reason that it does not apply to these plaintiffs claims.  Prior to February 23, 2010, the Oregon Unfair Trade Practices Act, O.R.S. §§ 646.605 et seq., did not apply to loans or extensions of credit.  However, the Langen complaint (invoking the Oregon statute) alleges that the omissions occurred

13

post-March 23, 2010 — *after* the statute was amended to cover loans and other

extensions of credit.  See Langen v. Bank of America N.A., et al., Case No. 10-cv-

01067 (D. Or. Sept. 8, 2010), Complaint ¶¶ 115-116; CAC ¶ 516.

Finally, defendants argue that California's Rosenthal Fair Debt Collection

Practices Act ("RFDCPA") is inapplicable because it does not characterize foreclosure

as a debt nor BAC as a debt collector.  However, several recent cases have held that

mortgages on primary residences are "consumer debt" as defined by the RFDCPA.

See, e.g., Reyes v. Wells Fargo Bank, N.A., No. C-10-01667, 2011 WL 30759, *19-*20

(N.D. Cal. Jan. 3, 2011), and a mortgage servicer is a debt collector.  Accord Walters v.

Fidelity Mortg. of California, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. Aug. 4, 2010)

(letters, calls, and attempts to collect mortgage payments are efforts to collect

consumer debt under the RFDCPA); and Ohlendorf v. American Home Mortg. Serv.,

No. Civ. S–09–2081 LKK/EFB (S.D. Cal. Mar. 31, 2010) (same).

The motion to dismiss the state consumer protection claims fails on the merits or

is premature and is therefore denied.

### 5.    Violation of the Equal Credit Opportunity Act (Count VIII)

Finally, defendants move to dismiss plaintiffs' ECOA claims.  "Originally enacted

in 1974 to prohibit discrimination in credit transactions, the ECOA was amended in

1976 to require creditors to furnish written notice of the specific reasons for adverse

action taken against a consumer."  Fischl v. Gen. Motors Acceptance Corp., 708 F.2d

143, 146 (5th Cir. 1983) (citing 15 U.S.C. §§ 1691(d)(2) and (3)).

The ECOA provides that "[w]ithin thirty days ... after receipt of a completed

application for credit, a creditor shall notify the applicant of its action on the application," and "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(1), (2); see also 12 C.F.R. § 202.9(a)(1)(i).  To prevail on an ECOA claim, plaintiffs must prove (1) that BAC is a creditor; (2) plaintiffs applied for a loan with BAC; (3) BOA took adverse action with respect to plaintiffs' loan applications; and (4) BOA failed to provide plaintiffs with an ECOA-compliant notice of its adverse action. Stoyanovich v. Fine Art Capital, No. 06 Civ. 13158, 2007 WL 2363656, *2 (S.D.N.Y. Aug. 17, 2007).

Under regulations promulgated pursuant to the act, adverse action notices are only necessary where, inter alia, there has been an "adverse action" on the application. See 12 C.F.R. §§ 202.2(c)(2)(ii), (f) & (q).  See also Letter from Sandra F. Braunstein, Director of Consumer and Community Affairs, Federal Reserve Board (December 4, 2009).

"Adverse action" is defined by the ECOA as "a denial or revocation of credit ... or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6) (1998).  The regulations similarly define the term as "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application."  12 C.F.R. § 202.2(c)(1)(i) (2005).

Here, notification was not necessary because defendants did not take an adverse action; they did not refuse to grant credit as plaintiffs had requested.  Thus, defendants' motion to dismiss this count is allowed.

15

IV.     **Plaintiffs' Motion for a Preliminary Injunction (Docket # 33)**

Plaintiffs seek preliminary injunctive relief on behalf of 37 individuals allegedly in imminent danger of losing their homes which would bar defendants from foreclosing on their mortgages until a determination on the merits in this case.

The test governing the award of a preliminary injunction requires consideration of "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008).

First, defendants represent that all named plaintiffs are already beneficiaries of a "voluntary foreclosure hold."  Second, while this agreement does not extend to putative members of any class, an injunction as to these before class certification and a determination of the scope of such class or classes would be both improper and unmanageable.  The motion is denied.

V.      **Conclusion**

For these reasons, defendants' motion to dismiss (Docket # 21) is ALLOWED IN PART and DENIED IN PART.  It is ALLOWED as to Counts I, III, V and VIII, and DENIED as to Counts II, IV, VI and VII.  Plaintiffs' motion for a preliminary injunction (Docket # 33) is DENIED.

| July 6, 2011 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |