# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| In re:  Bank of America Home Affordable Modification Program (HAMP) Contract Litigation |

No. 1:10-md-02193

## DEFENDANT BANK OF AMERICA, N.A.'S
## OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

# TABLE OF CONTENTS

Page

ARGUMENT ......................................................................................................................... 3

I.    Plaintiffs' request for Email Should be denied. ............................................................ 3

    A.    Plaintiffs' Proposal Would Impose an Undue Burden on BANA that is Not
        Justified at this Pre-Certification Stage of the Lawsuit ...........................................4

    B.    Plaintiffs Fail To Justify The Incredible Burden They Seek To Impose ................6

        1.    Plaintiffs' Proposed Custodians and Search Terms Illustrate the
            Overbroad and Burdensome Nature of Their Request................................6

        2.    None of Plaintiffs' Proffered Reasons Justify The Protocol........................9

            a.    No BANA employee has testified that they could not
                provide substantive testimony without seeing their old
                email...............................................................................................9

            b.    Plaintiffs' "evidence" of BANA's purported "scheme to
                wrongfully deny mortgage modifications" does not justify
                the burden of their proposal. .......................................................11

        3.    The Existence of Potentially Relevant Reports Does Not Justify
            Imposition of Plaintiffs' Burdensome Email Requests............................12

II.    Plaintiffs' Motion for an Order Compelling BANA to Produce Additional IR2 Data
     Should be Denied........................................................................................................ 13

    A.    This Court Should Follow Judge Stearns' Order Precluding Discovery of
        IR2 Data................................................................................................................14

    B.    Plaintiffs Seek Data That Does Not Exist..............................................................14

    C.    Requiring BANA to Review And Produce Data From Each Of Its Uploads
        to the Treasury Department Would Impose An Undue Burden. ...........................15

III.    The Court Should Deny Plaintiffs' Motion to Compel with Respect to the Sample of
      3,000 Loan Files and Direct Plaintiffs to Meet and Confer in Good Faith on this Topic. 16

    A.    The Motion Should Be Denied Because Plaintiffs' Demand Exceeds The
        Scope Of The Relevant Request For Production. ..................................................16

    B.    The Motion Should Be Denied Because Some Of The Information
        Plaintiffs Seek, To The Extent BANA Understands Plaintiffs' Demands,
        Does Not Exist Or Would Be Unduly Burdensome To Produce...........................17

    C.    The Motion Should Be Denied Because Plaintiffs Have Failed To Meet
        And Confer In Good Faith On This Topic.............................................................19

IV.    Conclusion ................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adair v. EQT Prod. Co.*,
  Nos. 10-cv-37 & 10-cv-41, 2012 WL 2526982 (W.D. Va. Jun. 29, 2012) .............................9

*Amorim Holding Financeria S.G.P.S., S.A. v. C.P. Baker & Co.*,
  No. 09-10641-DPW, 2011 WL 5879433 (D. Mass. Nov. 22, 2011) ........................................3

*Aponte-Navedo v. Nalco Chem. Co.*,
  268 F.R.D. 31 (D. P.R. 2010) .........................................................................................7, 20

*Chase HAMP*
  *MDL. Chase HAMP MDL* Order at 2 ......................................................................14, 15, 16

*Contracom Commodity Trading Co. v. Seaboard Corp.*,
  189 F.R.D. 456 (D. Kan. 1999).......................................................................................7, 20

*Cutter v. HealthMarkets, Inc.*,
  No. 10-11488-JLT, 2011 WL 613703 (D. Mass. Feb. 10, 2011) .............................................3

*In re Ford Motor Co.*,
  345 F.3d 1315 (11th Cir. 2003) ............................................................................................16

*In re JPMorgan Chase Mortg. Modification Litig.*,
  Case No. 11-md-02290, Order on Pls. ....................................................................................2

*McPeek v. Ashcroft*,
  202 F.R.D. 31 (D.D.C. 2001)..................................................................................................6

*Walker v. Asset Mktg Sys. Ins. Servs.*,
  2012 WL 827010, at *2-3 (S.D. Cal. Mar. 9, 2012) .................................................................9

OTHER AUTHORITIES

Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of Electronically-Stored Information* ...................................................................................................................4

Fed. R. Civ. P. 23...........................................................................................................................1

Fed. R. Civ. P. 26(b)(2)(C)(iii) ....................................................................................................3

Fed. R. Civ. P. 34..........................................................................................................1, 3, 16, 20

Rule 26(b)(1)(B) ............................................................................................................................4

Rule 26(b)(2)..............................................................................................................................4

Rule 26(b)(2)(B)'s ....................................................................................................................3

Rule 26(b)(2)(C) .......................................................................................................................6

Rule 26(b)(2)(C)'s ....................................................................................................................4

*Sedona Principles*, Comment 10.b........................................................................................16

Plaintiffs' Motion to Compel Discovery ("Motion"), which is long on rhetoric and short on any meaningful explanation as to why the subject discovery is proper and necessary, should be denied.  Reduced to its essence, the Motion seeks to compel Bank of America ("BANA") to produce voluminous data and documents falling into three categories, all of which are of questionable relevance, facially overbroad and unduly burdensome, and, perhaps more fundamentally, not described with the reasonable particularity required by Fed. R. Civ. P. 34.[1] Satisfying Plaintiffs' Motion would require BANA to spend millions of dollars toward the collection, processing, and review of these data and documents when the case has yet to be certified as a class and where the discovery sought does nothing to satisfy Plaintiffs' burden at class certification to establish that the claims and defenses as to the 56 named plaintiffs are "common" or "typical" and otherwise meet the requirements of Fed. R. Civ. P. 23.

First, Plaintiffs seek to compel BANA to produce all email and attachments (together, "email") authored by, received by, and/or copied to any one of 24 proposed custodians at any time since January 1, 2009 (well before HAMP was even announced) containing any one of 274 proposed search terms (including, for example, multiple derivatives of several expletives). Although Plaintiffs describe this demand as "specific" and "targeted," it is anything but.  To the contrary, if such production were ordered, it would easily cost $3 to $6 million dollars and take tens of thousands of hours to complete.  Such a production is, by definition, unduly burdensome and unwarranted, especially at this pre-certification stage of the litigation and where large portions of the requested email has marginal, if any, relevance to the actual issues.  Indeed, in a similar HAMP MDL against another defendant involving the same Plaintiffs' counsel, Judge

---

[1] In meet and confer correspondence, BANA asked Plaintiffs to provide additional information about exactly what Plaintiffs seek.  Plaintiffs refused Defendants' requests, choosing instead to press this Motion.

Stearns recently denied plaintiffs' motion to compel production of similar email.  *See In re JPMorgan Chase Mortg. Modification Litig.*, Case No. 11-md-02290, Order on Pls.' Mot. to Compel Produc. of Docs., at 1-2, Dkt. No. 87, (D. Mass. Jun. 1, 2012) (Stearns, J.) ("*Chase HAMP MDL* Order").  This Court should do the same.

Second, Plaintiffs' request that BANA produce significantly more IR2 data (data reported to the Treasury Department over the past three-plus years) than it already has produced should similarly be denied. Judge Stearns denied the *Chase HAMP MDL* plaintiffs' motion to compel the production of **any** IR2 data on the grounds that such data was not relevant, overly broad, and unduly burdensome.  *See id.*  Again, this Court should not hesitate to follow this authority and conclude that Plaintiffs' complaint that BANA has not produced **more** IR2 data rings hollow. Beyond this, the Court should deny the Motion, because the additional data Plaintiffs seek either does not exist, will not permit Plaintiffs to discern the information they purport to seek and would be unduly burdensome for Defendants to produce.

Third, Plaintiffs seek to compel BANA to produce virtually all data and documents, many categories of which are vague and ambiguous and which Plaintiffs have steadfastly refused to explain or clarify, relating to each of 3,000 randomly-selected loans.  As an initial matter, the information Plaintiffs demand grossly exceeds the scope of the discovery request upon which they claim their demand is based and, therefore, there is no basis for an order compelling its production.  Moreover, even as to the data and information Defendants understand Plaintiffs to seek, the production would be unduly burdensome, requiring thousands of hours and hundreds of thousands of dollars to complete.  This is, of course, the very result the production of a sample is designed to avoid.  Apart from these issues, Plaintiffs' Motion on this topic is unnecessary and premature.  BANA has agreed, in general terms, to produce reasonable data and documents as to

each of the 3,000 loans.  It is not, however, willing to comb all of its paper and electronic records looking for every piece of information, no matter how immaterial or inconsequential, relating to 3,000 loans as Plaintiffs' non-targeted Motion contemplates.  Nor should it have to guess as to the particular information and documents Plaintiffs seek.  Rather, as Rule 34 requires, Plaintiffs must describe what they seek with reasonable particularity.  They have failed to do so.

## ARGUMENT

The Federal Rules of Civil Procedure protect against unwarranted fishing expeditions such as those Plaintiffs invite this Court to authorize by the Motion.  "[T]he party seeking discovery information over an adversary's objection has the burden of showing [the information's] relevance." *Cutter v. HealthMarkets, Inc.*, No. 10-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quotations and citation omitted).  In addition, discovery – even if relevant – should be denied if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see, e.g., Amorim Holding Financeria S.G.P.S., S.A. v. C.P. Baker & Co.*, No. 09-10641-DPW, 2011 WL 5879433, at *1-2 (D. Mass. Nov. 22, 2011).  Application of these principles here requires that Plaintiffs' Motion be denied.

## I.  <u>PLAINTIFFS' REQUEST FOR EMAIL SHOULD BE DENIED.</u>

Plaintiffs' demand that BANA produce e-mail and attachments, authored by, received by, and/or copied to any one of 24 custodians[2] since January 1, 2009 that contains any one of 274 search terms completely disregards Rule 26(b)(2)(B)'s instruction that parties need not produce discovery of email from sources "not reasonably accessible because of undue burden or cost,"

---

[2] BANA was not able to locate any information regarding three of Plaintiffs' 24 proposed custodians:  "Sean Peirce," "Christina Racelly," and "Ken Feltch."  *See* Daniel Decl., ¶ 4 n.1. With respect to proposed custodian "Ken Feltch," BANA believes that Plaintiffs intended to refer instead to Patricia Feltch, as her name has been disclosed to Plaintiffs in discovery as a person with knowledge about loan modifications.  *Id.*

and Rule 26(b)(2)(C)'s limitations.  *See Manual for Complex Litigation (Fourth)*, § 11.446 (Rule

26(b)(2) "should be used to discourage costly, speculative, duplicative, or unduly burdensome

discovery of computer data and systems").  Indeed, in the *Chase HAMP MDL*, Judge Stearns

denied a comparable request for all email brought by the same counsel representing Plaintiffs

here as "overbroad, excessively burdensome, and likely to delay the progress of the litigation

without conferring any corresponding benefit in terms of shaping plaintiffs' case."  *See Chase*

*HAMP MDL* Order at 2.  The same conclusion applies here.  Indeed, based on BANA's

conservative estimates, implementing Plaintiffs' demand could cost well over $6 million and

require as much as 100,000 hours or more of time to complete.  *See* Decl. of Robert M. Daniel in

Supp. of Def.'s Opp'n to Mot. to Compel ("Daniel Decl."), ¶¶ 5, 16-18.

### A.   PLAINTIFFS' PROPOSAL WOULD IMPOSE AN UNDUE BURDEN ON BANA THAT IS NOT JUSTIFIED AT THIS PRE-CERTIFICATION STAGE OF THE LAWSUIT

As an initial matter, the process of simply collecting the 24 custodians' email to make it

available for review is itself unduly burdensome and time-consuming.  Rule 26(b)(1)(B)

explicitly limits initial discovery of email to information that is "reasonably accessible."  *See,*

*e.g.,* Conference of Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of*

*Electronically-Stored Information,* Guideline 1(B) (August 2006) (defining "accessible"

information as "electronically-stored information that is easily retrievable in the ordinary course

of business without undue cost and burden").  ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████  *See* Daniel Decl., ¶¶ 6-9, 11.

The collection costs, however, are the tip of the iceberg.  BANA will incur significant costs to search and review the restored email.  See, e.g., The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production ("Sedona Principles")  2nd edition, June 2007,Comment 2.b. ("Costs cannot be calculated solely in terms of the expense of computer technicians to retrieve the data but must factor in other litigation costs, including the interruption and disruption of routine business processes and the costs of reviewing the information [and the] burdens on information technology personnel and the resources required to review documents for relevance, privilege, confidentiality, and privacy."). ■

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████[3] See Daniel Decl., ¶¶ 12-15.

            █████████████████████████████████████████████████

████████████████████████████████████████████. Id. ¶ 16. ████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████e. Id. ¶¶

16 & 18. ██████████████████████████████████████████

██████████████████████████████████████████████ Id. ¶ 17.

---

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████. *Id.* ¶¶ 17-18.  Based on the results of this "test run," the conclusion is inescapable

that the email production Plaintiffs seek to compel would impose an undue and unjustified

burden on BANA and substantially delay the progress of this case.  This provides sufficient

grounds to deny the Motion.  *See, e.g., McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001)

(full restoration of email unnecessary based upon a "test run" for a single custodian).

### B.  PLAINTIFFS FAIL TO JUSTIFY THE INCREDIBLE BURDEN THEY SEEK TO IMPOSE

Rule 26(b)(2)(C) requires the Court to determine if "the burden or expense of the

proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the

importance of the discovery in resolving the issues."  Given the multi-million dollar cost and

burden to BANA of implementing Plaintiffs' proposal, Plaintiffs must demonstrate that it will

provide a commensurately incredible benefit.  They have not done so.  Nor could they, given the

large number of custodians and search terms with no real connection to the matters at issue.

### 1.  PLAINTIFFS' PROPOSED CUSTODIANS AND SEARCH TERMS ILLUSTRATE THE OVERBROAD AND BURDENSOME NATURE OF THEIR REQUEST.

Although Plaintiffs claim that their demand for email is "targeted" and "limited," nothing

could be farther from the truth.  The number of proposed custodians – 24 – ██████████████

████████████████████████████████████████████ *See* Daniel Decl., at

¶¶ 2 & 10.  Yet Plaintiffs have made no attempt to justify the large number of custodians or to

explain why they need email from any given custodian on the list, let alone all of them.

Similarly, the number of proposed search terms – 274 – █████████████
███████████████████████████████████████████████████████. *Id.*.[4]

Plaintiffs claim that they "tailored their proposed search terms to target only documents

referencing HAMP that are likely to have relevant information," but their list includes several

categories of terms that have no conceivable relevance to the lawsuit or are so broad that they

will capture nearly all of each custodian's documents.[5] *See* Pls.' Mem. In Supp. of Mot. to

Compel Discovery ("Pls.' Mem.") at 5.  A few examples illustrate BANA's point.

*Profanity*.  Plaintiffs seek to compel BANA to search for emails containing profane

words (and derivatives of these words).  This, of course, cannot reasonably be said "to target

only documents referencing HAMP that are likely to have relevant information."  The only result

of searching for such terms will be the wasted effort of reviewing email that has nothing to do

---

[4] Highlighting the unreasonable nature of their demand, Plaintiffs apparently view 24 custodians and 274 search terms as only a starting point.  *See* Decl. of Tyler Weaver in Supp. of Pls.' Mot. to Compel ("Weaver Decl."), Ex. 6 at 2, Dkt. No. 128 (D. Mass. July 23, 2012) (stating that six months after production of the initial email, Plaintiffs will provide additional 20 custodians and additional search terms).

[5] BANA raised these concerns to Plaintiffs, but received no substantive response.  *See* Weaver Decl., Exs. 7-9; Decl. of James McGarry In Supp. of Opp'n to Mot. to Compel ("McGarry Decl."), Ex. A.  For example, on June 11, 2012, Plaintiffs informed BANA they would provide a list of proposed custodians and search terms for email searches, noting that BANA would find it too voluminous and unacceptable.  McGarry Decl., ¶¶ 3, 14.  Contrary to Plaintiffs' claim that BANA "repeatedly rebuffed" their request for email "[w]ithout explanation or justification," (Pls.' Mem. at 2, 4) after receiving Plaintiffs' request for proposed custodians and search terms, BANA responded by explaining that the proposal was, in fact, untenable because the number of proposed custodians and proposed search terms were (a) unlikely to reduce the amount of email that would need to be reviewed and (b) not calculated to lead to relevant, admissible evidence, and identifying specific examples of each type of problematic search term.  Weaver Decl., Ex. 7.  Plaintiffs responded not by "invit[ing] BOA to make a counterproposal" (Pls.' Mem. at 4), but rather declaring that "we are at an impasse on this issue" and proceeding with the filing of this Motion despite BANA's good faith efforts to reach a compromise.  Weaver Decl., Exs. 7-9, McGarry Decl., Ex. A.  This failure to meet-and-confer in good faith compels denial of Plaintiffs' Motion.  *See, e.g., Aponte-Navedo v. Nalco Chem. Co.,* 268 F.R.D. 31, 40-41 (D. P.R. 2010); *Contracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459-60 (D. Kan. 1999).

with the litigation, but will no doubt embarrass the users of such language.  Plaintiffs include as many as 17 terms that fall into this category.

*Non-Case Specific Terms.*  Plaintiffs also seek to compel emails containing non-case specific, common words (*e.g.*, "class action," "breach," "massive," "unprecedented," "jail," "prison," "confuse," and "database!") that are so broad that the vast majority of resulting hits will be irrelevant or minimally relevant to the facts at issue in this litigation.

*Overly-Broad Case Terms.*  Even where Plaintiffs have attempted to tie a search term to an issue in the case, they have done so in such a broad and overreaching manner as to ensure that virtually every e-mail ever authored or received by any of the proposed custodians will be captured and require review.  Indeed, as demonstrated above, application of Plaintiffs' proposed search terms to the ████████████████████████████████████████████████ ████████████████████. *Id.* ¶¶ 16 & 17.  ████████████████████████████ ████████████████████████████████ sent or received by a custodian as potentially responsive can hardly be said to be targeted and specific.

Given the prohibitively high number of custodians and the overbroad search terms, the email production Plaintiffs seek to compel is patently unreasonable.  Even without accounting for Judge Stearns' denial of Plaintiffs similar request in the *Chase HAMP MDL*, the cases Plaintiffs cite compel no different conclusion; indeed, they counsel in favor of denying the Motion.  For example, although Plaintiffs claim that, in a substantially-similar multi-district litigation, the Central District of California compelled CitiMortgage, Inc. to "produce emails using the exact same protocol that Plaintiffs proposed to" BANA (Pls.' Mem. at 4), the circumstances are much different here.  First, CitiMortgage "provided no evidence at all as to the burden it allegedly would suffer in responding to" the discovery at issue (*see* Weaver Decl., Ex.

15 at 6), whereas BANA has provided the detailed declaration of Robert Daniel explaining the estimated prohibitive cost and burden of the requested search.  *See* Daniel Decl.  Second, despite CitiMortgage putting in no burden evidence at all, the court ordered far fewer custodians and search terms than Plaintiffs seek here.  *See* Weaver Decl., Ex. 15 at 9.

The other cases Plaintiffs cite in support of their claim that their proposal "is in line with the standard practice for searching for, and producing electronic documents" (*see* Pls.' Mem. At 8) are similarly inapposite.  *See Adair v. EQT Prod. Co.*, Nos. 10-cv-37 & 10-cv-41, 2012 WL 2526982,, at *2, 5 (W.D. Va. Jun. 29, 2012) (parties agreed to eight custodians); *Walker v. Asset Mktg Sys. Ins. Servs.*, 2012WL 827010, at *2-3 (S.D. Cal. Mar. 9, 2012) (email ordered as to search of servers, not from custodians' historical documents).

2.    NONE OF PLAINTIFFS' PROFFERED REASONS JUSTIFY THE PROTOCOL.

Without any on-point authority to support it, Plaintiffs next claim that the emails they seek to compel are somehow necessary and appropriate because (1) BANA employees allegedly "testified that they could not provide substantive testimony on key issues without seeing copies of their emails" (Pls.' Mem. at 3, 6-7); (2) it will uncover evidence relevant to Plaintiffs' bad-faith and unfair-practices claims (*id.* at 7-11); and (3) it will result in the production of relevant internal BANA reports (*id.* at 11-13).  None of these purported justifications supports Plaintiffs' demand that BANA conduct millions of dollars of electronic discovery encompassing tens of thousands of hours of effort at this pre-certification stage of the lawsuit.

a.    No BANA employee has testified that they could not provide substantive testimony without seeing their old email.

In support of their claim that BANA employees are unable to provide substantive testimony without reviewing their emails, Plaintiffs cite to the deposition testimony of three of the 24 custodians from whom Plaintiffs seek email – Lourdes Duarte, Jinja Martin, and Elizabeth

Smith, only one of which was a 30(b)(6) witness, despite Plaintiffs' suggestion otherwise.  But Plaintiffs grossly mischaracterize the testimony of these witnesses.  Ms. Smith did not testify, as Plaintiffs claim, that she "cannot recall what happened in meetings to formulate [BANA]'s HAMP policies without seeing related documents that came via email."  Pls.' Mem. at 3, 6-7.  To the contrary, she testified that certain meetings "may have" resulted in emails and that she did not recall what "specific" emails, if any, were generated, and thus could not testify to the "specific content" of these emails.  Weaver Decl., Ex. 11 at 64:1-15.  Similarly, Ms. Duarte did not testify, as Plaintiffs claim, that she "cannot recall what inquiries she made of colleagues regarding the ability to locate data without having her emails in front of her."  Pls.' Mem. at 3, 7.  Rather, her testimony was that she did remember her inquiries, including what she had asked her colleagues.  Weaver Decl., Ex. 12 at 77-81.  That she could not remember the "exact words" or "specific verbiage" she had used in her inquiries does not mean she did not recall them and provide testimony about them.  *See id.*  And, finally, Ms. Martin did not testify, as Plaintiffs claim, that she ████████████████████████████████████████████ ████████████████████. Pls.' Mem. at 6.  Rather she testified that she had ████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████. Weaver Decl., Ex. 10 at 92:2-93:9.  But, since she testified about the issue she had identified, Plaintiffs charge of lack of memory is unsupported.  Thus, while Plaintiffs' claim that they need email from 24 custodians because BANA employees cannot provide substantive testimony, the cited testimony does not support the argument.

   b. <u>Plaintiffs' "evidence" of BANA's purported "scheme to wrongfully deny mortgage modifications" does not justify the burden of their proposal.</u>

Plaintiffs next attempt to obscure the defects in their argument to compel production of email by pointing to testimony from two employees of BANA's vendors that Plaintiffs claim evidence some sort of scheme by BANA to "fraudulently" deny HAMP modifications. BANA, of course, denies the existence of any such scheme. But, as relevant to the Motion, the purported existence of such a scheme provides no legitimate basis for Plaintiffs' request, because it does not and cannot change the fact that the request will cost millions of dollars and consume tens of thousands of hours. And, more fundamentally, the record reveals that Plaintiffs have grossly mischaracterized the cited testimony in a failed attempt to support the Motion.

First, as to Christopher Orris ("Orris"), an employee of one of BANA's third-party vendors, Urban Lending Solutions ("Urban"), Plaintiffs' repeated insinuation that Orris testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pls.' Mem. at 9-10. Orris did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ McGarry Decl., Ex. B at 44:19-25 ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, 58:2-7 ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, 182:6-8 ▮▮▮▮. Rather, as an employee in Urban's Executive Customer Relations ("ECR") group from July 2010 through January 2012, Orris ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ (*id.* at 83:8-86:24; 123:18-124:1) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at

183:15-184:5, 185:13-19).  Viewed in this context, the testimony that Plaintiffs cite adds nothing to the resolution of this Motion.[6]

Second, Plaintiffs' claim that the declaration of Bert Sheeks ("Sheeks"), a former Urban employee, constitutes evidence that BANA directed, or knowingly allowed, contractors to fraudulently deny HAMP modifications to homeowners who were entitled to them is similarly incorrect.  Pls.' Mem. at 8.  Nothing in Sheeks' statement suggests that BANA directed or knowingly allowed Urban to engage in any "fraudulent" activity.  Weaver Decl., Ex. 14.  Moreover, neither Sheeks' apparent belief that his job was to find any pretext to justify closing a file or his opinion that requests for homeowners to provide missing documents were "often suspect" support a conclusion that Urban engaged in any "fraudulent" activity.

Apart from these issues, and even if Plaintiffs' characterization of the testimony of Orris and Sheeks were correct, it would not support imposing the undue burden of Plaintiffs' proposal upon BANA.  Nowhere in the Motion do Plaintiffs explain why their 24 proposed custodians should be expected to have emails regarding BANA's relationships with Urban or other vendors.  Similarly, their proposed search terms are obviously not "narrowly targeted" to identify email focusing on these relationships.  Plaintiffs' invocation of some "evidence" that is arguably relevant to their claims cannot justify the burdensome fishing expedition they demand.

      3.     The Existence of Potentially Relevant Reports Does Not Justify Imposition of Plaintiffs' Burdensome Email Requests.

As a final attempt to justify compelling the review and production of almost all email of 24 custodians, Plaintiffs cite deposition testimony regarding the existence of several different types of internal BANA reports (e.g., "control reports," "pipeline reports," and "MHA summary

---

[6] In addition, further demonstrating the overreach of Plaintiffs' proposal, Orris began working at Urban in July 2010 (*see id.* at 6:14-20), after all but a handful of the named plaintiffs allege they had completed their trial periods, and he testified that ██████████████████████████████ ███████████████████████████████████████████ (*see* 94:12-17; 189:23-190:6).

reports") that may be attached to such emails.  Pls.' Mem. at 12.  But this effort gets them

nowhere.  Even assuming that these reports were relevant, their existence would not justify

Plaintiffs' demand for email.  If Plaintiffs want these reports, they should simply propound a

discovery request specifically asking for them instead of demanding that BANA undertake a

multi-million dollar search reviewing email to find them.  This is particularly true where BANA

has already provided Plaintiffs with samples of many reports and identified the existence and

subject matter of numerous others.  *See* McGarry Decl., Ex. C.

II.  **PLAINTIFFS' MOTION FOR AN ORDER COMPELLING BANA TO PRODUCE ADDITIONAL IR2 DATA SHOULD BE DENIED.**

BANA has produced voluminous IR2 data, ██████████████████████████████

████████████████████████████████████, for customers seeking HAMP

modifications and comprising all information BANA had reported to the Treasury Department as

of the time of BANA's production – March 2012.  *See* McGarry Decl., ¶ 12.  Apparently

unsatisfied, Plaintiffs now ask this Court to compel BANA to provide more IR2 data, including

(a) "any periodic summary data that were provided to the Treasury;" or (ii) "data sufficient to

identify when each borrower in the IR2 database received a denial letter, if any."  Pls.' Mem. at

15.[7]  This Court should decline this request for several reasons.

---

[7] Plaintiffs erroneously assert that, in February, this Court ordered BANA to produce all IR2 Data.  *See* Pls.' Mem. at 13.  As the record confirms, the Court issued no such order.  Indeed, Plaintiffs did not serve discovery seeking IR2 Data until after they had filed the motion to compel that was the subject of the Court's February order.  *See* McGarry Decl., Ex. D.(Pls.' Second Req. for Produc. Of Docs., Req. No. 4).  After BANA's March 2012 production of this data, Plaintiffs' counsel was apparently so satisfied with this production that it highlighted BANA's production in its unsuccessful motion to compel production of IR2 Data in the Chase HAMP MDL.  *See Chase HAMP MDL*, Case No. 11-md-2290, Decl. of Kevin Costello in Supp. of Pls.' Mot. to Compel Produc. of Docs., ¶ 8, Dkt. No. 75 (D. Mass. May 24, 2012).

A. **THIS COURT SHOULD FOLLOW JUDGE STEARNS' ORDER PRECLUDING DISCOVERY OF IR2 DATA**

First, while Plaintiffs avoid even mentioning it, Judge Stearns already has rejected a Motion to compel IR2 data in the *Chase HAMP MDL*. *Chase HAMP MDL* Order at 2. In denying Plaintiffs **any** IR2 data, Judge Stearns rejected arguments to compel substantively similar data to those advanced by Plaintiffs here. *Chase HAMP MDL*, Pls.' Mot. to Compel Produc. of Docs., ¶2, Dkt. No. 74 (D. Mass. May 24, 2012). But Plaintiffs have made no attempt – none – to explain why this Court should not follow Judge Stearns' ruling, choosing instead to ignore it. BANA has already provided more than enough IR2 data. The Court should deny the request for more.

B. **PLAINTIFFS SEEK DATA THAT DOES NOT EXIST.**

Second, the additional data Plaintiffs seek does not exist, and, even if it did, it would be unduly burdensome for BANA to produce. As to "periodic summary data" provided to the Treasury Department, and although it is not entirely clear what Plaintiffs mean by the term,



. *See* Decl. of Joe Bridges in Supp. of Def.'s Opp'n to Mot. to Compel ("Bridges Decl."), ¶ 5.

. *Id.*

Likewise, as to the date of any denial letter,

*Id.* ¶ 6.



. *Id.* ¶¶ 7-8.  This is so for many reasons as articulated in the Bridges

Declaration submitted herewith.[8]

C.   **REQUIRING BANA TO REVIEW AND PRODUCE DATA FROM EACH OF ITS UPLOADS TO THE TREASURY DEPARTMENT WOULD IMPOSE AN UNDUE BURDEN.**

Apart from the fact that the date of any HAMP denial or adverse action letter cannot be

"reversed engineered" from a review of each upload to the Treasury Department, the uploads

themselves comprise significant volumes of data the collection and production of which would

involve substantial time and expense and present significant technological challenges.  *Id.* ¶ 9.

*See id.* ¶ 9-10.

---

[8] To the extent Plaintiffs seek the date of HAMP adverse action letters to particular customers, BANA can provide such information through the loan sampling process.  *See* Decl. of Michael Sunlin in Supp. of Def.'s Opp'n to Mot. to Compel ("Sunlin Decl."), ¶ 5.  However, since Plaintiffs elected to press the issue in this Motion and in the context of IR2 data, BANA responds in turn as to the issue presented to the Court.

███████████████████████████████████████████████████

████████████████████████. *Id.* ¶ 10.  The Motion as to IR2 data should be denied.[9]

### III.   THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL WITH RESPECT TO THE SAMPLE OF 3,000 LOAN FILES AND DIRECT PLAINTIFFS TO MEET AND CONFER IN GOOD FAITH ON THIS TOPIC.

A.   **THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS' DEMAND EXCEEDS THE SCOPE OF THE RELEVANT REQUEST FOR PRODUCTION.**

In December 2011, Plaintiffs moved to compel (the "December 2011 Motion") – and in February 2012, the Court orally ordered  – BANA to produce information regarding a sample of loan files in response to one of Plaintiffs' discovery requests.  Critically, the Court ordered the parties to meet and confer over the amount of data sought, recognizing that the original requests were overly broad and unduly burdensome.  *See* McGarry Decl., ¶ 12.  Now, Plaintiffs seek to bootstrap the Court's February order into an order compelling BANA to produce data and documents that far exceeds the scope of the initial discovery request, let alone any attempt to comply with the Court's order by actually narrowing the sampling information.

Plaintiffs' Document Request No. 2 sought 10 categories of "Loan Level Account data" for each loan in a randomly-selected sample.  *See* Weaver Decl., Ex. 16.  Therefore, the scope of the December 2011 Motion – and the Court's February order  – was necessarily limited to these

---

[9] As an "alternative remedy" to the production of additional IR2 data, Plaintiffs suggest that the Court order BANA "to make a computer or server available which contains all of the databases which contain information about when borrowers received notice that they would not be provided a permanent modification, and allow Plaintiffs to designate a database expert to review the data."  Pls.' Mem. at 15.  However, "even with a protective order in place, court-ordered inspections of computer systems should be used sparingly."  *Sedona Principles*, Comment 10.b.  "Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."  Fed. R. Civ. P. 34 Committee Note (2006); *see also In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (granting mandamus to prevent implementation of district court order allowing inspection of databases as abuse of discretion).  Here, Plaintiffs provide no justification for their extraordinary demand for access to BANA's proprietary databases in contravention of BANA's data security policies.  In the absence of such a demonstration, the Court must deny Plaintiffs' demand for access out-of-hand.

10 categories of "Loan Level Account data."  Pls.' Mem. in Sup. of Mot. to Compel at 3 n.3,

Dkt. No. 92 (Dec. 2, 2011).  In June, however, Plaintiffs demanded BANA produce 25 "data

points" – including such vague, ambiguous and overly broad items as "all notations" concerning

documents "related to the TPP," "all waterfall outcomes," "any and all underwriting data," "any

pre-foreclosure analysis," "all inline QA results," and "all FAQ 1222 analysis" – and four

categories of documents for each loan in the sample.  Weaver Decl., Ex. 4 at 2-3.  As even a

cursory comparison demonstrates, these 25 "data points" encompass a much larger amount of

information than the 10 categories of "Loan Level Account data" sought by Document Request

No. 2.  *See* Comparison of Records Sought By Req. for Produc. No. 2 Against "Data Points"

Sought by Pls.' June 14, 2012 Letter (attached to this Opposition as Exhibit A).

Notwithstanding the vast expansion of their demands, Plaintiffs now move to compel

production of these 25 "data points," relying heavily on the Court's February order, but

conveniently neglecting to remind the Court of the much narrower scope of the discovery request

that the February order concerned and the Court's direction that the parties meet to narrow,

rather than expand, the sampling information to be produced. *See*  Pls.' Mem. at 16.  There is

simply no basis for a motion to compel or an order compelling production of the 25 "data points"

and four categories of documents for 3,000 loans because Plaintiffs have never served formal

discovery seeking them.

   B. **THE MOTION SHOULD BE DENIED BECAUSE SOME OF THE INFORMATION PLAINTIFFS SEEK, TO THE EXTENT BANA UNDERSTANDS PLAINTIFFS' DEMANDS, DOES NOT EXIST OR WOULD BE UNDULY BURDENSOME TO PRODUCE.**

The Motion should also be denied because some of the "data points" Plaintiffs seek, to

the extent BANA understands them, do not exist or would be unduly burdensome for BANA to

produce for each of 3,000 loans.  For example, Plaintiffs seek "all exceptions codes" for each

loan.  *See* Weaver Decl., Ex. 4 at 2.  However, ███████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████  *See* Decl. of Michael Sunlin in Supp. of

Def.'s Opp'n  to Mot. to Compel ("Sunlin Decl."), ¶ 14.  Without additional clarification of or

context for this "data point," BANA cannot ascertain the information that Plaintiffs seek,

determine whether it exists, or, assuming it exists, determine the process for and the costs of

gathering it.  *Id.* ¶¶ 12-14.  The same holds true for a number of the other "data points."  *Id.*

¶¶ 12-16.

 Even for those "data points" that do exist, the costs of producing many of them for each

of 3,000 loans is prohibitive.[10]  *Id.* ¶ 6.  For example, Plaintiffs demand "the date and amount of

any payments made pursuant to a TPP."  While BANA is willing to provide Plaintiffs with

payment histories for each of these 3,000 loans, Plaintiffs are demanding that BANA generate

the date "in an excel spreadsheet that allows [Plaintiffs] to manipulate the order of records as

needed," or in essence, do Plaintiffs' work for them.  *See* Weaver Decl., Ex. 4 at 3.  This data,

however, cannot be generated in the manner Plaintiffs are requesting. ██████████████████

██████████████████████████████████████████████████████████████████

███████████████████████  *See* Sunlin Decl., ¶ 7.  ██████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████  *Id.*  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[10] To the extent BANA understands the "data points" Plaintiffs seek, ███████████████████████

██████████████████████████████████████  *See* Sunlin Decl., ¶ 5.



*Id.*

Similarly, it would be unduly burdensome for BANA to produce the documents Plaintiffs

have demanded for each of 3,000 loans. ███████████████████████████

*See* Declaration of

Lourdes Duarte In Support of Def.'s Opp'n to Mot. to Compel, ¶ 4. ███████████████

*Id.* ¶ 6;

*see also* Sunlin Decl., ¶ 8. ███████████████

███████████   Duarte Decl., ¶ 5.  Given the burden of production of these "data points" and

documents would impose upon BANA, Plaintiffs' Motion should be denied.

### C. THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO MEET AND CONFER IN GOOD FAITH ON THIS TOPIC.

Notwithstanding the overreach of Plaintiffs' Motion, BANA has agreed to produce

information regarding each of a randomly-selected sample of 3,000 loan files.  However, BANA

has, to date, been unable to produce this data set because, notwithstanding the Court's clear

instructions, Plaintiffs have refused to provide adequate explanation of the information they

want.  *See* McGarry Decl., Ex. E at 17:25-18:9; 19:16-22.[11]

Instead, by letter dated June 14, 2012, Plaintiffs demanded that BANA produce 25 "data

points" and 4 categories of documents for each of the 3,000 loans by no later than June 29,

---

[11] During a March 27, 2012, status conference, the Court directed Plaintiffs to tell BANA the "precise data" they wanted and to "be very specific in terms of . . .  the data for the sample ," *See, e.g., id.* at 17:25-18:9.  The court emphasized that "the burden really should be on [Plaintiffs], to begin with, certainly given what [Plaintiffs] have already discovered, to tell [BANA] what [Plaintiffs] want."  *See id.* at 19:16-22.

2012.[12]  Plaintiffs invited BANA to specify any points requiring clarification.  *Id.* at 3.  Because many of the requested "data points" and document categories were vague, ambiguous or overly broad, BANA accepted Plaintiffs' invitation and asked for clarification.  *Id.*, Ex. 5.  Plaintiff refused to provide the invited clarification, arguing their request was "fully understandable" and declared that the parties had reached an impasse.  *See* McGarry Decl., Ex. F.  BANA urged Plaintiffs to reconsider their refusal to provide clarification (*id.* Ex. G), but Plaintiffs instead filed their Motion.

Rule 34 requires Plaintiffs to describe with reasonable particularity the information or categories of information to be produced.  As discussed above, Plaintiffs have failed to do this.  Nor have Plaintiffs responded to BANA's requests for clarification.  Because Plaintiffs failed to meet-and-confer in good faith on this topic, their Motion should be denied.  *See, e.g., Aponte-Navedo,* 268 F.R.D. at 40-41; *Contracom Commodity Trading Co*., 189 F.R.D. at 459-60.

## **CONCLUSION**

For all of the reasons above, Plaintiffs' Motion to Compel should be denied.

| Dated:  August 20, 2012 | Respectfully submitted,<br><br>Bank of America, N.A., for itself and as successor by merger to BAC Home Loans Servicing, L.P.,<br><br>By their attorneys, |
| --- | --- |

---

[12] Contrary to Plaintiffs' assertion (Pls.' Mem. at 16-17; Weaver Decl., ¶ 5), there was no discussion of the specific information Plaintiffs wanted during the parties' June 11, 2012 conference call.  *See* McGarry Decl., ¶ 15.  Although BANA was prepared to discuss its systems and databases and the data contained therein during this call, Plaintiffs obviated the need for this discussion by stating that they would provide BANA with a "master list" of elements to be included in the sample, and the parties moved on to other topics without further discussion.  *Id.*

|  | /s/ James W. McGarry<br>James W. McGarry (BBO #633726)<br>jmcgarry@goodwinprocter.com<br>GOODWIN PROCTER LLP<br>Exchange Place<br>53 State Street<br>Boston, Massachusetts 02109<br>Tel.:  617.570.1000<br>Fax:  617.523.1231 |
|---|---|

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 20, 2012.

/s/ James W. McGarry