# MCGARRY DECLARATION EXHIBIT G

# GOODWIN | PROCTER

Brooks R. Brown
213.426.2648
bbrown@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
601 S Figueroa St., 41st Floor
Los Angeles, CA 90017
T: 213.426.2500
F: 213.623.1673

July 10, 2012

<u>VIA E-MAIL: klein@kkcllp.com</u>
<u>VIA FIRST CLASS MAIL</u>

Gary Klein
KLEIN KAVANAGH COSTELLO, LLP
85 Merrimac Street, 4th Floor
Boston, MA  02114
617.357.5031

Re:   <u>In Re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation, Case No. 10-md-2193</u>

Dear Gary:

This will respond to your letter of July 5, 2012 concerning the production of data and documents for a sample of 3,000 loans. Plaintiffs' steadfast refusal to respond substantively to our request for clarification and/or specification of the vague, ambiguous, and overly broad categories of data and documents identified in Ari Brown's June 14, 2012 letter is counter-productive and in contravention of the Court's directive that the parties meet and confer in good faith. As the parties seeking discovery, it is incumbent upon Plaintiffs to identify the data and documents sought with reasonable particularity. *See, e.g.*, Fed. R. Civ. P. 34.[1] But, as set forth in detail in my July 2, 2012 letter, many of the categories of information and documents identified by Plaintiffs (the "subject categories") fall well-short of this standard. Indeed, in the absence of the requested specification and clarification, neither we nor Bank of America can (a) discern the specific data and documents Plaintiffs seek, (b) determine whether the data and documents exist and, if so, in what form, and (c) determine the relevance, if any, of the data and documents. As such, and in a good faith effort to advance the parties' discussions, we took the entirely reasonable and appropriate step of requesting that Plaintiffs provide additional information. Plaintiffs now decline this basic request, because the subject categories are purportedly "fully understandable" to Plaintiffs and Plaintiffs purportedly do not know the "names of fields and other data and documents in BOA records." Neither of these "justifications" has merit.

---

[1] Plaintiffs' refusal to specify or clarify the particular data and information they seek in response to the subject categories – as required by Rule 34 – raises the specter that Plaintiffs prefer instead to pursue discovery that is irrelevant, overly broad and unduly burdensome and then complain when Bank of America requests particularity or declines to produce. That, of course, is improper under the Federal Rules. Fed. R. Civ. P. 26.

LIBA/2318323.1

GOODWIN | PROCTER

Gary Klein
KLEIN KAVANAGH COSTELLO, LLP
July 10, 2012
Page 2

First, while the subject categories may be "fully understandable" to Plaintiffs, they are not to Bank of America. Regardless, if the subject categories are "fully understandable" to Plaintiffs, then Plaintiffs should have no trouble providing the requested specification and/or clarification. Further, the suggestion in your letter that the subject category descriptions are based upon discussions between the parties and/or deposition testimony is misleading and illustrates the unreasonableness of Plaintiff's position. With respect to discussions between the parties, the record confirms that Plaintiffs have never clarified or specified the data and documents sought as part of the subject categories, but instead have categorically refused to do so. Ari Brown's June 14 letter was the first time Plaintiffs identified the subject categories to Bank of America. At no time between that letter and your July 5 letter did Plaintiffs provide (or, for that matter, offer to provide) any specification or clarification of the subject categories. As to the deposition testimony, if Plaintiffs' position is that some or all of the subject categories come from the deposition record, then it should be simple for Plaintiffs to identify the categories, witness(es) and relevant testimony, and we invite Plaintiffs to do so. Plaintiffs' apparent position that Bank of America must instead comb the entire deposition record in an effort to divine which of the subject categories Plaintiffs' believe come from it and the testimony Plaintiffs believe clarifies or specifies each of the subject categories is unreasonable and unjustified.

Second, Plaintiffs' now oft-repeated claim that they lack sufficient knowledge to identify, with the requisite reasonable particularity, the data and documents they seek in discovery is more professed than real. As an initial matter, contrary to your assertion, Bank of America's position is not that Plaintiffs must "specifically identify the names of fields" they seek. Rather, the Bank's position is that Plaintiffs must identify the data and information they seek with sufficient specificity to enable the Bank to know what it is that Plaintiffs want (as opposed to being required to guess because Plaintiffs refuse to clarify or specify). This is something Plaintiffs should be capable of doing. Indeed, as you know, Bank of America has produced a host of representatives for deposition on a wide-range of topics, as well as voluminous documents and information concerning, among other things, the named-plaintiffs, Bank of America's systems containing information and data relating to HAMP, and Bank of America's policies, procedures and practices relating to HAMP. Thus, contrary to your repeated suggestion otherwise, Plaintiffs are not without knowledge as to the data contained with Bank of America's systems or the "documents in [Bank of America's] records." Regardless, in this instance, Plaintiffs' purported "lack of knowledge" excuse rings hollow, because it is Plaintiffs that came up with the subject categories and presumably had some basis for doing so.

Finally, we note that, to the extent we can surmise the scope of the subject categories at this time, many of them (as well as many other categories identified in Ari Brown's June 14 letter) vastly exceed the reasonable scope of Plaintiffs' Request For Production No. 2 ("A randomly selected set of electronically maintained Loan Level Account Records, including the Documents listed in

LIBA/2318323.1

GOODWIN | PROCTER

Gary Klein
KLEIN KAVANAGH COSTELLO, LLP
July 10, 2012
Page 3


Request for Production No. 1 (b-k)[2] . . ."), upon which the Court based its sampling order. Plaintiffs' attempt to misuse the court-ordered meet and confer process to expand the scope of its discovery requests is, of course, improper. To be clear, Bank of America's position has been (and remains) that any production of data and/or documents from a sample of putative class loans must be limited to scope of the subject document request. Thus, to the extent Plaintiffs continue to insist upon a production beyond the scope of the subject document requests, Bank of America intends to seek appropriate relief from the Court.

Against this background, and in light of the Court's directive that we meet and confer on this issue in good faith, we suggest Plaintiffs reconsider their refusal to provide clarification and specification as to the subject categories and provide a substantive response to the issues identified in my July 2, 2012 letter. Of course, if Plaintiffs decline to do so and press the issue with the Court, then Bank of America reserves all right (1) to oppose the production of any data and documents on the sample loans; and (2) to demonstrate that the "impasse" you reference is entirely of Plaintiffs' own making.

Sincerely,

*[signature]*

Brooks R. Brown

BRB
cc:   Ari Brown (via email: ari@hbsslaw.com)
      Shennan Alexandra Kavanagh (via email: kavanagh@kkcllp.com)
      James W. McGarry
      Dahlia Fetouh
      Seth Goldstein

---

[2] Plaintiffs' Request for Production No. 1 seeks the following documents: "b. payment history beginning on date of delinquency or date of TPP application, whichever is earlier; c. date of HAMP application, final approval and/or denial; d. date and terms of any TPP Agreement; e. reasons for HAMP denial, if applicable; f. records of fees and/or charges placed on the account during and after TPP Agreements; g. calculations, including, without limitation, any worksheets, used to determine eligibility for HAMP; h. records of Correspondence and oral communications related to default and foreclosure activity following date of TPP Agreement; i. records of Correspondence and oral communications related to TPP documentation; j. all records of documentation received in support of a HAMP application; and k. all records that reflect the current status of the Account, including, without limitation, information reflecting the terms of non-HAMP modifications, short sales, full payments, or foreclosures."