# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | MDL No. 2193<br><br>**Centralized before the Honorable Rya W. Zobel** |
| This Document Relates To:<br><br>ALL ACTIONS | |

**[REDACTED]**

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................................1

II. ARGUMENT...............................................................................................................1

    A.  The Court Should Order BOA to Perform a Targeted Search for Emails and Attachments, and Produce the Responsive Documents to Plaintiffs .......................1

        1.  BOA's claim of burden must be viewed in light of well-accepted methods of reducing that burden, and in light of what Plaintiffs actually requested..................................................................................................2

        2.  BOA's arguments about the importance of what Plaintiffs expect to find in emails should be disregarded .........................................................5

            a.  Plaintiffs are entitled to emails regarding BOA's relationship with its HAMP contractors .............................................................5

            b.  BOA's arguments concerning reports simply demonstrates why an order compelling email searches and production is necessary ........................................................................................6

            c.  BOA cannot seriously argue that Plaintiffs have not been hampered at depositions by not having the deponents' electronic documents .......................................................................6

    B.  The Court Should Order BOA to Provide the "Denial Data" it Now Admits it Can Reasonably Locate and Produce .................................................................7

    C.  The Court Should Order BOA to Finally Provide the Sample the Court Ordered in February..................................................................................................8

III. CONCLUSION...........................................................................................................10

010176-16  547258 V1

## I. INTRODUCTION

In its opposition, BOA continues to take the untenable and unsupported position that it need not produce a single email in this case, or comply with the Court's prior order compelling production of a sample of information for 3,000 borrowers, allegedly on the basis that Plaintiffs have not been specific enough in their requests. Plaintiffs have made repeated efforts to be specific in response to BOA's demands, only to be rebuffed on all fronts. Plaintiffs respectfully request that the Court order BOA to produce the data sample the Court ordered six months ago, and to search for and produce emails, which it incredibly has yet to do in this case.

On the third issue in Plaintiffs' motion, concerning the additional data Plaintiffs seek regarding when borrowers received letters of denial, Plaintiffs believe the issue has been, or at least should be, resolved by BOA's admission that it can retrieve that data with a reasonable search of BOA's databases. All that is left is for BOA to produce what it admits it can retrieve.

## II. ARGUMENT

**A. The Court Should Order BOA to Perform a Targeted Search for Emails and Attachments, and Produce the Responsive Documents to Plaintiffs**

BOA does not deny that it has not searched for, and has not produced, a single email in this case despite having outstanding discovery requests for more than a year. BOA also does not deny that Plaintiffs are entitled to relevant emails and attachments, or that BOA's emails and their attachments contain information that is relevant to both class certification and the merits of this case. Nor does BOA claim it cannot perform a search, or that Plaintiffs' approach of specifying custodians and search terms for email productions has not been widely accepted by the courts. Rather, BOA contends that Plaintiffs' request for emails and attachments from 24 custodians, using a list of specified terms, would be too burdensome and therefore BOA should not be required to produce any emails at all.

This recalcitrance forced Plaintiffs to file this motion: BOA refuses to indicate what it believes would be reasonable, or suggest any procedures or methods for reducing that burden. Instead, BOA proclaims that Plaintiffs must be more specific or more targeted. BOA will not produce any email unless it is ordered to do so. Plaintiffs' protocol for searches of the email of a limited number of custodians based on specified search terms is reasonable, and should be granted. Each custodian was identified in a deposition as having knowledge relevant to this case. Should the Court believe the terms must be further tailored, Plaintiffs ask that the Court compel production on specific alternative grounds rather than require further meeting-and-conferring.

### 1. BOA's claim of burden must be viewed in light of well-accepted methods of reducing that burden, and in light of what Plaintiffs actually requested

According to BOA, it cannot be troubled with searching for emails for 24 custodians, all of whom Plaintiffs identified from depositions and other discovery in this case as likely to have relevant information.[1] As pointed out in Plaintiffs' opening papers, some of the named custodians already testified concerning their regular use of email to transmit and receive information concerning implementing or administering HAMP. Opening Br. at p. 3. BOA has both overstated the likely actual burden of Plaintiffs' requests, and conveniently ignored that Plaintiffs have suggested to BOA on multiple occasions that the parties work together to reduce the burden if the search results actually return an excessive number of documents.

BOA says it has now performed a search of two custodians, using Plaintiffs' terms, and determined the process of reviewing those documents would be excessively burdensome.[2] BOA claims this means it should not have to produce any emails at all. This is hardly the conclusion that should be drawn. BOA notably does not claim to have attempted to reduce those numbers

---

[1] Plaintiffs or court reporters may have mistyped three names, according to BOA. Plaintiffs had not heard of this before BOA's brief, but are, of course, willing to correct any errors.

[2] BOA had not even done this preliminary search until Plaintiffs filed this motion.

010176-16 547258 V1

by computer analysis, or determined whether there was a particular term that was returned a large number of hits. In addition, the fact that a particular custodian has a large number of documents does *not* necessarily mean Plaintiffs' terms are overly broad; it may simply mean the custodian has a large number of relevant documents.[3]

*First*, the raw numbers of documents are only that: raw numbers. The likely universe of documents that would actually require review is much smaller. It is well-accepted that production and review of documents can be streamlined by using "a number of automated tools that are of great assistance in reducing the overall data universe" by such means as "de-[duplicating] … identical or 'near' identical [documents],"[4] "eliminating certain types of files that likely not relevant (e.g., video and program files)," "eliminating obvious spam from the review population," and "pull[ing] together all the related e-mails from a given e-mail chain so they can be reviewed together." *See* The Sedona Commentary on Achieving Quality in the E-Discovery Process (Fall 2009) ("Sedona Commentary"), 10 Sedona Conf. J. 299, § III.B.2.

*Second,* the process of reviewing for privilege can be greatly lessened by not engaging in unnecessary review of documents that do not constitute a communication with an attorney. Further, FRCP 26(b)(3)(5) and the protective order in this case specifically contain a "clawback" provision which allows a producing party to recover a privileged document that was

---

[3] One of the individuals whose emails BOA searched, Jinja Martin, was directly involved in organizing BOA's initial HAMP implementation. It should be expected that she would have extensive relevant electronic documents in her email.

[4] BOA's declarant on this issue, Mr. Daniel, indicates that the numbers he reports were following "de-duplication," apparently only within each custodian's individual files. *See* Daniel Decl., ¶ 8. This is not true de-duplication. For example, if an email were sent to 10 designated custodians, a true de-duplication would mean that BOA would review and produce that email *only once* rather than reviewing and producing the same email 10 times. BOA's failure in de-duplicating across custodians means BOA forgoes these obvious sorts of efficiencies. It is also highly unlikely that a single custodian is going to possess multiple copies of the same email or attachment, thus rendering single-custodian "de-duplication" essentially meaningless.

inadvertently produced in discovery. Dkt. No. 56, ¶ 11. These sorts of provisions "allow[] the majority of documents to be produced without manual review." Sedona Commentary, § III.B.3. Plaintiffs' counsel have, to date, abided by the letter and spirit of these rules, and will of course return any document that appears to be privileged and provided in error.

*Third*, BOA's analysis ignores what Plaintiffs have actually requested. BOA portrays Plaintiffs' position as being that BOA must produce every document responsive to Plaintiffs' proposed search terms. However, Plaintiffs made clear to BOA that what Plaintiffs want is a process under which (1) BOA runs the search terms, (2) BOA provides a report summarizing the hits for various terms and custodians, and (3) the parties work to revise the search terms as necessary to avoid an excessively burdensome production. Declaration of Tyler Weaver in Support of Plaintiffs' Motion to Compel, Dkt. No. 128 ("Weaver Opening Decl."), Ex. 6, p. 2 (Proposed Protocol). But BOA flatly rejected Plaintiffs' proposal and has been unwilling to further engage on the issue. Plaintiffs remain willing to undergo this process with BOA, but ask that if the Court orders this process, that the order set specific deadlines for resolution of that process and ultimately for production in order to avoid further delay.

Plaintiffs have always been willing to work with BOA to reduce the number of irrelevant documents reviewed and produced, and to tweak terms if it appeared they were resulting in unreasonable numbers of documents uncovered. Weaver Reply Decl. ¶ 3. It is not in Plaintiffs' interests to receive thousands of irrelevant documents. Plaintiffs do not want them, and are not interested in making BOA review them. But it should be no defense to production that BOA has 24 custodians who have a large number of responsive and relevant documents.

BOA gains nothing from its repeated citation of a recent discovery order in the *Chase HAMP MDL*. That order concerned a completely different scenario. In *Chase,* Plaintiffs sought ***all*** responsive emails, regardless of custodian, and did not specify any custodians or search terms

to limit the universe of documents, much less propose a protocol to reduce the numbers of documents, as Plaintiffs have done here. *See In re JP Morgan Chase Mortgage Mod. Litig.*, No. 11-md-02290-RGS, Dkt. No. 75 (5/24/2012 response brief, pp. 5-7) and Dkt. No. 87 (June 1, 2012 order). Plaintiffs have made a far different proposal in this case.

Nor is *McPeek v. Ashcroft*, 202 F.R.D. 31 (D.D.C. 2001) on point. In that case, the defendants "[did] not quarrel with their obligation" to search for and produce electronic discovery and emails; at the time of the motion to compel, the defense had ***already searched for and produced responsive emails***. *See* 202 F.R.D. at 32. The issue the court addressed instead was whether the defendants also had to search their backup tapes to see if there was anything additional after a preliminary search of a sample of backup tapes revealed no responsive documents. *See id.* That is not the case here – BOA has neither searched for nor produced any email, and Plaintiffs are not asking that BOA search backup tapes. Plaintiffs simply seek an order compelling BOA to search and produce emails in the first place.

### 2. BOA's arguments about the importance of what Plaintiffs expect to find in emails should be disregarded

#### a. Plaintiffs are entitled to emails regarding BOA's relationship with its HAMP contractors

BOA attempts to whitewash the evidence Plaintiffs uncovered indicating that BOA and its third-party contractors engaged in a scheme to wrongfully deny modifications. This evidence is powerful and cannot be ignored. To reprise some key points:

- ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████████
██████████████████████████

- ████████████████████████████████████████████

  ████████████████████████████████

Weaver Opening Decl., Ex. 13 (Orris Dep.), 68:7-71:13; 141:9 – 146:17; 184:15 – 185:12; Ex. 14 (Sheeks Decl.).

Plaintiffs are entitled to an order compelling production of email that would, among other things, result in production of evidence bearing on these facts. BOA apparently believes the evidence of such wrongdoing is limited, but that is beside the point. Plaintiffs must be given the opportunity to test whether or not what they have learned about was systemic and part of a larger scheme to wrongfully deny HAMP modifications.

### b. BOA's arguments concerning reports simply demonstrates why an order compelling email searches and production is necessary

BOA also admits they could get relevant reports through email searches, but instead claims Plaintiffs should "simply … ask[] for them." Def. Mem. at 13. Yet Plaintiffs have done so *repeatedly*. Most recently, the parties conferred about a set group of 130 audit reports that Defendants identified, and for which Plaintiffs requested full production in light of the Court's direction that BOA must produce audits. Plaintiffs conferred with BOA about their previous disclosures about these reports, requested all of the reports, and requested a response. Reply Declaration of Tyler Weaver in Support of Plaintiffs' Motion to Compel ("Weaver Reply Decl."), Ex. 18. BOA simply failed to respond to this demand, much less produce the reports. Weaver Reply Decl., ¶ 5. It would be far easier and efficient to simply order a production of electronic discovery rather than force the Court to continue to have to address future disputes.

### c. BOA cannot seriously argue that Plaintiffs have not been hampered at depositions by not having the deponents' electronic documents

BOA cannot explain away the fact that its own witnesses – including designated 30(b)(6) witnesses – have been unable to recall key details without seeing their emails or other

- 6 -

documents. Plaintiffs believe the passages speak for themselves. For example, Elizabeth Smith testified that she could not recall the substance of particular meetings about BOA's implementation of HAMP, or whether there were emails or agendas that might exist on email, although she (not surprisingly) thought that if the examiner could ask her about a particular email she wrote or received, she might be able to recall. Weaver Opening Decl., Ex. 15, 63:17-65:17. Yet Plaintiffs could not attempt to test this, because BOA has completely refused to search her email and produce a single document from it. This is patently unfair, and is precisely the sort of hide-and-seek games the discovery rules are supposed to avoid.

B. **The Court Should Order BOA to Provide the "Denial Data" it Now Admits it Can Reasonably Locate and Produce**

Plaintiffs moved for an order requiring BOA to supplement its production of data to include information as to an important fact: the date(s) on which BOA sent denial letters to people seeking HAMP modifications. For the first time, Plaintiffs have learned (in BOA's opposition brief) that BOA *can* provide this information with a search of certain databases. *See* Def. Mem. at p. 15, n. 8; Sunlin Decl., ¶ 5. Plaintiffs were led to understand that the data was most likely contained in the IR2 database, but have now learned from a footnote in BOA's brief that BOA can retrieve the information from other databases. Plaintiffs therefore respectfully request that the Court order BOA to do this search for all loans, in a manner that allows Plaintiffs to cross-reference these data with the IR2 data BOA previously produced.

It is unclear why BOA did not simply agree to provide this data in its response, rather than tucking its admission into a footnote and going into elaborate detail regarding IR2 data. The discussion of IR2 is likely moot but, in the event the Court wishes to consider it, Plaintiffs briefly address a few arguments. First, as to BOA's claim that the Court should follow Judge Stearns in the *Chase MDL* by denying production of IR2 data, the Court already compelled

production of the data in this case, and Plaintiffs have already received most of the data.[5] Judge Stearns' order to the contrary in another case is irrelevant; that ship has sailed in this case.

In addition, to the extent that BOA contends at any hearing that, despite its admission, it would be too burdensome to search for the date-of-denial for all homeowners, Plaintiffs renew their request that the Court allow Plaintiffs to designate an expert to review BOA's databases to determine what efficient search can be performed. BOA's only response to this suggestion is that there might be security concerns. Def. Mem., p. 16, n.9. Plaintiffs were not asking for full access to BOA's servers, but that BOA place on a secure server (subject to monitoring by BOA security) the databases containing information about when denial letters were sent to borrowers. This would allow Plaintiffs to search the databases to determine the most efficient way to extract the data Plaintiffs need. Given the repeated back and forth regarding the existence and irretrievability of data that has plagued this case, this is likely the most efficient approach to dealing with data issues. However, Plaintiffs understand this issue to now be likely moot. Plaintiffs ask that the Court compel BOA to compile and produce the data, as it now says it can.

### C. The Court Should Order BOA to Finally Provide the Sample the Court Ordered in February

On the issue of the sample, BOA makes two damning admissions: (1) in February, ***the Court ordered it to produce a sample of documents for 3,000 borrowers***, and (2) in the ensuing six months, ***BOA has not produced any sample at all***. BOA incredibly claims that Plaintiffs are to blame, and has recycled discredited arguments from its earlier opposition. The reality is that BOA knows precisely what data is available, and Plaintiffs do not. The time has come to end the

---

[5] BOA suggests the Court never compelled this production. However, at the February status conference, the Court compelled BOA to produce the data BOA provided to the Treasury. Plaintiffs separately learned about the existence of "IR2 data" and submitted requests on that issue, only to later be told by BOA that the IR2 data was in fact the Treasury data the Court had already compelled BOA to produce. BOA's suggestion to the contrary is misleading at best.

- 8 -

010176-16 547258 V1

cat-and-mouse game BOA has been playing (asking Plaintiffs for more specificity without identifying what data points it keeps in its databases).

If BOA truly believes the Court's February order "was necessarily limited to" the 10 categories of data in Plaintiffs' original discovery requests, Def. Mem. at p. 19, then why has BOA failed to produce anything in response to the Court's order? Plaintiffs provided a different list, containing 24 narrower and more specific data points, because BOA demanded more specificity before it would produce the sample. *See* Weaver Opening Decl., Exs. 3 and 4. Plaintiffs asked primarily for electronic data (instead of paper copies) to lessen the burden on both sides. *See id.* BOA's response was that Plaintiffs were still not specific enough. Now BOA appears to contend that Plaintiffs erred in not sticking with the original language in the discovery requests. There is no apparent end in sight to BOA's circular logic. Plaintiffs must now seek another order compelling data from the loan sample.[6]

The Court should cast a skeptical eye on BOA's claims regarding the amount of time it would take to search for the data for the sample. BOA's own witnesses have admitted at deposition that the vast majority of the data Plaintiffs seek can be searched by mechanical inquiries into BOA databases. *See, e.g.,* Weaver Reply Decl., Ex. 19 (Schoolitz Dep.), 122:11-124:20, 144:10-146:18. This ability greatly simplifies the process.

Yet BOA continues to represent the sample would be excessively time-consuming. One of BOA's declarants, Lourdes Duarte, was already thoroughly discredited at deposition on this precise issue. Ms. Duarte previously submitted a declaration on the time it would take to compile a sample the first time Plaintiffs had to move on this issue. *See* Dkt. No. 101. At her deposition following that first declaration, Ms. Duarte admitted she has no formal education in

---

[6] The 24 more specific points that Plaintiffs listed in response to BOA's demands is more refined and was formulated based on information gleaned from several depositions.

- 9 -

computer programming or database management, and cannot even write a standard database query because she is "not a technology person." Weaver Reply Decl., Ex. 20, 44:25-45:10; 82:18-25.  Ms. Duarte also has absolutely no training in, or knowledge about, how to search for data on any of the key databases at issue in this case.  *Id.*, 36:25-37:8; 40:12-42:16, 82:18-83:9. Ms. Duarte had drafted her declaration assuming that a search could not be comprised across the databases for responsive information.  *Id.,* 137:15-138:1.  In fact, she did not even ask whether the process could be automated, did not know who she had talked to in preparing her declaration, and had no idea what a computer-savvy person might be able to do to automate the search process.  *Id.*, 97:1-11, 99:20-100:7, 105:18-106:14, 132:7-133:23, 134:10-17.  It is nothing short of stunning that BOA has again trotted Ms. Duarte out to make the same points, despite the fact that she apparently has absolutely no basis for making those points.

Plaintiffs have not deposed the other declarant BOA has produced, Michael Sunlin, who at least claims to have some knowledge of computers and databases.  Given Ms. Duarte's track record, Mr. Sunlin's assertions should be viewed with skepticism.  But even Mr. Sunlin admits BOA can easily produce many of the requested data, yet BOA has not produced even those.

BOA also claims at the end of its brief that Plaintiffs did not sufficiently meet and confer on this issue.  This is incorrect.  The Court already ordered BOA to produce the sample, BOA has not even ***attempted*** to produce it, and Plaintiffs have met and conferred with BOA several times regarding the sample since the Court's order.  It is time for BOA to do what was ordered.

### III.  CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion to compel discovery.

- 10 -

Dated:  August 27, 2012

Respectfully Submitted,

*/s/ Steve W. Berman*
Hagens Berman Sobol Shapiro LLP
Steve W. Berman
Ari Y. Brown
Tyler S. Weaver
1918 8th Avenue, Suite 3300
Seattle, WA 98101
206.623.7292 (p)
206.623.0594 (f)
steve@hbsslaw.com
ari@hbsslaw.com
tyler@hbsslaw.com

*/s/ Gary Klein*
Roddy Klein & Ryan
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
727 Atlantic Avenue, 2nd Floor
Boston, MA 02111
617.357.5500 (p)
617.357.5030 (f)
klein@roddykleinryan.com
kavanagh@roddykleinryan.com
costello@roddykleinryan.com
*Interim Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2012, a true and correct copy of this document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steve W. Berman*
Hagens Berman Sobol Shapiro LLP

- 11 -

010176-16  547258 V1