**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION** | **MDL NO. 2193**<br><br>**Centralized before the Honorable Rya W. Zobel** |
| **This Document Relates To:<br>All Actions** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

## TABLE OF CONTENTS

**Table of Authorities** ..................................................................................................................... ii

**I.   BACKGROUND** ................................................................................................................. 2

    **A.   Treasury Reporting** ................................................................................................. 2

    **B.   Parties' Meet and Confer History** .......................................................................... 4

    **C.   Scope of the Proposed Deposition** .......................................................................... 8

**II.  ARGUMENT** ....................................................................................................................... 9

    **A.   The Bank's Treasury Reporting is Relevant** ......................................................... 9

    **B.   Provision of the Testimony that Plaintiffs See is Not Unreasonably Burdensome** .... 10

    **C.   The Bank's Proffered Alternatives Are Inadequate** ........................................... 13

**III. CONCLUSION** .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Barnett v. Norman*
   No. 1:05–cv–01022–SKO PC, 2010 WL 3220122 (E.D. Cal. Aug. 10, 2010) ......................... 14

*Briddell v. Saint Gobain Abrasives Inc.*
   233 F.R.D. 57 (D. Mass. 2005) ................................................................................................ 11

*Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*
   201 F.R.D. 33 (D. Mass. 2001) ............................................................................................ 2, 11

*Great American Ins. Co. of New York v. Vegas Const. Co.*
   251 F.R.D. 534 (D. Nev. 2008) ............................................................................................... 14

*In re Vitamins Antitrust Litigation*
   216 F.R.D. 168 (D.D.C. 2003) ................................................................................................ 14

*National Life Ins. Co. v. Hartford Accident and Indemnity Co.*
   615 F.2d 595 (3d Cir. 1980) .................................................................................................... 14

*Shoen v. Shoen*
   5 F.3d 1289 (9th Cir. 1993) ..................................................................................................... 14

*Zito v. Leasecomm Corp.*
   233 F.R.D. 395, 397 (S.D.N.Y. 2006) ..................................................................................... 14

Plaintiffs submit this memorandum in support of their motion to compel Defendant Bank of America, N.A. ("Defendant" or the "Bank") to produce a Fed. R. Civ. P. 30(b)(6) witness regarding the Bank's reporting of HAMP-related information to the United States Treasury Department ("Treasury").  This motion follows a *seven month* meet and confer process.[1]  The relief that Plaintiffs now seek – a corporate representative deposition on the Bank's Treasury reporting for HAMP -- was regarded as a routine, uncontroversial discovery request in each of the two other pending HAMP multi-district litigation matters.[2] Neither of those two comparable cases required court intervention for the relief Plaintiffs now seek from the Court.[3]

That Plaintiffs' request for a witness is regarded as routine in similar cases is unsurprising – the Bank's Treasury reporting is centrally relevant to the Plaintiffs' claims and will be used in their presentation in support of class certification.  Absent an opportunity for Plaintiffs to obtain corporate testimony clarifying what the Bank actually reported to Treasury and what the Bank understands its own data records to mean, the Court's job at the class certification stage of the case will be immeasurably more difficult.  Petty factual disputes between the parties would arise about the meaning and context of various data points.  These disputes, which may affect ascertainability, commonality, or typcality, would detract from consideration of more important legal questions about whether the contractual breaches at issue lend themselves to class treatment.

Further, the provision of a deponent or set of deponents who can testify is not overly

---

[1] As explained at length in the Declaration of Kevin Costello in Support of Motion to Compel ("Costello Decl.") (filed simultaneously herewith), the parties met the requirements of Local Rule 37.1 by exhausting every potential avenue of compromise during this marathon meet and confer process.
[2] *See* Costello Decl. at ¶ 2-3.
[3] *Id.*

1

burdensome or "impossible," as the Bank has maintained throughout its prolonged campaign to avoid this deposition. Rather, putting up a corporate witness who is educated on the requested topic is routinely recognized by courts as consonant with a party's Fed. R. Civ. P. 30(b)(6) obligations, even if that process is "burdensome" and "onerous." *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001), *quoting Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 638 (D. Minn. 2000).

Last, none of the various proposals offered by the Bank in lieu of a deposition on the relevant topic are appropriate. Each represents an effort to reshape Plaintiffs routine request for corporate testimony into a format of the Bank's rather than Plaintiffs' choosing. These alternative proposals would substantively alter the Bank's discovery responses in a manner that would severely undercut their usefulness for class certification. Plaintiffs are entitled by the Rules to take the deposition they seek, and the Court should reject the Bank's efforts to recast this request to its own liking.

## I.   BACKGROUND

### A.   Treasury Reporting

As a participating servicer in HAMP, the Bank is required to maintain and report to Treasury certain pieces of information regarding borrowers' progress through the HAMP modification process. *See* Docket No. 139 at ¶ 2. This information is periodically compiled into data files and transmitted to Treasury's agent through a computer portal known as "IR2." *Id.* Through this process, the Bank has maintained and reported data (known as "loan-level data") about each borrower who has gone through the HAMP process, since the very beginning of the program. *See generally* Treasury Supplemental Directive 09-01 (Docket No. 90-2) at 19-21.

Treasury has periodically issued guidance regarding what loan level data must be

reported. Since the beginning of HAMP, this guidance has required the Bank to identify, *inter alia*: (1) each borrower that enters into a HAMP trial period; (2) the dates of the trial period, including the "modification effective date" on which the trial period is expected to end; (3) the payments each borrower made; (4) underwriting and eligibility information the Bank used to make its decision for each borrower; (5) whether the Bank has decided to offer each borrower a permanent HAMP modification; (6) the terms of such a modification or the reason for the denial.

The data points establishing these elements are listed in a document periodically published by Treasury known as the "HAMP data dictionary," which contains a general description of over 100 data points, as well as the various conditions under which each data point is required to be reported. Although the HAMP data dictionary contains general descriptions of each data point, many of these descriptions are open to interpretation or could reasonably be understood in more than one manner.

By way of one example (among many),[4] the data point named "Length of Trial Period," is defined in the HAMP data dictionary as "The Length of the Trial Period." *See* Treasury Supplemental Directive 09-01 (Docket No. 90-2) at 35. Without confirmation from the Bank, Plaintiffs are left to question whether the Bank interpreted this data point to identify the length of the trial period as described in the borrower's Trial Period Plan agreement (typically 3 or 4 months) regardless of subsequent events, or whether the Bank's understanding of this data point permitted it to add additional months to the reported Trial Period if it did not render a permanent modification decision before the end of the trial period described in the TPP. So, where a

---

[4] Each of the data points identified by Plaintiffs in the subject deposition notice require some level of confirmation. Other examples previously discussed with the Bank and raised with the Court during our November 14 telephone conference are the data points related to modification effective date, which suffers from the same ambiguity discussed above, as well as data points related to fees or interest rates. *See* Transcript of November 14, 2012 Telephone Conference at 31-32, 48-49.

3

borrower entered into a TPP agreement with the Bank that described a trial period starting on June 1, 2009 and ending on August 31, 2009, what "length of trial period" would the Bank report at the time of a permanent modification decision in December 2009? One interpretation of the "length of trial period" data point would be tied to the TPP Agreement – 3 months. Another interpretation would be that the "trial period" lasted from the beginning of the trial period until the decision date – 6 months. Perhaps the Bank has yet another interpretation of this reporting requirement such that follow-up questions would be necessary. Put simply, Plaintiffs do not want to be put in the position in which they rely on any data point based on their assumption about what it means only to find out in the Bank's response to the class certification motion that the Bank used that data point based on a different understanding of Treasury's requirements.

Further, no list of examples would be sufficient to encompass the scope of what Plaintiffs would expect to accomplish during the scope of a seven-hour deposition – where the examination would benefit from the opportunity to ask clarifying questions and follow-up found in no other form of discovery. Reaching an understanding of the Bank's interpretation of the data points required by Treasury is an important purpose of the proposed deposition, but it is by no means the only one. In Plaintiffs' view, by confirming the context of the Treasury Reporting process, the deposition holds the potential to obviate needless evidentiary disputes at the class certification stage. With the record fully developed concerning the Bank's Treasury reporting, the parties' experts' efforts can be focused on the application of the data to the proposed class certification, rather than bickering about the data's meaning or context.

      **B.**      **Parties' Meet and Confer History**

The parties' meet and confer concerning a Fed. R. Civ. P. 30(b)(6) deposition relating to the Bank's HAMP Treasury reporting has been extraordinarily long, comprehensive and

arduous.  The process began following the parties' general agreement in June 2012 that they should begin holding specific pre-deposition conferences in order for the attorneys to reach a concrete understanding of the scope of examination.  This agreement was intended to allow the Bank to prepare its witnesses adequately and to avoid unproductive and disruptive disagreements during the course of the deposition.

On June 11, 2012, the parties met and conferred regarding, *inter alia*, follow-up sub-topics within Topic 14 of Plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition notice.[5]  Costello Decl. at ¶ 5.  During the June 11, 2012 meet and confer, Plaintiffs committed to provide Topic 14 sub-topics for which they needed additional testimony.  *Id.*  In that vein, and as relevant here, on June 12, 2012, Plaintiffs' counsel wrote to counsel for the Bank that additional testimony was required as to: "(1) [t]he process by which information is or can be gathered from [the Bank's] systems for the purpose of IR2 reporting;" and " [t]he fields gathered for IR2 reports and the values, codes, terms or other data used in each field."  Costello Decl. at ¶ 6.

In keeping with the parties' agreement for pre-deposition conferences, the parties set a July 12, 2012 telephone conference to discuss the scope of these additional sub-topics.  Costello Decl. at ¶ 7.  During that conference, Plaintiffs provided the Bank with a generalized description of the areas they intended to focus on during the deposition – namely the Bank's understanding

---

[5] Topic 14 of Plaintiffs notice requested a corporate designee to testify concerning: "All electronic system(s) You use that Relate to HAMP, including, without limitation, electronic storage of data and Documents Related to HAMP applications."  The Bank provided an initial witness on this broad topic, who was – quite reasonably – unable to provide specific testimony about every electronic system used by the Bank in its HAMP process, including the systems related to the Bank's Treasury reporting.  For this reason, Plaintiffs sought an additional witness who could focus specifically on HAMP Treasury reporting, as described below.

5

and interpretation of the data points required to be reported to Treasury,[6] the process by which this reporting was done, including the personnel involved in this process. *Id.* The general response of the Bank's counsel was that he needed to confer with his client concerning this information and that we should set a subsequent meet and confer to follow up. That meet and confer did not occur until August 23, 2012. Costello Decl. at ¶ 8.

As discussed above, HAMP data dictionaries list over 100 different data points required to be reported by servicers participating in HAMP. At the August 23 meet and confer, in a spirit of cooperation, Plaintiffs agreed to narrow the list of data points for which they required testimony, as well as to identify specifically any other sub-topics on which the examination was likely to focus. Costello Decl. at ¶ 8. Plaintiffs' understanding was that the purpose of this information was to facilitate the Bank's preparation in order to achieve a productive deposition. *Id.* Plaintiffs followed up on this meet and confer eight days later by providing the Bank with a list of 25 data points for which they were seeking the Bank's specific interpretation of the Treasury reporting requirement. Costello Decl. at ¶ 9. Plaintiffs also listed four other sub-topics related to the Bank's Treasury reporting process since 2009: methodology of reporting, personnel involved in reporting, archival of reported data, and the content of the four Treasury reporting spreadsheets that were produced by the Bank. *Id.* This proposal was provided to the Bank on September 1, 2012, and was accompanied by a request for September dates on which the witness or witnesses were available to sit for deposition. *Id.*

Instead of receiving dates for deposition, Plaintiffs heard nothing from the Bank for nearly four weeks. Costello Decl. at ¶ 10. On September 28, 2012, Plaintiffs received a letter

---

[6] Because the Bank had already provided Plaintiffs with four spreadsheets of Treasury data, this first request was simply for a witness who could provide an interpretation of previously produced written discovery production.

6

from the Bank containing a litany of accusations – changing requests, failing to notice the deposition properly and requesting irrelevant and overbroad information that, the Bank contended, were impossible for a single witness to memorize. *Id.* The Bank followed these accusations with a proposal that was fundamentally inconsistent with the parties' dialogue to that point – offering a witness to testify only as to the "general process" of the Bank's *current* Treasury reporting. *Id.*[7] Plaintiffs responded by letter on October 15, 2012 explaining why the proposal was insufficient and inconsistent with their previous discussions. Costello Decl. at ¶ 11. Although Plaintiffs believed the Bank's procedural objections to be pretextual, they enclosed with their October 15 letter a notice of deposition for the areas of inquiry consistent with their September 1 email. *Id.* This notice constitutes the discovery request on which Plaintiffs now move. *See* Supplemental Fed. R. Civ. P. 30(b)(6) Notice of Deposition, attached as Ex. 4a to Costello Decl.

The Bank objected to the new deposition notice on October 23, and in a follow up meet and confer on November 1, reiterated its concern that no single deponent could possibly memorize the list of data points in the September 1 email. Costello Decl. at ¶¶ 12-13. Plaintiffs responded that no memorization would be necessary, and suggested that the witness could refer to internal Bank written documentation as to how those data points were to be interpreted and from what sources they were to be gathered – documentation that might be expected to be kept consistent with sound business practices of an institution as large as the Bank. Costello Decl. at ¶ 13. Counsel for the Bank promised to investigate the existence of such documentation during the November 1, 2012 conference. *Id.*

---

[7] The Bank's September 28 letter also included a proposal that Plaintiffs propound certain of the sub-topics as interrogatories. This offer was expressly revoked by the Bank with a superseding proposal on December 12, 2012, as described below.

Another two weeks passed before the parties' November 14, 2012 conference with the Court, with no progress to report on the Bank's investigation, despite Plaintiffs' inquiry. Costello Decl. at ¶ 14. During that conference, the Bank requested another three weeks to investigate the existence of that document – indicating that they would respond to the Plaintiffs by December 7. Costello Decl. at ¶ 15. That deadline came and went with no word from the Bank on this issue, despite a November 21, 2012 letter from the Plaintiffs requesting another meet and confer. Costello Decl. at ¶¶ 16-18. Finally, on the eve of the December 13, 2012 telephone conference, counsel for the Bank responded on this issue – although their letter contained no mention of the document that it had spent six weeks searching for. Costello Decl. at ¶ 19. Instead, the letter reiterated the Bank's objections to the Plaintiffs' requests and proposed that the Bank provide lawyer-drafted descriptions of the various data points in lieu of a Fed. R. Civ. P. 30(b)(6) deposition. *Id.* Plaintiffs refused this offer. Costello Decl. at ¶ 20.

C.  **Scope of the Proposed Deposition**

Plaintiffs' Supplemental Fed R. Civ. P. 30(b)(6) notice, *see* Ex. 4a to Costello Decl., outlines the following 5 areas of inquiry for the proposed deposition.

1.  The methodology of Your IR2 reporting, including the events that give rise to Your responsibility to report a loan for trial setup, trial period activity, trial cancel or official Modification and the means by which You identify the appropriate loans to report.

2.  Personnel involved in IR2 reporting.

3.  Archival of files reported through IR2.

4.  Content of the April 2, 2012 production of IR2 data You made.

5.  Your interpretation and Data Map of the following HAMP "Data Points" from the HAMP data dictionary (and its predecessors):

(1) 1st trial payment due date; (2) 1st trial payment posted date; (3) 1st Trial payment received amount; (4) Servicer Loan Number; (5) Action Code; (6) Action

8

>Code Date; (7) Amortization Term After Modification; (8) Borrower Execution Date; (9) Delinquent Interest; (10) Hardship Reason Code; (11) Length of Trial Period; (12) Modification Effective Date; (13) Modification Fees; (14) Monthly Gross Income; (15) Term After Modification; (16) Trial Payment Number; (17) Trial Payment Received Amount; (18) Trial Payment Posted Date; (19) Submission Status; (20) Trial Fallout Reason Code; (21) NPV Model Result Amount Pre-Mod; (22) NPV Run Date; (23) Principal and Interest Payment After Modification; (24) Projected Foreclosure Sale Date; (25) Interest Rate After Modification.

These areas of inquiry constitute the discovery request on which Plaintiffs now move.

## II.  ARGUMENT

### A.  The Bank's Treasury Reporting is Relevant

The Federal Rules permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).  In Section I(A) above, Plaintiffs explain how the written guidance leave open questions regarding how the Bank may have interpreted data points.  Plaintiffs seek a deposition to confirm the Bank's historical interpretation of certain data points -- complete with an opportunity to ask a witness for specific clarifications and follow-up questions.  Without this confirmation, Plaintiffs will be hampered in their ability to use and analyze the data and the Court will likely face arguments regarding the interpretation of these terms at class certification.  Plaintiffs believe they will be able to use the Treasury reporting data in concert with other records, to help identify which borrowers fall within the class definition.  But Plaintiffs need to fully understand what the data specifically means to the Bank and how the data has been used throughout since 2009.

Similarly, inquiry into the Bank's reporting methodology will confirm the Bank's interpretation of Treasury rules regarding the timing of reports for each event in the HAMP process and provide context to the Bank's interpretation of required data points.  Indeed, the Bank has already raised isolated descriptions of the timing and methodology of its Treasury reporting as a defense to certain evidentiary points that will be at issue during class certification.

9

*See* Docket No. 139 at ¶ 8. Plaintiffs also included a topic regarding the personnel involved in IR2 reporting so that they can inquire as to who has knowledge about a specific question about which the designee proves unable to testify. Plaintiffs included the "archival" of data in the scope of the deposition to confirm that the Bank maintains and can access all of the data that it has reported to Treasury throughout the class period. Given the routine nature of these areas of inquiry, Plaintiffs are frankly surprised that any of this has proven so controversial and contentious.

      **B.**      **Provision of the Testimony that Plaintiffs See is Not Unreasonably Burdensome**

The Bank has objected to each and every one of Plaintiffs' areas of inquiry not only on relevancy ground, but also on the basis that they are unduly burdensome.[8] *See* Ex. 5 to Costello Decl. The core of the Bank's objection to the deposition is that providing testimony in response to Plaintiffs' deposition notice would not be reasonably possible for any single Bank employee. The basis for this argument stems from the amount of time that has elapsed since the start of HAMP Treasury reporting (approximately three years) and the turnover in personnel that has therefore occurred, the changes to the reporting process itself, and the purported need for the deponent to memorize voluminous information. Each reason is unpersuasive.

As an initial matter, the Bank has failed to account for its obligations under the federal rules. "Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to

---

[8] *Cf. Buehrle v. City of O'Fallon, Mo.,* No. 4:10CV00509-AGF, 2011 WL 529922 at *3-4 (E.D. Mo. Feb. 8, 2011) ("Defendant has objected to almost every subject of examination identified in Plaintiff's Rule 30(b)(6) notice on the ground that such information is duplicative and unduly burdensome as it has already been produced in other forms, or been addressed in earlier depositions. If the Court were to adopt Defendant's position, then few Rule 30(b)(6) depositions would ever take place.")

review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001) ("*Fabiano*"), *quoting United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C., 1996)*, aff'd* 166 F.R.D. 367 (M.D.N.C., 1996); *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) ("[R]ule 30(b)(6) places the burden upon the deponent to 'make a conscientious good-faith endeavor to...prepare [it's designee(s)] in order that they can answer fully, completely, unevasively.'"). Thus, the witness is required to go beyond her personal knowledge concerning the subject, educating herself as to the relevant facts. "If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation." *Briddell*, 233 F.R.D. at 60, *citing Taylor,* 166 F.R.D. at 361.

 This self-education requirement remains unchanged in circumstances where its completion is onerous. "Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Fabiano*, 201 F.R.D. at 37, *citing Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "Preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business...." *Id., quoting Taylor,* 166 F.R.D. at 362.

 Viewed against this backdrop, the Bank's objections concerning the approximately three year time-period during which it has performed Treasury reporting and the volume of information called for rings hollow. Plaintiffs are entitled to inquire about the Bank's Treasury reporting for the entire period for which relevant data was kept. To the extent that there are no employees who are able to offer testimony about Treasury reporting in 2009 or 2010, the Bank

11

has a clear obligation to use "use documents, past employees, and other resources in performing this required preparation." *Briddell*, 233 F.R.D. at 60, *citing Taylor,* 166 F.R.D. at 361. Plaintiffs agree with the Bank that HAMP has undergone evolutionary changes throughout its short history. Yet none of the most fundamental changes to the program substantially affect the proposed deposition here. As described in Section I(A) above, the basic process and definitions involved in HAMP Treasury reporting here at issue have remained largely the same throughout the program's history.[9]

With regard to the volume of information called for, Plaintiffs have already offered a reasonable compromise by targeting the deposition notice to less than 25% of the data points that Treasury requires to be reported. The Bank's interpretation of those data points, and the accompanying context listed in the deposition notice, is necessary to avoid placing Plaintiffs at a disadvantage in pressing their class certification argument with unconfirmed or incorrect data definitions. Such a course would undoubtedly lead to unnecessary evidentiary disputes at the class certification stage – a result that neither the Court nor the parties desire. Asking a single witness – or multiple witnesses if necessary – to provide the Bank's interpretation of these areas of inquiry is not unreasonable. "The burden upon the responding party to prepare a knowledgeable Rule 30(b)(6) witness may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation that is involved in litigation, can be fully and fairly explored." *Prokosch*, 193 F.R.D. at 638.

---

[9] Plaintiffs do not, for example, seek specific information regarding the Bank's Treasury reporting in connection with the Principal Reduction Alternative ("PRA"). PRA was a fundamental program change introduced in late 2010 that imposed new requirements on the means by which servicers evaluated HAMP eligibility. *See* Treasury Supplemental Directive 10-05, *available at* https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd1005.pdf.

### C. The Bank's Proffered Alternatives Are Inadequate

As recounted in detail above, the parties have exchanged multiple proposals in an effort to reach agreement on Plaintiffs' requests. On September 28, 2012, the Bank offered a witness whose testimony would be limited to a generalized description of the Bank's *current* Treasury reporting process. For the reasons laid out in Sections I(A) and II(A) above, Plaintiffs are unable to agree to a deposition that prohibits them from gaining a full understanding of the data submitted to Treasury starting in 2009, to say nothing of the inherent line-drawing problems associated with limiting the level of generality of the examination.

On December 13, 2012, the Bank made another offer in lieu of providing the witness or witnesses requested: "Bank of America proposes that, instead of the Rule 30(b)(6) deposition, it endeavor to provide the information you seek in writing based upon historic and current information that it may gather through a reasonable investigation." *See* Ex. 10 to Costello Decl. at 1. Plaintiffs turned down this invitation for reasons that are apparent to any trial attorney. Whether counsel for plaintiff or defendant, prosecutor or accused, it is preferable by orders of magnitude that a cross-examination occur between an attorney and an adverse witness directly, with minimal external interference. The Bank's proposal would effect two fundamental departures from Plaintiffs' right to a Rule 30(b)(6) witness. First, this method substitutes counsel for witness, allowing the Bank's attorneys to reshape its answers to its liking. Second, the proceeding would be transformed from an oral examination into written answers – preventing follow-up questions or specific requests for clarifications, and removing any pretense that the witness's answer is an unfiltered reflection of her knowledge. The list of courts rejecting similar gambits is long.

"Producing documents and responding to written discovery is not a substitute for

providing a thoroughly educated Rule 30(b)(6) deponent." *Great American Ins. Co. of New York v. Vegas Const. Co.,* 251 F.R.D. 534, 541 (D. Nev. 2008). *See also National Life Ins. Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595, 600 n. 5 (3d Cir. 1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."). For this reason, depositions are generally favored over written discovery:

> [w]ritten interrogatories are rarely, if ever, an adequate substitute for a deposition.... Only by examining a witness live can a lawyer use the skills of his trade to plumb the depths of a witness' recollection, using to advantage not only what a witness may have admitted in answering interrogatories, but also any new tidbits that usually come out in the course of answering carefully framed and pin-pointed deposition questions. Written interrogatories are not designed for that purpose; pointed questions at deposition are the only effective way to discover facts bottled up in a witness' recollection, particularly when the witness is ... hostile.

*Shoen v. Shoen,* 5 F.3d 1289, 1297 (9th Cir. 1993); *accord Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006) ("Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation."); *Barnett v. Norman,* No. 1:05–cv–01022–SKO PC, 2010 WL 3220122 at *1 (E.D. Cal. Aug. 10, 2010).

Just as other courts have rejected defendants' efforts to recast discovery requests to their own liking, so too should the Court here order the Defendants to respond to the proper discovery request propounded upon them. "It is not up to [defendant] to determine what discovery Plaintiffs need." *In re Vitamins Antitrust Litigation,* 216 F.R.D. 168, 174 (D.D.C. 2003). Plaintiffs are entitled to the discovery they seek, not only because it comports with the Rules, but also because the Court should not be faced with unnecessary factual disputes about Treasury

14

reporting at class certification.

## III. CONCLUSION

For all of the reasons stated above, the Court should enter an Order directing the Bank to provide a witness or witnesses within 21 days in response to Plaintiffs' October 15, 2012 Supplemental Notice of Rule 30(b)(6) Deposition, attached as Exhibit 4a to the Declaration of Kevin Costello in Support of Plaintiffs' Motion to Compel, filed contemporaneously herewith.

Dated: December 21, 2012

*/s/ Kevin Costello*
Klein Kavanagh Costello, LLP
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
85 Merrimac St., 4th Floor
Boston, MA 02114
617.357.5500 (p)
klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com

*/s/ Steve W. Berman*
Hagens Berman Sobol Shapiro LLP
Steve W. Berman
Ari Y. Brown
Tyler S. Weaver
1918 8th Avenue, Suite 3300
Seattle, WA 98101
206.623.7292 (p)
206.623.0594 (f)
steve@hbsslaw.com
ari@hbsslaw.com
tyler@hbsslaw.com

*Interim Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 21, 2012, a true and correct copy of this document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        */s/ Kevin Costello*
                                        Kevin Costello