UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | MDL No. 2193 |
| This Document Relates To:<br><br>ALL ACTIONS | **Centralized before the Honorable Rya W. Zobel** |

# SUPPLEMENT TO JOINT STATUS REPORT

Plaintiffs hereby submit the Declaration of Norman Yee in response to Defendant's assertions concerning the time and cost required to produce email for 5 custodians, and the resulting effect on the schedule for class certification.

DATED: January 18, 2013.

                                        Respectfully submitted,

                                        On behalf of Plaintiffs,

                                        */s/ Tyler S. Weaver*
                                        Steve W. Berman
                                        Ari Y. Brown
                                        Tyler S. Weaver
                              HAGENS BERMAN SOBOL SHAPIRO LLP
                              1918 8th Avenue, Suite 3300
                              Seattle, WA 98101
                              Telephone:  206.623.7292
                              Facsimile:  206.623.0594
                              steve@hbsslaw.com
                              ari@hbsslaw.com
                              tyler@hbsslaw.com

```
                                  /s/ Gary Klein
                              Shennan Kavanagh
                              Gary Klein (BBO 560769)
                              Shennan Kavanagh (BBO 655174)
                              Kevin Costello (BBO 669100)
```
KLEIN KAVANAGH COSTELLO, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone:  617.357.5500
Facsimile:  617.357.5030
klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com

*Interim Co-Lead Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2013, a true and correct copy of this document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

```
                                  /s/ Tyler S. Weaver
                              Tyler S. Weaver
```

# Exhibit 1

HONORABLE RYA W. ZOBEL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | No. 1:10-md-2193 RWZ |

**DECLARATION OF NORMAN YEE**

I, Norman Yee, declare and state as follows:

1. I have been the Vice President and COO of Celerity Consulting Group, Inc. ("Celerity") since April 2005. My educational and professional background and qualifications are described in my resume, a true and correct copy of which is attached hereto as Exhibit A. The facts set forth in this declaration are based on my personal knowledge. If called as a witness, I could and would testify competently thereto.

2. Celerity specializes in, among other things, providing an array of sophisticated electronic discovery services to law firms, in-house counsel, government agencies, and corporations nationwide. Celerity's expertise in electronic discovery includes discovery strategy, as well as data collection, processing, searching and review.

3. In my 21 years of experience in the field, I have personally managed thousands of cases that involved electronic data and email. I am responsible for the evaluation of different

techniques and technologies that can be applied to streamline the discovery process.

4. I have worked on numerous e-discovery projects involving national and international financial institutions. The majority of these cases, especially those consolidated under multidistrict litigation (MDL), involve hundreds of thousands of documents and in some cases millions of documents.

5. I reviewed Robert Daniel's August 17, 2012 declaration as well as search results provided by the Defendants on December 5, 2012, December 12, 2012, and January 10, 2013.

6. It is my understanding Defendants estimate 33% of the proposed custodians' email records would receive a search term hit based on the January 10, 2013 search results. In my experience, a 33% hit rate seems low because custodians who are central and whose roles are dedicated to the issues of the case typically should have a higher proportion of relevant material.

7. The process of locating email to collect from the proposed custodians as described in Daniel's declaration is typical. It is common and often expected for large enterprises to have email stored in different locations in different formats. The time and cost involved in performing such collections is relatively insignificant compared to the effort involved in the steps taken after collection. I will discuss these post-collection techniques and technologies later in this declaration.

8. Based on other email collections that I have directly managed, 70 search terms is reasonable and consistent with my experience. In fact, many cases involve hundreds of search terms, usually with Boolean (and, or, not) and proximity (within # words of other words) operators. The December 5, 2012, December 12, 2012, and January 10, 2013 search results by search term are also reasonable.

9. It is my understanding Defendants claim that a review of five custodians' email using these search terms will take 4-5 months (by May or June 2013). Based on my experience managing review efforts that duration seems excessive for a production of this size. For example, on one case a client's 15 person review team reviewed 47,000 documents in just under

two weeks. On another case, a client's eight person review team reviewed 138,000 documents in ten weeks. For larger volumes, teams with 20 or more reviewers are standard.

10.  Daniel's declaration describes the cost and time burden to process, review and produce email for the 24 proposed custodians. It is my understanding the number of proposed custodians has since been negotiated down to five. What Mr. Daniel's declaration fails to discuss are the different techniques and technologies that can be used to reduce the number of files to be reviewed, increase the speed of review and decrease the overall cost. In my experience, using some or all of the post-collection techniques described below, will dramatically reduce scope and review costs.

### Post-Collection Techniques and Technologies

11.  <u>De-duplication of email with different formats.</u> In his description of eliminating duplicate email messages, Daniel says that "some data sources cannot be de-duplicated against each other using the Bank's systems." Although he does not explain what the limitations are with the Bank's system, in my experience, this is sometimes caused by differing email formats. However, it is a common practice for service providers to identify duplicates by comparing multiple metadata fields as an alternative method of de-duplicating. For example, by programmatically comparing the author, recipients, subject date and time (down to the millisecond) and possibly other fields such as an attachment flag, duplicate email messages can be identified across different email platforms.

12.  <u>De-duplication across custodians.</u> Daniel states "we only eliminate duplicates only within particular custodian's emails, because collections are generally performed on a rolling basis, custodian-by-custodian". It is common industry practice to identify duplicates across custodians. The reason this is practical is because individuals within organizations typically work in teams, and responsive emails are usually distributed to more than one team member. It is my understanding the proposed custodians worked together. It is likely that emails collected from one custodian will also exist in the email of the others. In my experience,

identifying duplicates across custodians may reduce each custodian population by up to 50-60%, whereas Daniel's calculation based on identifying duplicates within particular custodian's emails is only 16.38% (Patricia Feltch Search Term Set: 126,343 files to be reviewed out of an original dataset of 236,028 files).

13.  <u>Email threading technology.</u>  Forwarded and "replied" versions of an email are considered different and distinct from their original message.  If an email is forwarded five times, a de-duplicated email collection may contain the original email as well as five forwarded versions.  Each version is technically not a duplicate.  I have used and am familiar with commercially available and increasingly popular technology to identify these email "threads" and to group them together for review purposes.  The cost savings are self-evident.  When one email is reviewed, it is much faster to review all of the forwarded versions together than if those six messages were spread intermittently throughout a collection.  In many cases, the forwarded versions are embedded within the latest email and in these cases, reviewers would only need to review the latest email since the thread includes copies of all forwarded versions.  This can be a significant time savings.  Depending on the habits of individuals and the culture in an organization which drives the number of email threads, I estimate the use of email threading technology can speed up a review by 25% or more.

14.  <u>Near duplicate detection.</u>  Many times two messages cannot be considered duplicates or threads, but rather two distinct messages discussing the same topic.  I have used and am familiar with commercially available and increasingly popular technology to identify documents that are "near duplicates" – messages that are conceptually the same.  Like email threading technology, this technology saves time and review costs.  When one email is reviewed, it is much faster to review its near duplicates together rather than when spread intermittently throughout a collection.  Celerity has conducted benchmark speed tests to determine how much time can be saved using near duplicate detection technology.  Our review teams doubled their speed of review when using this technology.  I have clients who have reported a five times increase in speed when using this technology.

15. <u>Concept search and concept clustering.</u> I have used and am familiar with commercially available and increasingly popular technology to cluster similar documents together for review. This is done using advanced algorithms to find patterns in the content of each message. The benefit of this technology is to group like-documents together prior to review to help review teams prioritize or focus their efforts on batches of messages that may be more relevant than others. For example, the entire batch of messages automatically tagged as "Football/Fantasy Football/ESPN Sports" may be set aside and potentially not reviewed further or randomly sampled.

16. <u>Predictive coding.</u> Like concept clustering, predictive coding technology uses advanced algorithms on a collected set of data. Predictive coding identifies documents that are related in content based on a designated "exemplar" document. These technologies are a cost effective method of identifying relevance or potentially privilege messages. The review team can identify a batch of messages that best exemplifies a key or privileged document. The algorithm then uses the patterns in those documents against the entire collected set to pull back documents that are similar.

## Time and Cost Associated with Reviewing and Producing Emails for the Proposed Custodians

17. Daniel's declaration discusses the estimated time and cost associated with reviewing and producing emails. Based on my past experience managing review efforts of similar scope and magnitude, I believe Daniel's methodology of multiplying the total number of documents by $1.25 to get the total project cost is flawed.

18. It is a common industry practice to deploy one or more of the post-collection techniques and technologies described above. De-duplicating across custodians alone would reduce the population 50-60%, reducing the overall review population that would be subject to the $1.25 per-document cost. Deploying additional post-collection techniques and technologies would only reduce the costs further.

19.    The use of email threading technology, near duplicate detection, concept search and concept clustering, and predictive coding are becoming more common in discovery and are used to increase the speed at which reviews can be performed.  Near duplicate detection alone can double the review speed, cutting the review hours in half.  Deploying additional post-collection technologies and techniques would only increase the review speed further.

20.    Daniel further explains how 100% of the documents satisfying the search criteria would be subject to the attorney review, and 35% of the documents will require final privilege review.  If withholding privilege documents from production is the primary goal of the attorney review, the review could be limited to the estimated 35% of the population.  It is a common industry practice to programmatically identify privilege documents by using metadata searches for attorney and law firm names and certain email domains.  Producing the remainder with a claw-back provision is a common practice.

21.    It is now a common industry practice to produce documents in native format.  A "native" format production means that email messages will be produced in the format in which they are stored in the ordinary course of business (e.g., .PST, EML, MSG, etc.) rather than converting them first into .TIFF or .PDF images.  Converting native documents into images requires an additional step which has a substantial cost and time impact.  Because of the cost and schedule savings, I frequently recommend that clients produce or request productions in native format.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on January __17__, 2013 in __Seattle__, __Washington__.

_____
Norman Yee



| | |
|---|---|
| San Francisco Office:<br>2 Gough Street, Suite 300<br>San Francisco, CA  94103<br>415.986.8850 [T]   415.986.8851 [F] | Washington, DC  Office:<br>1025 Connecticut Avenue, Suite 1000<br>Washington, DC  20036<br>202.838.1230 [T] |
| Seattle Office:<br>2505 Second Avenue, Suite 405<br>Seattle, Washington  98121<br>206.441.8500 [T]   206.441.8111 [F] | Walnut Creek Office:<br>150 N. Wiget Lane, Suite 212<br>Walnut Creek, CA  94598<br>415.986.8850 [T] |

## NORMAN Y. YEE
### VICE PRESIDENT AND COO
NYEE@CONSULTCELERITY.COM

**BIOGRAPHY**

Norman Yee is Vice President and Chief Operating Officer of Celerity Consulting Group, Inc.  Prior to joining Celerity, Mr. Yee was a co-founder and partner of Certus Consulting Group LLC and Vice President of Operations at Electronic Evidence Discovery, Inc.  He brings with him over twenty-one years of litigation consulting, computer forensics and information management experience.  Mr. Yee specializes in electronic discovery, computer forensics, and data integrity with respect to data mining and complex systems audits.

Mr. Yee has performed computer forensics for expert testimony, analyzed drives for deletion and other activity, coordinated the gathering of electronic evidence from multiple sites, as well as the restoration of various forms of media.  He has coordinated the gathering, searching and processing of e-mail and electronic data, and trained legal teams on the use of technology for privilege and relevance reviews for production purposes.  He has designed and collaborated on project and client-specific extranets to track documents, billing information, and other financial data.  With his diverse technology background, Mr. Yee has also managed and designed the architecture and methodology of numerous complex litigation projects in almost every facet of the process from initial concept and strategy to implementation and is currently focused on the practice of electronic evidence handling and web-based extranets for discovery and production purposes.

Mr. Yee expertise also includes organizing and building analytical databases to support expert damage claims, document management for discovery, and evaluation and development of litigation support software.  As technology has progressed over the past two decades, he become involved in bringing multi-media into the courtroom and began integrating higher-end technologies into trial presentations.

Mr. Yee has consulted with attorneys on a wide range of technical matters including trial presentation strategies, electronic discovery, and forensic data recovery.  He has presented numerous CLE and educational seminars related to technology and the legal practice to judges, arbitrators, law firms, bar associations, litigation support professionals, and corporate counsel.

Mr. Yee graduated from the University of California Berkeley with a Bachelor of Science degree in Business Administration with a dual emphasis in Finance and Accounting.