# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | MDL NO. 2193<br><br>Centralized before the<br>Honorable Rya W. Zobel |
| This Document Relates To:<br><br>All Actions | |

## DECLARATION OF BERT SHEEKS

I, Bert Sheeks, declare as follows:

1. I am over the age of 18 and I am otherwise competent to testify to the following true and correct facts that are based on my own personal knowledge.

2. Between April, 2010 and November, 2011 I was employed by Urban Settlement Services ("Urban") in Broomfield, Colorado.

3. At the time I was employed by Urban, it was providing services to Bank of America as part of its mortgage default servicing programs that included loan modifications pursuant to the Home Affordable Modification Program ("HAMP"). My job responsibilities included reviewing electronic files regarding borrowers' modification processes that were stored on database systems linked between Urban and Bank of America. In the course of my job, I was assigned a "grid" that consisted of a list of homeowners who were in the process of seeking a loan modification or other resolution to their mortgage default. I was tasked with researching borrowers' electronic files as they existed on Bank of America's computer systems. My job duties also included making calls to homeowners who had applied for loan modifications or other workout options after I had reviewed their files. I corresponded with borrowers regarding

the status of their loan modifications. I would also confirm whether the documents a borrower claimed to have sent appeared on Bank of America's "I-Portal" system.

4. Urban employees were instructed to close active borrower files based on limited criteria such as by simply seeing a copy of a drafted decline letter or a Missing Items Letter ("MIL") on either I-Portal or SIEBEL (another Bank of America information management database). "Closing" a file meant closing the electronic SEIBEL file record. Once a borrower's SEIBEL file record was closed, that loan modification application or workout option was deemed finalized and retired. The borrower would have to restart the process entirely to apply for a loan modification or workout option.

5. We were instructed to close the files for borrower's presumed failure to respond to requests for documentation. The presence of a draft letter on the electronic file system noting that information was missing or not received was sufficient to conclude that the SEIBEL file could be closed. We were instructed to close the SEIBEL file based on the existence of the draft letter, whether or not the borrower had actually sent in the required documents - even in cases where we knew the borrower had, in fact, responded with complete documents.

6. The Urban department at which I worked was daily given a grid consisting of hundreds or even thousands of files with instructions to close the files. Our job was to find any pretext in the file to justify closing – whether or not justified.

7. The written notices that borrowers were missing documents and requests that they submit additional documents were often suspect, and likely sent without proper due diligence as to whether the documents were indeed missing.

8. I recall several instances in which I personally viewed financial documents from a particular borrower on Bank of America's document system and then personally updated the references on the system, only to see later notation that the same documents were re-requested from the same borrower and electronic file as missing.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE

EXECUTED this 21 day of May, 2012 at Boulder, Colorado

By _____
Bert Sheeks