**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | No. 1:10-md-02193 |

**DEFENDANT BANK OF AMERICA, N.A.'S
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

James W. McGarry (BBO #633726)
Dahlia S. Fetouh (BBO #651196)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
Tel.: (617) 570-1000
Fax:  (617) 523-1231
jmcgarry@goodwinprocter.com
dfetouh@goodwinprocter.com

Brooks R. Brown
Keith E. Levenberg
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax: (202) 346-4444
bbrown@goodwinprocter.com
klevenberg@goodwinprocter.com

*Counsel to Defendant Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................2

   A.  The Home Affordable Modification Program ....................................................................2

   B.  Plaintiffs' Claims and Motion for Class Certification ......................................................5

   C.  The Named Plaintiffs .......................................................................................................7

   D.  Bank of America's HAMP Compliance Efforts ................................................................8

ARGUMENT .............................................................................................................................11

   I.  Individual Cases Asserting the Same Claims as Plaintiffs' Show Why Class
      Certification Is Inappropriate ..........................................................................................11

   II.  Rule 23(c)(4) Does Not Permit Even the Partial Certification Plaintiffs Seek ................15

   III.  Plaintiffs Do Not Satisfy Rule 23(a) ..............................................................................18

      A.  There Is No Common Question of Law or Fact..........................................................18

          1.  Commonality Is Defeated by the Necessity of Individualized Evidentiary
              Inquiries Into Borrowers' Performance Under TPPs............................................18

          2.  Plaintiffs' "Common Question" Cannot "Drive the Resolution of the
              Litigation"..........................................................................................................20

          3.  Commonality Is Defeated by Material Differences in Applicable State
              Law ....................................................................................................................22

          4.  The UDAP and Other Common Law Claims Are Inherently Individualized........25

          5.  Unsupported and Untruthful Declarations Signed by a Few Former
              Employees and Contractors Do Not Demonstrate Commonality ..........................27

      B.  Plaintiffs Are Not Typical of the Purported Class ......................................................28

   IV.  Plaintiffs Do Not Satisfy Rule 23(b)..............................................................................30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amarin Plastics, Inc. v. Md. Cup Corp.*,
  946 F.2d 147 (1st Cir. 1991).............................................................................................18

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................................14

*Anderson v. PHH Mortg.*,
  2012 WL 4496341 (C.D. Cal. Sept. 28, 2012) .................................................................26

*Avevedo v. CitiMortgage, Inc.*,
  2012 WL 3134222 (N.D. Ill. July 25, 2012).....................................................................12

*Baehl v. Bank of Am., N.A.*,
  2013 WL 1319635 (S.D. Ind. Mar. 29, 2013)...................................................................13

*In re Bank of Boston Corp. Sec. Litig.*,
  762 F. Supp. 1525 (D. Mass. 1991) ..................................................................................29

*Barrett v. Option One Mortg. Corp.*,
  2012 WL 4076465 (D. Mass. Sept. 18, 2012) (Zobel, J.).................................................27

*Bassie v. Bank of Am., N.A.*,
  2012 WL 6530482 (S.D. Tex. Dec. 13, 2012)..................................................................21

*Bishop's Prop. & Invs. LLC v. Protective Life Ins. Co.*,
  255 F.R.D. 619 (M.D. Ga. 2009) ......................................................................................23

*Bosque v. Wells Fargo Bank, N.A.*,
  762 F. Supp. 2d 342 (D. Mass. 2011) ........................................................................ 23-24

*Bowers v. Jefferson Pilot Fin. Ins. Co.*,
  219 F.R.D. 578 (E.D. Mich. 2004) ...................................................................................23

*Brady v. Chase Home Fin., LLC*,
  2012 WL 1900606 (W.D. Mich. May 24, 2012) ..............................................................12

*Brinson v. Bank of Am., N.A.*,
  2013 WL 147835 (D. Alas Jan. 13, 2013) ..................................................................12, 14

*Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*,
  522 F.3d 6 (1st Cir. 2008).............................................................................................15, 16

*Brush v. Wells Fargo Bank, N.A.*,
   911 F. Supp. 2d 445 (S.D. Tex. Nov. 29, 2012) ....................................................13

*Campusano v. BAC Home Loans Servicing LP*,
   2013 WL 2302676 (E.D. Cal. Apr. 29, 2013).................................................19, 28

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .................................................................................15

*Cave v. Saxon Mortg. Servs., Inc.*,
   2013 WL 1915660 (E.D. Pa. May 9, 2013).........................................................26

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
   2010 WL 3397501 (S.D. Ohio Aug. 25, 2010).....................................................29

*Citimortgage, Inc. v. Crawford*,
   2013 WL 1225387 (S.D. Ohio Mar. 26, 2013).....................................................23

*CLN Props., Inc. v. Republic Servs., Inc.*,
   2010 WL 5146734 (D. Ariz. Dec. 13, 2010) .......................................................23

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)..................................................................................15, 30

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 WL 311376 (N.D. Cal. Jan. 28, 2011).........................................................26

*Dix v. American Bankers Life Assur. Co.*,
   415 N.W.2d 206 (Mich. 1987)..............................................................................24

*Durmic v. J.P. Morgan Chase Bank, NA.*,
   2010 WL 4825632 (D. Mass. Nov. 24, 2010) ......................................................24

*Franklin v. GEICO*,
   2011 WL 5166458 (W.D. Wash. Oct. 31, 2011) ..................................................23

*Frost v. Wells Fargo Bank, N.A.*,
   901 F. Supp. 2d 999 (W.D. Mich. 2012) ..............................................................13

*Gaines v. Boston Herald, Inc.*,
   998 F. Supp. 91 (D. Mass. 1998) .........................................................................28

*Geske v. Wells Fargo Bank, N.A.*,
   2012 WL 1231835 (N.D. Tex. Apr. 12, 2012) ................................................12, 14

*Gikas v. JPMorgan Chase Bank, N.A.*,
   2013 WL 1457042 (D.N.H. Apr. 10, 2013)...........................................................13

*Gomes v. Bank of Am., N.A.*,
   2013 WL 2149743 (D. Haw. May 15, 2013) ........................................................17

*Gomez v. Bank of Am., N.A.*,
   2012 WL 929790 (D. Or. Mar. 19, 2012) .......................................................14, 26

*Goss v. ABN AMRO Mortg. Grp., LLC*,
   2012 WL 5986783 (E.D. Mich. Nov. 29, 2012) ...................................................12

*Hayes v. Bank of Am. Corp.*,
   2012 WL 4364084 (D. Nev. Sept. 21, 2012) ..................................................13, 14

*Helmus v. Chase Home Fin., LLC*,
   890 F. Supp. 2d 806 (W.D. Mich. 2012) ...............................................................12

*Johnson v. Wells Fargo Bank, N.A.*,
   2013 WL 823369 (E.D. Mich. Mar. 6, 2013) ........................................................25

*Jones v. CitiMortgage, Inc.*,
   2013 WL 1704304 (E.D. Cal. Apr. 19, 2013)........................................................25

*JPMorgan Chase Bank, N.A. v. Ilardo*,
   940 N.Y.S.2d 829 (N.Y. Sup. Ct. 2012) ...............................................................12

*Juarez v. SunTrust Mortg., Inc.*,
   2013 WL 1983111 (E.D. Cal. May 13, 2013) .......................................................12

*Karapetyan v. JPMorgan Chase Bank, N.A.*,
   2012 WL 3308883 (E.D. Tex. June 6, 2012).........................................................23

*Keosseian v. Bank of Am.*,
   2012 WL 458470 (D.N.J. Feb. 10, 2012) ..............................................................25

*Kor. Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ...............................................................................24- 25

*Krouse v. BAC Home Loans Servicing, LP*,
   2011 WL 6100406 (E.D. Cal. Dec. 6, 2011) ............................................12, 14, 24

*Laguer v. OneWestBank, FSB*,
   2013 WL 831055 (Mass. Super. Ct. Feb. 27, 2013) ..............................................26

*LeBlanc v. Bank of Am., N.A.*,
   2013 WL 3146829 (W.D. Tenn. June 18, 2013) ...................................................18

*Legore v. OneWest Bank, FSB*,
   898 F. Supp. 2d 912 (D. Md. 2012) ...............................................................13, 17

*Leshin v. St. Charles Pontiac, Inc.*,
   1997 WL 587678 (N.D. Ill. Sept. 18, 1997) ..........................................................29

*Linton v. New York Life Ins. & Annuity Corp.*,
   392 F. Supp. 2d 39 (D. Mass. 2005) (Zobel, J.).....................................................15

*London v. Wal-Mart Stores, Inc.*,
   340 F.3d 1246 (11th Cir. 2003) ...........................................................................30

*Lucia v. Wells Fargo Bank, N.A.*,
   798 F. Supp. 2d 1059 (N.D. Cal. 2011) ......................................................13, 22, 23

*Lund v. CitiMortgage, Inc.*,
   2011 WL 1873690 (D. Utah May 17, 2011).............................................................13

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
   270 F.R.D. 45 (D. Mass. 2010)..............................................................................23

*Marchese v. JPMorgan Chase Bank, N.A.*,
   2013 WL 136427 (D. Md. Jan. 8, 2013)..................................................................26

*Marino v. Home Depot U.S.A., Inc.*,
   245 F.R.D. 729 (S.D. Fla. 2007)............................................................................23

*Marquez v. Wells Fargo Bank, N.A.*,
   2013 WL 98533 (D. Mass. Jan. 8, 2013).................................................................13

*Matthews v. Wells Fargo Bank, N.A.*,
   2012 WL 3903453 (D. Md. Sept. 6, 2012) ..............................................................25

*McGann v. PNC Bank, N.A.*,
   2013 WL 1337204 (N.D. Ill. Mar. 29, 2013)..............................................12, 24, 26

*Miller v. Bank of Am., N.A.*,
   858 F. Supp. 2d 1118 (S.D. Cal. 2012)...................................................................29

*Monroe v. Hughes*,
   1990 WL 267361 (D. Or. Dec. 18, 1990) ................................................................29

*Montalvo v. Bank of America Corp.*,
   864 F. Supp. 2d 567 (W.D. Tex. 2012)....................................................................24

*Nachar v. PNC Bank, N.A.*,
   901 F. Supp. 2d 1012 (N.D. Ohio 2012).............................................................24, 29

*Nadan v. Homesales, Inc.*,
   2011 WL 3584213 (E.D. Cal. Aug. 12, 2011).......................................................12, 24

*Nash v. Green Tree Servicing, LLC*,
2013 WL 1867357 (E.D. Va. May 2, 2013) ........................................................24

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006)..............................................................................15

*Nastrom v. JPMorgan Chase Bank, N.A.*,
2012 WL 5522795 (E.D. Cal. Nov. 14, 2012).......................................................17

*Neal v. Residential Credit Solutions, Inc.*,
2013 WL 428675 (D. Md. Feb. 1, 2013) ..............................................................26

*Nugent v. Fed'l Home Loan Mortg. Corp.*,
2013 WL 1326425 (E.D. Cal. Mar. 29, 2013) ......................................................13

*Nungaray v. Litton Loan Servicing, LP*,
135 Cal. Rptr. 3d 442 (Cal. Ct. App. 2011) ........................................................12

*Orthocraft, Inc. v. Sprint Spectrum, L.P.*,
2002 WL 31640477 (E.D.N.Y. Nov. 16, 2002)......................................................16

*Pace v. CitiMortgage, Inc.*,
2013 WL 55825 (M.D. Ga. Jan. 3, 2013) ......................................................12, 24

*Palacio v. HSBC Bank USA, N.A.*,
2012 WL 4928878 (Mass. Super. Ct. Oct. 4, 2012) ............................................17

*Pandit v. Saxon Mortg. Servs., Inc.*,
2012 WL 4174888 (E.D.N.Y. Sept. 17, 2012) ....................................................12

*Pennington v. HSBC Bank USA, N.A.*,
493 F. App'x 548 (5th Cir. 2012) ......................................................................12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
252 F.R.D. 83 (D. Mass. 2008).........................................................................30

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)............................................................ 2, 18, 28-29

*Phillips v. WellPoint, Inc.*,
2012 WL 4904523 (S.D. Ill. Oct. 15, 2012) ........................................................16

*Prasad v. BAC Home Loans Servicing LP*,
2010 WL 5090331 (E.D. Cal. Dec. 7, 2010) ......................................................12

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
286 F.R.D. 155 (D. Mass. 2012)........................................................................16

*Ramirez v. Wells Fargo Bank, N.A.*,
  2011 WL 1585075 (N.D. Cal. Apr. 27, 2011) ........................................................24

*Ramos v. Bank of Am., N.A.*,
  2012 WL 1999867 (D. Md. June 4, 2012) ......................................................... 25-26

*Reitz v. Nationstar Mortg., LLC*,
  2013 WL 3282875 (E.D. Mo. June 27, 2013) ................................................... 26-27

*Salvador v. Bank of Am., N.A.*,
  456 B.R. 610 (Bankr. M.D. Ga. 2011) .............................................................12, 14

*Senter v. JPMorgan Chase Bank, N.A.*,
  810 F. Supp. 2d 1339 (S.D. Fla. 2011) ............................................................12, 21

*Shaw v. BAC Home Loans Servicing, LP*,
  2013 WL 789195 (D. Mass. Mar. 1, 2013) .............................................................21

*Slimm v. Bank of Am. Corp.*,
  2013 WL 1867035 (D.N.J. May 2, 2013) ...............................................................25

*Soin v. Fed. Nat'l Mortg. Ass'n*,
  2012 WL 1232324 (E.D. Cal. Apr. 12, 2012) .......................................................12

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) .................................................................................26

*Speleos v. BAC Home Loans Serv., L.P.*,
  2013 WL 1442336 (D. Mass. Mar. 28, 2013) .......................................................26

*State v. O'Neill Investigations, Inc.*,
  609 P.2d 520 (Alas 1980) .....................................................................................24

*Stent v. Bank of Am.*,
  2012 WL 760776 (D. Nev. Mar. 8, 2012) .............................................................25

*Stolba v. Wells Fargo & Co.*,
  2011 WL 3444078 (D.N.J. Aug. 8, 2011) .............................................................12

*Stovall v. SunTrust Mortg., Inc.*,
  2011 WL 4402680 (D. Md. Sept. 20, 2011) .................................................12, 21, 24

*Stutman v. Chem. Bank*,
  731 N.E.2d 608 (N.Y. 2000) .................................................................................24

*Thomas v. JPMorgan Chase & Co.*,
  811 F. Supp. 2d 781 (S.D.N.Y. 2011) ..............................................................13, 23

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
2005 WL 3178162 (D. Mass. Nov. 28, 2005) ........................................................................14

*Vida v. OneWest Bank, F.S.B.*,
2010 WL 5148473 (D. Ore. Dec. 13, 2010) .........................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)................................................................................................20, 27, 30

*White v. JPMorgan Chase Bank, N.A.*,
2013 WL 3071894 (D. Md. June 17, 2013)..........................................................................27

*Whitmer v. CitiMortgage Inc.*,
2012 WL 6677785 (N.D. Ill. Dec. 21, 2012)........................................................................26

*Wittkowski v. PNC Mortg.*,
2011 WL 5838517 (D. Minn. Nov. 18, 2011) ......................................................................12

*Yacoubou v. Wells Fargo Bank, N.A.*,
901 F. Supp. 2d 623 (D. Md. 2012) .....................................................................................17

*Young v. Wells Fargo Bank, N.A.*,
2013 WL 2165262 (1st Cir. May 21, 2013)..............................................................13, 23, 26

## Statutes and Rules

KY. REV. ST. § 367.220(1) ............................................................................................................24

MO. REV. ST. § 407.025(1) ...........................................................................................................24

ALAS. STAT. § 45.50.531(a) ..........................................................................................................24

WIS. STAT. § 100.18(11)(b)(2).......................................................................................................24

FED. R. CIV. P. 23 .................................................................................................................. *passim*

## Other Authorities

HAMP Supplemental Directive 09-01 [App. A Ex. 3]............................................................3, 4, 7

HAMP Supplemental Directive 09-07 [App. A Ex. 18]............................................................3, 4

HAMP Supplemental Directive 09-10 [App. A Ex. 22]............................................................4, 6

HAMP Supplemental Directive 10-01 [App. A Ex. 6]..............................................................4, 5

MAKING HOME AFFORDABLE® PROGRAM HANDBOOK FOR SERVICERS OF NON-GSE
MORTGAGES (v4.2 May 1, 2013) ...................................................................................... 2-3, 5

SIGTARP-10-005, Factors Affecting Implementation of the Home Affordable
    Modification Prog. (Mar. 25, 2010) [App. A. Ex. 1]............................................................8

Supplemental Documentation—Frequently Asked Questions, Home Affordable
    Modification Prog. 2009-2010 Conversion Campaign [App. A Ex. 9] ................................ 4-5

On its face, this case is no different from the myriad cases brought by individual plaintiffs claiming that mortgage servicers breached trial loan modification agreements under the federal Home Affordable Modification Program (HAMP) by not giving them permanent modifications. These cases have been dismissed by literally hundreds of courts on a variety of grounds.  Just as significantly, the minority that have survived dismissal have invariably turned on individualized facts specific to each plaintiff: their satisfaction of eligibility requirements, specific oral and written representations made to them, even the jurisdiction where they bring suit.

This case differs in only two respects.  First, Plaintiffs purport to bring it as a class action, evidently figuring that claims which overwhelmingly fail individually have litigation value when asserted on behalf of "a hundred thousand individuals."  Pls. Ex. 13 at ¶ 13.  Second, Plaintiffs are not even alleging they were entitled to modifications.  Plaintiffs admit that many of them may not have qualified for HAMP, and that some unknown (and unknowable) number of class members may not have qualified either, but that Bank of America nevertheless harmed them by not sending prompt rejection letters.  The putative class thus amounts to a hodgepodge of differently situated borrowers, including those who cannot establish a contract, those who cannot establish their own performance, those who cannot establish damages, and those who can only try to establish these things with individualized evidence of their personal course of dealings.

Plaintiffs do not deny the individualized nature of their claims; indeed, their trial plan *embraces* it, contemplating multi-phased proceedings in which almost nothing is designated for classwide resolution—but individualized discovery, summary judgment proceedings, and mini-trials are necessary to assess liability, damages, and "any individual defense[s]" for a hundred thousand claims.  Dkt. #211 at 2.  The plan is fatally defective for many reasons, but foremost among them is that Plaintiffs need individualized evidence to establish threshold elements of

their claims at the *liability* phase, not merely at the individual mini-trial phase they contemplate afterwards.  A basic element of a breach-of-contract claim is the plaintiff's own performance. Plaintiffs do not even attempt to show that this can be established on a classwide basis.  Another basic element is damages.  Plaintiffs do not attempt to show that *this* can be established on a classwide basis, either.  Holding individual trials for damages calculations does not resolve this defect, because, as the First Circuit has held, the *fact* of damages across the class is a threshold showing Plaintiffs must make to establish liability.  But even if each phase could proceed exactly as Plaintiffs envision, their proposal to kick the can down the road after three years of litigation by certifying an unusual "liability only" class and then holding individual mini-trials that would dwarf the purported "common" issues is a stark illustration why this case is fundamentally unsuitable for class treatment.  If, as Judge Saris has said, "[h]olding 11,000 individual damages trials . . . is a management nightmare" (I*n re Pharm. Indus. Avg. Wholesale Price Litig*., 230 F.R.D. 61, 95 (D. Mass. 2005)), what Plaintiffs propose here is a nightmare more than tenfold.

## BACKGROUND

### A.    The Home Affordable Modification Program

The Treasury Department launched HAMP in early 2009 to make mortgage payments more affordable for homeowners at risk of foreclosure through a combination of interest-rate reductions, term extensions, and principal forbearance.  The program guidelines—first published March 4, 2009, and since continuously revised and expanded through dozens of Supplemental Directives (SDs), FAQs, waivers, and updates, most of which have now been incorporated into or superseded by an official handbook that has itself undergone multiple revisions[1]—outline how

---

[1]  *See*, *e.g.*, MAKING HOME AFFORDABLE® PROGRAM HANDBOOK FOR SERVICERS OF NON-GSE MORTGAGES (v4.2 May 1, 2013) (hereinafter "MHA HANDBOOK").  Fannie Mae and Freddie Mac each have their own versions of HAMP (see https://www.efanniemae.com/sf/

to assess and verify eligibility and how loans may be modified. Eligibility requirements pertain to lien status, occupancy, unpaid principal balance, monthly payment amounts, and borrower income, among other factors. Borrowers also must supply documentation to verify their income—the particular requirements for which have also undergone repeated revision[2]—and complete credit counseling in certain circumstances.

If a loan is eligible, and the servicer is not precluded from doing so by other contractual arrangements or investor requirements, it must *consider* the borrower for a modification. In doing so, the servicer follows a series of steps (the "waterfall") to adjust the monthly mortgage payment to 31 percent of the borrower's pre-tax monthly income. If the waterfall produces an affordable payment, the servicer tests whether the cost of modifying the loan is less than the cost of foreclosing (the Net Present Value, or NPV, test). If it is, the servicer may offer the borrowers a Trial Period Plan ("TPP") temporarily lowering their monthly payment. Until May 2010, Bank of America offered TPPs to borrowers using variants of a Fannie Mae/Freddie Mac form in which borrowers promise: (i) to provide a Hardship Affidavit; (ii) to "provide[] documentation for **all** income that I receive," (iii) that the property is their "principal residence," "has not been condemned," and has not undergone a "change in ownership," (iv) that "all documents and information I have provided . . . are true and correct," (v) to "obtain credit counseling," if required, and (vi) "[t]hat all persons who signed the Loan Documents" signed the TPP. *See* App. B (filed herewith) Ex. 10. The TPP does not take effect until both the servicer and the borrower sign it, and the borrower will not receive a permanent modification if Bank of America determines that he or she does not qualify. *Id.* at ¶ 2.F & G. If the borrower makes the trial

---

mha/mhamod/, http://www.freddiemac.com/singlefamily/service/mha_modification.html), the guidance for which Servicers must follow separately from HAMP.

[2] *E.g.*, App. A (filed herewith) Ex. 3 (SD 09-01) at 5-8 & Ex. 18 (SD 09-07) at 2-6.

payments and otherwise satisfies the underwriting requirements, Bank of America offers a permanent modification which the borrower must also sign and return.

Before Spring 2010, consistent with the HAMP guidelines at the time (*compare* App. A Ex. 3 (SD 09-01) at 5 *with* App. A Ex. 6 (SD 10-01) at 1-2), Bank of America issued TPPs based on borrowers' unverified income representations and collected the documents needed to verify incomes during the trial period.[3]   Unsurprisingly, this resulted in a vast number of borrowers deemed ineligible for HAMP once their income was later verified.   Additionally, many borrowers failed to submit complete documents, requiring Bank of America to request missing items, sometimes numerous times.   While Bank of America and other servicers accommodated such delays by granting trial period extensions, this resulted in some borrowers' spending months in trial plans only to learn they were not eligible.

Treasury made a number of adjustments to address these challenges.   Beginning in August 2009, Treasury issued a series of waivers allowing servicers to extend trial periods to allow borrowers to submit missing documents.   *See* App. A Exs. 13-16.   In October 2009, it eliminated a requirement that had forced servicers to make repeated requests for updated property valuation information.   *Id.* Ex. 18 (SD 09-07) at 5-6.   On December 23, 2009, Treasury issued SD 09-10, prohibiting servicers from denying any modifications for TPPs scheduled to expire on or before January 31, 2010 for any reason other than property specifications.   *Id.* Ex. 22.   Treasury also issued FAQ 1222-01, providing guidance for "situations where an eligible borrower successfully completed the HAMP trial period but has not been converted by the servicer to a permanent modification in a timely fashion" and requiring that eligible borrowers be

---

[3]   *See* App. A ¶¶ 9-11, 21; App. C (filed herewith) Ex. 1 at 133:14-25, 219:5-220:7; Ex. 2 at 101:15-20; Ex. 3 at BAC-HAMP045072 ("Verbal financial information dated from March 4, 2009 forward was used to assess customer eligibility for and to place customers into Trial modifications.").

offered permanent modifications "made effective as of the date the modification would have become effective if the servicer had converted the borrower in a timely fashion." *Id.* Ex. 9 at 2-3; *see also* MHA HANDBOOK at 127-28. Ultimately, with the release of SD 10-01, Treasury revised the HAMP guidelines, effective June 1, 2010, to require income verification before offering a TPP. *See* App. A. Ex. 6.

**B.** **Plaintiffs' Claims and Motion for Class Certification**

Plaintiffs seek to certify 26 classes of borrowers who received TPPs from Bank of America "in 2009 and the first part of 2010, pursuant to Treasury Directive SD-09." Mot. at 12. In other words, they do *not* seek certification on behalf of borrowers who received trial plans after Treasury required that incomes be verified prior to trial plan issuance, or for anyone else in the HAMP program in the last 3 or more years. Their theory is that Bank of America breached their TPPs and violated various state UDAP statutes because they did not "tender" Plaintiffs either a permanent HAMP modification agreement or a "written denial of eligibility" "prior to the Modification Effective Date specified in the Trial Period Plan Agreement." Mot. at 11-12.

While Plaintiffs' claims sound in contract, they are not actually based on any contractual language in the TPPs. In fact, nothing in the TPPs promises that Bank of America will provide either a permanent modification agreement or a written eligibility denial prior to the contemplated Modification Effective Date ("MED"). The TPPs state that if the borrower "compl[ies] with the requirements in Section 2" to make trial payments and the borrower's "representations in Section 1" regarding hardship, occupancy, income, and the provision of supporting documentation "continue to be true in all material respects," Bank of America "will send [the borrower] a [permanent] Modification Agreement for [his or her] signature." App. B Ex. 10 ¶ 3. No deadline for sending the borrower the permanent modification agreement is

mentioned, which makes sense because borrowers had until the end of the day before the MED

to complete their trial obligations—meaning that a borrower's eligibility for a modification *might*

*not even be established until the MED*.   *See* App. C Ex. 6 at ¶ 36.   And the TPPs contain no

commitment whatsoever to send ineligible borrowers a written denial letter, either by the MED

or at any other time.   The provision addressing ineligible borrowers states, in full:

> If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.   In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me;

App. B Ex. 10 ¶ 2.F.

Thus, rather than basing their contract claims on an actual contract, Plaintiffs claim that

the obligations they allege arise from HAMP guidelines.   *See* Mot. at 4 n.11.   Plaintiffs' expert

makes similar claims, citing to Treasury directives, not to any TPP.   *See*, *e.g.*, Pls. Ex. 13 ¶¶ 39,

40, n.48, n.51.   But Plaintiffs' reliance on the program guidelines is highly selective, as Plaintiffs

ignore all of the guidelines that contradict their theories.   For example, Plaintiffs claim that

borrowers were injured if they failed to qualify for modifications but did not receive denials at

the end of their initial trial period—completely ignoring the Treasury directive extending trial

periods and *prohibiting* Bank of America from issuing denials "for any reason other than failure

to meet the HAMP property eligibility requirements."   App. A Ex. 22 (SD 09-10).   Plaintiffs

claim that borrowers were injured if they received permanent modifications after the MED

contemplated by the TPP, but ignore the Treasury guidance specifically instructing servicers to

make such modifications retroactive to the MED.   *Id.* Ex. 9 at 2-3.   And Plaintiffs persist in their

theory that all borrowers, under all circumstances, should have had their eligibility evaluations

finalized by the end of their trials without acknowledging the four separate waivers issued

allowing servicers to extend trial periods to give borrowers more time to supply required documents. *Id.* Exs. 13-16. Plaintiffs also ignore the contractual language appearing in some (but not all) of their TPPs expressly providing for trial period extensions for borrowers who made trial payments late. *Compare*, *e.g.*, App. B Ex. 44 ¶ 4.E *with, e.g., id.* Ex. 10 (no ¶ 4.E).

## C.      **The Named Plaintiffs**

Plaintiffs submit 43 class representatives (inclusive of couples), but mention only one of them in their brief. Plaintiffs say that Antoun and Sabah Moussa "exemplify" their claims because they made their trial payments, allege they were "repeatedly" asked "to send documents they had already sent," and thus claim they were wrongly denied a modification. Mot. at 10. Plaintiffs fail to mention that the Moussas "repeatedly" failed to send a key financial document until well after the MED. *See* App. B ¶ 7. Plaintiffs say nothing about the other 42 Plaintiffs, but the reality is a patchwork quilt of different situations, legal theories, and applicable defenses:

- Some of the Plaintiffs were offered a permanent HAMP modification with terms retroactive to their original MED. Some accepted (*see* App. B ¶ 24 (Lopez)), and some did not. *See id.* ¶ 16 (Carillo), ¶ 31 (Nelson).

- Some of the Plaintiffs failed to make their trial payments, and thus do not even come within the class definition. *See id.* ¶ 10 (George), ¶ 31 (Nelson).

- Some of the Plaintiffs admit making untrue representations in their TPP. *See* App. C Ex. 4 at 71:6-10, 72:1-23, 76:8-77:5, 134:23-135:10 (Galasso) & Ex. 7 at 11:8-14:13, 124:20-125:9 (Volpe).

- Some of the Plaintiffs failed to provide required documents by their MED—or failed to provide them at all—and thus did not perform their own obligations under the TPP. *See* App. B ¶¶ 3-9 (Moussa), ¶ 10 (George), ¶ 12 (Alvarenga), ¶ 14 (Buckley), ¶ 15 (Cabrera), ¶ 17 (Cipowski), ¶ 18 (Dugree), ¶ 19 (Goldman), ¶ 26 (McManaman), ¶ 28 (Morrow & Clark), ¶ 29 (Kirkpatrick).

- Some of the Plaintiffs failed to complete the credit counseling they were obligated to complete under the TPP. *See id.* ¶ 10 (George), ¶ 13 (Balde), ¶ 21 (Hlavsa); App. C. Ex. 15 at 121:4-122:7, Ex. 16 at 130:7-131:6. At least one of the named Plaintiffs filed for bankruptcy during the trial period (*see* App. B. ¶ 20 (Golden)), and thus was eligible for HAMP only "at the servicer's discretion." App. A. Ex. 3 (SD 09-01) at 2.

- Some of the Plaintiffs were deemed ineligible for a permanent modification based on their verified income and monthly payment amounts or the fact that the property was not their primary residence, and Plaintiffs' only complaint is that they were not notified of their ineligibility sooner. *See* App. B ¶¶ 3-9 (Moussa), ¶ 11 (Magno), ¶ 13 (Balde), ¶ 14 (Buckley), ¶ 15 (Cabrera), ¶ 17 (Cipowski), ¶ 18 (Dugree), ¶ 19 (Galasso), ¶ 20 (Golden). ¶ 21 (Hlavsa), ¶ 22 (Kunsky), ¶ 29 (Kirkpatrick), ¶ 30 (Soper). Plaintiffs do not articulate any theory that explains how such borrowers were damaged.

- Some of the named Plaintiffs entered into their TPPs with Wilshire Credit Corp., not Bank of America, with MEDs before Bank of America even serviced their loans (*see id.* ¶ 12 (Alvarenga); App. C ¶ 22 (Freeman), ¶ 27 (Hall)), including at least one Wilshire declined for a permanent HAMP modification before transferring servicing to Bank of America. App. B ¶ 12 (Alvarenga).

- At least one of the Plaintiffs claims an oral contract with Bank of America. *See id.* ¶ 21 (Hlavsa); App. C Ex. 8 at 95:3-96:13, 134:17-137:10.

- Some of the Plaintiffs were offered other loan modifications after they originally failed to qualify for HAMP. Some of those Plaintiffs turned those modifications down, thus failing to mitigate their alleged damages. *See* App. B ¶ 9 (Moussa), ¶ 10 (George), ¶ 18 (Dugree), ¶ 27 (Mikhail), ¶ 30 (Soper). Others accepted the modifications (*see id.* ¶ 11 (Magno), ¶ 13 (Balde), ¶ 15 (Cabrera), ¶ 25 (Manfredonia), ¶ 26 (Morrow & Clark)), and Plaintiffs offer no evidence, nor any method by which such evidence could be adduced, that those modifications are less favorable than the modifications Plaintiffs claim they should have gotten.[4]

## D.   **Bank of America's HAMP Compliance Efforts**

Bank of America has converted more trial and permanent HAMP modifications than any other loan servicer. The program has not been free of challenges, but Bank of America has dedicated enormous resources to HAMP based on its commitment to promoting modifications as an alternative to foreclosure that benefits homeowners, investors, and servicers. *See* App. A.

When Treasury rolled out HAMP, it estimated there were nearly three million eligible borrowers. The first TPPs were issued within weeks, and servicers—across the board—faced challenges implementing a program that demanded major new resources: underwriters to review

---

[4] Beyond the 26 Plaintiffs specifically identified above, the applications, decisions, and communications related to the remaining Plaintiffs are also inherently individual and require file-by-file analysis to understand. *See* App. C ¶¶ 18-37 and exhibits referenced therein.

documents and validate incomes, legal and business staff to reconcile HAMP compliance demands with contractual obligations to investors, and technology and staff to run NPV calculations.  Compounding these problems was the fact that "[p]rogram rules had not been fully developed . . . by the time the program began, and Treasury . . . had to revise guidelines repeatedly, often causing confusion and delay."  App. A. Ex. 1 at 30.

Borrowers' ability to obtain trial modifications based on unsupported oral representations had particularly salient consequences, incentivizing borrowers to use trial plans to lower their monthly payments even if they did not qualify—and "gam[e] the system by withholding required documents . . . thereby avoiding to have to make payments until the end of the trial period and still avoid foreclosure."  *Id*. at 23.  Despite official recognition that "Treasury's decision to permit servicers to start trial modifications before receiving supporting documents has been counterproductive, creating a large backlog of trial modifications, of which many will never become permanent" (*id*. at 1), Bank of America went out of its way *not* to decline files and continued attempting to place borrowers in modifications even after their trials expired.  *See* App. A. ¶ 31.  But in Plaintiffs' version of events, Bank of America responded by "issu[ing] wrongful denials *en masse* to reduce its HAMP backlog" while simultaneously (and bizarrely) pursuing a strategy to *add* to that backlog by "stringing homeowners along."  Mot. at 6.

Plaintiffs ignore these well-documented, industry-wide challenges and accuse Bank of America of "deliberate bad faith."  Mot. at 2, 6.  Plaintiffs do not support this theory with any of the millions of documents, tens of thousands of emails, or dozens of depositions taken in this case, instead relying on statements their lawyers have commissioned from a few ex-employees/contractors, which were clearly drafted by Plaintiffs' counsel to support their theory that the outcomes they contest reflect indiscriminate (and inexplicable) corporate malevolence

rather than the obvious administrative challenges presented by a massively scaled program rolled out on short notice with ever-changing guidelines.  The declarations would not support class certification even if they were credible, but they are demonstrably false:

- Half of the declarants didn't even work for Bank of America during the relevant period.  *Compare* Mot. at 12 (defining class as borrowers who received TPPs "in 2009 and the first part of 2010"), *with* Pls. Ex. 1 ¶ 2 (employed from June 2010 through August 2012); Pls. Ex. 5 ¶ 3 (employed from August 2010 to January 2011); Pls. Ex. 7 at 2 (employed from April 2010 to November 2011).

- The declarants wildly misrepresented their duties at the Bank, and most had only minimal involvement with HAMP—or none at all.  Simone Gordon, Theresa Terrelonge, and Recorda Simon were call-center operators whose only involvement with HAMP would have been to forward calls to other departments if a borrower might qualify;  *See* App. D (filed herewith) Ex. 5 ¶¶ 12-16, Ex. 8 ¶¶ 4-11 & 19, Ex. 9 ¶¶ 4-12.  Up until a few months before her termination in 2012, Gordon worked in a call center responsible only for *credit card* customers.  *See id.* Ex. 4 ¶¶ 4-20, Ex. 5 ¶¶ 4-11.   Bert Sheeks was a contractor responsible for processing customer complaints, not HAMP applications.  *See id.* Ex. 10 at ¶¶ 5-9.  William Wilson claims he worked as an underwriter, but he didn't.  *See id.* Ex. 1 ¶ 5, Ex. 2 at ¶¶ 4, 6; Ex. 3 ¶ 5.  Steven Cupples is the only declarant who actually worked as an underwriter, but he was tasked solely with running income calculations and had no role in making eligibility determinations as he claims.  *See id.* Ex. 6 ¶¶ 6-7, 13 & 17; Ex. 7 ¶ 5, 13.

- The declarants' wild misrepresentations about their roles lead to *impossible* claims about what they did and saw.  In her role as a credit-card call center operator until the end of 2011, Gordon would not have dealt with HAMP applications.  *See id.* Ex. 4 ¶¶ 4-20, Ex. 5 ¶¶ 4-5, 7-11.  Gordon and Terrelonge each contrived allegations that they received gift cards or cash to refer loans to foreclosure or deny HAMP modifications, but they worked in departments that did not have the ability to do either of these things.  *See id.* Ex. 4 ¶¶ 4-20, Ex. 5 ¶¶ 4-5, 7-24; Ex. 8 ¶¶ 4-11, 13-26.   The SEIBEL database that Sheeks claims he used to deny HAMP applications and force borrowers to restart the process was not used for HAMP; Sheeks was never instructed to close a complaint file in SEIBEL without reason, but even if he had done so, it would have had no effect on a HAMP application.  *See id.* Ex. 10 ¶¶ 6-21.  In Wilson's roles, he would have had neither the qualifications nor the authority to determine who was eligible for HAMP.  *See id.* Ex. 2 ¶¶ 6, 8 & 12, Ex. 3 ¶¶ 6, 10, Ex. 11 ¶¶ 3-6.  Despite Wilson's claims that the bank used a "blitz" process to deny modifications as quickly as possible, blitzes were used to help *approve* applications, not deny them: a "blitz" describes the use of overtime hours on evenings and weekends (when CRMs had the greatest chance of reaching borrowers) to call large numbers of borrowers to obtain outstanding documentation needed to process their applications.  *See id.* Ex. 2 ¶ 8, Ex. 3 ¶ 14, Ex. 11 ¶ 14, Ex. 13 ¶¶ 5-8, Ex. 14 ¶¶ 6-9, Ex. 15 ¶¶ 8-11, Ex. 16 ¶¶ 6-9, Ex. 17 ¶¶ 8-11, Ex. 18 ¶¶ 6-9.  Wilson's claim that the bank pushed HAMP-eligible borrowers into "more profitable" non-HAMP modifications is also contradicted by

empirical data establishing that HAMP modifications were in fact more profitable. *See id.* Ex. 12 ¶¶ 2-10.

- The sole claim in the declarations with any pertinence to this motion (because it bears on what borrowers had to do to satisfy eligibility requirements) is the claim that the bank never issued TPPs based on borrowers' unverified oral representations. In fact, it was *routine* for Bank of America to do so, consistent with HAMP's guidelines at the time (*see supra* n.3 and App. D Ex. 6 ¶ 17; Ex. 7 ¶ 13.  ), and many named Plaintiffs received TPPs based on oral or other unverified representations. *See, e.g.* App. C. Ex. 4 at 68:14-70:8, 70:23-71:5, 73:3-24 & Ex. 9 (Galasso); Ex. 5 at 49:17-23, 50:5-17, 52:11-22; 53:3-10, 55:7-57:6 & Exs. 10-12 (Soper).

- The declarants have a significant motive to manufacture false allegations against Bank of America, since at least six of the seven were fired for inappropriate behavior—including threatening violence against a coworker (Gordon), sending inappropriate text messages to a member of his team (Cupples), and bullying his associates (Wilson). App. D. Ex. 1 at ¶¶ 4, 6, 8, 12-14.

- Other employees have attested that the bank bent over backwards to help borrowers seeking HAMP modifications and that they were trained to explore HAMP as the first option for borrowers in distress, give borrowers *multiple* opportunities to provide required documents, and communicate regularly with borrowers about their applications. *See id.* Ex. 13 ¶¶ 3-4, Ex. 14 ¶¶ 3-5, Ex. 15 ¶¶ 3-7, Ex. 16 ¶¶ 3-5, Ex. 17 ¶¶ 3-7, Ex. 18 ¶¶ 3-5. Bank employees were often contacted directly by borrowers wishing to express thanks for their help on HAMP applications. *See, e.g., id.* Ex. 13 ¶ 4, Ex. 14 ¶ 5, Ex. 15 ¶ 7, Ex. 16 ¶ 5, Ex. 17 ¶ 7, Ex. 18 ¶ 5.

In sum, the declarants could not have witnessed what they claim to have witnessed because they were not in a position to do so—and *would* not have witnessed such things in any event because Bank of America's actual practices were diametrically opposite.

## ARGUMENT

## I.  INDIVIDUAL CASES ASSERTING THE SAME CLAIMS AS PLAINTIFFS' SHOW WHY CLASS CERTIFICATION IS INAPPROPRIATE.

Literally hundreds of individual plaintiffs across the country have brought actions alleging that their servicers breached TPPs by not offering them permanent HAMP modifications. This substantial body of law (*see* Appendix) is significant for numerous reasons.

***First***, the majority of courts to address the issue have rejected the claims and held that even borrowers who made their trial payments and satisfied the eligibility requirements do not

have a contractual claim for a permanent loan modification.[5]  Some reject the claims because the

TPPs "are indefinite and uncertain as to material terms of the permanent loan modifications,"

and thus "represent, at best, unenforceable agreements to agree."[6]  Some reject the claims

because the plaintiffs (like the Plaintiffs here) seek to enforce alleged contracts which have not

actually been signed by both parties.[7]  Some reject the claims because the TPPs make the

servicer's commitment to modify a loan contingent on the servicer's sending the borrower a fully

executed permanent modification agreement, and thus borrowers who are never sent one have no

---

[5]  *E.g.*, *Geske v. Wells Fargo Bank, N.A.*, 2012 WL 1231835, *6 (N.D. Tex. Apr. 12, 2012) ("courts have almost uniformly concluded that TPPs are not enforceable contracts based solely on a plaintiff's compliance with the terms of the TPP"); *Wittkowski v. PNC Mortg.*, 2011 WL 5838517, *3-4 (D. Minn. Nov. 18, 2011) ("Plaintiff was not promised a permanent loan modification in exchange for making timely payments and fulfilling the TPP document requirements."); *Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, *3 (D.N.J. Aug. 8, 2011) ("the plain language of the relevant TPP documents makes clear that satisfying the TPP conditions for permanent modification does not guarantee that Plaintiff would receive such modification"); *Prasad v. BAC Home Loans Servicing LP*, 2010 WL 5090331, *2-4 (E.D. Cal. Dec. 7, 2010) ("no binding contract" where "plaintiff allege[d] that he performed the terms and conditions of the contract by providing the requested documents and making three successive payments"); *JPMorgan Chase Bank, N.A. v. Ilardo*, 940 N.Y.S.2d 829, 839-40 (N.Y. Sup. Ct. 2012) ("claims that the TPP was a binding contract and the [servicer] breached it by failing to offer a permanent modification after the Ilardos successfully performed are rejected as unmeritorious").

[6]  *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011); *accord*, *e.g.*, *Juarez v. SunTrust Mortg., Inc.*, 2013 WL 1983111, *17 (E.D. Cal. May 13, 2013); *Pace v. CitiMortgage, Inc.*, 2013 WL 55825, *3 (M.D. Ga. Jan. 3, 2013); *Salvador v. Bank of Am., N.A.*, 456 B.R. 610, 617-19 (Bankr. M.D. Ga. 2011); *Nadan v. Homesales, Inc.*, 2011 WL 3584213, *6 (E.D. Cal. Aug. 12, 2011).

[7]  *E.g.*, *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 554 (5th Cir. 2012);  *McGann v. PNC Bank, N.A.*, 2013 WL 1337204, *6 (N.D. Ill. Mar. 29, 2013); *Brinson v. Bank of Am., N.A.*, 2013 WL 147835, *5 (D. Alas Jan. 13, 2013); *Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 815 (W.D. Mich. 2012); *Goss v. ABN AMRO Mortg. Grp., LLC*, 2012 WL 5986783, at *6  (E.D. Mich. Nov. 29, 2012); *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, *4 (E.D.N.Y. Sept. 17, 2012); *Avevedo v. CitiMortgage, Inc.*, 2012 WL 3134222, *8 (N.D. Ill. July 25, 2012); *Brady v. Chase Home Fin., LLC*, 2012 WL 1900606, *7 (W.D. Mich. May 24, 2012); *Soin v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 1232324, *5-6 (E.D. Cal. Apr. 12, 2012); *Krouse v. BAC Home Loans Servicing, LP*, 2011 WL 6100406, *4 (E.D. Cal. Dec. 6, 2011); *Stovall v. SunTrust Mortg., Inc.*, 2011 WL 4402680, *12 (D. Md. Sept. 20, 2011); *Nungaray v. Litton Loan Servicing, LP*, 135 Cal. Rptr. 3d 442, 446-47 (Cal. Ct. App. 2011).

contractual right to a permanent modification.[8]   And, of course, some reject the claims because of the plaintiffs' failure to satisfy the permanent modification eligibility requirements.[9]

*Second*, even the few cases where the plaintiffs have survived dismissal turn on individualized facts specific to their circumstances and course of dealings with their servicers. Just as those individualized facts have proven dispositive in individual cases, they will certainly prove dispositive of the claims of individual class members here—making it impossible to litigate those claims with common proof.  For example, Plaintiffs rely heavily on *Young v. Wells Fargo Bank, N.A.*, 2013 WL 2165262, *6 (1st Cir. May 21, 2013), which reinstated a claim that a TPP "required Wells Fargo to offer [the plaintiff] a permanent modification" on the ground that the plaintiff alleged "that she performed all of her obligations under the TPP."  But Plaintiffs cannot show with common proof that *every* class member performed all of their obligations.

*Third*, the different results and different rationales employed across this vast body of precedent crystallize the problems inherent in Plaintiffs' request to certify claims under 26 different states' laws.  *Young* is based on Massachusetts law.  But *Lucia*, applying California law, and *Thomas*, applying New Jersey law—to cite just two examples—reached the opposite result on the question of whether borrowers' performance of all their TPP obligations entitles them to permanent modifications, and Plaintiffs also seek certification of claims subject to the laws of these states, too.  Breaking the class into 26 subclasses does not resolve this problem.

---

[8]  *E.g.*, *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 796 (S.D.N.Y. 2011); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1069 (N.D. Cal. 2011); *Lund v. CitiMortgage, Inc.*, 2011 WL 1873690 (D. Utah May 17, 2011).

[9]  *E.g.*, *Gikas v. JPMorgan Chase Bank, N.A.*, 2013 WL 1457042, *3-4 (D.N.H. Apr. 10, 2013); *Marquez v. Wells Fargo Bank, N.A.*, 2013 WL 98533, *2 (D. Mass. Jan. 8, 2013); *Nugent v. Fed'l Home Loan Mortg. Corp.*, 2013 WL 1326425 (E.D. Cal. Mar. 29, 2013); *Baehl v. Bank of Am., N.A.*, 2013 WL 1319635, *11-12 (S.D. Ind. Mar. 29, 2013); *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445 (S.D. Tex. Nov. 29, 2012); *Hayes v. Bank of Am. Corp.*, 2012 WL 4364084, *4 (D. Nev. Sept. 21, 2012); *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912 (D. Md. 2012); *Frost v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 999, 1008-09 (W.D. Mich. 2012).

Plaintiffs still contemplate summary judgment proceedings that would require this Court to interpret and apply the laws of all 26 class states.  Plaintiffs also cite 12 states where the proposed class representatives "filed their claims directly before this Court" and "hence there would be no remand to a transferor court under § 1407(a)," leaving this Court to conduct the trials and instruct the jury on the laws of these dozen states. Dkt. #211 at 2 & n.2.

*Fourth*, the myriad individual cases asserting the same claims Plaintiffs seek to certify for class treatment make it impossible to sustain the argument that a class action is a "superior" method for adjudicating such claims, as Rule 23(b)(3) requires.  In imposing this requirement, "the Advisory Committee had dominantly in mind vindication of the 'rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Manifestly, individual borrowers asserting claims based on HAMP TPPs have not lacked the ability to bring suit.

*Finally*, many of the borrowers who have brought individual claims are actually members of the class Plaintiffs seek to certify.  For example, Katy Brinson, Diana Hayes, Rusty and Brenna Krouse, Tommy and Melissa Geske, Alma and Jose Gomez, and James Salvador all come within Plaintiffs' class definition—and they also all brought individual claims against Bank of America, had their day in court, and lost.  *See Brinson*, *Hayes*, *Krouse*, *Geske*, *Salvador*, *supra*; *Gomez v. Bank of Am., N.A.*, 2012 WL 929790 (D. Or. Mar. 19, 2012).  A class action can be a superior method of adjudicating claims when necessary to "avoid[] potentially inconsistent adjudications," *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, *3 (D. Mass. Nov. 28, 2005), but here class certification would have the opposite effect, inviting results directly at odds with long-settled adjudications.

## II.  RULE 23(C)(4) DOES NOT PERMIT EVEN THE PARTIAL CERTIFICATION PLAINTIFFS SEEK.

The Supreme Court held in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), that a class cannot be certified unless plaintiffs "establish[] that damages are capable of measurement on a classwide basis."  Plaintiffs concede they have no method to do this, but try to evade *Comcast* by seeking partial certification under Rule 23(c)(4) with a plan contemplating a "Phase One" of liability trials for 26 state classes and a "Phase Two" of individualized proceedings on damages and other issues.  Dkt. #211 at 2.[10]  Plaintiffs rely on the statement in the *Comcast* dissent that "a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings" (Mot. at 13), but that principle, even if applicable in other contexts, does not help Plaintiffs here.  Under binding First Circuit precedent, establishing the *fact* of damages for each class member is something Plaintiffs must do at the *liability* phase. *Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*, 522 F.3d 6, 28 (1st Cir. 2008).  And Plaintiffs propose no method for doing this on a classwide basis.

Damages are an essential element of Plaintiffs' claims.  *See Linton v. New York Life Ins. & Annuity Corp.*, 392 F. Supp. 2d 39, 41 (D. Mass. 2005) (Zobel, J.) (contract plaintiff must demonstrate "that [plaintiff] suffered damages from the breach").  A person who has no damages

---

[10]  Plaintiffs argue that "[w]hen considering whether a class should be certified only for certain issues pursuant to Rule 23(c)(4), the Court's inquiry is whether the factors of 23(a) and 23(b) are met with regard to the issues sought to be certified," and that they need not show that common issues predominate with respect to the case as a whole.  Mot. at 13.  As Plaintiffs recognize, however, that is not the law in this Circuit.  The First Circuit has never addressed whether Rule 23(c)(4) absolves plaintiffs of the requirement to establish that common issues predominate with respect to the case as a whole, and courts elsewhere are split.  *Compare In re Nassau Cty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), *with Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996).  Bank of America respectfully submits that "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3)" and that reading Rule 23(c)(4) to permit the Court to "sever" individualized issues and only assess predominance based on what remains "would eviscerate the predominance requirement."  *Castano*, 84 F.3d at 745 n.21.

cannot prevail on the liability questions that Plaintiffs propose for common resolution in "Phase One."  Thus, the class cannot be certified without a common method for identifying (at the very least) which borrowers have damages and which do not.  In *Brown*, the First Circuit vacated a certification based on a damages model that showed aggregate damages but failed to show which class members were damaged in the first place, holding:

> [P]laintiffs' theory . . . must include some means of determining that each member of the class was in fact injured, even if the amount of each individual injury could be determined in a separate proceeding.  Predominance is not defeated by individual damages questions as long as liability is still subject to common proof. . . .  ***Establishing liability, however, still requires showing that class members were injured*** . . . .

> The plaintiffs might intend to use their damages model to prove both fact of damages and the measure of those damages.  If so, the district court would need enough information to evaluate preliminarily whether the proposed model will be able to establish, without need for individual determinations for the many millions of potential class members, which . . . were impacted . . . and which were not.

522 F.3d at 28 (emphasis added).  Similarly, *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 286 F.R.D. 155, 158 (D. Mass. 2012), denied certification on the ground that if "the fact of actual injury is an element" of the claim, "each class member must prove that he or she suffered some injury."  The Court found that "regardless of what measure of damages Plaintiffs choose, it seems likely that they will have to show that each class member suffered some actual, legally cognizable injury . . . to establish liability," giving rise to "the necessity of an individualized inquiry regarding injury for each proposed class member."  *Id*. at 159.[11]

While Plaintiffs declare without support that "all class members have been injured" (Mot. at 4), they do not propose any method for determining whether this is in fact the case.  Their

---

[11]  *See also, e.g., Phillips v. WellPoint, Inc.*, 2012 WL 4904523, *5 (S.D. Ill. Oct. 15, 2012) (no commonality where Court would have to "make an inquiry into whether each [class member] actually suffered damages as a result of defendants' breach"); *Orthocraft, Inc. v. Sprint Spectrum, L.P.*, 2002 WL 31640477, *2 (E.D.N.Y. Nov. 16, 2002) ("The critical issue . . . is that the fact of injury as to each member of the class is a necessary element and would still require individual analysis, . . . which defeats the typicality and commonality requirements").

class includes multiple categories of borrowers (and many named Plaintiffs) who do not have

damages either from an economic perspective, as a matter of law, or both, including:

- Borrowers who rejected permanent HAMP modifications offered to them.  Nearly one in ten borrowers in the random sample population is in this category.  *See* App. C. Ex. 13 at ¶ 31 & Table 4.

- Borrowers who defaulted on their trial plan (at least 14% of the sample population) and borrowers who did not return documents necessary for evaluating their eligibility (at least 40% of the sample population).  *Id.*

- Borrowers who stopped making their mortgage payments, either during or after trial periods.  *See Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 636 (D. Md. 2012) ("no evidence of any quantifiable damages [plaintiff] suffered due to Wells Fargo's breach" because plaintiff "has not made any mortgage payments" "since before this suit was filed"); *Palacio v. HSBC Bank USA, N.A.*, 2012 WL 4928878, *6 (Mass. Super. Ct. Oct. 4, 2012) (no damages where plaintiff "has not made a mortgage payment since August 2008 and thus[] has lived in her home rent-free").

- Borrowers who received HAMP modifications, but after Plaintiffs say they should have received them.  *See* App. C. Ex. 13 at ¶¶ 48-51 (showing that "[t]here is no damage to the borrower simply from having conversion to the permanent modification occur at a date later than 3-4 months after beginning the TPP" because the terms "are made retroactive to the contemplated effective date").

- Borrowers who subsequently received modifications (either HAMP or otherwise) other than the HAMP modifications at issue here.  *See Legore*, 898 F. Supp. 2d at 918 (finding that plaintiff "no longer has a claim for economic damages now that his loan agreement has been permanently modified" under a subsequent agreement).

- Borrowers who could not afford even a modified payment.  *See Gomes v. Bank of Am., N.A.*, 2013 WL 2149743, *6 (D. Haw. May 15, 2013) (no harm to plaintiff because "[n]othing in the record indicates that he would have been able to comply with the terms of any loan modification offered him").

- Borrowers who did not experience foreclosures, negative credit reporting, or other alleged grounds for damages (*see* TAC ¶ 538).  *See Nastrom v. JPMorgan Chase Bank, N.A.*, 2012 WL 5522795, *7 (E.D. Cal. Nov. 14, 2012) ("Plaintiffs also fail to allege facts of an injury" from alleged promise of HAMP modification "as there is no assertion that Defendants have foreclosed on their home"); *Legore*, 898 F. Supp. 2d at 918 (no damages from credit reporting absent "evidence that [plaintiff's] credit scores were detrimentally affected in a way that has resulted in economic damages").

The litigation plan proposed by Plaintiffs simply is not a permissible way of adjudicating the

claims of a putative class that includes people with no injury—and would not be administratively

feasible even setting that defect aside.  The striking thing about Plaintiffs' motion is just how very *little* they ultimately deem appropriate for class treatment and how *much* of the litigation burden they leave for individual mini-trials.  Even their list of purportedly "common liability issues" amounts to 218 issues under the laws of 26 states. Dkt. #211-4.  Once those 218 issues are resolved, hearings on "individual damages claims" would occur that "would also resolve any individual defense claimed by Defendant."  Dkt. #211 at 2.  Judge Saris once remarked that "[h]olding 11,000 individual damages trials in Part II is a management nightmare," *Pharm. Indus. Wholesale Price*, 230 F.R.D. at 95, but Plaintiffs here propose individual trials for a class that allegedly "number[s] in the hundreds of thousands."  Pls. Ex. 13 ¶ 45.

## III. PLAINTIFFS DO NOT SATISFY RULE 23(A).

### A. <u>There Is No Common Question of Law or Fact.</u>

#### 1. Commonality Is Defeated By the Necessity of Individualized Evidentiary Inquiries Into Borrowers' Performance Under TPPs.

One of the unusual features of Plaintiffs' class definition is that it excludes borrowers who failed to satisfy their obligations under the TPP to make trial payments, but does *not* exclude borrowers who failed to satisfy *other* TPP obligations.  Plaintiffs do not articulate any basis for concluding that borrowers in the latter category have a claim if borrowers in the former category do not, because there isn't one.  A party's own performance under a contract is a necessary condition for accusing the other party of breach.  *Amarin Plastics, Inc. v. Md. Cup Corp.*, 946 F.2d 147, 151 (1st Cir. 1991); *see also*, *e.g.*, *LeBlanc v. Bank of Am., N.A.*, 2013 WL 3146829, *10 (W.D. Tenn. June 18, 2013) ("failure to fulfill the conditions of the TPP would result in Bank of America having no liability").  Consequently, adjudicating Plaintiffs' claims will require individualized inquiries into whether each borrower satisfied their TPP obligations.

Such inquiries doomed class certification in *Campusano v. BAC Home Loans Servicing LP*, 2013 WL 2302676 (E.D. Cal. Apr. 29, 2013). There, plaintiffs argued that claims for breach of loan modification agreements could be adjudicated on a classwide basis because they were based on standard form contracts, but the Court agreed with Bank of America that the alleged standardization was irrelevant where the claims did not turn on the *interpretation* of contractual terms, but on individualized examinations whether each borrower in fact satisfied those terms. The Court found commonality lacking because the agreements "would lead to a host of individual questions" such as, "Did both parties agree to this contract? Did this contract require fulfillment of conditions precedent? Were those conditions fulfilled in this instance?" *Id*. at *6.

Rather than proposing a method to show that each class member fulfilled such conditions, Plaintiffs simply assume it, declaring that "[a]ll class members performed their key duties." Mot. at 1. The "key duties" here include swearing to a legitimate hardship, making timely trial payments, providing required documents, showing that the property is a principal residence, completing credit counseling if required, and certifying that all of the documents and information they have provided are true. App. A Ex. 10. Borrowers who fail to return documents, or whose documents fail to substantiate the representations they made, have not performed their "key duties" under the TPP and do not have a claim. Borrowers who may have converted their home to a rental property, or who have not undergone required credit counseling, likewise did not perform and have no claim. Whether these "key duties" have been performed in each case is something Plaintiffs have the burden of establishing. They cannot do so by assuming what they set out to prove. Nor can they do so by wishing those duties away, as when they state that "the only remaining condition to satisfy was to timely make all required payments." Mot. at 4.

Nor can Plaintiffs make the requisite showing without individualized documentary evidence. *See* App. C Ex. 6 ¶¶ 22-31.  In attempting to argue otherwise, Plaintiffs' expert makes a statement which is telling for what it leaves unsaid: that Bank of America has a database that "can be queried to identify borrowers who had returned all necessary documents" (Pls. Ex. 13 ¶ 64), as if the documentation requirements only exist as a gratuitous hoop to jump through and the actual *content* of the documents is immaterial.  In reality, the point of collecting documents is to *review* them to assess eligibility.  It is therefore impossible to assess a borrower's eligibility *without* a document review.  *See* App. C Ex. 6 ¶ 25.  Indeed, Plaintiffs base their motion on allegations that the Moussas supplied the required documents but that Bank of America's records wrongly indicated otherwise.  *See* Mot. at 10-11.  When a claim is based on a discrepancy between what borrowers say they supplied and what bank records indicate, it cannot be resolved by reference to the electronic records alone.  Only an intensive, manual review to confirm that borrowers provided the required documents, *and* that the documents are sufficient to verify their eligibility, can determine whether they performed under their TPPs.  *See, e.g.,* App. B ¶¶ 3-9.

### 2.  Plaintiffs' "Common Question" Cannot "Drive the Resolution of the Litigation."

To satisfy the commonality requirement of Rule 23(a), Plaintiffs must identify "a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The question must be one that is "apt to drive the resolution of the litigation."  *Id*.  Here, the supposed "common question" Plaintiffs raise is "whether BoA breached their TPPs when it failed to provide either a written denial or a permanent loan modification as of the Modification Effective Date."  Mot. at 16.  But this is not a question that can resolve the validity of each claim or drive the resolution of the litigation, because resolving whether Bank of America "failed to provide

either a written denial or a permanent loan modification as of the Modification Effective Date" is

not enough to resolve "whether BoA breached their TPPs." *Id.*

  The most fundamental reason for this is that the TPPs do not actually promise that Bank

of America will send either a written denial or a permanent modification by the MED. *See supra*

at 5-6. Obviously, answering a question that will not actually determine the validity of any claim

cannot drive the resolution of those claims.[12] But even if one were to indulge Plaintiffs' legal

theory *arguendo*, the question they raise *still* cannot drive the resolution of the litigation due to

the disconnect between that theory and what their "common method" is capable of showing. In

ambiguously alleging an obligation to "provide" permanent modifications to eligible borrowers,

Plaintiffs conflate two different things: the *offer* of a modification, and its *implementation*.

Plaintiffs admit that Bank of America is not obligated to give every borrower who "complies

with the TPP's written requirements" a permanent modification: it is required, *at most*, to "offer"

one. Pls. Ex. 13 ¶ 28. That is the theory on which Plaintiffs base their claims: that "upon

successful completion of the TPP, the Servicer must offer the homeowner a permanent

modification." TAC ¶ 96. But Plaintiffs' method for identifying class members does not even

try to identify who was not offered a modification; it is designed only to identify those who did

---

[12] To whatever extent Plaintiffs believe HAMP guidelines impose obligations not reflected in the contractual language, that is irrelevant to their claims. *See Stovall*, 2011 WL 4402680, at *12 ("The fact that she claims the letter itself did not comply with the HAMP guidelines is of no matter as she is precluded from bringing a private right of action to enforce the HAMP guidelines."); *Senter*, 810 F. Supp. 2d, at 1339 (because "[t]he TPP Agreements do not explicitly incorporate the terms of the HAMP Guidelines," "the Court need not look to the HAMP . . . Supplemental [D]irectives[] to ascertain the meaning of the contractual terms of the TPP Agreements"); *Shaw v. BAC Home Loans Servicing, LP*, 2013 WL 789195, *4 (D. Mass. Mar. 1, 2013) (dismissing claim based on allegations that plaintiff "has a breach of contract claim against BAC because it failed to follow HAMP program guidelines"); *Bassie v. Bank of Am., N.A.*, 2012 WL 6530482, *3 (S.D. Tex. Dec. 13, 2012) ("breach of contract claim . . . premised upon alleged violations of HAMP guidelines[] must be dismissed").

not receive an "implementation."  Pls. Ex. 13 ¶ 79.[13]  The distinction is critical, because, as their expert admits, it results in Plaintiffs' including borrowers in their putative class who had permanent modifications offered to them but did not accept the offers (and thus have no claim for breach under Plaintiffs' theory).  App. C Ex. 14 at 80:5-16.  Plaintiffs also include in their class borrowers who *did* accept the offer and whose implementation is allegedly "untimely" only because the borrower's acceptance was untimely.  App. C Ex. 6 ¶ 33.  Resolving the supposed "common question" whether borrowers received either a written denial or an implemented modification without addressing whether modifications were offered and timely accepted will not determine the validity of a single claim, and thus cannot drive the resolution of the litigation.

Even if Plaintiffs revised their method to base class membership on offers rather than implementations, it still would not advance the litigation because Plaintiffs concede they have no common method for determining whether a borrower was *entitled* to an offer.  *See* App. C Ex. 14 at 39:9-16 ("Q. Did you make an effort to identify borrowers to whom the bank was required to offer a permanent modification?  A. No. . . .").  Without any means of distinguishing those who were entitled to an offer from those who did not receive offers due to their own failure to perform, it is impossible to assess who has a claim and who does not.  *See supra* Part III.A.1.

### 3.  Commonality Is Defeated By Material Differences in Applicable State Law.

Plaintiffs concede there are material differences among the 26 states' laws applicable to their claims (Dkt. #211 at 3).  It is well-established that if Plaintiffs were seeking to certify a

---

[13]  Notably, however, while Plaintiffs rely on HAMP guidelines rather than actual contractual language to establish Bank of America's contractual obligations, HAMP guidelines do not support this legal theory.  *See, e.g.*, *Lucia*, 798 F. Supp. 2d, at 1068-69 ("HAMP only requires participating servicers to consider eligible loans for modification, but does not require servicers to modify eligible loans.") (citing *Williams v. Geithner*, 2009 WL 3757380, *6 (D. Minn. Nov. 9, 2009) (noting the "Congressional intent to afford discretion in the decision whether to modify loans" and observing that "regulations promulgated by Treasury for administering the HAMP clearly demonstrate that the Secretary allowed the exercise of some discretion, including calculation of the NPV, to the servicers")).

single class governed by 26 states' laws, the need to "examine the laws of each state where putative class members' contracts were entered into" would "alone present[] an impediment to certification."[14]  Plaintiffs cannot end-run this rule by seeking 26 separate classes, because the administrative challenge of applying 26 states' laws is the same whether there are 26 classes or a single class, particularly given Plaintiffs' plan for this Court to apply the law of all 26 states in summary judgment proceedings and conduct trials for the twelve class states with no remand court.  *See* Dkt. #211 at 2 & n.2; *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 57-58 (D. Mass. 2010) ("Certification of subclasses . . . must continue to facilitate the operation of the class action") (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (court "must be careful not to certify too many groups" because applying or instructing the jury on the applicable law would be an "impossible task")).

Plaintiffs try to downplay the extent of the state-law differences, but the vast universe of case law involving similar claims shows that the differences are material and case-dispositive:

- This Court previously held that lack of consideration for Plaintiffs' TPPs did not mandate dismissal of their claims under Massachusetts law, deferring decisions on other states' laws. Dkt. #66 at 8 n.3.  But courts applying the law of other class states have reached the opposite result.  *E.g.*, *Karapetyan v. JPMorgan Chase Bank, N.A.*, 2012 WL 3308883, *3-4 (E.D. Tex. June 6, 2012); *Citimortgage, Inc. v. Crawford*, 2013 WL 1225387, *4-5 (S.D. Ohio Mar. 26, 2013).

- As noted above, in *Young*, the First Circuit held, in a case governed by Massachusetts law, that the plaintiff had stated a claim on the theory that she was entitled to a permanent modification because "she performed all of her obligations under the TPP."  But *Lucia*, 798 F. Supp. 2d at 1069, and *Thomas*, 811 F. Supp. 2d at 796, reached the opposite result under California and New Jersey law, respectively.

- *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351 (D. Mass. 2011), found that plaintiffs had stated a claim under Massachusetts law on the theory that "TPPs

---

[14] *Bishop's Prop. & Invs. LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619, 624-25 (M.D. Ga. 2009); *accord Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 735-36 (S.D. Fla. 2007); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583 (E.D. Mich. 2004); *Franklin v. GEICO*, 2011 WL 5166458, *7 (W.D. Wash. Oct. 31, 2011); *CLN Props., Inc. v. Republic Servs., Inc.*, 2010 WL 5146734, *7-8 (D. Ariz. Dec. 13, 2010).

were offers" for permanent modifications, but *Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473, *6 (D. Ore. Dec. 13, 2010), held that a "Trial Period Plan is explicitly not an enforceable offer for [a permanent] modification" under Oregon law.

- *McGann*, 2013 WL 1337204, at *8, found that "part performance" in "abid[ing] by PNC's employees' requests for documentation and ma[king] eight TPP payments" barred a statute-of-frauds defense under Illinois law. *Krouse*, 2011 WL 6100406, at *4, reached the opposite conclusion under California law, finding that the plaintiffs' performance of "only the monthly TPP payments and the production of financial documents" was not "a sufficient change in position to bar the statute of frauds."

- *Ramirez v. Wells Fargo Bank, N.A.*, 2011 WL 1585075, *4-5 (N.D. Cal. Apr. 27, 2011), sustained a claim for breach of contract based on allegations of "oral representations . . . that defendant would modify the loan." But courts applying Texas law, *Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567, 581-82 (W.D. Tex. 2012), and Ohio law, *Nachar v. PNC Bank, N.A.*, 901 F. Supp. 2d 1012, 1018 (N.D. Ohio 2012), rejected claims based on oral agreements to modify loans.

- *Nash v. Green Tree Servicing, LLC*, 2013 WL 1867357, *4 (E.D. Va. May 2, 2013), held that the plaintiff need not have received a fully executed TPP to state a breach-of-contract claim under Virginia law. But *Stovall* held that plaintiff's "fail[ure] to allege that she received a fully executed copy of the [TPP] "completely eviscerate[s]" her breach-of-contract claim under Maryland law. 2011 WL 4402680, at *12.

- *Durmic v. J.P. Morgan Chase Bank, NA.*, 2010 WL 4825632, *4 (D. Mass. Nov. 24, 2010), rejected the argument that TPPs "lack material terms and constitute, at most, a contingent agreement to attempt to come to an agreement in the future." *Nadan*, 2011 WL 3584213, at *6, and *Pace*, 2013 WL 55825, at *3, reached the opposite result under California and Georgia law, respectively.

Plaintiffs also assert UDAP claims under 20 state laws with vastly different elements and defenses. In some states, plaintiffs must establish the "intent to deceive," *Dix v. American Bankers Life Assur. Co.*, 415 N.W.2d 206, 209 (Mich. 1987); elsewhere, "[i]ntent to deceive need not be proved." *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alas 1980). Most states require an "ascertainable loss of money or property," ALAS. STAT. § 45.50.531(a); KY. REV. ST. § 367.220(1); MO. REV. ST. § 407.025(1), or "pecuniary loss," WIS. STAT. § 100.18(11)(b)(2); in New York, "pecuniary harm" is "not necessar[y]." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). Some states permit recovery of "actual damages," KY. REV. ST. § 367.220(1), but in California, "damages cannot be recovered" and a plaintiff is limited to

"restitution" of "money or property in which he or she has a vested interest."  *Kor. Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943, 947 (Cal. 2003).  In HAMP cases, UDAP claims have also been dismissed because they are not "sufficiently independent of HAMP" to evade the rule that private litigants cannot sue to enforce HAMP guidelines,[15] or because the failure of common-law claims leaves plaintiffs without the requisite "predicate violation for a UCL claim." *Jones v. CitiMortgage, Inc.*, 2013 WL 1704304, *12 (E.D. Cal. Apr. 19, 2013).

### 4.   The UDAP and Other Common Law Claims Are Inherently Individualized.

Plaintiffs argue that their UDAP claims present common issues because "[m]any" of the statutes have "objective criteria bearing on whether BoA's actions with regard to TPPs were 'unfair.'"  Mot. at 17.  Even if one sets aside the substantive differences in each state's law, the "objective criteria" in the statutes is irrelevant without a common glue uniting "BoA's actions." Plaintiffs do not challenge standard language in every TPP, but rather individual borrowers' outcomes based on what they did to perform under the TPP, what documents Bank of America required them to provide, how Bank of America handled those documents, and how Bank of America communicated with them.   Put simply, any claim that Bank of America treated a borrower "unfairly," or in breach of an implied covenant of good faith and fair dealing, cannot be resolved without evidence of exactly how that borrower was treated.  *See Ramos v. Bank of Am., N.A.*, 2012 WL 1999867, *3-5 (D. Md. June 4, 2012) ("[E]very factual allegation in support of a potential [Maryland CPA] claim must be grounded in Defendants' actual conduct pursuant to the

---

[15] *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, *12-13 (D.N.J. May 2, 2013); *accord Johnson v. Wells Fargo Bank, N.A.*, 2013 WL 823369, *7 (E.D. Mich. Mar. 6, 2013); *Matthews v. Wells Fargo Bank, N.A.*, 2012 WL 3903453, *1 (D. Md. Sept. 6, 2012); *Stent v. Bank of Am.*, 2012 WL 760776, *2 (D. Nev. Mar. 8, 2012); *Keosseian v. Bank of Am.,*  2012 WL 458470, *2 (D.N.J. Feb. 10, 2012).

TPP."). Consequently, such borrower-specific evidence has often been dispositive in whether

UDAP and fair-dealing claims in individual HAMP cases are dismissed or survive dismissal.[16]

Plaintiffs address only one aspect of the necessary analysis, arguing that reliance can be

assessed on a class-wide basis.  Mot. at 20.  This argument is foreclosed by the fact that

circumstances specific to individual borrowers have negated reliance in individual cases, *e.g.*,

*Anderson v. PHH Mortg.*, 2012 WL 4496341, *3-4 (C.D. Cal. Sept. 28, 2012); *DeLeon v. Wells*

*Fargo Bank, N.A.*, 2011 WL 311376, *6-7 (N.D. Cal. Jan. 28, 2011), thus can negate reliance for

individual members of the putative class here.  Reliance is also an element of a promissory

estoppel claim, which numerous courts, *e.g.*, *Reitz v. Nationstar Mortg., LLC*, 2013 WL

---

[16]  *Compare, e.g.*, *Young*, 2013 WL 2165262, at *10 (dismissing claim for breach of covenant of good faith and fair dealing based on plaintiff's servicing history, even while declining to dismiss breach-of-contract claim); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 771 (4th Cir. 2013) (affirming dismissal of Maryland CPA claim where appellant did not show reliance or "suffer[] damages," and because servicer did not misrepresent need for more documents); *Laguer v. OneWestBank, FSB*, 2013 WL 831055, at *9 (Mass. Super. Ct. Feb. 27, 2013) (dismissing Ch. 93A claim because "[it] was not unfair . . . for OneWest to deny Laguer's loan modification requests after Laguer failed to respond" to document requests); *Gomez*, 2012 WL 929790 at *8-9 (dismissing UTPA claim where plaintiffs failed to "allege that the denial of a permanent loan modification resulted in any harm to them"), *with, e.g.*, *Cave v. Saxon Mortg. Servs., Inc.*, 2013 WL 1915660, at *10 (E.D. Pa. May 9, 2013) (denying dismissal of UTPCPL claim based on servicer's "representations to Plaintiffs after their trial periods ended, in assuring them that they were still in trial periods and giving them erroneous and misleading information" and evidence "that Plaintiffs relied on, and were deterred from seeking other remedies based on," those representations); *McGann*, 2013 WL 1337204, at *9 (denying dismissal of Illinois CFA claim because plaintiff "detail[ed] specific instances" of conversations with PNC representatives in which they "misrepresent[ed] whether [the servicer] would approve" the HAMP modification); *Whitmer v. CitiMortgage Inc.*, 2012 WL 6677785, *4 (N.D. Ill. Dec. 21, 2012) (denying dismissal of CFA claim given that "[t]he complaint carefully details the specific employees of defendant plaintiff spoke with . . . and what they told her"); *Speleos v. BAC Home Loans Serv., L.P.*, 2013 WL 1442336, *8 (D. Mass. Mar. 28, 2013) (denying summary judgment on Ch. 93A claim based on "factual dispute as to whether, financially, the plaintiffs could have made their monthly mortgage payments if their loan was modified"); *Neal v. Residential Credit Solutions, Inc.*, 2013 WL 428675, *4 (D. Md. Feb. 1, 2013) (denying summary judgment on CPA claim based on allegations plaintiffs were "given false information . . . on which they relied to their detriment" and "forewent an opportunity to refinance their mortgage"); *Marchese v. JPMorgan Chase Bank, N.A.*, 2013 WL 136427, *11 (D. Md. Jan. 8, 2013) (denying dismissal of CPA claim based on "myriad oral or written statements").

3282875, *16 (E.D. Mo. June 27, 2013); *White v. JPMorgan Chase Bank, N.A.*, 2013 WL 3071894, *4 (D. Md. June 17, 2013), have dismissed based on the plain language of the TPPs and thus require individualized evidence of *other* representations to establish reliance.

### 5.  Unsupported and Untruthful  Declarations Signed by a Few Former Employees and Contractors Do Not Demonstrate Commonality.

Plaintiffs submit several declarations nominally attributed to former employees and contractors of Bank of America accusing the bank of a wide variety of intentional misconduct.  It is unclear what purpose Plaintiffs intend these declarations to serve other than being prejudicial and inflammatory, since they would do absolutely nothing to demonstrate that this case warrants class certification even if they were credible—and they are not credible.  *See supra* at 10-11.

That is because none of the declarants claim, nor are they in a position to claim, personal involvement with every class member's loan, nor even a significant proportion of them.  Any claims they make about how they mistreated loans they handled, even if credited, cannot be used to support conclusions about other loans.  Thus, Plaintiffs' insinuation that Bank of America should be presumed to have subjected the entire class to a particular treatment just because a former employee (falsely) claims to have treated some borrowers in that fashion is directly analogous to the theory rejected by numerous courts in the wake of *Wal-Mart* that the way one employee exercises his or her discretion can be extrapolated to support conclusions about the whole class.  *E.g.*, *Barrett v. Option One Mortg. Corp.*, 2012 WL 4076465, *3 (D. Mass. Sept. 18, 2012) (Zobel, J.) (decertifying class where plaintiffs "do not claim that all of [defendant's employees] exercised their discretion in the same way") (citing *Wal-Mart*, 131 S. Ct. at 2554).

Plaintiffs challenge thousands of individual decisions.  Commonality thus requires "some glue holding the alleged *reasons* for all those decisions together."  *Wal-Mart*, 131 S. Ct. at 2552.  But the declarations do not establish any glue that unites them all.  For example, Plaintiffs cite a

declarant's claim that "BoA cleaned out its HAMP backlog with a 'blitz' in which each 'team' declined hundreds of files at a time."   Mot. at 7.   The allegation is irrelevant because the declarant claims he "began" to witness this after July 2011, Pls. Ex. 1 ¶¶ 4, 9, well beyond the relevant period.   The allegation is also irrelevant because Plaintiffs do not claim that any of their *own* files went through a "blitz," nor identify *any* loans that went through it—much less show that *every* class member went through it.   *See Campusano*, 2013 WL 2302676 at *7 (rejecting theory "that BOA's 'uniform systemic practices' fulfill the commonality requirement" where "Plaintiffs have not submitted any evidence of even a single case in which these processes" affected a class member; "Without any evidence linking the purported common conduct . . . to the alleged harms suffered by the class (the breaches of the loan modification agreements), the common conduct cannot allow the Court to resolve the claims of [the] class 'in one stroke'").

### B.  **Plaintiffs Are Not Typical of the Purported Class.**

The same factors that defeat commonality for the putative class defeat typicality for the Plaintiffs.   Plaintiffs who failed to perform under their TPPs (e.g., Cipowski, Cabrera, Goldman, McManaman, Morrow & Clerk, Kirkpatrick, Balde, Hlavsa) cannot be typical of a class that must establish performance to state a claim.   Plaintiffs who failed to make timely trial payments (e.g., George, Nelson) cannot be typical of a class whose very definition excludes such borrowers.   Plaintiffs who have no damages (e.g., Carillo, Nelson, Magno, Balde, Cabrera, Galasso, Kunsky, Kirkpatrick) cannot be typical of a class that must show damages as an element of their claims.   *See Gaines v. Boston Herald, Inc.*, 998 F. Supp. 91, 97-98 (D. Mass. 1998) (to show typicality, "Plaintiffs must show that they themselves have been injured, not merely that an injury has been suffered by members of a class to which they belong").

A plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on

the same legal theory." *Pharm. Indus. Wholesale Price*, , 230 F.R.D. at 78.  Neither is true of the

Plaintiffs' claims here.  They do not arise from a singular "event" or "course of conduct" because

there *is* no singular event or course of conduct: this case challenges thousands of decisions made

for thousands of different reasons.  And there is no single legal theory uniting the class as a

whole or the named Plaintiffs.  Borrowers claiming an entitlement to a HAMP modification

plainly have a different theory of recovery than borrowers who admit they were properly denied

but merely challenge the timeliness of their rejections.

Finally, a plaintiff "cannot be considered typical" when "subject to unique defenses that

would divert attention from the common claims of the class." *In re Bank of Boston Corp. Sec.

Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991).  Many Plaintiffs (e.g., George, Dugree,

Mikhail) are subject to the defense that they failed to mitigate damages by refusing other

modifications after they did not qualify for HAMP.  *See Monroe v. Hughes*, 1990 WL 267361,

*3 (D. Or. Dec. 18, 1990) (typicality defeated by failure to mitigate damages); *accord Cerdant,

Inc. v. DHL Express (USA), Inc.*, 2010 WL 3397501, *8-9 (S.D. Ohio Aug. 25, 2010); *Leshin v.

St. Charles Pontiac, Inc.*, 1997 WL 587678, *4 (N.D. Ill. Sept. 18, 1997).  Plaintiffs who failed

to make TPP payments (e.g., George, Nelson) or failed to satisfy other TPP obligations (e.g.,

George, Cipowski, Cabrera, Goldman, McManaman, Morrow and Clark) are subject to the

defense that their non-performance defeats their claims.  Plaintiffs who rely on "oral"

representations (e.g., Hlavsa) are subject to statute-of-frauds defenses.  *See Nachar*, 901 F. Supp.

at 1018.  Plaintiffs who allege incorrect credit reporting are subject to the defense that their

claims are preempted by federal law.  *See Miller v. Bank of Am., N.A.*, 858 F. Supp. 2d 1118,

1124 (S.D. Cal. 2012) ("UCL claim [predicated] on allegations that . . . BAC reported inaccurate

information to the credit reporting agencies" preempted by Fair Credit Reporting Act).  Plaintiffs

who entered into TPPs with entities other than Bank of America (e.g., Alvarenga, Freeman, Hall, Volpe) are not only subject to a unique factual defense, but are outside the class definition.

## IV.    PLAINTIFFS DO NOT SATISFY RULE 23(B).

As set forth *supra* Part II, predominance is defeated by Plaintiffs' failure to show that the mere fact of damages can be established classwide (*cf. Comcast*, 133 S. Ct. at 1433), and by the substantial portion of this litigation they admit will need to be adjudicated in individual mini-trials.[17]   Rule 23(b)(3) also requires Plaintiffs to show that a class action is a superior method for adjudicating their claims, a conclusion foreclosed by the *hundreds* of plaintiffs who litigated such claims individually.   Some even come within Plaintiffs' class definition, which is fatal to superiority.   *See* FED. R. CIV. P. 23(b)(3)(B) (consideration of "the extent and nature of any litigation concerning the controversy already begun by . . . class members").

Finally, it is significant that Plaintiffs' claims are based so heavily on allegations of non-compliance with Treasury guidelines.   Even if such allegations were true, that is an issue between Bank of America and Treasury, not between Bank of America and Plaintiffs.   Contract claims on behalf of individual borrowers are not a superior means of adjudicating alleged violations of supervisory guidelines.   *Cf. London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (expressing "doubt" about superiority where claims are based on alleged "failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations").   For all the above reasons, Plaintiffs' motion should be denied.

---

[17]  Plaintiffs suggest that their class can also be certified under Rule 23(b)(2) (*see* Mot. at 16 n.66), but this argument is waived by their failure to address any of the Rule's requirements, *see In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 106 (D. Mass. 2008), and foreclosed on the merits by their failure to identify any injunctive relief that would "benefit[] all [class] members at once." *Wal-Mart*, 131 S. Ct. at 2558.

Dated:  July 12,  2013

Respectfully submitted,

Bank of America, N.A., for itself and as
successor by merger to BAC Home Loans
Servicing, L.P.,

By their attorneys,

/s/ James W. McGarry
James W. McGarry (BBO #633726)
Dahlia S. Fetouh (BBO #651196)
Natalie B. Kaminsky (BBO #675467)
Lauren S. Kupersmith (BBO #677213)
GOODWIN PROCTER LLP
Exchange Pl., 53 State St.
Boston, Mass.  02109
Tel.: (617) 570-1000
Fax:  (617) 523-1231
jmcgarry@goodwinprocter.com
dfetouh@goodwinprocter.com
nkaminsky@goodwinprocter.com
lkupersmith@goodwinprocter.com

Brooks R. Brown (BBO #634144)
Keith E. Levenberg
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax: (202) 346-4444
bbrown@goodwinprocter.com
klevenberg@goodwinprocter.com

Seth M. Goldstein
Lee I. Sherman (BBO #677411)
GOODWIN PROCTER LLP
601 S. Figueroa St.
Los Angeles, Cal.  90017
Tel.: (213) 426-2500
Fax: (213) 623-1673
sgoldstein@goodwinprocter.com
leesherman@goodwinprocter.com

**ADDENDUM**

**CASE LAW REJECTING INDIVIDUAL HAMP CLAIMS**

| CASES HOLDING THAT PERFORMANCE UNDER TPPs DOES NOT CONFER A CONTRACTUAL RIGHT TO A PERMANENT MODIFICATION | |
|---|---|
| *Reitz v. Nationstar Mortgage, LLC*, 2013 WL 3282875, *10 (E.D. Mo. June 27, 2013) | "[U]pon review of the initial TPP offer letter, the TPP Agreement itself, and the HAMP Guidelines, it is clear that the loan servicer (the defendant) is given discretion in providing a loan modification.  . . . Plaintiff fails to point to any statement in any document which clearly states that simply by making the payments and providing information automatically qualified her for a loan modification." |
| *White v. JPMorgan Chase Bank, N.A.*, 2013 WL 2071894, *4 (D. Md. June 17, 2013) | "Th[e] language [in plaintiffs' TPP] contradicts Plaintiffs' averments that timely payment of the reduced TPP amounts was the sole action necessary to contractually bind Chase to finalize their loan modification.  Finalization of Plaintiffs' loan modification was clearly conditional. . . . As a result, Plaintiffs' breach of contract claim must be dismissed. . . ." |
| *Fed'l Home Loan Mortg. Corp. v. Hassell*, 2013 WL 823241, *5-6 (E.D. Mich. Mar. 6, 2013) | "Plaintiff . . . claims that the Trial Plan and the Partial Reinstatement Agreement are binding contracts; that the purported contracts required Wells Fargo to modify her mortgage loan once she complied with its terms; that she did comply with all its terms; and that Wells Fargo breached the contracts when it failed to modify her mortgage loan.  The Court is not persuaded by Plaintiff's theory." |
| *Burr v. JP Morgan Chase Bank, N.A.*, 2012 WL 1059043, *4 (S.D. Tex. Mar. 28, 2012) | "[E]ven if the Burrs fulfilled all of their obligations under the TPP as alleged in the Complaint, the TPP does not guarantee the permanent modification of the Burrs' loan or obligate Defendants to modify the loan.  The TPP requires certain events to occur prior to the modification and makes the modification dependent upon the discretion of the Defendants." |

| | |
|---|---|
| *Polk v. Countrywide Fin. Corp.*, 2012 WL 2952389, *4 (E.D. Mich. Jul. 19, 2012) | "Plaintiff's submission of trial period payments and documents does not obligate Defendant to permanently modify the loan.  Defendant is entitled to review these submissions and approve or deny the request." |
| *Wittkowski v. PNC Mortg.*, 2011 WL 5838517, *3-4 (D. Minn. Nov. 18, 2011) | "Pursuant to the terms of the TPP, Plaintiff was not promised a permanent loan modification in exchange for making timely payments and fulfilling the TPP document requirements." |
| *Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, *3 (D.N.J. Aug. 8, 2011) | "[T]he plain language of the relevant TPP documents makes clear that satisfying the TPP conditions for permanent modification does not guarantee that Plaintiff would receive such modification." |
| *Prasad v. BAC Home Loans Servicing LP*, 2010 WL 5090331, *2-4 (E.D. Cal. Dec. 7, 2010) | "[The TPP] makes clear that providing the requested documents was simply a part of the application process, which plaintiff was willing to complete in the hope that BAC would modify his loan.  Under the language of Exhibit 2, a binding modification would not result unless and until BAC determined that plaintiff complied with the requirements. If BAC so determined, then it would send plaintiff a modification agreement, including a new monthly payment amount, which both plaintiff and defendant would execute.  Plaintiff has not alleged or provided exhibits (1) that BAC determined plaintiff had met the requirements, or (2) that BAC sent plaintiff a loan modification with a new monthly payment that was then executed by both plaintiff and BAC.  As such, no binding contract has been alleged. . . ." |
| *JPMorgan Chase Bank, N.A. v. Ilardo*, 940 N.Y.S.2d 829, 840-41 (N.Y. Sup. Ct. 2012) | "The Ilardos' claims that the TPP was a binding contract and the [servicer] breached it by failing to offer a permanent modification after the Ilardos successfully performed are rejected as unmeritorious. . . .  [A]ny permanent modification [was] subject to the subsequent approval of Chase. . . ." |
| *Brown v. Bank of N.Y. Mellon*, 2011 WL 206124, *3 (W.D. Mich. Jan. 21, 2011) | "The trial period plan agreement did not guarantee that Plaintiff's loan documents would be modified." |

| | |
|---|---|
| *Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473, *6 (D. Or. Dec. 13, 2010) | "[T]he Plan states explicitly that modification is not guaranteed until the modification process is complete, and not at any intermediate point in the modification process.  The Trial Period Plan is explicitly not an enforceable offer for loan modification." |
| *Rosas v. Carnegie Mortg., LLC*, 2013 WL 791024, *4 (C.D. Cal. Feb. 25, 2013) | "HAMP trial plans do not create binding contracts requiring permanent loan modification." |
| *Geske v. Wells Fargo Bank, N.A.*, 2012 WL 1231835, *6 (N.D. Tex. Apr. 12, 2012) | "Because of . . . the discretion given to lenders under TPPs in deciding whether to provide borrowers with an executed Modification Agreement, courts have almost uniformly concluded that TPPs are not enforceable contracts based solely on a plaintiff's compliance with the terms of the TPP." |
| *Ortiz v. America's Servicing Co.*, 2012 WL 2160953, *4 (C.D. Cal. Jun. 11, 2012) | "[A] binding contract does not exist unless and until ASC determined that plaintiff complied with the requirements [of the TPP]. . . .  Because plaintiff has not alleged that defendants approved her for a permanent modification, no binding contract was ever created." |
| *Pineda v. CitiMortgage, Inc.*, 2012 WL 2070317, *4 (N.D. Cal. Jun. 8, 2012) | "Defendant agreed to consider Plaintiffs' request for a loan modification, but it did not agree to provide one. . . . [T]he [TPP] gave Defendant the discretion to determine whether Plaintiffs qualified for a loan modification.  There is no indication that Defendant reached such a determination." |
| *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 854-55 (D. Minn. 2012) | "[A] contract was not formed, because no offer to modify was present. . . . [T]he TPP specifically stated that it was 'not a modification of the Loan Documents.' In other words, the TPP is an offer to consider modification, expressly conditioned on continued trial payments (for three months or longer) and other criteria. . . .  As a result, no contract formed." |
| *Billingsley v. OneWest Bank, FSB*, 2013 U.S. Dist. LEXIS 95118, *3-4 (D. Minn. July 9, 2013) | "[C]ourts in this district have consistently rejected borrowers' claims that lenders breached a Home Affordable Modification Trial Period Plan when the lenders did not permanently modify mortgages because no enforceable contract to permanently modify the mortgage was formed. . . .  The Court concludes that Billingsley's breach-of-contract claim fails." |

| CASES HOLDING TPPs UNENFORCEABLE AS INDEFINITE "AGREEMENTS TO AGREE" | |
|---|---|
| *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011) | "Since the TPP Agreements are indefinite and uncertain as to material terms of the permanent loan modifications, such agreements represent, at best, unenforceable agreements to agree that do not rise to the level of a valid contract." |
| *Salvador v. Bank of Am., N.A.*, 456 B.R. 610, 617-19 (Bankr. M.D. Ga. 2011) | "It is clear from the terms of the TPP Agreement that the document is nothing more than an agreement to negotiate further with respect to the terms of a proposed loan modification." |
| *Juarez v. SunTrust Mortg., Inc.*, 2013 WL 1983111, *17 (E.D. Cal. May 13, 2013) | "The trial plan did not obligate [defendant] to provide a permanent modification, which was to be agreed upon and executed separately from the trial plan." |
| *Pace v. CitiMortgage, Inc.*, 2013 WL 55825, *3 (M.D. Ga. Jan. 3, 2013) | "[A]lleged agreement to offer a permanent modification of unspecified terms—such as interest rate, monthly payment amount, principal, and loan maturity date— . . . lacks a 'meeting of the minds as to all essential terms' and is unenforceable." |
| *Nadan v. Homesales, Inc.*, 2011 WL 3584213, *6 (E.D. Cal. Aug. 12, 2011) | "[A] purported agreement to modify the Nadans' loan in the future [is] an unenforceable 'agreement to agree' given the TPP's absence of 'essential terms of the purported permanent modifications.'" |
| *Reitz v. Nationstar Mortgage, LLC*, 2013 WL 3282875, *14 (E.D. Mo. June 27, 2013) | "The nature and timing of the permanent loan agreement is left undetermined as the TPP Agreement fails to establish any of the terms governing the potential permanent loan modification.  The TPP Agreement is indefinite and uncertain as to the essential terms of a permanent loan modification, therefore, it fails to rise to the level of a valid enforceable contract under Missouri law." |

| CASES HOLDING TPPs UNENFORCEABLE FOR LACK OF CONSIDERATION | |
|---|---|
| *Karapetyan v. JPMorgan Chase Bank, N.A.*, 2012 WL 3308883, *4 (E.D. Tex. June 6, 2012) (citations omitted) | "Plaintiffs argue that the three payments that Plaintiffs made pursuant to the TPP constitute valid consideration. The Court disagrees.  This is not new consideration under Texas law. . . .  The borrower making three trial-period-plan payments and submitting financial information was not new consideration that would support the trial period plan because the borrower was already contractually obligated make payments and provide financial information under the deed of trust.  . . .  Thus, Plaintiffs cannot rely upon the TPP to create a binding contractual obligation to enter into a permanent loan modification." |
| *Rackley v. JPMorgan Chase Bank, N.A.*, 2011 WL 2971357, *4 (W.D. Tex. July 21, 2011) | "[A]n agreement to do what one is already bound to do generally cannot serve as sufficient consideration to support a contract modification. Plaintiff was already obligated to disclose to JPMC his financial information under his original loan document, and his payments both during and after the Modification Effective Date went toward that loan's debt. Consequently, no new consideration supported Plaintiff's TPP sufficient to make it an enforceable contract to modify his loan with JPMC." |
| *CitiMortgage, Inc. v. Crawford*, 2013 WL 1225387, *5 (S.D. Ohio Mar. 26, 2013) | "[Borrowers] have not adequately alleged consideration, as neither the TPP payments nor [their] submission of documents are sufficient.  A promise 'to pay a sum less than that which [a party] was already obligated to pay' is not consideration.  Consequently, the submission of TPP payments does not qualify as consideration, as Defendants already owed Plaintiff significantly more under the terms of their mortgage.  Similarly, the 'submission of . . . documentation' is not consideration." |
| *Reitz v. Nationstar Mortgage, LLC*, 2013 WL 3282875, *13 (E.D. Mo. June 27, 2013) | "[T]he Court finds that the plaintiff's TPP payments and provision of financial information does not constitute sufficient consideration for the TPP Agreement to qualify as a binding contract between the parties entitling the plaintiff to a modified loan mortgage." |

| | |
|---|---|
| *Graybill v. Wells Fargo Bank, N.A.*, 2013 WL 978245, *15 (N.D. Cal. Mar. 12, 2013) | "[T]he Graybills allege that they submitted information to Wells Fargo, Wells Fargo agreed to consider that information according to certain procedures, and they applied in consideration for Wells Fargo's promises to consider their application. Unlike the cases where Plaintiffs forego other financing options or pay a filing fee, nothing in the FAC supports a plausible inference that Plaintiffs provided any consideration." |
| **CASES HOLDING TPPs UNENFORCEABLE BECAUSE THEY WERE NOT SIGNED BY BOTH PARTIES** | |
| *Brinson v. Bank of Am., N.A.*, 2013 WL 147835, *5 (D. Alaska Jan. 13, 2013) | "Because BOA never sent plaintiff a signed copy of the TPP, the court cannot conclude that BOA intended to be bound, and thus the TPP never ripened into an offer." |
| *Goss v. ABN AMRO Mortg. Grp., LLC*, 2012 WL 5986783, *7 (E.D. Mich. Nov. 29, 2012) | "Defendant did not sign the Trial Period Plan. Thus, the loan modification offer [plaintiff] signed 'did not ripen into a binding agreement, primarily because [it] bears only [his] signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms.'" |
| *Fed'l Home Loan Mortg. Corp. v. Hassell*, 2013 WL 823241, *7 (E.D. Mich. Mar. 6, 2013) | "It is beyond dispute that Wells Fargo did not sign the Trial Plan. Thus, the loan modification proposal [plaintiff] signed 'did not ripen into a binding agreement. . . .'" |
| *Heikkinen v. Bank of Am., N.A.*, 2012 WL 628608, *6 (E.D. Mich. Feb. 27, 2012) (quoting *Voydanoff v. Select Portfolio Serv., Inc.*, 2011 WL 6757841, *7 (Mich. Ct. App. Dec. 22, 2011)) | "[S]imilar to the plaintiff in *Voydanoff*, Plaintiff here cannot establish a claim that Defendants breached an agreement to modify her mortgage loan. It is undisputed that Defendants did not sign the TPP. Thus, the loan modification proposal she signed 'did not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms.'" |
| *Avevedo v. CitiMortgage, Inc.*, 2012 WL 3134222, *8 (N.D. Ill. July 25, 2012) | "The offer to modify the plaintiffs' loan was . . . not binding unless and until CitiMortgage executed the TTP and returned it to the plaintiffs. This never happened. Thus, CitiMortgage was not required to modify the plaintiffs' loan, assuming that the plaintiffs held up their end of the bargain." |

| | |
|---|---|
| *Soin v. Fannie Mae*, 2012 WL 1232324, *5-6 (E.D. Cal. Apr. 12, 2012) | "[P]laintiffs have submitted a copy of the TPP signed by them only. . . .  Plaintiffs have failed as a matter of law to allege facts sufficient to establish that they entered into a contract to permanently modify the terms of their loan." |
| *Krouse v. BAC Home Loans Servicing, LP*, 2011 WL 6100406, *4 (E.D. Cal. Dec. 6, 2011) | "Defendants contend that they never executed the TPP agreement, and therefore the contract is unenforceable under the statute of frauds. . . .  [B]ecause the statute of frauds applies, and no claimed exception to the statute have been properly alleged or pled, Plaintiffs' breach of written contract claim is dismissed." |
| *Stovall v. SunTrust Mortg., Inc.*, 2011 WL 4402680, *12 (D. Md. Sept. 20, 2011) | "Stovall's conclusory assertion that SunTrust breached the TPP Agreement by failing to extend a permanent loan modification . . . is completely eviscerated by the fact that she never received a fully executed copy of the document, and was ultimately sent 'a letter . . . informing her that she had been denied for a loan modification.'" |
| *Nungaray v. Litton Loan Servicing, LP*, 135 Cal. Rptr. 3d 442, 447 (Cal. Ct. App. 2011) | "As a matter of law, there was no contract [where] . . . [n]either Litton nor the Bank executed the Plan nor did they prepare, execute, and forward a permanent modification agreement." |
| *Morales v. Chase Home Fin. LLC*, 2011 WL 1670045, *6 (N.D. Cal. Apr. 11, 2011) | "Plaintiffs fail to allege . . . that they have met all the conditions set forth in the TPP Contract for loan modification, including receipt of a 'fully executed copy of a Modification Agreement,' and therefore fail to allege the existence of a binding contract regarding a permanent loan modification." |
| *Herold v. U.S. Bank, N.A.*, 2011 WL 4072029, *2 (D. Ariz. Sept. 13, 2011) | "Even assuming a TPP could be an enforceable contract, . . . neither plaintiff nor defendants ever signed this document.  Therefore, the TPP was merely an offer." |

**CASES HOLDING THAT BORROWERS HAVE NO CONTRACTUAL RIGHT TO A PERMANENT MODIFICATION BECAUSE THE TPP EXPRESSLY MAKES THE RIGHT CONTINGENT ON THE SERVICER'S SENDING A FULLY EXECUTED PERMANENT MODIFICATION AGREEMENT**

| | |
|---|---|
| *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 554 (5th Cir. 2012) | "The Penningtons' claim for breach of the TPP fails for a[] . . . basic reason: . . . The TPP expressly requires that before the contract is final, the lender must send a signed copy to the borrower.  The Penningtons never alleged that they received such a signed copy." |

| | |
|---|---|
| *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1069 (N.D. Cal. 2011) | "Plaintiffs fail to allege, however, that they have met all the conditions set forth in the TPP Contract for loan modification, including receipt of a 'fully executed copy of a Modification Agreement,' and therefore fail to allege the existence of a binding contract regarding a permanent loan modification." |
| *McGann v. PNC Bank, N.A.*, 2013 WL 1337204, *6 (N.D. Ill. Mar. 29, 2013) | "[T]he plain language of the TPP Agreement states PNC is not obligated to provide a HAMP loan modification until both parties execute the TPP Agreement. . . . Because PNC never executed and returned the [TPP], it had no obligation to offer McGann a permanent HAMP loan modification pursuant to the TPP Agreement." |
| *Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 815 (W.D. Mich. 2012) | "By its plain terms, the TPP makes it clear that it was not an offer, and would not become binding on Chase until the contract was signed and returned to Plaintiffs, which it was not. As a result, there was no offer for Plaintiffs to accept." |
| *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 796 (S.D.N.Y. 2011) | "Plaintiffs' claim . . . is contradicted by the express terms of the TPP agreements, which state that any permanent modification is subject to the subsequent approval of Chase, and the receipt of a signed modification agreement. . . . [P]laintiffs clearly never received a 'fully executed copy of the Modification Agreement.'" |
| *Lund v. CitiMortgage, Inc.*, 2011 WL 1873690, *2 (D. Utah May 17, 2011) | "[The TPP] makes clear . . . that the modification would not be made permanent until, among other things, Plaintiffs received a fully executed copy of a modification agreement." |
| *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, *4-5 (E.D.N.Y. Sept. 17, 2012) | "[T]he TPP cautioned borrowers that their loan would not be modified unless, prior to the Modification Effective Date, the Lender provided them with fully executed copies of both the TPP and a Modification Agreement. Defendant never provided Plaintiffs with executed copies of either document." |
| *Brady v. Chase Home Fin., LLC*, 2012 WL 1900606, *7 (W.D. Mich. May 24, 2012) | "In the instant case, the TPP provided that the plan would not take effect until Chase signed and returned a copy of the TPP to Brady. Because Chase never sent Brady a copy of a fully-executed TPP, the TPP never ripened into an offer that Brady could accept. Accordingly, Brady fails to state a breach of contract claim." |

| | |
|---|---|
| *Pratt v. BAC Home Loan Servicing, LP*, 2012 WL 1565232, *4 (D. Md. Apr. 30, 2012) | "[T]he language of the TPP Agreement belies Plaintiff's contention that Defendant owed Plaintiff any contractual duty. . . . Nothing in the TPP provides Plaintiff with a right to a permanent loan modification. . . ." |
| *McInnis v. BAC Home Loan Servicing, LP*, 2012 WL 383590, *7 (E.D. Va. Jan. 13, 2012) | "According to Plaintiff's own allegations, she did not receive a fully executed copy of the modification agreement, a condition necessary to modifying her original loan under the terms of the TPP Agreement." |
| *Pool v. Wells Fargo Bank, N.A.*, 2012 WL 3264294, *5 (D. Colo. Aug. 10, 2012) | "Pursuant to the language contained in the TPP, . . . the HAMP process requires the counter signature of the servicer . . . and Plaintiff here neither alleges nor provides . . . any evidence that Wells Fargo countersigned the TPP. . . ." |
| *Nachar v. PNC Bank Nat'l Ass'n*, 901 F. Supp. 2d 1012, 1019 (N.D. Ohio 2012) | "[B]y its plain language, [the TPP] indicates that it is not an offer of a permanent modification. The [TPP] specifically states that it is not a modification of the Loan documents, and further stipulates that if the Servicer does not provide a fully executed copy of the [TPP] and separate Modification Agreement, the Loan documents will not be modified and the [TPP] will terminate. Prior to expiration of the trial period, PNC . . . did not send Plaintiff or John Nachar an executed copy of the [TPP] or a separate Modification Agreement. As such, Plaintiff has failed to establish the existence of a contract pursuant to the [TPP], since it was not an offer of permanent modification." |
| *Rummell v. Vantium Capital, Inc.*, 2012 WL 2564846, *6-7 (E.D. Mich. Jul. 2, 2012) | Plaintiffs' TPP stated that it would "'not take effect unless and until both I [the borrower] and the Lender sign it and Lender provides me with a copy of this plan with Lender's signature.' Defendant CitiMortgage never signed the 2009 TPP and never returned a signed copy to Plaintiffs. Therefore, . . . the 2009 TPP did not 'ripen into a binding contract' obligating any Defendant to provide Plaintiffs with a loan modification." |
| *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1210 (D. Ore. 2011) | "[P]laintiff failed to allege or provide evidence of a loan modification with a new monthly payment that was executed by both plaintiff and defendant. Thus, I find no binding contract has been alleged to sufficiently state a breach of contract claim." |

| CASES HOLDING THAT BORROWERS HAD NO CLAIMS BECAUSE THEY DID NOT PERFORM THEIR OWN OBLIGATIONS UNDER THEIR TPPs | |
|---|---|
| *Gikas v. JPMorgan Chase Bank, N.A.*, 2013 WL 1457042, *4 (D.N.H. Apr. 10, 2013) | "Gikas acknowledges that he failed to provide Chase with the documents it requested. . . .  Because Gikas did not fulfill the preconditions to a modification under the terms of the TPP, the defendants were not obligated to provide him with one." |
| *Marquez v. Wells Fargo Bank, N.A.*, 2013 WL 98533, *2 (D. Mass. Jan. 8, 2013) | "Plaintiffs in their opposition admit that Arriaga failed to sign the TPP and Hardship Affidavit and to provide documentation of his income.  This admission proves fatal to the claim that a valid contract was formed." |
| *Baehl v. Bank of Am., N.A.*, 2013 WL 1319635, *12 (S.D. Ind. Mar. 29, 2013) | "Plaintiffs failed to comply with the requirements for applying to the HAMP program, so a contract was never formed.  Plaintiffs knew or should have known that BOA did not intend to create a loan modification until it decided whether Plaintiffs satisfied the TPP's requirements." |
| *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 470 (S.D. Tex. Nov. 29, 2012) | "The Brushes have not identified or provided any evidence showing that they met the necessary conditions for a loan modification under HAMP. . . . The only payment that the Brushes made under the Agreement was returned by their bank for insufficient funds." |
| *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 920 (D. Md. 2012) | "[A]lthough Legore contends that his documents were lost and he was required to resubmit them, he does not contest that he had failed to submit acceptable income verification documentation; accordingly it was not deceptive or misleading for OneWest to require Legore to resubmit documents and to initially deny Legore's HAMP application." |
| *Frost v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 999, 1008-09 (W.D. Mich. 2012) | "Defendant argues that even if there were an enforceable agreement, Plaintiffs breached the alleged agreement by failing to provide the required documents to Defendant. Defendant's argument provides an independent basis for summary judgment in its favor. . . ." |

| | |
|---|---|
| *Heikkinen v. Bank of Am., N.A.*, 2012 WL 628608, *6 (E.D. Mich. Feb. 27, 2012) | "[E]ven if Plaintiff could establish that the TPP was a binding agreement to modify her mortgage, she cannot establish that she satisfied all the conditions for modification set out in the TPP.  Specifically, despite Chase's repeated, written notices to Plaintiff for additional documents it needed to complete her loan modification request, Plaintiff testified that she did not recall sending the requested documents to Chase." |
| *Nungaray v. Litton Loan Servicing, LP*, 135 Cal. Rptr. 3d 442, 447 (Cal. Ct. App. 2011) | "The plain and clear language of [plaintiffs' TPP] states that the Plan 'is not a modification of the Loan Documents' and the documents will not be modified unless the Nungarays 'meet all of the conditions required for modification[.]'" There was no contract here, because "Litton and the Bank . . . did not receive the Nungarays' complete financial information, despite sending the Nungarays' counsel three letters requesting the information and returning one of the Nungarays' payments for lack of accompanying financial information." |
| *Pace v. CitiMortgage, Inc.*, 2013 WL 55825, *3 (M.D. Ga. Jan. 3, 2013) | "[E]ven if Pace's allegations were sufficient to establish the existence of an enforceable contract, his allegations demonstrate that he failed to comply with his obligations under that agreement." |
| *Jackson v. Federal Nat'l Mortg. Ass'n, Inc.*, 2012 WL 1030016, *5 (D. Or. Mar. 26, 2012) | "Plaintiff's breach of contract action cannot be maintained because it is undisputed that Plaintiff failed to perform his obligations under the TPP by making timely payments." |
| *Bonsu v. Ocwen Loan Serv., LLC*, 2012 WL 5853397, *3 (Mich. Ct. App. Nov. 15, 2012) | "[P]laintiff failed to provide the requested documentation in a timely manner pursuant to the TPP.  Because plaintiff did not satisfy these terms of the TPP agreement, . . . the trial court did not err in granting defendant's motion for summary disposition." |
| *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1210 (D. Or. 2011) | "[P]laintiff merely alleged that she complied with the TPP, without providing evidence as such." |

| | |
|---|---|
| *LeBlanc v. Bank of Am., N.A.*, 2013 WL 3146829, *10 (W.D. Tenn. June 18, 2013) | "[F]ailure to fulfill the conditions of the TPP would result in Bank of America having no liability pursuant to the TPP. . . .  Because LeBlanc has failed to plead that he satisfied the conditions necessary for the liability to attach to the TPP, . . . LeBlanc has not satisfied the pleading standard for a material element of his breach-of-contract claim based on the TPP." |
| **CASES HOLDING THAT BORROWERS HAD NO CLAIMS BECAUSE THEY DID NOT QUALIFY FOR HAMP** | |
| *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 553-54 (5th Cir. 2012) | "Smith['s] assertion that she would not have fallen behind [on her mortgage] absent HAMP shows [that] she was ineligible for the loan modification. . . . Because financial eligibility is a condition for the TPP, Smith is not entitled to any benefits the TPP might provide." |
| *Burton v. Nationstar Mortg. LLC*, 2013 WL 2355524, *7 (E.D. Cal. May 29, 2013) | "The complaint and its inferences raise uncertainty whether Mr. Burton occupied the property as of August 1, 2009 or October 9, 2009 to satisfy the residence certification.  Such uncertainty subjects the breach of contract claim to dismissal. . . ." |
| *Pratt v. BAC Home Loan Servicing, LP*, 2012 WL 1565232, *4 (D. Md. Apr. 30, 2012) | "According to Plaintiff's own allegations, he had been able to afford his mortgage payments at the time he received the TPP, and thus, under the plain language of the TPP, he did not qualify for a permanent loan modification." |
| *Nugent v. Fed. Home Loan Mortg. Corp.*, 2013 WL 1326425, *4 (E.D. Cal. Mar. 29, 2013) | "[T]o obtain a modification, Aquila and Carla Nugent had to certify and represent that '[t]here has been no change in the ownership of the Property since I signed the Loan Documents.' . . .  Aquila and Carla Nugent could not make this representation since the ownership of the property changed two years after the loan documents were signed, when they transferred an undivided 50% interest in the property to Andrew Nugent.  Plaintiffs are therefore ineligible for the HAMP agreement that forms the basis of their breach of contract claim." |

| | |
|---|---|
| *Hayes v. Bank of Am. Corp.*, 2012 WL 4364084, *4 (D. Nev. Sept. 21, 2012) | "Bank of America argues that 'Plaintiff cannot plausibly allege that she fully complied with the TPP Agreement and thus deserves a permanent modification because she does not dispute that she failed to meet the requirement that her mortgage payment be greater than 31% of her income.' . . . The Court agrees. Because Plaintiff has failed to adequately plead her performance under the agreement, Plaintiff also fails to allege Defendants' breach." |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 12, 2013.

<u>/s/ James W. McGarry</u>