UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BANK OF AMERICA HOME AFFORDABLE MODIFICATION PROGRAM (HAMP) CONTRACT LITIGATION | MDL No. 2193 **Centralized before the Honorable Rya W. Zobel** |
| This Document Relates To: ALL ACTIONS | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

# **\*\*REDACTED\*\***

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................1

II. FACTUAL REBUTTAL ........................................................................................1

    A.  Evidence indicates homeowners satisfied the conditions BoA now challenges before they could even receive a TPP...................................................................2

    B.  BoA's reliance on trial period extensions is overstated..........................................3

    C.  BoA's attacks on the named plaintiffs are not credible ..........................................3

    D.  The accounts of former employees are well supported by the record ....................4

    E.  The testimony of Christopher Orris detailing BoA's bad faith is undisputed .........4

III. ARGUMENT ........................................................................................................5

    A.  Rule 23(c)(4) Allows for Precisely the Certification Plaintiffs Have Proposed......5

    B.  Plaintiffs Satisfy Rule 23(a).................................................................................8

        1.  BoA is wrong about the absence of commonality. ......................................9

            a.  The common questions Plaintiffs identified will drive this litigation. ..........................................................................................9

            b.  BoA's argument about "offer" vs. "implementation" is a red herring .......................................................................................10

            c.  Commonality is not defeated by state law variations ....................11

            d.  BoA's arguments regarding UDAP do not defeat certification .....12

        2.  Plaintiffs Are Typical................................................................................13

    C.  Plaintiffs Satisfy the Requirements of Rule 23(b) ................................................14

IV. CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alimena v. Vericrest Fin., Inc.*,
  2012 U.S. Dist. LEXIS 181309 (E.D. Cal. Dec. 18, 2012) ....................................................15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................................14

*Barrett v. Option One Mortg. Corp.*,
  2012 WL 4076465 (D. Mass. Sept. 18, 2012) .......................................................................12

*Campusano v. BAC Home Loans Svcg. LP*,
  2013 WL 2302676 (E.D. Cal. Apr. 29, 2013).........................................................................10

*Citimortgage, Inc. v. Crawford*,
  2013 WL 1225387 (S.D. Ohio Mar. 26, 2013).......................................................................11

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)............................................................................................................5

*Gintis v. Bouchard Transp. Co.*,
  596 F.3d 64 (1st Cir. 2010) (Souter, J.) ..................................................................................7

*Glazer v. Whirlpool*,
  __ F.3d __, 2013 WL 3746205 (6th Cir. Jul. 18, 2013)...................................................5, 6, 7

*Jackson v. Ocwen Loan Svg., Inc.*
  2011 U.S. Dist. LEXIS 12816 (E.D. Cal. Feb. 9, 2011)........................................................15

*Karapetyan v. JP Morgan Chase Bank, N.A.*,
  2012 WL 3308883 (E.D. Tex. June 6, 2012).........................................................................11

*Linton v. New York Life Ins. & Annuity Corp.*,
  392 F. Supp. 2d 39 (D. Mass. 2005) .......................................................................................7

*Lucia v. Wells Fargo Bank, N.A.*,
  798 F. Supp. 2d 1059 (N.D. Cal. 2011) ................................................................................15

*In re Motor Fuel Temperature Sales Practices Litig.*,
  2013 WL 1397125 (D. Kan. Apr. 5, 2013)...........................................................................13

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)..................................................................................................14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008)........................................................................................................6

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    910 F. Supp. 2d 891, 2012 U.S. Dist. LEXIS 181511 (E.D. La. Dec. 21, 2012) .....................7

*Orthocraft, Inc. v. Sprint Spectrum*,
    2002 WL 31640477 (E.D.N.Y. Nov. 16, 2002)..........................................................................6

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008) (Saris, J.)..............................................................................11

*Phillips v. Wellpoint Inc.*,
    2012 WL 4904523 (S.D. Ill. Oct. 15, 2012) .............................................................................6

*In re Prudential Ins. Co. of Am., Inc.*,
    286 F.R.D. 155 (D. Mass. 2012)................................................................................................6

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003)..........................................................................................5, 9, 10

*Smith v. Saxon Mortg. Servs.*,
    2013 U.S. Dist. LEXIS 66101 (E.D. Pa. May 9, 2013) ..........................................................15

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004)......................................................................................................5, 7

*Thomas v. JPMorgan Chase & Co.*,
    811 F. Supp. 2d 781 (S.D.N.Y. Jul. 29, 2011) ......................................................................15

*Turbeville v. JPMorgan Chase Bank*,
    2011 U.S. Dist. LEXIS 42290 (C.D. Cal. Apr. 4, 2011) ........................................................15

*Vida v. OneWest Bank, F.S.B.*,
    2010 WL 51448473 (D. Or. Dec. 13, 2010) ...........................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................................9, 12

*Wallace v. Powell*,
    2013 WL 2042369 (M.D. Pa. May 14, 2013) ..........................................................................6

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) .................................................................................................15

*Young v. Wells Fargo*,
    717 F.3d 224, 2013 U.S. App. LEXIS 10189 (1st Cir. May 21, 2013) .............................14, 15

# I.    INTRODUCTION

Bank of America ("BoA") does not dispute most of Plaintiffs' motion and bases its opposition on four untenable propositions:  the supposed unavailability of Rule 23(c)(4) to this case, an asserted lack of commonality, an alleged lack of typicality of a minority of the plaintiffs, and a misguided attempt to argue that cases from other districts should stop the Court from deciding common issues in this case.  None of these contentions should give the Court pause.

Plaintiffs have defined narrow classes based on a common contract.  The classes are limited to people who satisfied BoA's requirements, received a Trial Period Plan ("TPP") Agreement and who made each of their required payments.  The classes are further limited to those whom BoA did not issue a written denial prior to the Modification Effective Date ("MED") – the contractual deadline for BoA to determine whether a borrower was to receive a permanent modification offer.  The legal and factual questions necessary to decide whether this group is entitled to relief are common to all class members, and the challenges BoA raises as to individual plaintiffs will be determined by resolving questions that are common to the classes.

Rule 23(c)(4) expressly authorizes what Plaintiffs seek here:  a certification of common issues whose resolution will substantially advance this litigation.  Those questions primarily arise from a single-form contract common to all plaintiffs and class members, and those questions, once resolved for all class members, will materially advance the litigation, inform and limit the damages phase, and avoid a mess of contradictory decisions like those detailed in BoA's brief.  The Court can and should certify the common issues Plaintiffs have identified, to bring clarity to a situation that, without certification, is likely to devolve into an uncoordinated judicial fiasco.

# II.    FACTUAL REBUTTAL

Most of BoA's lengthy factual allegations are irrelevant to this motion.  As addressed in § III.B.1.A, *infra*, its individual challenges will be relevant only to the measure of each person's

damages, and, depending on the rulings at a class trial, may not be relevant at all.  BoA,

however, makes a series of misleading statements and characterizations that require a response.

A.     **Evidence indicates homeowners satisfied the conditions BoA now challenges before they could even receive a TPP**

BoA claims various plaintiffs did not meet HAMP requirements – either because of their

income levels, because they moved out of their homes, or because they failed to return

documents.  But the evidence will show that BoA did not even provide a TPP unless a

homeowner satisfied these requirements.  Though Treasury "encouraged" servicers to issue TPPs

immediately and collect financial documents during the trial period,[1]  BoA's corporate

representative confirmed that before it would issue a TPP, ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ [2] ███████████

███████████████████████████████████████  Former employees

confirm this was based on documents.[3]  For example, the NPV involves a formula that requires

detailed data from financial documents[4] – not estimates that could be given by phone.

The corporate representative of Stewart Lender Services – a company BoA contracted to

collect documents from homeowners and send TPPs – also confirmed that it only sent TPPs *after*

it received, examined, indexed, and imaged financial documents homeowners submitted,

---

[1] BoA takes "unverified income representations" (Opp. at 4) to suggest this amounted to "unsupported oral representations." (*id.* at 9).  But homeowners submitted documentation at the start of the process. ████████████████████████████████████████████  *See* Ex. 56 (Schoolitz Dep.) at 59-60.  (Unless otherwise specified, references to "Ex. _" are to exhibits attached to the Decl. of Steve Berman, filed June 7, 2013, and the Reply Decl. of Steve Berman, filed July 26, 2013.)

[2] ███████████████████████████████████████████████████████████
███████

[3] *See* Ex. 4 (Cupples); Ex. 1 (Wilson); Ex. 2 (Gordon); Ex. 3 (Terrelonge).

[4] *See* Ex. 21.  The test requires no less than 44 separate data points regarding a homeowner's income and the characteristics of their loan and property values.  *See id.*, pp. 9-15.

- 2 -

transmitted those documents to BoA, and then received instructions from BoA to issue a TPP.[5]

BoA apparently denies that during the relevant time period it collected documents before issuing a TPP, but that assertion simply raises a common issue of fact as to whether BoA had a practice and policy of requiring borrower documentation before issuing a TPP.

**B.      BoA's reliance on trial period extensions is overstated**

Treasury authorized servicers to issue trial period extensions at various times.  But after-the-fact extensions did nothing to change the promise in the TPP or its contractual deadline. Unless the parties explicitly modified their contract before performance was due, extension initiatives are not relevant to whether BoA breached its promises.  And when Treasury allowed servicers to extend decision dates, it required written notice to each affected borrower.[6]  To the extent the Court concludes that extensions effectively modified a TPP, that would only shift the dates of the ascertainability data analysis.  Prof. Ayres confirmed that he could readily account for such extensions based on BoA's internal systems.[7]  No file-by-file review would be needed.

**C.      BoA's attacks on the named plaintiffs are not credible**

BoA argues that some plaintiffs are not typical because they did not satisfy conditions precedent in their TPPs.  As noted below in §§ III.B.A.1 and B.2, these issues speak to the measure of damages, not to typicality.  But these attacks are based on a declaration from Tawnya Schoolitz – who previously signed a statement she had to disown at deposition.  A disturbing number of "facts" in her new declaration are misleading or demonstrably false.   The Court should view Ms. Schoolitz's statements with an extremely jaundiced eye.

Plaintiffs submit as App. A a comparison of BoA's allegations regarding certain named

---

[5] Ex. 58 (Opiela Dep.) at 16, 20, 64, 75-76.

[6] *See* Berman Reply Decl., ¶¶ 2-4.  This is consistent with state laws that require subsequent modifications of written contracts be in writing.  *See* App. C. (state law chart)

[7] *See* Ex. 113 at 55-58.

plaintiffs to the discovery record, to demonstrate the games BoA has played with the truth.[8]  BoA

highlights the Moussas (Opp. brief at p. 7), and claims they failed to return an unspecified

document.  But Schoolitz's declaration demonstrates the Moussas provided documents multiple

times, sent tax returns (both signed and unsigned) multiple times, and sent a P&L statement for a

family business.[9]  BoA cannot specify which document was missing because there wasn't one.

**D.      The accounts of former employees are well supported by the record**

     Six former BoA employees and one former Urban employee submitted sworn statements

detailing BoA policies and practices that were designed to cynically undermine HAMP.  BoA's

personal attacks on its former employees, in light of its failure to take discovery from them, are

unfair attempts to discredit individuals who had nothing to gain by coming forward.  These

declarations are amply supported by internal BoA documents Plaintiffs submitted with their

original papers and this reply.  The credibility of BoA's declarants is necessarily dubious by

virtue of the fact that they are current BoA employees with jobs to lose.

**E.      The testimony of Christopher Orris detailing BoA's bad faith is undisputed**

     For all its vitriol against its former employees, BoA says ***nothing*** to contradict the

testimony of Christopher Orris about how ██████████████████████████████████

████████████████████████████████████       Mr. Orris unambiguously testified that ████████

██████████████████████████████████████████████████████████████████████

---

[8] Schoolitz's declaration was not provided in time to schedule a deposition.  But the documentary record is telling.  For example, Schoolitz claims Plaintiffs Kirkpatrick did not fulfill their TPP because they failed to provide "a copy of a divorce decree … before December 7, 2010."  ¶ 29.
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[9] Schoolitz Decl., ¶¶ 3-9 and Ex. 6 at ██████████████████████████████████████
████████████████████████; *see also* Ex. 56 (Schoolitz Dep.) at 208 ████████████████
████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████ [10]  This testimony is consistent with accounts by former employees

Wilson, Terrelonge, Gordon, and Sheeks.[11]

### III.    ARGUMENT

**A.    Rule 23(c)(4) Allows for Precisely the Certification Plaintiffs Have Proposed**

As Plaintiffs made clear in their opening brief, it is well established in the First Circuit

that it is appropriate under Rule 23(c)(4), to certify a class only as to certain issues (such as

questions bearing on liability) and leave other issues (such as damages) to later proceedings.

*See, e.g., Tardiff v. Knox County*, 365 F.3d 1, 6-7 (1st Cir. 2004); *Smilow v. Southwestern Bell*

*Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003).  *See also, e.g., Glazer v. Whirlpool*, __ F.3d

__, 2013 WL 3746205, *11 (6th Cir. Jul. 18, 2013) ("no matter how individualized the issue of

damages may be, determination of damages may be reserved for individual treatment with the

question of liability tried as a class action") (citation omitted).  Moreover, Rule 23(c)(4), on its

face, permits a certification of *any* issue, even if it does not completely resolve liability:  "an

action may be ... maintained with respect to particular issues."

None of the cases on which BoA relies changes that fact.  Rule 23(c)(4) was not at issue

in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  The Court merely ruled that where the

parties *did not contest* a lower-court ruling that Rule 23(b)(3) required proof that damages could

be measured with a class-wide methodology, but the plaintiffs failed to provide that proof.  *Id.* at

1430, 1433-34.  The Court did not invalidate Rule 23(c)(4), or hold that damages must be proven

in a 23(c)(4) class for every class member using a single methodology.  *See id.* at 1436 (dissent)

("the opinion breaks no new ground on the standard for certifying a class").  *See also Glazer v.*

---

[10]  *See* Ex. 59 (Orris Dep.) at 95, 134-35, 141-46, 155, 168-69, 184, 196.
[11]  Exs. 1-3, 7 in Plaintiffs' opening papers.

*Whirlpool,* 2013 WL 3746205, *16-18 (*Comcast* does not bar liability-only class); *Wallace v. Powell,* 2013 WL 2042369, *18-19 (M.D. Pa. May 14, 2013) (same).

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) also did not analyze Rule 23(c)(4).  The case concerned a class that had been certified for both liability and damages, and there is no indication that the plaintiffs sought issue certification. Instead, the First Circuit simply cited to its prior precedents and reiterated that a "class action can be limited to the question of liability, leaving damages for later individualized determinations." 522 F.3d at 28.  The court's statement on the possible scope of liability certifications is *dicta*; the real problem in that case was that the plaintiffs could not connect the alleged antitrust violation and the members of the class.  *Id.* at 27-28.  The case has no application where the class consists of borrowers who were all parties to contracts with the defendant, and does not hold that Rule 23(c)(4) certification is inappropriate if certified issues do not completely resolve liability.[12]

In any event, all the class members here were injured in some respect.  At an absolute *minimum*, every class member is entitled to damages caused by not receiving a timely decision regarding their HAMP modification, and was harmed by fees added to their accounts as a result of having made trial payments.[13]  Most class members also incurred substantial damages such as thousands of dollars in additional debt, or the loss of equity due to a wrongful foreclosure.

---

[12] The other cases BoA cites on this point are similarly inapposite.  *See In re Prudential Ins. Co. of Am., Inc.*, 286 F.R.D. 155, 158 & n.3 (D. Mass. 2012) (did not consider 23(c)(4) or whether damages were an element of the claims at issue); *Phillips v. Wellpoint Inc.*, 2012 WL 4904523, *5 (S.D. Ill. Oct. 15, 2012) (did not consider 23(c)(4) or nominal damages; real problem with commonality was that there were numerous different contracts at issue with different terms); *Orthocraft, Inc. v. Sprint Spectrum,* 2002 WL 31640477, *1-2 (E.D.N.Y. Nov. 16, 2002) (did not consider 23(c)(4) or nominal damages).

[13] BOA's damages expert, Marsha Courchane, acknowledged that █████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████

Further, BoA is wrong that a breach-of-contract claim cannot proceed absent proof of damages.[14] Every state has held that nominal damages (as opposed to actual damages) may be available when a plaintiff proves the existence of a contract and its breach.  *See* App. D.[15]

Nor is 23(c)(4) certification barred by speculation that some class members may not have suffered damages.  When common issues predominate, certification is appropriate where some class members may not be able to prove concrete damage.  As the First Circuit held in *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010) (Souter, J.), if the law were otherwise, that would "blunt" "the point of Rule 23(b)(3) beyond utility."  *See also, e.g., Glazer*, 2013 WL 3746205 at *14 (liability-only class may include individuals who did not suffer defect manifestation); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 2012 U.S. Dist. LEXIS 181511, *80 (E.D. La. Dec. 21, 2012) (class certified; some members likely cannot prove harm).

While class members' damages will vary, the variation will not be so qualitatively significant that Plaintiffs' proposal would be unmanageable, given the options outlined in Plaintiffs' opening papers.  *See* Mtn. at pp. 21-24; Trial Plan at pp. 6-7.  *See also, e.g., Tardiff*, 365 F.3d at 7 (following resolution of liability issues, "the court would have further options, such as an agreement on modest uniform damages for those not claiming special injury, with masters to determine the (potentially few) serious claims to special injury").  BoA does not dispute that these methods exist, or that they could prove effective at streamlining the damages phase.

The damages phase would not be exceedingly complex if properly managed.  If BoA prevails on liability, there will be no damages phase.  If Plaintiffs prevail on liability and

---

[14] BoA does not even attempt to make the same argument as to Plaintiffs' other claims.

[15] BoA cites to this Court's opinion in *Linton v. New York Life Ins. & Annuity Corp.*, 392 F. Supp. 2d 39, 41 (D. Mass. 2005) for the elements of breach of contract, but there the Court did not analyze the elements, much less consider class certification and nominal damages.

waiver,[16] or on the factual issue of what BoA determined as to each borrower before issuing a TPP, BoA's individual defenses will be rendered moot, leaving damages to be calculated by mathematical formulae that will not likely require individual trials (in many instances, this will simply be a comparison of the original loan terms to the wrongfully denied modification terms). Even in the most complex scenario, where Plaintiffs prevail on liability, but not on the question of waiver, most individual damages issues will be similar enough to be resolved by having experts from both sides analyze the available data for groups of plaintiffs, and render opinions in short trials or hearings before a magistrate or special master.  And BoA itself has outlined, on page 17 of its brief, possible damage categories or issues that could be addressed with common proceedings that would narrow contested issues.[17]

The precise nature of the damages phase, and steps necessary to manage it, will come into sharper focus once the common issues have been decided.  Plaintiffs urge the Court to not allow BoA to avoid certification in a case where BoA has harmed thousands in the same exact manner, simply because there is variation in the damage BoA caused.

**B.      Plaintiffs Satisfy Rule 23(a)**

BoA does not challenge most of Plaintiffs' demonstration that they satisfy Rule 23(a); there is no real dispute about ascertainability or numerosity,[18] or the adequacy of plaintiffs and

---

[16] The common question of waiver is discussed in greater detail in § III.B.1.A, *infra*.

[17] Plaintiffs do not agree that the categories of individuals described in BoA's brief would necessarily not have suffered any harm, but those disputes could be resolved for large groups.

[18] BoA's 30(b)(6) witness admitted that BoA has a single database that can be used to ███████

their counsel.  Rather, BoA challenges commonality and, for some plaintiffs, typicality.[19]

**1.      BoA is wrong about the absence of commonality.**

**a.      The common questions Plaintiffs identified will drive this litigation.**

BoA rests the core of its opposition on a supposed lack of common issues.  But all that is required to satisfy Rule 23(a)(2) is a single common question, the answer to which will "drive the resolution of the litigation."  *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  In their opening papers (and esp. Appx. D to their Trial Plan) Plaintiffs showed common issues that will drive the resolution of this litigation.  Questions regarding the nature of the promise under the contract, whether that promise was breached, whether BoA waived contractual defenses, whether BoA's practices were unfair, deceptive, and in bad faith, and whether the elements of estoppel are satisfied, are issues that must be reached in every individual case, and their resolution will substantially resolve this case.  If Plaintiffs prevail, class members will be armed with liability verdicts they can use to recover damages – usually with a mathematical showing.  If BoA prevails, the claims of the class members will effectively be wiped out.

Among the common issues to resolve at trial is whether BoA can even assert that class members were not entitled to permanent modifications because (for example) they failed to return certain documents or moved out of their house.  Opp. at 18-20.  These defenses speak to the measure of damages.  After all, the existence of individual contractual defenses cannot defeat certification where there are prevailing common issues as to the meaning of a form contract.  *See Smilow*, 323 F.3d at 39.  That said, these defenses will not even be raised if Plaintiffs prevail on two common and disputed issues:  (1) whether BoA waived the ability to reject a homeowner for a particular flaw by not doing so before the deadline in BoA's form contract, and (2) whether

---

[19] The plaintiffs BoA's brief challenges as to typicality are Alvarenga, Balde, Cipowski, Cabrera, Carillo, Galasso, George, Goldman, Hlvasa, Kirkpactrick, Kunsky, McManaman, Morrow & Clark, Nelson, Volpe.  Opp. at 28-30.  Plaintiffs discuss these challenges in § III.B.2, *infra*, and in App. A.

BoA had a policy of not even issuing a TPP without first determining that each applicant already satisfied the criteria BoA challenges here, leaving only the trial payments to complete.

As to waiver, section 1 of the TPP itemizes certain representations.  It then places on BoA the duty to determine if those representations were accurate and, if not, to deny the modification *prior to* the MED.  *Id.* at § 2.F ("If prior to the [MED] … (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified …").  *See also* § 2.A ("TIME IS OF THE ESSENCE").  Every class member received this contract, made their payments, and did not receive a denial or an offer prior to the MED.  Therefore, as to every class member, BoA waived its right to claim inadequate performance.  Further, under the law of waiver recognized in each state in question, it is a common question whether, when BoA continued to accept borrower payments, it waived its ability to insist on certain aspects of borrower performance or eligibility once the MED had passed.  *See* App. E (setting forth elements in each state).  If Plaintiffs prevail on this issue, BoA's purported individualized issues will be rendered moot.[20]  *See also, e.g., Smilow*, 323 F.3d at 40 (where waiver is based on common facts, the issue is common).

### b.     BoA's argument about "offer" vs. "implementation" is a red herring

BoA claims certification should be denied because one of Plaintiffs' common questions asks when a modification was "offered" instead of when it was "implemented."  Opp. at 20-22.  This is a semantic game.  As Prof. Ayres made clear, if there are borrowers who received a HAMP modification offer prior to the MED, and who are included in the class because the

---

[20] BoA inaccurately cites *Campusano v. BAC Home Loans Svcg. LP,* 2013 WL 2302676 (E.D. Cal. Apr. 29, 2013), as holding to the contrary.  But the primary reasons certification was denied were (1) the proposed class members held different contracts, and (2) plaintiffs sought certification of a nationwide class that attempted to group together classes from 50 states with a few plaintiffs and without uniformity as to the applicable law.  *See* 2013 WL 2302676, at *6-7.  *Campusano* indicated that where (as here) those two problems did not exist, certification of the question of waiver would be proper.  *Id.* at *6.

modification was not implemented prior to the MED, that number is certainly small, and can be accounted for with a minor adjustment to his algorithm. *See* Defs. App. C., Ex. 14, 80:5-16. BoA does not deny that every class member in every state shares the question of what the TPP contracts promise. A dispute over how to word a question does not mean it does not exist.

### c.    Commonality is not defeated by state law variations

BoA baselessly contends that there is no commonality as to the individual state classes because there is variation between the various states on certain points of law. Opp. at 22-25. Plaintiffs seek, in one motion, to certify 26 classes consisting of borrowers from 26 states. The inquiry as to each of those classes is the same as if Plaintiffs brought 26 separate motions:  do common issues exist for each state class under that state's laws?[21]

Essentially, BoA claims that because the law is not ***identical*** in each state, the Court should fear the prospect of certifying multiple classes.[22]  But complexities due to having multiple state classes consolidated into a single proceeding are a byproduct of the MDL process that Boa supported, and as Plaintiffs demonstrated in their opening papers, the laws of the states do not vary much.[23]  *See* Trial Plan and Appxs thereto. *Cf. In re Pharm. Indus. Avg. Wholesale Price Litig.*, 252 F.R.D. 83, 104, 105 (D. Mass. 2008) (Saris, J.) (certification of UDAP classes for

---

[21] BoA cites cases in which courts denied certification based on state-law variations. Opp. at 23 n.14. But those cases involved attempts to use one plaintiff, or a few plaintiffs, to certify a nationwide class or a single class that included multiple states. They are inapposite here.

[22] BoA cited several cases to show that different state laws may result in differing interpretations of the TPP. Opp. at 23-24. But many of those differences are illusory. For example on the issue of consideration, there is no conflict between this Court's decision and *Karapetyan v. JP Morgan Chase Bank, N.A.*, 2012 WL 3308883, *3-4 (E.D. Tex. June 6, 2012) and *Citimortgage, Inc. v. Crawford*, 2013 WL 1225387, *4-5 (S.D. Ohio Mar. 26, 2013). Those courts did not even analyze the types of consideration this Court found dispositive. In *Vida v. OneWest Bank, F.S.B.*, 2010 WL 51448473, *6 (D. Or. Dec. 13, 2010), the plaintiff argued that the TPP was ***itself a modification***. And the cases regarding "oral contracts" and "part performance" are inapposite, as Plaintiffs are not relying on those theories.

[23] BoA does not argue that there are unmanageable differences as to promissory estoppel or good-faith-and-fair-dealing claims. BoA cites to differences in UDAP statutes, Opp. at 24-25, but issues such as intent will be common to every member of every state class.

multiple states is permissible even with a single plaintiff where there is no significant variation).

The majority of the classes were the result of state-specific complaints that were transferred here,

and the Court should not decline to certify them simply because they are combined here.

### d.     BoA's arguments regarding UDAP do not defeat certification

BoA also misconstrues Plaintiffs' proposal regarding certification of common questions

on their UDAP and good-faith claims in an effort to make those issues appear individualized.

Opp. at 25-27.  Plaintiffs are not asking the Court to certify whether every class member was

harmed by a uniform policy, but whether BoA had a policy or practice of refusing to offer

HAMP modifications unfairly, deceptively, or in bad faith.  Plaintiffs have submitted testimony

from eight witnesses who describe serious, widespread malfeasance.  Their testimony is

buttressed by dozens of confirming documents.  This evidence distinguishes this case from every

case BoA cites in footnote 16; none of those cases involved the allegations of widespread abuse

Plaintiffs have uncovered here.  BoA attempts to discredit six of the witnesses, but the fact

remains that there is serious evidence that is relevant to every class member's claims.

Certification of these issues does not run afoul of *Wal-Mart Stores, Inc. v. Dukes*, 131 S.

Ct. 2541 (2011).  There (and in *Barrett v. Option One Mortg. Corp.*, 2012 WL 4076465 (D.

Mass. Sept. 18, 2012)), plaintiffs sought to certify a liability-and-damages class based on

statistical data that raised the inference of harm to all class members resulting from company

policy.  *See* 131 S. Ct. at 2554-56.[24]  Here, plaintiffs are asking the Court to certify whether BoA

indeed had policies that were unfair, deceptive, or in bad faith.  Resolving that question will

materially advance this litigation no matter how it is resolved.

---

[24] Plaintiffs also note that if BoA was actually (as it suggests) giving individuals answering phones discretion to deny HAMP modifications on any basis, thereby disregarding binding contracts, that only bolsters Plaintiffs' claims of bad faith.

### 2.      Plaintiffs Are Typical

BoA challenges a few of the more than 40 named plaintiffs as not being typical of their proposed classes.[25]  This argument is based on questionable factual allegations and misconstrues the typicality standard.  A plaintiff needs only be typical of what is sought to be certified, thus "[f]or particular issues to be certified using Rule 23(c)(4), the requirements of Rule 23(a) … need to be satisfied only with respect to those issues."  *In re Motor Fuel Temperature Sales Practices Litig.*, 2013 WL 1397125, *6-7 (D. Kan. Apr. 5, 2013).  Every proposed representative meets typicality as to the common issues; each of them received a TPP, made the required payments, and did not receive a denial or an offer prior to the MED.  Thus, they share common liability issues.  Whether a plaintiff might be subject to a mitigation defense is irrelevant.

BoA claims that two plaintiffs (George and Nelson) are not class members because they allegedly did not make their TPP payments.  Opp. at 28.  BoA's databases, however, show that ████████████████████████████████████  *See* Ex. 65, ¶¶ 6-10.  BoA also claims four plaintiffs are not class members because they received their TPPs from Wilshire Corporation.  Opp. at 30.  However, as █████████████████████████████████████████████ ████████████████████  *See* App. A, Table 3; *see also* Exs. 49-50.  As for BoA's allegations of other plaintiffs' "failure to satisfy … TPP obligations" other than payments, Opp. at 29, those allegations are dubious.  *See* App. A, Table 4.  But regardless, all of those plaintiffs share the common issue of whether these alleged failures to perform under the TPP were waived when BoA did not deny a modification on that basis by the time provided in the contract.  *See* § III.B.1.a, s*upra*, and App. E.

---

[25] To the extent BoA does not specifically challenge a plaintiff's typicality, the Court should consider any such challenge waived as to that plaintiff and the state class they seek to represent.  *See* fn. 21 for a list of plaintiffs challenged in BoA's typicality section.  A list of all plaintiffs, by state, with the challenged plaintiffs identified, is included as App. F.

**C.     Plaintiffs Satisfy the Requirements of Rule 23(b)**

Certification in this case pursuant to Rule 23(c)(4) would satisfy both the predominance and superiority requirements of Rule 23(b)(3).[26]  BoA's arguments as to predominance, Opp. at 30, are based on its arguments regarding damages, which Plaintiffs address in § III.A, *supra*.

BoA's superiority argument is erroneously based on the fact that outcomes have varied in cases involving HAMP breach-of-contract claims, and this demonstrates that certification is not appropriate.  In fact, this demonstrates why certification is ***needed***.  One of the cornerstone benefits of a class action is that it can "achieve economies of time, effort, and expense, and promote [] uniformity of decision as to persons similarly situated."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  The Court has an opportunity to provide clarity and sanity to, among other things, the question of whether the TPPs bind BoA to provide the members of the Classes with a timely permanent modification.  The Court will otherwise have to rule on these (and other) issues in numerous individual cases.  But Plaintiffs' approach would allow the Court to resolve those issues for thousands of claimants at once.

BoA's alternative would be chaos:  dozens of district courts issuing different decisions, resulting in splits of authority and multiple appeals, with litigation and judicial costs ever rising as litigants attempt to get discovery from other cases, and depose the same witnesses multiple times.  Moreover, plaintiffs would be left without key evidence, because individual cases would not warrant the investigation Plaintiffs have undertaken and the resources they have expended.

BoA would prefer to not certify classes in this Court due to the ramifications of *Young v. Wells Fargo*, 717 F.3d 224, 2013 U.S. App. LEXIS 10189, *21 (1st Cir. May 21, 2013), in which the First Circuit ruled "[t]he TPP's plain terms [require banks] to offer … a permanent

---

[26] As noted in Plaintiffs' opening brief, these standards are determined by looking to the issues to be certified, and not the entire case.  *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226-27 (2d Cir. 2006).

modification" to borrowers who have performed under the TPP.[27]  This is the same Agreement *every* class member here received.  As the court noted, the TPPs provide a specific, defined sequence:  an effective date, dates and amounts for required payments, and a "modification effective date" which defines the end of the trial plan.  *See id.* at *18-19.  As of that date, unless BoA has determined that the borrower did not meet certain conditions, *see, e.g.,* Schoolitz Ex. 18, "the lender will send [the borrower] a Modification Agreement for … signature which will modify [the Loan Documents] as necessary."  *See* 2013 U.S. App. LEXIS 10189 at *21.

*Young* controls here and cannot be marginalized; the First Circuit interpreted the contract on its face, without reference to state law.  *See id.* at *18-19.  BoA has not even attempted to demonstrate why any particular state's law should dictate another outcome.[28]  In any event, any variation in a particular state would be a common issue for every member of that state's class.

## IV.  CONCLUSION

For the reasons stated above and in Plaintiffs' opening papers, the Court should grant Plaintiffs' motion for class certification.

Dated:  July 26, 2013.

Respectfully Submitted,


*/s/ Steve W. Berman*

---

[27] The First Circuit is not the only court to hold that TPPs are binding contracts for permanent modifications.  It is not necessary to cite every such case, but representative decisions include: *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561-66 (7th Cir. 2012); *Smith v. Saxon Mortg. Servs.*, 2013 U.S. Dist. LEXIS 66101, *13-21 (E.D. Pa. May 9, 2013); *Turbeville v. JPMorgan Chase Bank*, 2011 U.S. Dist. LEXIS 42290, *7-14 (C.D. Cal. Apr. 4, 2011).

[28] BoA misleadingly suggests that California and New Jersey might have special rules of interpretation.  Opp. at 23-25.  But in *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1069 (N.D. Cal. 2011), interpretation did not turn on elements of California law, and courts applying California law have held to the contrary.  *See, e.g., Jackson v. Ocwen Loan Svg., Inc.* 2011 U.S. Dist. LEXIS 12816, *8 (E.D. Cal. Feb. 9, 2011); *Alimena v. Vericrest Fin., Inc.*, 2012 U.S. Dist. LEXIS 181309, *19-24 (E.D. Cal. Dec. 18, 2012).  In *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 795-97 (S.D.N.Y. Jul. 29, 2011), the court did not even mention New Jersey law in its analysis of the terms.

Hagens Berman Sobol Shapiro LLP
Steve W. Berman
Ari Y. Brown
Tyler S. Weaver
1918 8th Avenue, Suite 3300
Seattle, WA 98101
206.623.7292 (p)
206.623.0594 (f)
steve@hbsslaw.com
ari@hbsslaw.com
tyler@hbsslaw.com

*/s/ Gary Klein*
Klein Kavanagh & Costello
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
85 Merrimac Street
Boston, MA 02114617
617.357.5500 (p)
klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com

*Interim Co-Lead Counsel*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, a true and correct copy of this document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steve W. Berman
Hagens Berman Sobol Shapiro LLP